## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Lewis Brisbois Bisgaard and Smith LLP | § | |
| | § | |
| v. | § | **Case Number:** |
| | § | **4:22‑cv‑03279** |
| Michael Joseph Bitgood, | § | |
| a/k/a/ Michael Easton *et al.* | § | |

## RESPONSE IN OPPOSITION TO PRELIMINARY INJUNCTION AND MOTION TO ADMIT PLAINTIFF'S EXHIBITS

**TO THE HONORABLE KEITH P. ELLISON:**

### I.   PREJUDICE BY LACK OF SERVICE AND NOTICE

A.     Plaintiff, *pro se*, filed this complaint on Friday, September 23, 2022;

B.     Plaintiff, *pro se*, **DID NOT** request summons, or attempt to serve the complaint;

C.     Plaintiff, *pro se*, on that same Friday, September 23, 2022, executed a **FALSE and FRAUDULENT** certificate of service "certifying" to this Court that it had served the complaint, **(IT DID NOT);**

D.     Plaintiff, *pro se*, **HID** the filing in the hopes of securing a more favorable outcome from the state court since these same issues pend before a state court with concurrent jurisdiction;

E.     The state court handed Plaintiff, *pro se*, a staggering and humiliating loss on its claims by finding that Plaintiff, *pro se*, a California Foreign entity, had no legal right to appear in a Texas Court using the name, Lewis Brisbois Bisgaard and Smith LLP, but that rather, that right

belonged to the defendants as a domestic Texas LLP; and,

F. Plaintiff, *pro se*, **FINALLY** gave notice of this suit, on Friday September 30, 2022, by sending an e-mail and dispatching FedEx to deliver the complaint, again with **NO SUMMONS**, to arrive on Monday October 3, 2022, before 8:00 p.m. local time, for an evidentiary hearing on October 6, 2022.

## II. LACK OF CLEAN HANDS

Thus, the single most important factor that all judges, both state and federal, always examine first, namely, "CLEAN HANDS," is far removed from this Plaintiff, *pro se*, but as the Court will soon come to see, Plaintiff, *pro se*, is unworthy of this Court's trust as evinced below.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Comes now, Michael Joseph Bitgood, a/k/a/ "Michael Easton," from hereinafter "Easton," who moves the Court to deny the request for preliminary injunction based on Plaintiff, *pro se*'s:

a. Complete and utter lack of clean hands;

b. Material misrepresentations to the Court;

c. Material omissions of fact and law; and

d. Balancing of equities.

## III. GENESIS

2.     Pending before the state courts of Texas is a declaratory judgment action (Dkt. 1-8) to determine who has the final right to use the name "Lewis Brisbois Bisgaard & Smith LLP" in the State of Texas—and only in the State of Texas.  Plaintiff carefully omitted from its complaint any mention of that fact, however that fact is evident in the exhibits that it gratuitously attached to their complaint.  Easton moves the Court to admit Exhibits 1–12, (Dkts. 1-1 to 1-12) attached to Plaintiff's Complaint (Dkt. 1) for the purposes of this hearing.

3.     Obviously, this is an *en rem* proceeding in which Plaintiff is claiming that a valuable piece of its property has been unlawfully taken from it by Easton.  Easton respectfully requests the Court to take judicial notice under *Fed. R. Evid.* 201, that this is an *en rem* proceeding over a trademark as asserted and claimed by Plaintiff.

4.     What Plaintiff failed to tell the Court when asking for equitable relief is that a Texas state court on September 13, 2022, found, as a matter of law, that "Lewis Brisbois Bisgaard and Smith LLP" (The California Plaintiff), had no legal authority to do business in Texas, and

no legal authority to appear in a Texas Court on behalf of clients. See Exhibit "A" annexed hereto and duly incorporated herein by reference as if set forth verbatim. The state court removed Plaintiff, *pro se*, from the case on behalf of their "non-clients," and struck all of their pleadings as evidenced by Exhibit "A."

5.      In addition, because the actions of Plaintiff, *pro se*, in state court constituted criminal offenses under Texas law, the state court took judicial notice of those violations as applied to the case. See Exhibit "B" annexed hereto and duly incorporated herein by reference as if set forth verbatim.

6.      **<u>After losing in state court</u>**, Plaintiff then sued "Easton" in federal court, **<u>(along with others who have nothing to do with this dispute)</u>**, claiming that Easton misappropriated their trademark. This allegation is patently false, as seen by Plaintiff's own exhibits attached to their petition. (Dkts. 1-1 to 1-12)

7.      While Plaintiff was in state court, Plaintiff

    a.   failed to raise a single solitary objection to any use of the name in question;

    b.   failed to file a special appearance when named in the petition;

    c.   made a voluntary appearance in the Texas court; and,

d. defended and prosecuted their position. See Exhibit "C" annexed hereto and duly incorporated herein by reference as if set forth verbatim, the Findings of Fact and Conclusions of Law of the state court.

8. Again, after Plaintiff, *pro se*, lost the issue in state court, and after issuing threat after threat after threat, Plaintiff, *pro se*, made a mad dash "beeline" to this Court —appearing *pro se*— seeking to undo the work of the state court, and seeking to have a federal court OVERTURN the orders and findings of a state court— and to find differently based on the same set of facts.

### IV. THE LAW AND EASTON'S OFFER TO STIPULATE

9. Given the totality of the circumstances, Easton transmitted an offer to Plaintiff, *pro se*, **to immediately and without hesitation, submit the case to this Court on stipulated facts and allow the Court to apply the law and come to a quick, inexpensive, and just conclusion**. See Exhibit "D" annexed hereto and duly incorporated by reference as if set forth verbatim.

10. Plaintiff's zeal, bluster, and threats appeared to have evaporated when confronted with this offer, or, perhaps Plaintiff, *pro se*, thinks that

tying up this Court for months and years with their machinations while outspending Easton—because they can—is the better way to conduct themselves, until they financially break Easton —again because they can! Such a course of action screams loud and clear that Plaintiff lacks clean hands, and should have disclosed to this Court the relevant and legal facts before invoking the jurisdiction of this Court as an "injured" party: namely, they failed to tell this Court that a state court is already hearing this case, a forum in which— we might add—that Plaintiff, *pro se*, chose to do battle by making a voluntary appearance and then taking Easton to task by sending their managing partner to state court with the full knowledge and consent of the head office in California.

11.    Easton discloses to this Court controlling authority holding that this Court has jurisdiction to hear this case, as well as controlling authority that the same state court possesses concurrent jurisdiction to hear and determine this case as well. <u>See</u>: *Sprint Communications v. Jacobs*, 134 S. Ct. 584 (2013); and <u>see also</u>, *Howlett v. Rose,* 110 S. Ct. 2430, (1990). So then, where is— and what should be—the "tie-breaker?"

12.    The Fifth Circuit supplies the answer in *Rowan Cos. v. Griffin*, 876

F.2d 26 (5th Cir. 1989).  In *Rowan,* the Fifth Circuit set out the factors for District Courts to consider in deciding whether to grant declaratory relief, or to stay or dismiss a declaratory judgment suit in deference to a state court action involving the same parties and issues.

13.    The Court may deny relief because of:

♦    a pending state court proceeding in which the matters in controversy between the parties may be fully litigated

♦    because the declaratory complaint was filed in anticipation of another suit and

♦    is being used for the **purpose of forum shopping**, and

♦    because of possible inequities in permitting the Plaintiff to gain precedence in time and forum, or

♦    because of inconvenience to the parties or the witnesses.

The Fifth Circuit stated that:

"Fundamentally, the district court should determine whether the state action provides an adequate vehicle for adjudicating the claims of the parties and whether the federal action serves some purpose beyond mere duplication of effort." *PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973),

14.    The District Court should consider denying relief to avoid:

". . . gratuitous interference with the orderly and comprehensive disposition of a state court litigation" if "the

claims of all parties can satisfactorily be adjudicated in [the state court] proceeding." *Brillhart*, 316 U.S. at 495, 62 S. Ct. at 1176.

## V. *STARE DECISIS* BY THIS VERY COURT

15.    It is improbable, if not impossible, to believe that Plaintiff, *pro se*, "missed" this Court's memorandum opinion on the same subject matter and "missed" this Court's checklist before bringing, and then hiding, this lawsuit.    After all, Plaintiff, *pro se*, makes broad and sweeping declarations of legal excellence, legal resources, legal muscle, and legal connections on their website.  In contrast, this lowly layman has not even a fraction of those resources, and yet he found this Court's outstanding opinion in **Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.** 214 F. Supp. 3d 573 ; 2016 U.S. Dist. LEXIS 142424; 2016 WL 6037243.[1]

16.    Even a cursory review of His Honor's outstanding work in *Regents* would have revealed to a first-year law student that, as a plaintiff in this case, he would lose on the law and the merits.  So, Plaintiff, *pro se*, chose

---

[1]

What Easton may lack by way of a law license, he does not lack in four areas: 1) Focus, 2) Determination, 3) Integrity to the truth and the law, and 4) Sheer will– to put forth his very best when appearing before any judicial officer–period!

to begin the case with false statements, and will continue to do so as long as the Court allows him to continue.

### VI.   A STEP-BY-STEP ANALYSIS AS PER HIS HONOR

17.    Analysis for **trademark** infringement under the *Lanham Act* proceeds in two steps.  A party must first show that it has a protectable right in the mark and, second, show that there is a likelihood of confusion between the marks**.[2]   Is that present here? Answer: NO!**   The California Plaintiff, *pro se*, practices law; the domestic Texas LLP does not.  The Texas LLP only acts by judicial decree of the courts, and unlike prolonging litigation with broad and sweeping declarations of greatness, the Texas LLP seeks to bring about peace, not war, to disputes.[3]

18.    To demonstrate a likelihood of success on the merits of a **trademark** infringement claim, a plaintiff must show that defendant's new mark is

---

[2]

Proof of registration of a service mark or **trademark** is *prima facie* evidence of the registrant's exclusive right to use the mark in commerce for the services specified in the registration.  As stated by His Honor, the key is: "for services specified in the registration."

[3]

When we speak of a compelling and overwhelming State's interest, what is more compelling to the State than to have effective ADR to curtail the madness—albeit profitable to others—of non-stop, never-ending litigation?  Moreover, as mediators and arbitrators, the Texas LLP is clothed with judicial immunity from suit.

likely to cause confusion with a protectable mark. Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion. A finding of a likelihood of confusion is a finding of fact. In making this finding, the court considers a non-exhaustive list of so-called "digits of confusion," including:

(1) the strength of the plaintiff's mark;

(2) the similarity of design between the marks;

(3) the similarity of the services;

(4) the identity of retail outlets and purchasers;

(5) the similarity of advertising media used;

(6) the defendant's intent;

(7) the evidence of actual confusion; and

(8) the degree of care exercised by potential purchasers.

The digits may weigh differently from case to case, depending on the particular facts and circumstances involved. No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these digits of confusion. In addition to the listed factors, a court is free to consider other relevant factors in determining

whether a likelihood of confusion exists. **Is that present here? Answer:** Not even remotely close, as the state court heard that the Texas LLP does not practice law.  In addition, we have no website, no advertising, we "pitch" to no marketplace or consumer, and we do not sell any goods or services that would harm the Plaintiff, *pro se*.

19.     Obviously, Plaintiff, *pro se*, is more angry and ego-bruised that a layman "out-lawyered" their named managing partner.  They are bitter because they look overwhelmingly foolish for having gone to court unprepared and with guile on their lips when they could have come to this Court first—instead of selecting the "battlefield" by their own hands. Now, having invoked the process of the state courts, they seek to have the federal court undermine the state court. [4]

20.     Concerning a **trademark** infringement claim, the greater the similarity between the parties' services, the greater the likelihood of

---

[4]

Plaintiff, *pro se*, sued—in this Court—a Richard P. Jones, an indigent Black man who, while being protected under the CARES ACT, Plaintiff tried to  extort, evict, and spent a great deal of time terrorizing.  Jones has nothing—not a thing —to do with the Texas LLP, and yet, this 1600-man, behemoth law firm drags Mr. Jones into federal court and they also sue opposing counsel for representing his client as well. IF THESE ARE NOT THE TRADEMARKS OF A BULLY– they certainly are Plaintiff, *pro se*'s, very protectable "trademarks" rightfully associated with their name, which Easton did not impinge upon.

confusion.  **Is that present here? Answer: NO!**

21.     Concerning a **trademark** infringement claim, differences in the parties' customer bases can lessen the likelihood of confusion. **Is that present here?  ANSWER: YES!**

22.      The California LLP seeks to make wars and get rich by soliciting others to go to war, and by making broad, sweeping declarations of greatness as seen by Exhibit "E"  annexed hereto and duly incorporated herein by reference, Plaintiff, *pro se's*, "My friend, Sue" letter written by Bennett Fisher, in a subtle attempt to trap Ms. Norman, and to create a cause of action and damages that do not exist after hiding this lawsuit from Ms. Norman.  Chilling of course, and unquestionably bound to raise this Court's eyebrows is Plaintiff, *pro se's,* declaration that the judiciary endorses Plaintiff, *pro se*, and their greatness, and, Plaintiff, *pro se's*, threat to grieve Ms. Norman under the State Bar rules—rules which prohibit Plaintiff *pro se* from issuing that threat.

23.     As seen by Exhibit "F", annexed hereto and duly incorporated herein by reference, Ms. Norman promptly responded to Plaintiff, *pro se's,* threats and their  broad and sweeping declarations of greatness.  She set

out that, beyond Plaintiff, *pro se's,* vicious and vindictive complaint in

this court—there is not a chance that the California LLP could ever be

confused with the Texas LLP (as already determined in state court),

because we do not solicit anyone, but rather, the Texas LLP brings about

peace and exists to help the courts of the state, and to further Texas'

compelling interest to bring an end to litigation using ADR.[5]

## VII.   CONCLUSION, RESERVING OTHER DEFENSES AND ABSTENTION ARGUMENTS

24.   The abstention doctrine is an authority that precludes federal courts

from hearing cases within its jurisdiction, instead, giving state courts

authority over the case. The policy behind this doctrine is rooted in

federalism, and the interest of allowing state courts to adjudicate matters

that are particular significance to the state or its laws. Conflicts

surrounding abstention commonly arise out of constitutional challenges

---

[5]

Easton believes His Honor will be in full agreement with Easton's desire to bring this case to an end QUICKLY. Easton shares with all the Courts his conviction—borne by experience—that if this case is allowed to continue to progress with more underhanded behavior by Plaintiff, *pro se,* there will be more, not less, contention, and we all may have lost the opportunity to achieve the goal of Mr. Justice Story's apothegm that **"[It] is for the public interest and policy to make an end to litigation, so that suits may not be immortal, while men are mortal."** *Ocean Ins. Co. v. Fields*, 18 Fed. Cas. No. 10, 406 (1841).

to state laws.

25. The abstention doctrine can be further divided into various sub-doctrines, based on a number of Supreme Court cases that have expanded on when abstention is warranted. These cases include *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496 (1941); *Younger v. Harris,* 401 U.S. 37 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943); *Rooker v. Fidelity Trust,* 263 U.S. 413 (1923); and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). Each will be briefed and brought forward at a later time for the Court's consideration. However, time is now of the essence, and to treat this Court's valuable time with respect, we submit this reply.

**WHEREFORE, PREMISES CONSIDERED**, Easton moves the Court to deny the application for preliminary injunction pending dispositive motions to dismiss based on abstention.

Respectfully submitted,
*/s/ Michael Joseph Bitgood*
a/k/a/ Michael Easton
503 FM 359, Suite 130-216
Richmond, Texas 77406
281-415-8655
EastProLaw@msn.com

NO. 22-CCV-070378

| | |
|---|---|
| RICHARD P. JONES,<br>MICHAEL JOSEPH BITGOOD<br>A/K/A/ "Michael Easton", and<br>LEWIS, BRISBOIS, BISGAARD &<br>SMITH LLP, a Texas Domestic LLP<br>*Plaintiffs* | IN THE COUNTY COURT |
| VS. | AT LAW NO. THREE (3) OF |
| KARINA MARTINEZ,<br>MARIANNA SULLIVAN,<br>IMPERIAL LOFTS, LLC<br>DAVID OUBRE<br>CHINASA OGBUREKE &<br>LEWIS, BRISBOIS, BISGAARD &<br>SMITH LLP, a California Foreign LLP<br>*Defendants* | FORT BEND COUNTY, TEXAS |

# <u>ORDER</u>

At Richmond, Texas, in Fort Bend County, was heard the Plaintiffs' motion to show authority pursuant to Rule 12 T.R.C.P. The Plaintiffs' objections to the "affidavits" of Larson, Martinez, and Sullivan, are **SUSTAINED.**

The motion to show authority is **GRANTED**, David Oubre is removed as counsel in this case for Imperial Lofts LLC, Imperial Lofts Owner LLC, Madam Marianna Sullivan, and Karina Martinez. Mr. Oubre may continue to appear pro se at this time.

Page -1-

The Court **STRIKES** the pleadings of Imperial Lofts LLC, Imperial Lofts Owner LLC, Karina Martinez, and Madam Marianna Sullivan, and enters a ~~default as prayed for on June 23rd 2022.~~ *LW* The Court will conduct a hearing on damages on the *10TH* day of *NOVEMBER* 2022, at 1:30 P.M. Counsel will file her affidavit on her reasonable and necessary attorney's fees for the Court's consideration. Upon entry of judgement against Madam Mariana Sullivan, Imperial Lofts LLC, Imperial Lofts Owner LLC, and Karina Martinez, the Plaintiffs may re-urge a severance.

The Court takes judicial notice of the contents of the Court's file, and takes judicial notice of the voluntary appearance of defendants, Oubre and LEWIS, BRISBOIS, BISGAARD & SMITH LLP, a California foreign LLP, on July 8th, 2022.

Entered by the Court on this 13th day of September, 2022, at Richmond, Fort Bend County, Texas.

_____
Judge Presiding

FILED FOR RECORD
NO_____ TIME 3:20 A.M./P.M.

SEP 13 2022 mm

*Laura Richard*
County Clerk Fort Bend Co., Texas

Page -2-

CAUSE NO. 22-CCV-070378

| | | |
|---|---|---|
| RICHARD JONES ET AL. | § | COUNTY COURT AT LAW |
| | § | |
| VS. | § | NO. 3 OF |
| | § | |
| KARINA MARTINEZ ET AL. | § | FORT BEND COUNTY, TEXAS |

## ORDER TAKING JUDICIAL NOTICE

Pursuant to *Tex. R. Evid. 201,* and at the request of a party, the Court takes judicial notice of the following:

1. The contents of the Court's file;
2. Chapter 27 of the Tex. Civ. Prac & Remedies code in effect in 2022;
3. Texas Penal Code 42.07;
4. Texas Penal Code 37.10;
5. Texas Business and Commerce Code Sec. 71.202;.
6. Texas Business and Commerce Code Sec. 71.201;
7. Texas Business and Commerce Code Sec. 71.203;
8. *Texas Penal Code* Sec. 37.02;
9. Texas Penal Code Sec. 36.08;
10. Texas Penal Code Sec. 15.02;
11. Texas Penal Code Sec. 39.03;
12. Texas Penal Code Sec. 39.06;
13. The State Bar's Texas Rules of Professional Conduct;
14. Rule 13, of the Texas Rules of Civil Procedure;
15. Chapter 10, of the Texas Civil Practice & Remedies Code;
16. Chapter 11, of the Texas Civil Practice & Remedies Code;

17. The Texas Rules of Evidence;

18. The docket in Imperial Lofts v. Richard Jones, No. 21-JEV41-11379;

19. 15 U.S.C. 116 -(THE CARES ACT);

20. The Tex. R. Civ. Proc. Rule 11 agreement dated April 26th 2022, between the parties and on file with this Court; and,

21. Texas Penal Code 7.02.

Signed this _13_ day of _September_ 2022, at Richmond, Fort Bend County, Texas.

_____

Lewis White

Presiding Judge

FILED FOR RECORD

NO_____ TIME 3:25 A.M. (P.M.)

SEP 13 2022 MM

Laura Richard

County Clerk Fort Bend Co., Texas

Page -2-

**EXHIBIT C**

EXHIBIT A

NO. 22-CCV-070378

| | | |
|---|---|---|
| RICHARD P. JONES, | § | IN THE COUNTY COURT |
| MICHAEL JOSEPH BITGOOD | § | |
| A/K/A/ "Michael Easton", and | § | |
| LEWIS, BRISBOIS, BISGAARD & | § | |
| SMITH LLP | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | AT LAW NO. THREE (3) OF |
| | § | |
| KARINA MARTINEZ, | § | |
| MARIANNA SULLIVAN, | § | |
| IMPERIAL LOFTS, LLC, | | |
| IMPERIAL LOFTS OWNER LLC | § | |
| DAVID OUBRE, | § | |
| LEWIS, BRISBOIS, BISGAARD & | | |
| SMITH LLP, a California Foreign LLP | | |
| *Defendants* | | FORT BEND COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a Rule 12, Tex. R. Civ. Proc. Motion, brought by the Plaintiffs' against David Oubre, and Lewis Brisbois, Bisgaard & Smith LLP, a California Foreign LLP.

On September 13th 2022, the Court conducted an evidentiary hearing, and now enters the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

1.      Lewis Brisbois, Bisgaard & Smith LLP, (California) and David

**EXHIBIT C**

EXHIBIT A

Oubre, filed an answer for defendants' Martinez, Sullivan, and Imperial Lofts LLC, on March 11th 2022.

2. Lewis Brisbois, Bisgaard and Smith LLP, (California) lacked the authority to appear in a Texas Court on March 11th 2002, and by judicial admission admitted that they did not submit an application to do business in Texas until at least March 28th 2022.

3. At the evidentiary hearing, David Oubre failed to present any evidence whatsoever to overcome the sworn Rule 12 challenge, despite this Court inviting him repeatedly to do so; inviting him to put on testimonial evidence, or, to re-open after he had rested his case.

4. The only testimonial evidence put on at the hearing, was the sworn testimony of Plaintiff, Michael Joseph Bitgood, a/k/a/ Michael Easton, as the President of Lewis Brisbois, Bisgaard and Smith LLP, a domestic Texas LLP. Despite the extensive testimony and narrative of Mr. Easton, Mr. Oubre, did not cross-examine the Plaintiff on any of matters that Easton testified to. Thus, the Court credits Mr. Easton's testimony as credible and conclusive.

5. After Mr. Oubre rested his case, Easton asked the Court to take

**EXHIBIT C**

EXHIBIT A

judicial notice of the contents of the Court's file, which the Court did.

6.    At no time during his case in chief, did Mr. Oubre ask the Court to take judicial notice of anything.

7.    At no time during his case- in- chief did Mr Oubre mark or offer a single solitary exhibit.

8.    At no time during his case-in-chief, did Mr. Oubre offer any witnesses, or offer any evidence of any kind.

9.    At the close of his case-in-chief, the Court offered Mr. Oubre a chance to re-open; Mr. Oubre declined the Court's invitation, and told the Court that he had no witnesses.

## II. CONCLUSIONS OF LAW

1.    Lewis Brisbois, Bisgaard & Smith LLP, (California) and David Oubre failed to discharge their obligations under Rule 12.

2.    The Court removed  Lewis Brisbois, Bisgaard & Smith LLP, (California)  and David Oubre from this case, and as mandated by law, and struck the pleadings filed by them as mandated by law.

3.    The Court removed  Lewis Brisbois, Bisgaard & Smith LLP, (California) and David Oubre because they failed to show authority to

Page -3-

**EXHIBIT C**

EXHIBIT A

appear.

4.     The Court articulated, very clearly, on the record, that it also sustained the alternative grounds under Rule 12, namely that Lewis Brisbois, Bisgaard & Smith LLP, (California), and David Oubre, could not represent a corporation under Texas law, and then represent additional parties .

5.     The failure of Mr. Oubre to put on evidence to rebut everything the Court heard  and took judicial notice of after he rested his case, was FATAL to his position, and left the Court with no other choice but to remove him, and his law firm, and to strike the pleadings.

6.     Any finding of fact which may be deemed a conclusion of law is hereby adopted as such, and, any conclusion of law which may be deemed a finding of fact, is hereby adopted as such.


Signed this _27_ day of _September_ 2022, at Richmond, Fort Bend County, Texas.

Lewis White
Presiding Judge

FILED FOR RECORD
NO_____ TIME 2:00 A.M.
                         P.M.
SEP 27 2022 MM
Laura Richard
County Clerk Fort Bend Co. Texas

Page -4-

## Susan Norman

| | |
|---|---|
| **From:** | EastProLaw . <eastprolaw@msn.com> |
| **Sent:** | Wednesday, September 28, 2022 6:52 AM |
| **To:** | Bill.helfand@lewisbrisbois.com; Oubre, David; Bennett.Fisher@lewisbrisbois.com; Jana.Lubert@lewisbrisbois.com; Steve.Lewis@lewisbrisbois.com |
| **Cc:** | Susan Norman; Brad Beers |
| **Subject:** | OFFER TO STIPULATE IN TIME FOR "BACK TO SCHOOL" |
| **Attachments:** | Lewis_Brisbois_Stipulate.pdf |

Please see the attached. Thank you!

This E-mail, including attachments, is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710. The contents of this communication are intended for the sole use of the intended recipient, and any disclosure, dissemination, distribution, or duplication thereof without the express, written consent of the sender is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by return email, delete this communication (including any attachments transmitted herewith) from your email box, and refrain from disclosing the contents thereof to anyone, using it for any purpose, or storing or copying it into any medium. Any and all matters discussed or referenced or ???statements??? made in this communication are covered by Texas Rule of Evidence 410 and 503, and are not admissible against the Defendant/Plaintiff/Petitioner/Respondent/Relator/True-Party-in-Interest/Client/ and/or witness as the case may be.
*************************************************************************************************************************************************
********************************************************************************************

# Lewis Brisbois Bisgaard & Smith, LLP

503 F.M. 359-130, Suite 216,
Richmond, Texas, 77406-2195

*Mediations & Arbitrations*

Michael Joseph Bitgood
a/k/a/ "Michael Easton"
Mediator &
International and Domestic
Arbitrator
***President***
281-415-8655
EastProLaw@msn.com

Susan Cecilia Norman
Attorney & Counselor at Law
***Vice President***
713-882-2066
Certified Mediator
SueNorman@SueNormanLaw.com

---

September 28th 2022

William Scott Helfand Esq.
24 Greenway Plaza
Suite 1400
Houston, TX 77046
713-659-6767
Email: bill.helfand@lewisbrisbois.com

**In re: 4:22-cv-03279, Lewis Brisbois et al v Bitgood et al
In the United States District Court Southern District of Texas**

Dear Mr. Helfand:

1.     On Tuesday, September 27th 2022, I sent you the following communication, copied to your partner Bennett Fisher as well:

> ***GOOD MORNING GUYS: Thanks to Law 360, I discovered that you guys, all 1600 lawyers, decided to sue 1 pro-se litigant in Federal Court when he would not bend to your threats. Ok then, that is ya'lls choice, and somehow through no fault of mine, you look foolish on the national legal stage. Lets be reasonable and practical shall we? I do not mind that you sue my LLP and left out matters that should have been disclosed to the Federal Court. However, you do not need to sue:***

> *Susan's indigent client who has no part in the LLP and has nothing to do with it, besides ya'll trying to knock her out as Jones' lawyer do ya? My lawyer, for doing what lawyers do for their clients and no more than that, do ya? Me individually, albeit I understand that I am like a big "juicy steak" to a pit-bull when it comes to you lawyers hating someone—nothing new here; Susan Norman individually for doing her job, do ya? Thus, will you agree to dismiss, Jones and Beers before the time and expense of explaining to the federal courts what Nolan and you guys really did unfolds? Also, you can dismiss me individually along with Sue, and we will defend the LLP's formation from start to finish and if the Court says it's yours—it's yours. Your pro-se lawsuit is offensive, and what you left out may actually cause your former non-clients to hire a super law firm to wipe you guys out, and rightfully so. This is a business decision gentleman—and I never hate my opponents because that hate will cloud your judgment. I do to them what I did to Oubre and in a legal manner.*
> *Let me know what you want to do please?*

2.     While I expect nothing but unprofessional behavior from you and your law-firm, the likes of which I put up with at the hands of your managing partner, David Oubre, and the threats that came from Jana Lubert, I now will "sweeten" that offer with this offer:

3.     If you are so confident of the false statements you made in your complaint, right down to the lie in your signed certificate of service, I propose that we waste not one minute of the Court's valuable time, **and that we agree to and submit the case to the Court on stipulated facts.**

4.     If the case is submitted/tried on stipulated facts, the Court need only apply the law to those facts, and we are done. **WILL YOU AGREE TO SUBMIT THE CASE,** right now, on stipulated facts?

5.     By the same token, if you cause us to expend substantial time and money by abusing us, and the Court, then we will be forced into bringing motions, counter-claims, and additional third parties, namely your former purported "clients" that you, Oubre, and Lambert, not only" threw under the bus"– but that you guys actually, "drove the bus" over them, which I have never witnessed in any case I have been involved in.

6.     Please dismiss Jones, an indigent defendant that has nothing to do with the LLP's, and Beers, who has nothing to do with the LLP's. You have me (which is what you want), and you have Susan, which is what you don't need, but I will understand if you think that you are going to "teach" her a lesson. I'm in attendance for her, so I will answer present for her when you call the "class" roll. You know me, I have always been an "eager" student to have luminaries, such as you and Ben Fisher "teach" me, and make me a better litigator---- **just like Oubre did!**

7.     Again, if you guys are on all 4's with your complaint, then what seasoned luminary, such as yourself, would turn down such a great way to dispose of the case; <u>**while showing the Court that you are sincere, honest, and that your lawsuit is not really a revenge driven SLAPP lawsuit against an indigent man, his lawyer, and my lawyer**</u>. C'mon, it's 1600 lawyers against "Michael Easton" how can you possibly lose, right?

8.     I look forward to hearing from you that you graciously accept this offer so that I can run down to "Target" and get my new "school supplies" just in time for "Professor" Helfand's and "Headmistress" Jana's roll call where I intend to announce "present" and ready to be "taught" by a luminary such as yourself. As Oscar Wilde once opined, and in my case it holds true with all bullies: ***"I won't go looking for work, and it won't come looking for me."***

    Most Cordially,
    <u>Michael Joseph Bitgood</u>
    a/k/a/ "Michael Easton"



Bennett G. Fisher
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Bennett.Fisher@lewisbrisbois.com
Direct: 346.241.4095

LEWIS BRISBOIS BISGAARD & SMITH LLP

September 28, 2022

**_Via Email suenorman@suenormanlaw.com_**
**_& Via Federal Express No. 2785 3011 0850_**
Sue Norman
Law Office of Sue Norman
530 F.M. 359-120, Suite 216
Richmond, Texas 77046-2195

    Re:   **LEWIS BRISBOIS BISGAARD & SMITH;** Michael Easton, et al; Sue Norman

Dear Sue:

    We have known each other for almost 30 years, as colleagues, co-counsel and friends, but I write to you today as an attorney for Lewis Brisbois Bisgaard & Smith LLP (the "Firm"). As you know, I am a partner at Lewis Brisbois Bisgaard & Smith. In order for me to practice law here, at one of the largest firms in the United States, I had to go through a process. First, I was recommended, then my background and legal proficiency was researched. The firm did an exhaustive background check, spoke to other attorneys and judges about me to determine if I would be a good fit. Finally, there was an interview process and ultimately, I was invited to join the firm.

    You, on the other hand, seem to have skipped that process, but are nonetheless holding yourself out as an attorney of the firm known as Lewis Brisbois Bisgaard & Smith. We both know the following: first, you are not an attorney practicing in this law firm. Second, there is no one at your office whose last name is either Lewis, Brisbois, Bisgaard or even Smith. And third, you know and have known, since at least this past spring, that there is a law firm named Lewis Brisbois Bisgaard & Smith practicing law in Houston, Texas.

    You are in violation of Section VII of the Texas Disciplinary Rules of Professional Conduct; specifically, please read Subsection 7.01(c), Information About Legal Services, Communications Concerning a Lawyer's Services (see attached). Please write to me on or before the close of business on September 30th assuring me, on behalf of the Firm, that you will immediately cease and desist from holding yourself out as a mediator, arbitrator, member, partner or associate of any firm whose name is Lewis Brisbois Bisgaard & Smith or Lewis Brisbois and further, that you will not allow anyone to sign or use your name in such capacity.

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

4876-9641-3237.1        25497-689 Correspondence / Letter - Sue Norman 9.28.22b

Exhibit E, 10-03-22
Page 1 of 4

Thank you and if you have any questions, please write to me at the email or address on this letterhead.

Sincerely,

Bennett G. Fisher of
LEWIS BRISBOIS BISGAARD & SMITH LLP

BGF:cyr

cc: **VIA EMAIL**
Jana Lubert - Jana.Lubert@lewisbrisbois.com
David Oubre - David.Oubre@lewisbrisbois.com
Bill Helfand - Bill.Helfand@lewisbrisbois.com
Sean Braun - Sean.Braun@lewisbrisbois.com

adverse to the applicant. Notably, Rule 1.05(c)(2) permits a lawyer to use or disclose information provided during an intake interview if the applicant consents after consultation to such use or disclosure, and Rule 1.09(a) excludes from its restrictions the representation of a person adverse to the applicant in the same or a substantially related matter if the applicant consents to such a representation.

### Limited Pro Bono Legal Service Programs

11. This Rule applies only to services offered through a program that meets one of the descriptions in subparagraph (d)(1), regardless of the nature and amount of support provided. Some programs may be jointly sponsored by more than one of the listed sponsor types.

12. The second element of "limited pro bono legal services," set forth in subparagraph (d)(2), is designed to ensure that the services offered are so limited in time and scope that there is little risk that conflicts will arise between clients represented through the program and other clients of the lawyer or the lawyer's firm.

13. The third element of the definition, set forth in subparagraph (d)(3), is that the services are offered and provided without any expectation of either extended representation or the collection of legal fees in the matter. Before agreeing to proceed in the representation beyond "limited pro bono legal services," the lawyer should evaluate the potential conflicts of interest that may arise from the representation as with any other representation. Likewise, the exceptions in paragraphs (a) and (b) do not apply if the lawyer expects to collect any legal fees in the limited assistance matter.

### Firm

14. Lawyers are not deemed to be part of the same firm simply because they volunteer through the same pro bono program. Nor will the personal prohibition of a lawyer participating in a pro bono program be imputed to other lawyers participating in the program solely by reason of that volunteer connection.

## VII. INFORMATION ABOUT LEGAL SERVICES

### Rule 7.01. Communications Concerning a Lawyer's Services

(a) A lawyer shall not make or sponsor a false or misleading communication about the qualifications or services of a lawyer or law firm. Information about legal services must be truthful and nondeceptive. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading. A statement is misleading if there is a substantial likelihood that it will lead a reasonable person to formulate a specific conclusion about the lawyer or the lawyer's services for which there is no reasonable factual foundation, or if the statement is substantially likely to create unjustified expectations about the results the lawyer can achieve.

(b) This Rule governs all communications about a lawyer's services, including advertisements and

96

solicitation communications. For purposes of Rules 7.01 to 7.06:

> (1) An "advertisement" is a communication substantially motivated by pecuniary gain that is made by or on behalf of a lawyer to members of the public in general, which offers or promotes legal services under circumstances where the lawyer neither knows nor reasonably should know that the recipients need legal services in particular matters.

> (2) A "solicitation communication" is a communication substantially motivated by pecuniary gain that is made by or on behalf of a lawyer to a specific person who has not sought the lawyer's advice or services, which reasonably can be understood as offering to provide legal services that the lawyer knows or reasonably should know the person needs in a particular matter.

(c) Lawyers may practice law under a trade name that is not false or misleading. A law firm name may include the names of current members of the firm and of deceased or retired members of the firm, or of a predecessor firm, if there has been a succession in the firm identity. The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm. A law firm with an office in more than one jurisdiction may use the same name or other professional designation in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.

(d) A statement or disclaimer required by these Rules shall be sufficiently clear that it can reasonably be understood by an ordinary person and made in each language used in the communication. A statement that a language is spoken or understood does not require a statement or disclaimer in that language.

(e) A lawyer shall not state or imply that the lawyer can achieve results in the representation by unlawful use of violence or means that violate these Rules or other law.

(f) A lawyer may state or imply that the lawyer practices in a partnership or other business entity only when that is accurate.

(g) If a lawyer who advertises the amount of a verdict secured on behalf of a client knows that the verdict was later reduced or reversed, or that the case was settled for a lesser amount, the lawyer must state in each advertisement of the verdict, with equal or greater prominence, the amount of money that was ultimately received by the client.

## Comment:

1. This Rule governs all communications about a lawyer's services, including firm names, letterhead, and professional designations. Whatever means are used to make known a lawyer's services, statements about them must be truthful and not misleading. As subsequent provisions make clear, some rules apply only to "advertisements" or "solicitation communications." A statement about a lawyer's services falls within those categories only if it was "substantially motivated by pecuniary gain," which means that pecuniary

97

# Lewis Brisbois Bisgaard & Smith, LLP

503 F.M. 359-130, Suite 216,
Richmond, Texas, 77406-2195

### *Mediations & Arbitrations*

Michael Joseph Bitgood
a/k/a/ "Michael Easton"
Mediator &
International and Domestic
Arbitrator
***President***
281-415-8655
EastProLaw@msn.com

Susan Cecilia Norman
Attorney & Counselor at Law
***Vice President***
713-882-2066
Certified Mediator
SueNorman@SueNormanLaw.com

---

September 29, 2022

Bennett G. Fisher, Esq.
24 Greenway Plaza
Suite 1400
Houston, TX 77046
713-659-6767
Email: Bennett.Fisher@LewisBrisbois.com

**In re:**  **4:22-cv-03279, Lewis Brisbois, *et al* v. Bitgood, *et al*;
In the United States District Court, Southern
District of Texas**

Dear Mr. Fisher:

In a civilized society, we do not address anyone by their first name unless they have been specifically invited to do so. I say this because if we were "friends," as you put it, you would have called "Sue" long in advance of suing me, my indigent client, and my colleagues in federal court. Having said the above, I read Mr. Bitgood/Easton's letter to all of you yesterday, offering to submit this dispute to the federal court based on stipulated facts. I concur with him, and agree that we should not be wasting the Court's time.

In state court, the court found that the so-called law firm in which you are a partner, had no legal authority to appear in a Texas Court from March 9, 2022, and the Secretary of State concurred that your law firm was not granted an assumed name until June 9, 2022.

This sequence begs this question, and will be discovered in due time in federal court:  In how many other Texas courts were you people doing business illegally—before those judges and magistrates, clients, and your opponents find out that your firm had no legal authority to be in a Texas court in the first place?  I can only imagine what is going to happen when that comes out in federal court where you chose to initiate hostile litigation against me and "Michael" and my client.

Had you people hired a professional and independent law firm to evaluate the false claims you bring in the federal petition, the first thing I surmise that would have crossed their minds is:

> "What will this do to the clients that you have already harmed when the federal courts find out that they were stealing from the CARES Act; systematically targeting tenants of color; and using a corrupt police officer as their enforcer?"

These are questions that would have loomed large—at least in my mind—before I would have filed a federal lawsuit.  Now, you compound that harm by exposing the client, Nolan Real Estate Services, yet again to severe criminal sanctions, as well as a permanent ban from receiving any federal monies in the future.

And why do you do this? I surmise that ego and pride have been the sole factors that have been behind your revenge-driven lawsuit. **This alone should be enough to convince anyone that we are not, and have never represented ourselves  to be associated with Lewis Brisbois—the California Foreign entity—that puts their pride and arrogance above the interests of the client.**

Nothing we did in forming the domestic Texas LLP was illegal, underhanded, unethical, hidden, shady, or done to deceive. In fact, the state court has already said so, and removed you and your firm from the state court case and struck your client's pleadings for having committed a crime in using by using an illegal name to appear in state court, as well as having the audacity to present falsehoods to the court. **Again, based on that alone, no one should be confused as to who we are, and as to who you guys are. We are simply not that incompetent, and we do not harm anyone, as the domestic LLP was not formed to practice law as you complain of. Rather, it was formed to help others settle disputes and curtail litigation in favor of ADR.** Thus, you may rest assured that we want no part of you, or of the reputation that you are creating for yourselves on the national legal stage. I also find your incredibly strained reading of Rule 7.01 which you enclose and reference in your letter, to be as on point as David Oubre's performance of his legal "skill" as we all witnessed on September 13, 2022, in the state court.

Nowhere in our domestic LLP's letterhead do we claim or even represent to anyone that we are lawyers practicing law under that trade name. That I am a licensed attorney at law, is a title I am granted by the Texas Supreme Court, not by the Secretary of State, nor by any authority in the State of California. Further, I am fully aware that forming a partnership for the practice of law with a non-lawyer like Michael, would be illegal on its face; subject me to State Bar discipline; and to rebuke by the Courts as well. **Given all these undisputable facts, I think that you are trying to set the stage to "gaslight" the federal courts into not believing what they see, but rather, into believing what you say.**

No one copied, touched, or attempted to touch or take your trademark "LB," as our "trademark" is one that is available to anyone in Texas: namely the Texas flag, and the "Gonzales Canon" which makes your filing in federal court not only malicious, but extremely false and misleading.

We want no association with the incompetence of your law firm; we do not practice law under our LLP; we deny as hard as we can that we have anything to do with the shame and disgrace and exposure that your firm has brought to its own clients. In short and given your firm's sophomoric behavior, no one in Texas will confuse us with you or the California foreign LLP that was ejected from the Texas state court.

If you want to dismiss your federal case before we answer you can do that. If you want to have a meaningful and intelligent discussion, we can do that, as well. However, continued threats and falsehoods, along with threats to grieve me will not be well received.

Finally, let me say this: your firm's suing an indigent Black man for no reason at all, speaks volumes as well that NO ONE will ever confuse you with us, or us with you. We try to help people, not harm them, and everything we do is legal and aboveboard. I hope going forward that your firm will display the proper candor to the federal courts, and that you and Ms. Lubert will cease with the threats. Given what has transpired to date, and as long as federal litigation is pending, I concur and insist that all our communications be exclusively in writing.

Cordially,

*/s/ Susan C. Norman*
Susan C. Norman
\SCN
cc:    Michael Easton
        Bradley B. Beers, Esq.
        Ms. Jana Lubert, Esq.
        William S. Helfand, Esq.

PS:    In what you might believe as being a clever move,  you have sent an overnight letter addressed to the "Law Offices" of Susan Norman at the LLP's mailing address. That letter will be returned as that address has never been my address for the practice of law—thus dashing your last hope to uncover any circumstantial "evidence" of professional misconduct on my part, right?

4