# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Lewis Brisbois Bisgaard and Smith LLP | § | |
| | § | |
| v. | § | **Case Number:** |
| | § | **4:22‑cv‑03279** |
| Michael Joseph Bitgood, | § | |
| a/k/a/ Michael Easton, *et al* | § | |

## JOINT MOTION TO DISMISS BASED ON ABSTENTION [1]

## TO THE HONORABLE JUDGE OF SAID COURT:

Defendants, Susan C. Norman, and Michael Joseph Bitgood, a/k/a/ Michael Easton, file this motion to dismiss in favor of abstention, and in support they would show as follows: [2]

---

[1]

See: *Fibreboard v Pool,* 813 S.W.2d 658, (Tex. App.[6th Dist] 1991): "The adoption of points [and papers] in multi-party appeals [and cases] should be encouraged to conserve words, paper, and the eyesight of the members of the judiciary."

[2]

This motion is made subject to, and without waiving, any Rule 12 motions, any TCPA motions, a lack of *in personam* jurisdiction, and any affirmative defenses—if, and when—Plaintiff, *pro se,* requests—and the clerk issues—a summons and it is served as mandated by the federal rules thereby allowing the Court to exercise in personam jurisdiction.

## I.  INTRODUCTION

1.    Defendants adopt and incorporate by reference as if set forth verbatim, Docket Nos. 5, 6, 8, 9, 13, 16, 18, & 19 as part of this motion, and they object again to Docket No. 10—the purported submission of exhibits that were filed by one Dawn Garrard, at the behest of William Helfand, within seconds after a Zoom hearing ended on October 6, 2022.

2.    On September 23, 2022, Plaintiff, *pro se,* brought this case in this Court, **omitting** that the same case and issues were already pending in a state court with concurrent jurisdiction.

3.    Plaintiff, *pro se,* also omitted that the state court, after an evidentiary hearing, entered orders that found that Plaintiff, *pro se,* did not have the right—nor the legal authority—to appear in a Texas court under the name Lewis Brisbois Bisgaard and Smith LLP, a California Foreign Entity, (hereinafter sometimes "LB"), while the Defendants' LLP of the same name did, in fact, have the legal right to appear in court.

4.    **AT NO TIME DURING THE CASE IN STATE COURT** did Plaintiff, *pro se,* OBJECT to Defendants' use of the name, Lewis Brisbois Bisgaard & Smith, LLP, but in fact, joined issue, and elected to try the issue on September 13, 2022, in the state court.

5.   **At no time during** the state court proceedings did Plaintiff, *pro se,* ask the state court to enjoin Defendant for improperly using the name, Lewis Brisbois Bisgaard & Smith, LLP.   In  fact, all the records supporting both the Defendants' and Plaintiff, *pro se's,* respective positions on the matter were before the state court on September 13, 2022. See: Exhibit "A" annexed hereto and duly incorporated by reference herein, the state court's docket sheet.

6.   As if the state court mattered little or nothing, Plaintiff, *pro se,* continued to play their pranks on the state court as if it were a joke, and as if the state court were simply a junior court, inferior to all others. Sufficient warning was given to Plaintiff, *pro se,* by the state court judge to take the matters seriously, something Plaintiff, *pro se,* ignored.

7.   On September 13, 2022, and as this Court has seen, Plaintiff, *pro se's,* jokes and pranks "came home to roost" when the state court, given no other legal choice, dropped a judicial "hammer" on Plaintiff, *pro se*.

8.   A mere ten (10) days after the state court disposed of the legal question of who was entitled to use the name, Lewis Brisbois Bisgaard & Smith, LLP, Plaintiff, *pro se,* brought the instant suit and deliberately omitted to this Court what had transpired in state court over the identical

legal question.  In so doing, Plaintiff, *pro se,* asked this Court to do what the United States Supreme Court stated a federal district court should never do: namely, review the actions and orders of the state court. [3]

9.      To get around this glaring problem, and to improperly invoke the jurisdiction of this Court, Plaintiff, *pro se,* abandoned his duty of complete candor in his Complaint (Dkt. 1), making it appear that this case was a "first filing" case.  Plaintiff, *pro se,* filed his Complaint while omitting that a state court had ruled against Plaintiff, *pro se,* and that Plaintiff, *pro se,* had a legal duty to follow the processes laid out by the forum state's laws and its Constitution.  See: *Howlett v. Rose,* 110 S. Ct. 2430, 496 U.S. 356 (1990).  Indeed, the United States Supreme Court, as recently as 2009, in *Haywood v. Drown*, 129 S. Ct. 2108, (2009), explained it as follows:

> **"Federal and state law "together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are courts of the same country, having jurisdiction partly different and partly concurrent. and, "so strong is the presumption of concurrency that it is defeated only when Congress expressly ousts state**

---

[3]

See: *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311, 75 L. Ed. 2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

**courts of jurisdiction."** [4]

10.    This foregoing application of the law (above), is the way the Honorable United States Fifth Circuit has always ruled, which raises this question:  How does a major international law firm with its phalanx of lawyers, paralegals, secretaries, retired FBI agents, support staff, and billions of dollars in resources not know all these laws and statutes and rules?  The answer is obvious— **they did know**—only they chose to take a *pro se* non-lawyer layman as a joke, and they treated the state courts as their playpens.  Plaintiff, *pro se,* knew then what they were doing, and they certainly know it now!

## II.  MOOTNESS

11.    On October 6, 2022, at 2:30 p.m., a brief Zoom hearing was held before this Court regarding Plaintiff, *pro se's,* request for a preliminary injunction in which none of the above was even remotely mentioned to the Court.

---

[4]

In this case, both the state and federal courts have concurrent jurisdiction over Lanham Act suits–so that once Plaintiff, *pro se,* elected the state courts, they should have disclosed to this Court what had transpired in the state courts. Instead, they kept it hidden so that they could "drag" the Defendants into this Court.

12.     At this hearing, the Defendants could have—armed with the orders of the state court—engaged in all-out battle with the Plaintiff, *pro se,* and challenged the above facts with both Fifth Circuit and Supreme Court precedent.

13.     However, taking Plaintiff, *pro se's,* threats to heart—as William Helfand stated in writing: that they had more money, more power, more experts, and other, unlimited resources**—[that] would not have been enough to make this Defendant surrender!  So then, why did this Defendant surrender at all?**

14.     These Defendants surrendered because of the words of this Judge, Keith P. Ellison, and his wise and gentle reasoning that this fight was not a fight worth having, and that the name "LB" was not the name that this Defendant should have or keep.

15.     The surrender was not because of the bullying, the threats, the intentional misrepresentations, the omissions, the pranks, the machinations, and the insults hurled at Bitgood by Helfand, including but not limited to Helfand's fraudulently invoking the name of a fellow United States District Judge.  Nor was it because Helfand's "star witness," Meredith Riede (the Sugar Land City Attorney), was waiting in the

"wings" to tell Judge Ellison how "confused" she was. **No, it was out of respect and lawful submission to Judge Ellison's words, and his preliminary take on the whole matter.**

16.    Simply stated, a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.    *Powell v. McCormack*, 395 U.S. 486, 496 (1969).    But jurisdiction, properly acquired, may abate if the case becomes moot because **it can be said with assurance that "there is no reasonable expectation that the alleged violation will recur,"** See: *SEC v. Medical Committee For Human Rights,* 404 U.S. 403 (1972), and the previous interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. See: *DeFunis v. Odegaard,* 416 U.S. 312 (1974); *Indiana Employment Security Div. v. Burney*, 409 U.S. 540 (1973).[5]  When both conditions are satisfied, it may be said that

---

[5] Instead of being grateful that this issue has been resolved in their favor by this Judge's words, and the subsequent peaceful surrender by these Defendants to this Judge's words, and that Plaintiff, *pro se,* will not have to "climb the ladder" all the way to the Texas Supreme Court to overturn the state court's orders of September 13, 2022, Plaintiff, *pro se,* continues to ignore the precedents of the U.S. Fifth Circuit, and the United States Supreme Court, in favor of being able to label Bitgood as a liar and a miscreant not worthy of the Court's trust, when the latter is true: it is the

the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and or law.

17.     From day one in this case, Defendants contacted Plaintiff, *pro se*, and offered to submit this case IMMEDIATELY to the Court on stipulated facts; Helfand, *pro se*, did not like that.[6]  However, before this Court could even sign an order—an order that was acquired by Plaintiff, *pro se's,* continued fraud and a desire to be contentious—Defendants began the process to dissolve the LLP and filed the paperwork evincing that with the Court within hours—not days—of the Court's words. And finally, on October 13, 2022, Defendant Bitgood, now joined by Defendant Norman, submitted the following declaration pursuant to 28 U.S.C. § 1746 which stated as follows:

> "Finally, I can assure the Court under the penalty of perjury that I will not use the name that caused all of this contention again; that I will not form another LLP given my "success" in doing the first, last, and the only one I ever formed.  Further, for well–grounded reasons, not the least of which has been shown to be gross incompetence, fraud, and outright thievery from their own clients, I can assure this Court and all courts that I WILL NEVER CLAIM to be associated with, related to,

Plaintiff, *pro se,* with whom the Court should be concerned.

[6]

The offer was simple– **if the Judge says the name is yours, it's yours!**

affiliated with, or hold myself out as being connected with Lewis Brisbois Bisgaard & Smith LLP of California, for fear that I will lose all respect in the legal community and be labeled as an incompetent thief that defrauds their own clients, pranks the judges at every opportunity, and misrepresents evidence to the federal courts. No, that is all Lewis Brisbois Bisgaard and Smith's claim to fame, of which I want no part.**"** Executed in Fort Bend County, State of Texas, under the penalty of perjury this 13th day of October, 2022.

<u>/s/MICHAEL JOSEPH BITGOOD</u>
a/k/a/ "Michael Easton"

## III.   PRESENT STATUS

18.   Instead of forcing this issue at the Fifth Circuit to make Plaintiff, *pro se,* play by the rules and follow the Fifth Circuit's published law, the Defendants accepted this Judge's reasoning. The Defendants DID EXACTLY what they told this Judge they would do, and they were not ordered or forced by this Judge to do anything at all.

19.   If Plaintiff, *pro se,* persists in claiming "damages"—something that on October 6, 2022, just hours before the hearing in this case, **Plaintiff, *pro se* brought by counterclaim in the state court**—then where should that issue be addressed and tried?  The answer is obvious, as held by both the Fifth Circuit and the United States Supreme Court:  it is to be tried and addressed in the forum—where once again—Plaintiff, *pro se,*

brought it: the state court of Fort Bend County, Texas.

20.     In addition, if Plaintiff, *pro se,* persists in this gamesmanship, then the Defendants are entitled to

> a.   examine all Plaintiff, *pro se's,* books, ledgers, billings, insurance contracts, emails and communications between all of them, including how Plaintiff, *pro se,* generates income by violating the mail and wire fraud statutes of the United States, and,

> b.    how Meredith Riede, Helfand's "star witness," using state resources aided, abetted, and concealed the theft of federal taxpayer monies under the CARES Act; and how

> c.   based on the policy of the City of Sugar Land, Texas, Riede helped to cover up multiple criminal acts, including the flagrant violation of the civil rights of Defendant Bitgood by having him criminally charged, and then attempting to cover it up again.

21.     The case in this Court is moot.  However, the case in state court is not, as can be seen by Exhibit "B" annexed hereto and duly incorporated herein by reference, the purported "settlement offer" transmitted to Defendants.   Exhibit B details Plaintiff, *pro se's*, demands—after attempting to bribe Brad Beers—that the Defendants return to state court in the case evidenced by Exhibit "A," and join them

> a.   to join them in committing a slew of crimes, both felonies and misdemeanors;

> b.   to join them in perpetrating a fraud upon the state court;

c.      to join them in violating multiple State Bar disciplinary rules;

d.      to join them in committing insurance fraud;

e.      to join them in committing tax fraud against the state of Texas;

f.      to join them in defrauding the State of Texas out of its lawful revenues;

g.      to join them to commit the felony offense of tampering with governmental records; and,

h.      to join them in covering up the crimes and violations committed under the following, well-published and binding Texas laws, and Texas Disciplinary Rules:

      i.      *Texas Penal Code* § 7.02;

      ii.     *Texas Penal Code* § 15.02;

      iii.    Texas Penal *Code* § 36.08;

      iv.     Texas Penal Code § 37.02;

      v.      *Texas Penal Code* § 37.10;

      vi.     *Texas Penal Code* § 39.03;

      vii.    *Texas Penal Code* § 39.06;

      viii.   *Texas Penal Code* § 42.07;

      ix.     Texas Business and Commerce Code Sec. 71.201;

      x.      Texas Business and Commerce Code Sec. 71.202;

xi.    Texas Business and Commerce Code Sec. 71.203;

xii.    The State Bar's Texas Rules of Professional Conduct;

xiii.    Chapter 10,Texas Civil Practice & Remedies Code;

xiv.    Chapter 11, Texas Civil Practice & Remedies Code; and

xv.    Rule 13, Texas Rules of Civil Procedure.

22.    In addition, to sign off on, and/or participate in Plaintiff, *pro se's*, sweeping attempt to conceal their and/or their client's criminal activities, Plaintiff, *pro se,* seeks to have the Defendants also violate 18 U.S.C. 4, a duty they now discharge by informing this Court under the statute of the following federal crimes:

a.    Theft and/or attempted theft from the Treasury of the United States under 15 U.S.C. 116–(THE CARES ACT)–perpetrated by their clients and expertly aided and abetted by Plaintiff, *pro se*, and their like–minded associates and friends–in–common at the Hoover Slovacek law firm;

b.    Mail fraud;

c.    Wire fraud;

d.    Money laundering;

e.    False statements to the United States; and,

f.    Criminal violations of civil rights by those acting in concert and scheme with those operating under color of state law, such

as Meredith Riede, and Bryce Spencer, both acting under color of state law, to assist Plaintiff, *pro se's*, endeavors on behalf of themselves, and/or the underlying clients.[7]

## IV.   ABSTENTION IS CLEARLY WARRANTED

23.   On October 6, 2022, this Court began the proceedings by stating that it had never seen a case like this in its twenty-two (22) years on the Federal Bench.  His Honor was correct, and rare as it may be, His Honor has probably never witnessed the outrageous behavior, gross incompetence, legal malpractice, breaches of fiduciary duties, violations of both State and Federal law—like what the state court saw at the hands of Lewis Brisbois Bisgaard & Smith LLP (California), and how in this case, the Complaint was filed and begun with false and fraudulent documents which induced the Court to grant a TRO that was (a) procured by fraud, and (b) wholly unnecessary.

**24.   It is unclear to Defendants—especially in light of their swift and immediate surrender on October 6, 2022—if the Court wants them to go along with, or intends to punish them if they <u>do not</u> go along with—and sign off on and perform—with Lewis Brisbois**

---

[7]

See: 18 U.S.C. 1341; 18 U.S.C. 1343; 18 U.S.C. 1001; 18 U.S.C. 1956, 1957; 18 U.S.C.; 241,18, U.S.C. 242, 18 U.S.C.1510, and 18 U.S.C. § 666(a)(1)(B).

**Bisgaard and Smith LLP's, the Plaintiff, *pro se's*, laundry list of criminal demands and fraud as demanded in Exhibit B*, supra*.**

25.    Federal Courts normally not only reject such behavior, but normally refer the matter to the proper authorities for a complete investigation.

26.    Federal Courts normally do not allow parties and lawyers to re–write the Federal Rules of Civil Procedure, nor suspend them, nor modify them without allowing the other side to be heard.

27.    Federal courts normally do not allow bribery to be committed in the course of a pending case—no matter how the actor labels it.

28.    Federal courts normally do not sign orders that contain matters on which the parties were never given a chance to object.

29.    Federal courts normally do not enjoin people or entities that are not before the court because Plaintiff, *pro se*, did not—and the clerk has not been asked to—issue a summons to hale a citizen, especially an "enjoined" one into court.

30.    Federal courts normally do not allow    to stand, fraudulently–begotten orders and judgments.

31.    Federal courts normally do not allow ANYONE to use the federal bench as a segue to advance a fraud on its "sister" state court system.

32.    Federal courts normally do not sit in review of the orders and judgments of the state courts.

33.    Federal courts normally do not and cannot grant "absolution" to anyone who violates the laws of the state or federal law as that prerogative rests solely and exclusively in the hands of the executive branch.[8]

34.    Thus, if this is what this court wants these Defendants to do, they will, begrudgingly, and over loud and clear objections, comply, and, effectively, assist Plaintiff, *pro se,* in committing the slew of crimes and offenses against the peace and dignity of the State of Texas.

35.    If so ordered, and to bring an end to this litigation, Defendants will comply, but move the court to immediately stay the order so that the

---

[8]

Inherent in all courts—and it is universally acknowledged and of particular relevance here—is the inherent power that also allows a court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas*, 322 U.S., at 245, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." Id., at 246.

Honorable United States Court of Appeals for the Fifth Circuit can review

the order.  There is simply no other dispute before this Court that would

allow it to "hang on" to the issues that were brought by Plaintiff, *pro se,*

in the state courts. [9]

36.    On October 14, 2022, Defendant Bitgood, transmitted the following

e-mail communication at 11:55 a.m. CST, to Plaintiff *pro se*, and the

so–called "committee" who conjured up the laundry list of requested

cooperation to execute these crimes:

> "Mr. Helfand, Ms. Lubert, and the Committee that drafted the
> proposed "settlement". I must respectfully decline your
> proposed "offer" of "settlement" since I cannot and will never
> be party to the fraud you want me to help you work on the
> state courts, and the stab-in-the-back you are aiming at
> Thompson & Coe. Neither entity deserve what you are
> proposing. In addition, any damages you claim you suffered,
> you inflicted on yourselves.  We called no press conferences,
> made no press releases, did not multiply litigation, and we
> simply did what the laws allowed us to do.  When Judge
> Ellison (bolstered by the lie Helfand told him) said otherwise,
> we surrendered and raised the "white flag"!  What happened
> in this case is textbook to what Murray Fogler, a fine, decent,
> and respectable lawyer in all regards told a group of his
> summer interns as he introduced me to each one: "This is
> Michael Easton, and he is a living example of why as lawyers,

---

[9]

Defendants, Susan Norman, and  Michael Bitgood, know the Court would
enter no such order, however this is exactly what the Plaintiff, *pro se*,
wants the Court to do.

you must take all your opponents seriously"!  You say you were damaged by me?  Try David Oubre's response to the multitude of warnings that I sent him in writing trying to help him not to stumble or look bad in the case.  David wrote back: " I find your writings to be so entertaining" (What a great exhibit "A" for any jury to look at, right)?  So, I for myself, since you tried to bribe my lawyer submit this proposal:

**Leave us alone and go away; and,**
**We will leave you alone and go away.**

"I will not speak about this case or your law firm, as I have no interest in doing so. I got what I came for, JUSTICE for my friend, "Dickey" Jones the Black man who your client so ably tried to screw, (and referred to as an "N") and who in face of impossible odds prevailed. And, I got the check your client owed me since 2018, (tripled only because of Oubre's pranks and mockery), and every penny of that money, every penny, was placed at the feet of the Lord, and tendered to the Church to be used to help others in need.  That's right, I did not make a penny off this case. You did not "get" that "N", because this "spic" armed only with the skills that God can bless a man with, coupled with "focus" "sheer will" and unwavering "determination" took his plea to the highest authority in the universe.  Please leave me alone, and I will not participate in advancing a fraud on the state courts, something you may do by yourselves on November 29th 2022, when she hears you then.

<u>/s/ Michael Joseph Bitgood</u>
a/k/a/ Michael Easton

"PS: If you have anything more sensible that my offer, please let me know.  I enclose my motion to dismiss filed today under the Texas Citizen's participation act. I am available to be

deposed by ZOOM at any time after 11 a.m, when my meds kick in as I am physically disabled and need help getting around, however, please be advised under present 5th circuit jurisprudence of this act, the filing of the motion STAYS discovery in the case. What are you trying to enjoin now?, something that does not exist? Thank you

37.     In response to knowing that discovery has been stayed by operation of law and Fifth Circuit authority, Plaintiff, *pro-se*— in violation of Rule 5 of the Federal Rules of Civil Procedure—sent out discovery, after business hours, by a method that is not sanctioned by the Federal Rules. This so-called discovery was not only illegal, it was also broad, ambiguous, and cited as its authority to be served in violation of the rules and Fifth Circuit precedent– this Court's October 11, 2022 order.

38.     However, a closer look at this   order shows that nowhere in the order did the Court intentionally or otherwise, grant Plaintiff, *pro-se*, the right to circumvent the rules of service imposed by the United States Supreme Court, or,  Rule 34.  Further, nowhere in the Court's order did it tell Plaintiff, *pro-se*, that they were free to step over the opinions and mandates of the Honorable United States Fifth Circuit.[10]

---

[10]

**Rule 5. Serving and Filing Pleadings and Other Papers** (a) Service: When Required. (1) *In General.*  Unless these rules provide otherwise,

39.    Indeed, on Saturday, October 15, 2022, Shane Kotlarsky, within minutes, if not seconds of being signed in to this case by none other than William Helfand, then filed a certificate of service certifying to the Court that **HE DID NOT** comply with Rule 5 in the slightest bit.  Then, again, seconds later on the same date, Kotlarsky makes two more stunning

---

each of the following papers must be **served on every party:**  (A) an order stating that service is required;  (B) a pleading filed after the original complaint, unless the court orders otherwise because there are numerous defendants;  (C) a discovery paper required to be served on a party, unless the court orders otherwise;  (D) a written motion, except one that may be heard ex parte; and (E) a written notice, appearance, demand, or offer of judgment, or any similar paper. . . . (b) Service: How Made. (1) *Serving an Attorney*. If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party.  (2) *Service in General*. A paper is served under this rule by: (A) handing it to the person;  (B) leaving it: (i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or (ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;  (C) mailing it to the person's last known address—in which event service is complete upon mailing;  (D) leaving it with the court clerk if the person has no known address;  (E) sending it to a registered user by filing it with the court's electronic-filing system **or sending it by other electronic means that the person consented to in writing—**in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or (F) delivering it by **any other means that the person consented to in writing—**in which event service is complete when the person making service delivers it to the agency designated to make delivery.

judicial admissions:  **(1) that Bitgood [is correct ]and will not join them [in committing their proposed crimes and frauds]---unless the Court intervenes and makes him do it;** [11]

---

[11]

This statement makes "clear" [falsely] that Beers and Norman are willing to cooperate with Lewis Brisbois' bribery and extortion scheme to pressure their clients into committing these crimes, and that Bitgood is the true and only "troublemaker," when just the opposite is true, as seen by the email sent by Brad Beers at 11:34 a.m. on October 14, 2022, to Plaintiff, *pro se,* which reads as follows:

> Dear Mr. Kotlarsky, I do not believe that I can ethically confer with Mr. Bitgood or Ms. Norman about whether they should settle you claims or not since your firm included me in the case for filing a dba for Mr. Bitgood, who was involved in litigation opposing your firm in Fort Bend County related to Imperial Lofts and its staff. I do not represent them in this litigation matter, though I represent Mr. Bitgood in two Imperial Loft related matters in Fort Bend County and was representing him regarding his SLAPP motion, only, in cause 70378.  I have also represented Ms. Norman in the past. Because of these other attorney-client relationships, I do not believe I can advise or persuade them as to what they should do or what I might do, particularly where your firm has conditioned its offer as all or none.  Further, the idea that persuasion on my part should be used to have my client (in the other matters) "get on board," to accept your terms essentially tells me I should not discuss the settlement issue at all with them since that would be creating a direct conflict. And, because it appears I am being pitted against my current client and former client, I have felt compelled to share with them my communications with your firm so that there is transparency. As to your requested terms: I have not used the name or terms in the past, and would not in the future.  I have not held

and (2), that Plaintiff, *pro se*, really does know the Federal Rules after all,

as Kotlarsky cites FRCP 65 in the same document called unopposed

---

myself out, and would not in the future. I understand the entity was dissolved the week before your letter was sent. I am not a party to cause 70378. I also understand that the Imperial Loft parties have other counsel representing them. I am not a party to cause 70378. I am not a party to cause 70378. I understand, as to subpart (a), that there was a period of time when the California firm's registration with the Secretary of State to do business in Texas had lapsed. As to subpart (b), I do not believe any court has said Mr. Oubre has not been licensed or in good standing. I am not a party to cause 70378. I am not sure what "allegations" or "disparaging remarks" is meant to encompass or whether it is meant to extend beyond my observations in the Fort Bend litigation I have not used the name or trademarks. I am not willing to enter into a permanent injunction not to do things that I have not done in the first place, and to the extent your argument is that in my role as a lawyer I filed with the Secretary of State for a client, I truly believe that the case law is clear that lawyers are not held liable to opposing parties or their counsel for those kind of lawyer acts. My involvement in the 70378 case related to Imperial Lofts trying to enjoin Mr. Bitgood not to say mean things about an Imperial Lofts staff member and the SLAPP motion that was filed on his behalf. I do not have control over other parts of that litigation and, for the reasons expressed above, would not try to express opinions or exercise control for fear of appearing to be trying to save myself at the client's expense. And, will you agree to not take my deposition next week or serve me discovery while I am preparing for trial this weekend and while I am in trial next week? As I indicated before to Bill, I have been assigned to trial starting at 9:30 a.m. Monday in Travis County for what has been announced as a four day jury trial. /s/ Brad Beers

motion to extend TRO [that Helfand by fraud, induced the Court to sign].

## V.   THE STATE'S COMPELLING INTEREST [12]

40.   The  State of  Texas has a compelling interest in making sure that all who do business in the State of Texas comply with its laws, statutes, and regulations, or face the penalties that are written in those laws. In addition, and as pronounced by the Texas Supreme Court, the State of Texas has an   overriding  and  overwhelming  compelling  interest  in bringing to justice—civilly or criminally—those who enter the state and violate its laws, just as Lewis Brisbois has done here. Indeed, in Old *Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550 (Tex. 2018), the Supreme Court stated that:

> **"We recognize that a state has a special interest in exercising jurisdiction over those who commit torts within its territory."!**

---

[12]

Regulations and laws vital to the protection of the public health and safety, including the regulation detection and prosecution of crimes, enforcement of the State's statues requiring the payment of taxes, franchise and licensing fees by foreign LLC's and LLP's that cross into Texas' borders (and the enforcement by penalties thereof), and the Texas Grand jury process, are just some of the State of Texas' compelling interests in this case.

41.    The State's compelling interest in the detection and the prosecution of  crimes, such as those committed by *Lewis Brisbois*—which now by force, threat and extortion, and by the attempted use of a judicial fiat of a federal court—that seeks to get the Defendants to join with them, are better addressed by the State's prosecuting attorney, and the Texas grand jury process—which *Lewis Brisbois* seeks to circumvent.

42.    The State of Texas, as does the United States, has a compelling interest in investigating, detecting, and prosecuting the   crimes committed by *Meredith Riede,* and *Bryce Spencer*, both acting under color of state law that were used to "beat down" Michael Bitgood, and Richard P. Jones.  This compelling interest includes Riede's attempts to cover up the detection of the thefts of public funds earmarked to help the needy during the recent pandemic, and the absolute "framing" for prosecution of Michael Bitgood to destroy the case against Lewis Brisbois and their client. [13]

---

[13]

"Made to order" criminal charges were actually filed complete with a request for an arrest warrant against Bitgood on January 5,. 2022, one day after Lewis Brisbois' "client" on January 4, 2022, told Mr. Jones–again under CARES Act protection—to get out– or else.

43.    The State of Texas has a compelling interest in seeing that lawyers

abide by the highest standards of conduct and the disciplinary rules that

govern and control their appearances in a Texas State Court. For

example, in state court, the Texas Rules of Civil Procedure actually mean

something, unlike in this case where the Federal Rules are not followed

at all.  The State of Texas compels Plaintiff, *pro se,* to follow those Rules,

something that Plaintiff,  *pro se,* hates, and refuses to do.  This is why

Plaintiff, *pro se,* came running into federal court where he does not have

to follow any rules, any Fifth Circuit precedent, or any United States

Supreme Court Rules, or opinions.

44.    As former Chief Justice of the Fourteenth Court of Appeals, Paul

Clarence Murphy, III, made clear,  and his words are "biblical" in Texas

jurisprudence regarding how the rules assure a "level playing  field" and

prevent unfair advantages and underhanded tricks like this record is

littered with  starting with Dkt. 1:

> "It is well established that the Texas Rules of Civil Procedure
> have the dignity of statutory provisions and must be observed
> as such. The rule making authority for the Texas Rules of Civil
> Procedure is vested exclusively in the Supreme Court of Texas,
> and **no other court in Texas** is authorized or empowered to
> enact  or  amend  rules  of  civil  procedure  that  would  be

inconsistent with the rules promulgated by the supreme court. The rules are designed to obtain a just, fair, equitable and impartial   adjudication of the rights of litigants under established principles of substantive law, **and neither trial courts nor appellate courts are at liberty to disregard the rules** simply because they do not meet the approval of such courts." *Centennial v. Commercial Union*, 803 S.W.2d 479, (Tex. App. [14[th] Dist] 1991).

## VI.   THE *PALMER* ABSTENTION

45.    When deciding a motion to dismiss based on abstention which normally entails an act of discretion, no such discretion exists when, as here, the issue is one of ownership of property. In *Palmer v. Texas*, 212 U.S. 118, 53 L. Ed. 435, 29 S. Ct. 230 (1909), the Supreme Court upheld abstention under the *custodia legis* rule.  In that case the Court said:

> "If a court of competent jurisdiction, federal or state, has taken possession of property, **or by its procedure has obtained jurisdiction over the same**, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty."

46.    As *Palmer* holds, once the state court by its procedures—invoked by Plaintiff*, pro se*—acquired jurisdiction over the *res*—the name, Lewis Brisbois Bisgaard & Smith—that dispute was withdrawn from all other courts, even from the purview of the federal courts.

47.   It could hardly be otherwise given what this Court has seen, and what these Defendants have been put through–all because Plaintiff, *pro se*, did not  like the  outcome in state court, and refusing to discuss like civilized  persons  the  transfer  of  the  Texas  Domestic  Lewis  Brisbois Bisgaard & Smith name (if it meant that much to them).

48.   Instead,  by  withholding  the  crucial  information  that  it  was mandated to disclose in Dkt.  No. 1, and after being caught  lying to this Court, Plaintiff, *pro se*, then unleashed its superior arsenal of lawyers, staff, money, and resources against Defendants.  Plaintiff, *pro se*, then asked this   Court   to force   the  Defendants to commit  serious  felony crimes, and to slap the state court in the face by Defendants joining Plaintiff, *pro se*, standing silent as Plaintiff, *pro se*, works  that fraud on the state court. [14]

---

[14]

Defendants respectfully request clarity from this Court: (1) Are Defendants permitted at least to tell the state court that Plaintiff, *pro se,* is working a fraud upon it?  Or, should Defendants remain silent as Helfand puts the final touches on Lewis Brisbois' plan? (2), Can the Defendants at least alert as  many   Texas law enforcement agencies as possible to be in the state court when Helfand, on behalf of Lewis Brisbois, goes on the record and completes their crimes?  And,  (3), what about the mandatory duties under Rule 8.03 of the State Bar that mandate that Helfand (or whoever he now will send, i.e. his fall guy, Sean Braun) be reported before, during, and after the commission of what Lewis Brisbois is about to do to the state court?

48.    Again—if it ends Plaintiff, *pro se's*, litigation abuse, Defendants will comply if ordered to do so by this Court to "lock step" with Plaintiff, *pro se*, to engage in crimes and frauds against the people of Texas, and against the peace and dignity of the State of Texas. (See Dkt. 22, unopposed motion to extend TRO filed by Shane Kotlarsky).

49.    The *Palmer* Doctrine and rule is absolute, is still good law, and, should be scrupulously followed. His Honor should abstain, and send Plaintiff, *pro se*,  se back from where he came, complete with his unclean hands.

## VII.   ABSTENTION DOCTRINES

50.    The abstention doctrines are a list of authorities that preclude a federal court from hearing cases within its jurisdiction, instead, giving state courts authority over the case. The policy behind this doctrine is rooted in federalism, and the interest of allowing state courts to adjudicate matters that are of particular significance to the state or its laws.  The Abstention Doctrine can be further divided into various sub-doctrines, based on a number of Supreme Court cases that have expanded on when abstention is warranted. These cases include: *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496 (1941); *Younger v.*

*Harris,* 401 U.S. 37 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943);

*Rooker v. Fidelity Trust,* 263 U.S. 413 (1923); and *District of Columbia*

*Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

### A.   The *Pullman* Doctrine

51.    The *Pullman* Doctrine states that a federal court should exercise its

discretion to stay away from a case, where constitutional considerations

are at play, when state court proceedings can resolve the issue.  The case

involved a challenge to a Texas law that implicated violations to the

Fourteenth Amendment.  However, the Supreme Court stated that the

Texas Supreme Court held ultimate authority on interpreting the state

law, and as a result, the district court should "restrain their authority

because of "scrupulous regard for the rightful independence of state

governments' and for the smooth working of the federal judiciary."

### b.   The *Younger* Doctrine

52.    Abstention under *Younger* holds that federal courts should abstain

from cases that are pending in state proceedings.  The facts of *Younger*

involved a criminal defendant that challenged the state (California)

criminal statute for which he was indicted.  While the defendant's

criminal case was pending in the state, he challenged the constitutionality

of the criminal statute in federal district court, obtaining a favorable holding.  Still, the Supreme Court reversed the district court's holding, stating that states have a right to be free from federal interference with state criminal prosecutions brought in good faith.  Although *Younger* was decided in the context of criminal proceedings, the Supreme Court in *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), expanded *Younger* and held that when there is parallel litigation in state and federal courts, the federal court is bound to recognize the preclusive effects of a state–court judgment.  Additionally, the Supreme Court further held in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982*)*, that *Younger* is fully applicable to noncriminal judicial proceedings when important state interests are involved.  For example, the Supreme Court found a state's regulation of its licensed attorneys to be an important interest in *Middlesex*.

### c.  The Burford Doctrine

53.   Abstention under *Burford* directs federal courts to refuse cases where state agency action is involved.  Instead, federal courts should defer to state courts to review the state's agencies.  The Supreme Court held that

"[R]eview of the [state agency's] decisions in state courts is expeditious and adequate," and that out of respect should be given to independence of state affairs.  Indeed "[c]onflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts."  *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).

### d.   The *Rooker-Feldman* Doctrine

54.   Lastly, the *Rooker-Feldman* doctrine held that while lower federal courts may review the constitutionality of state-promulgated statutes and rules, they may not review holdings of the state courts pertaining to those policies.  Rather, that authority is exclusively reserved for the Supreme Court of the United States.  The Court in *Feldman*, which dealt with the challenges to the District of Columbia's bar admission policies illustrated this distinction.  Specifically, the Supreme Court stated that the district court had jurisdiction over general challenges to the state's bar rules, promulgated in non-judicial proceedings and that do not require review of a final state court judgment.  However, only the Supreme Court of the United States holds jurisdiction over challenges to matters that were intertwined with the D.C. Appellate Court's decisions in judicial proceedings.

55.   In the case at bar, all the doctrines of abstention are present in this one single case, which is in fact, amazing in and of itself.

## VIII.   THE FEDERAL PLAY BOOK

56.   This case **_marks the third time_** that some disgruntled and upset lawyer, has  haled Michael Joseph Bitgood into  federal court  while a state court proceeding was either ongoing or concluded.  It would have been four times, if we count a series of *ex parte* letters written to a Judge of this Court—by  lawyers no less—asking that Federal Judge to direct the state court on how to rule, and to please get rid of Michael Joseph Bitgood from their state court case.[15]

## PRAYER

WHEREFORE PREMISES CONSIDERED, Defendants, Susan C. Norman, and Michael Joseph Bitgood, a/k/a/ Michael Easton, respectfully

---

[15]

In that case, Bitgood convinced the state court of appeals to reverse and render, thereby taking 1.2 million dollars away from those lawyers. And, what did those lawyers do for an encore?  They filed a motion for "new trial" in the trial court–AFTER the Court of Appeals issued its mandate— similar to the performance of Lewis Brisbois in the state court, and after the "hammer" had dropped.  Thus, this run into federal court routine when a *pro se* layman prevails is nothing new, and indeed His Honor himself saw it play out when His Honor granted Bitgood's motion to remand for lack of jurisdiction in 2009.

request the following:

    1.    Abstain, and dismiss the instant case so that the state court, the forum chosen by Plaintiff, *pro se,* can conclude its case.

Respectfully submitted,

*/s/   Michael Joseph Bitgood*
Michael Joseph Bitgood
a/k/a/ Michael Easton
503 FM 359-130, Suite 130-216
Richmond, Texas 77406
281-415-8644
EastProLaw@msn.com

*/s/ Susan C. Norman*
Susan C. Norman
Texas Bar No. 15083020
P. O. Box 55585
Houston, Texas 77255
Tel.:  713-882-2066
Fax:   281-402-3682
SueNorman@SueNormanLaw.com

## CERTIFICATE OF SERVICE

    On this the 16th day of October 2022, I certify that I served a true and correct copy of this document on all parties and counsel of record via the Pacer electronic filing system.

*/s/ Susan C. Norman*
Susan C Norman