1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                         HOUSTON DIVISION

3      *******************************************************

4      LEWIS BRISBOIS BISGAARD AND    4:22-cv-03279
       SMITH LLP
5
       VS.                           HOUSTON, TEXAS
6
       MICHAEL JOSEPH BITGOOD, ET
7      AL.                           OCTOBER 6, 2022

8
       *******************************************************
9
              TRANSCRIPT OF MOTION HEARING PROCEEDINGS
10        HEARD BEFORE THE HONORABLE KEITH P. ELLISON
                  UNITED STATES DISTRICT JUDGE
11
       *******************************************************
12

13     APPEARANCES:

14     FOR THE PLAINTIFF:           MR. WILLIAM S. HELFAND
                                    MR. BENNETT G. FISHER
15                                  MR. SEAN B.O. BRAUN
                                    Lewis Brisbois Bisgaard
16                                    & Smith, LLP
                                    24 Greenway Plaza, Ste. 1400
17                                  Houston, Texas 77046

18
       COUNSEL PRO SE:             MR. MICHAEL J. BITGOOD
19                                 a/k/a MR. MICHAEL EASTON
                                   EastProLaw@msn.com
20

21     COUNSEL PRO SE:             MS. SUSAN C. NORMAN
                                   P.O. Box 52518
22                                 Houston, Texas 77052

23
       COUNSEL PRO SE:             MR. BRADLEY B. BEERS
24                                 Beers Law Firm
                                   5020 Montrose Blvd., Ste. 700
25                                 Houston, Texas 77006

```
 1    Official Court Reporter:        David S. Smith, CSR, RPR, CRR
                                      Official Court Reporter
 2                                    United States District Court
                                      Southern District of Texas
 3                                    515 Rusk Street, Room 8004
                                      Houston, Texas 77002
 4                                    david_smith@txs.uscourts.gov


 5
              Proceedings recorded by mechanical stenography,
 6    transcript produced via computer.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2          THE COURT:  Okay.  Good afternoon and welcome.
3              We're on the record in Lewis Brisbois versus
4   Bitgood.  We'll take appearances of counsel beginning with the
5   plaintiff, please.
6          MR. HELFAND:  Good afternoon, Your Honor.
7   William Helfand, Bennett Fisher and Sean Braun for the
8   plaintiff.
9          THE COURT:  Welcome.
10         MR. HELFAND:  Thank you.
11         THE COURT:  For defendants?
12         MR. BITGOOD:  (No audio.)
13         THE COURT REPORTER:  I am not hearing that person
14  speak.  Was that you, Mr. Beers?
15         MR. BEERS:  That was Mr. Bitgood.
16             This is Brad Beers.  I'm pro se at the moment,
17  Your Honor.
18         MR. BITGOOD:  I'm going to try again.  Can you hear me
19  now?
20         THE COURT REPORTER:  Yes.  If you get up close to the
21  mic, I can hear you.
22         MR. BITGOOD:  Good afternoon, Your Honor.
23  Michael Bitgood appearing pro se.
24         MS. NORMAN:  Good afternoon, Your Honor.  Susan Norman
25  appearing pro se for herself.
```

1          THE COURT:  Does anybody else want to enter an

2    appearance, or are they just here for observation purposes?

3          MR. HELFAND:  The other folks are either observing or

4    are witnesses, Your Honor.

5          THE COURT:  Okay.  We're here on plaintiff's motion for

6    preliminary injunction.  I will give plaintiffs ample

7    opportunity to speak; but before I do that, I need to hear from

8    defendants.  I've not had a case like this before in my 23

9    years on the bench, and I guess I have questions more than

10   anything else as to how we ended up where we're ending up.

11          So if someone would like to speak to the issue of

12   the adoption of the law firm's name by the other side, I'd

13   welcome any insight.

14          MR. BITGOOD:  Could I be heard, Your Honor?

15          THE COURT:  Yes, you may.

16          MR. BITGOOD:  Good afternoon.  Your Honor, we did not

17   adopt the law firm's name.  What we did is they allowed the

18   name Lewis Brisbois -- (Technical difficulty).

19          THE COURT REPORTER:  Once again I am not hearing you,

20   sir.

21          THE COURT:  You're not audible, Mr. Bitgood.

22          MR. BITGOOD:  Is that better?

23          THE COURT:  No.  Do you have a hand instrument you can

24   pick up?

25          MR. BITGOOD:  A telephone?

1          THE COURT:  Yes.  I'm not fluent in the technology of

2     all of this.  We're not hearing you.

3          MR. BITGOOD:  Can anybody hear me now?

4          THE COURT:  Yes, we can hear you now.

5          MR. BITGOOD:  Okay.  We'll go with this instead of that

6     microphone.

7               May I proceed, Your Honor?

8          THE COURT:  Yes, you may.

9          MR. EASTON:  Thank you, sir.

10              Your Honor, on March 9th of 2022 the Secretary of

11    State publicly posted that the name Lewis Bisgaard & Smith was

12    available because the plaintiff had not renewed their

13    registration and elected to voluntarily relinquish that

14    registration.  At that point we had told the other side that if

15    you weren't going to renew it, we would take it.  I guess they

16    took this as a joke.  We took the registration, we did the

17    filings, we paid the Secretary of State's fees and we didn't

18    take the law firm's name.  We took the name Lewis Brisbois

19    Bisgaard because it seemed like a sound business investment at

20    the time.  We also facilitated the termination of a lawsuit

21    that we had against their (Technical difficulty).  After that

22    lawsuit was going to be concluded -- sorry -- yes, I did get a

23    telephone call from one of their partners saying, "Now that you

24    won and you got everything you want, how about you give us back

25    the name?"

1          I said, "Well, when we finalize the deal, we'll

2   sit down and discuss it."

3          They were not interested in discussion.  What

4   they were interested in is fighting.

5          And so I asked them "Why don't you come to the

6   mediation with Mr. Magenheim?"

7          They had no interest in going, so we settled the

8   underlying lawsuit and the only issue left is this one.

9          This afternoon, Your Honor, they filed a

10   counterclaim seeking declaratory relief in state court.  The

11   state court can declare who has the right to use the name based

12   on the issue of the Secretary of State.  Obviously we'll do

13   whatever you tell us to do.  This is not a fight that we really

14   wanted, but we don't like being threatened and pushed around.

15   That's why we're here.  We just don't --

16          THE COURT:  I understand that they may have let the

17   registration lapse or decided affirmatively not to renew it,

18   but why did you want to use the firm's name?

19          MR. BITGOOD:  It seemed like a good business investment

20   at the time, Judge.  They voluntarily relinquished it.  They

21   had letters from the Secretary of State saying, "If you don't

22   want this name anymore, don't renew it.  It will become

23   available; and if you do want it again, you're going to have to

24   start all over again."

25          THE COURT:  I understand that, but why did you want the

1   name?  It doesn't seems like it has anything to do with what

2   you're doing.

3          MR. EASTON:  Sorry, Your Honor, you broke up.  I got a

4   squelch.

5          THE COURT:  I understand that they may not have wanted

6   the name, but why would you think it was yours to take?  It

7   seems like the firm had an institutional identity very

8   different from your own.  I don't understand why you wanted to

9   use their name.

10         MR. EASTON:  Your Honor, it seemed at the time -- it

11  may not be sound at the time now -- to be a good business

12  investment.  We would open a mediation store and an arbitration

13  store.  But the firm is saying that they had this firm for

14  20 years.  That's not true.  We checked with the patent and

15  trade office.  They applied for the use of this name, Your

16  Honor, on the very date they filed the lawsuit in your court.

17  That would be September 23rd of 2022.  It was available on the

18  federal side; it was available on the state side.

19         THE COURT:  I need to hear from the other side.

20             Mr. Helfand?

21         MR. HELFAND:  Mr. Easton is not a lawyer, so perhaps

22  the Court can excuse his misunderstanding of the law.  And he

23  hasn't answered the Court's question, but he has made a number

24  of inaccurate statements.  Mr. Easton, as Your Honor may know,

25  has already been found to have committed bankruptcy fraud by

1   this Court, with Judge Hoyt presiding, and was sentenced to the

2   federal penitentiary for that.

3             Mr. Easton has a number of other convictions for

4   crimes of moral turpitude, which under 609 the Court could

5   consider in determining his veracity.  But he's either not

6   being honest with the Court, or he just doesn't understand what

7   he's saying.  Either way, it's incorrect.

8             There is nothing from the Secretary of State that

9   said the firm would forfeit the right to use the name Lewis

10   Brisbois Bisgaard & Smith in its business.  In fact, the

11   Secretary of State doesn't have the authority to make that

12   determination.  What Your Honor has is a letter from the

13   Secretary of State saying that the firm's payment to be listed

14   as a foreign limited liability partnership to transact business

15   would expire on March 9th.

16             On March 26th -- the Court also has this -- the

17   Secretary of State's office -- I'm sorry.

18             On March 28th the Secretary of State's office

19   acknowledged payment of a fee and issued a certificate of

20   filing which specifically says that the firm has the authority

21   to transact business in the state of Texas for the purpose set

22   forth in the application under the name Lewis Brisbois

23   Bisgaard & Smith, L.L.P.

24             Your Honor has that.

25             What Mr. Easton did is not until two months later

1    in May of 2022.  May 26th he filed a -- Mr. Beers assisted him

2    in filing a registration of a limited liability partnership by

3    the same name as well as on May -- I'm sorry -- June 1st

4    Mr. Easton filed, with Mr. Beer's assistance, an assumed name

5    with the Secretary of State.

6         Now, what Mr. Easton is saying that's so very wrong --

7    and I think the Court was asking about this -- is under

8    Section 5.001 of the Texas Business Organization Code,

9    Section 5.001 specifically says that the filing of a

10   certificate of formation of by an entity is not authority to

11   use the name.

12        Here's the quote:  "does not authorize the use of

13   a name in this state in violation of the right of another under

14   federal trademark" -- I'm paraphrasing now "federal trademark,

15   Texas trademark law or the common law."

16        Mr. Easton also either falsely or inaccurately

17   represents to the Court that Lewis Brisbois does not have a

18   trademark, but Your Honor has these filed with the complaint.

19   The firm has Trademark No. 3,722,172 filed on December 8th,

20   2009 -- not 2022 -- 2009, to use the name and the insignia

21   Lewis Brisbois Bisgaard & Smith, L.L.P., quote, for legal

22   services, closed quote.

23        Now, if we need to get into it, the evidence will

24   show that those legal services include arbitration and

25   mediation services by attorneys throughout the country.  As the

1    Court knows -- and by the way, Judge, that's not the only

2    filing that reserved that name.  There's also the registration

3    No. 5,151,128, registered on February 28th, 2017 -- 5,151,123

4    registered on February 28th, 2017.

5              So I don't know if Mr. Easton is just trying to

6    defraud the Court like he's done before or if he just doesn't

7    understand what he's saying; but the name has been on file and,

8    as the Court knows, filing with the USPTO demonstrates

9    secondary meaning.  However, if the Court would like, I'm quite

10   prepared to demonstrate that the name Lewis Brisbois Bisgaard &

11   Smith, L.L.P., has obtained secondary meaning under the laws of

12   trademark, including the United States Supreme Court's

13   recognition of the name Lewis Brisbois Bisgaard & Smith,

14   L.L.P., identifying a law firm of over 1600 lawyers, close to

15   4,000 employees who practice law in 60 offices in America

16   constituting what, from time to time, is usually the fifth,

17   sixth, seventh or eighth largest law firm in America.  That

18   Mr. Easton is using a confusing name is undeniable.  He's using

19   the identical name.  That he did it for purposes of creating

20   confusion is equally undeniable because, as I provided to the

21   Court, in a Law 360 article, which the Court has, in answering

22   the question of why Mr. Easton registered this name, he said,

23   quote -- one moment here, Judge.

24             On September 26th in a Law 360 online article

25   Mr. Easton said:  "I don't like the way they treated us.  I

1     don't like the pranking" -- this is what the article said --

2     "Bitgood said, when asked why he'd registered the Lewis

3     Brisbois name."

4              Now, Ms. Norman is also using the Lewis Brisbois

5     Bisgaard & Smith name; and she is identifying, as the Court has

6     seen, herself as an attorney and certified mediator under that

7     name.  That also violates State Bar Rule 7.01 as it applies to

8     an attorney.  Mr. Bitgood, who has never been an attorney

9     obviously, isn't in violation of that rule.

10            I'm fully prepared to put on the evidence

11     necessary to obtain a preliminary injunction, Your Honor; but I

12     think what would be most fair and most expeditious would be for

13     the Court to enter a temporary restraining order which

14     precludes these folks from using that name in any way, which is

15     the last peaceable condition, and allow us some expedited

16     discovery to determine the nature, extent and purpose of the

17     defendant's use of my law firm and client's registered and

18     recognized trademark and then come back for a preliminary

19     injunction hearing if that's appropriate after doing that

20     discovery.  If Mr. Bitgood intends to make good on his proposal

21     to stop infringing, we would have the opportunity to have that

22     discussion with him.

23            But it has nothing to do with the underlying

24     lawsuit, Your Honor; and it has nothing to do with registering

25     with the State of Texas to conduct business.  It has -- because

1    the State of Texas does not authorize one to use a name in

2    trade.  It simply registers a business to do business in

3    accordance with the laws of the State of Texas.  Again, to the

4    extent that the Court has the opportunity, I think you'll find

5    the answer to that question in 5.001 of the Business

6    Organizations Code.

7         THE COURT:  Mr. Helfand, tell me the status of the

8    underlying case.

9         MR. HELFAND:  Say again, sir.

10        THE COURT:  Tell me the status of the underlying case.

11        MR. HELFAND:  I am informed that the underlying case

12   has been resolved by -- well, so here's the -- the underlying

13   case was Mr. Easton and Mr. Jones bringing an action against a

14   landlord and others based upon an eviction.  My partner,

15   David Oubre, appeared in that case to defend that lawsuit.

16   Mr. Bitgood filed a motion to challenge Mr. Oubre's authority

17   to represent the defendants in that case.  About the same time

18   Mr. Bitgood amended the petition -- Mr. Bitgood and Mr. Jones

19   amended the petition for the purpose of seeking a declaratory

20   judgment that Lewis Brisbois Bisgaard & Smith lacks authority

21   to practice law in Texas, even though, as the Court knows, law

22   firms don't practice law in Texas; so ostensibly Lewis Brisbois

23   Bisgaard & Smith somehow lacks authority to operate as a

24   business in Texas and that Mr. Oubre lacks authority to

25   practice law in Texas.

1              So Mr. Oubre withdrew as having a conflict of
2    interest, and another lawyer was appointed to represent the
3    original defendants.  The original defendants and Mr. Easton
4    reportedly did have a mediation at which the original
5    defendants and Mr. Easton reached an agreement.  That agreement
6    did not include my law firm or my partner, Mr. Oubre; so I
7    don't know what's happened to that.  But to the extent that
8    Mr. Easton filed a declaratory judgment action -- and
9    Mr. Jones -- against my law firm and my partner as to their
10   authority to conduct business and, in Mr. Oubre's case, to
11   practice law in Texas, we have responded with a counterclaim of
12   a declaratory judgment that they are authorized under the law
13   to do those things.  So where we are is I don't know if
14   Mr. Bitgood and Mr. Jones have nonsuited or otherwise resolved
15   their claims against the other defendants, but I'm told they've
16   reached an agreement that would include doing that.
17             THE COURT:  Ms. Norman, I did see stationery where you
18   appear to list yourself as a lawyer for Lewis Brisbois
19   Bisgaard & Smith.
20             MS. NORMAN:  Yes, sir.
21             THE COURT:  Is that an error?
22             MS. NORMAN:  I'm an attorney and I'm representing the
23   Texas L.L.P., but I would appreciate the opportunity to correct
24   something that Mr. Helfand failed to tell the Court.
25             THE COURT:  Could you answer my questions first?  Why

1    are you best listing yourself on law firm stationery as a

2    member?

3            MS. NORMAN:  As a member?

4            THE COURT:  As a member of the firm, yes.

5            MS. NORMAN:  I'm a member of the mediation and

6    arbitration -- the firm was -- the L.L.P. for Texas was formed

7    to do mediations and arbitrations, and I'm a member.  I'm a

8    partner in that firm.

9            THE COURT:  Which firm is that now?

10           MS. NORMAN:  Lewis Brisbois Bisgaard & Smith, L.L.P.,

11   filed in Texas on March the 26th of this year.

12           THE COURT:  How long have you been a partner there?

13           MS. NORMAN:  Since March the 26th.

14           THE COURT:  Do you have membership in any other firms?

15           MS. NORMAN:  No, sir, other than my own sole practice

16   as a lawyer.

17           THE COURT:  Have you during your career listed yourself

18   as a member of any other firm?

19           MS. NORMAN:  No, sir.

20           THE COURT:  Why did you do it with Lewis Brisbois?

21           MS. NORMAN:  For the same reason that Mr. Bitgood is

22   stating.  When I -- I have a practice, and I have had a

23   practice for many years of reviewing filings of opposing

24   entities.  I found that in the filings of Mr. Oubre in the

25   underlying case, when he filed the original answer on March the

1    11th, the law firm Lewis Brisbois Bisgaard & Smith was not

2    authorized to conduct business in Texas because it had

3    voluntarily relinquished its right to do so, making the filings

4    by Mr. Oubre on behalf of the plaintiffs void filings.

5         THE COURT:  Whether they are properly registered or

6    not, what makes you think you can use the name for yourself?

7         MS. NORMAN:  Because it was available.

8         THE COURT:  Weren't you concerned about the prospect of

9    confusion?

10         MS. NORMAN:  I'm sorry?

11         THE COURT:  Weren't you concerned about the prospect of

12    confusion?

13         MS. NORMAN:  No, sir, because all of the service mark

14    registration that we've looked up for the USPTO, they're --

15    they don't have mediation and arbitration shown on their -- as

16    part of their service mark.  One thing that I think is very

17    important, if the Court will allow me, Exhibit 1, as stated by

18    Mr. Helfand, filing 3,722,172, for the forename Lewis Brisbois

19    Bisgaard & Smith, he did not tell the Court that on July the

20    10th, 2020, that name was canceled by the U.S. Patent and Trade

21    Office.  That name -- they have no rights under the USPTO

22    filings, so far as I can find, to that name.  They let it go.

23    What they filed on September 23rd was a two-word service mark

24    "Lewis Brisbois."

25         THE COURT:  I don't understand.  Whatever happened with

1   their name, whether it lapsed or somehow it was discontinued, I

2   don't understand why you can claim that name.

3           MS. NORMAN:  Because it's available.

4           THE COURT:  Well, that's not the test for naming rights

5   and --

6           MR. BITGOOD:  Judge, may I inject something that may

7   help us all?  If we agree to quit right now, will they agree to

8   quit and we leave them alone and can we give them back the

9   name?

10          THE COURT:  You probably need some time to discuss

11  that.  I'm still very puzzled at why --

12          MR. BITGOOD:  I can see the Court is concerned about

13  this and I don't think it's going the way I wanted it to go and

14  I can tell from reading between the lines that it's best

15  sometimes to just, as you once said in your memorandum, we live

16  on a small planet.  Quoting JFK, there's better things to do

17  than fight, fight, fight.

18          THE COURT:  I agree this needs to be resolved.  I agree

19  with that.

20          MR. BITGOOD:  Well, if they would agree right now on

21  your record to leave us alone, we would leave them alone and do

22  a wind-down and close our shop if that is acceptable to them.

23          THE COURT:  Does Lewis Brisbois want some time to

24  discuss that?

25          MR. HELFAND:  First I need to respond to something

1    Ms. Norman said.  We've got to get away from this term

2    "voluntarily relinquished."  There is no evidence the firm

3    voluntarily relinquished anything.  We were late on repaying

4    the registration with the Secretary of State.  We'll take full

5    responsibility for that.  That is not a relinquishment of the

6    name.  Also Ms. Norman, as a lawyer, should be ashamed to tell

7    the Court that that somehow makes a trademark name available.

8    The Secretary of State says they don't make names available.

9    In fact anyone today could go register Lewis Brisbois

10   Bisgaard & Smith, L.L.P., in addition to everybody else who is

11   registered with the Secretary of State.  Ms. Norman is just

12   flat wrong about that, and I'll take that up also with the bar.

13          That said, to respond to Mr. Easton's proposal,

14   here is what I suggest.  If the defendants will agree to a

15   temporary restraining order that temporarily precludes them

16   from publishing the name Lewis Brisbois Bisgaard & Smith,

17   L.L.P., for the next 14 days, I would be happy to work with the

18   defendants to try to reach a resolution.  Oh, and expedited

19   discovery if we can't reach an agreement, Your Honor.

20          THE COURT:  Mr. Easton?

21          MR. EASTON:  The proposition that we put on the table

22   is we will relinquish the name right here before you right now.

23          MR. HELFAND:  There's more to it than that, Judge.  We

24   have damages.  There's the potential for statutory damages, and

25   we've got to resolve some related issues.  So it's not as

1    simple as Mr. Easton proposes; but since he's willing to

2    relinquish it right now, if he'll agree and the other three

3    defendants will agree not to use the name again for the next

4    14 days while we discuss resolution, I'm happy to do that.

5           MR. BITGOOD:  Your Honor, may I bring to the Court's

6    attention, since Mr. Helfand says they're seeking damages and

7    everything --

8           THE COURT:  Is this Mr. Easton?

9           MR. BITGOOD:  Yes, sir.

10          THE COURT:  Go ahead.

11          MR. EASTON:  May I bring to the Court's attention,

12    please, a counterclaim seeking relief of damages and attorney's

13    fees down in the state court in rem proceeding.  We may be

14    wholly and totally wrong for whatever reason; but I'm on the

15    record now telling you if that's what we did, we're willing to

16    resolve it.  No more maneuvers.  If they really want to resolve

17    the thing, they'll say they agree not to do it.  Your Honor,

18    I'm in front of a federal judge.  Do they think I'm going to

19    tell you something and turn around and do something else?

20          MR. HELFAND:  Well, that is what happened with Judge

21    Hoyt, but that's a story for a different time.

22          MR. BITGOOD:  What are you talking about with

23    Judge Hoyt?

24          MR. HELFAND:  Judge, my offer stands.  If Mr. Easton is

25    sanguine in his proposal, then he and his fellow defendants

1    should agree to a temporary restraining order, give us time to

2    negotiate a complete resolution and, failing that, an

3    opportunity to do discovery and come back to the Court with a

4    more fulsome preliminary injunction.

5              Because here's the thing.  I appreciate

6    Mr. Easton's acknowledgment.  I'm going to have no problem

7    proving this name belongs to a law firm of 1600 lawyers in 59

8    offices across the United States.  Its has acquired secondary

9    meaning beyond anybody's wildest dreams, and the registration

10   and use of the identical name is clearly an effort to confuse

11   the community.  And by the way, I've got the city attorney of

12   the City of Sugar Land on who's already prepared to testify

13   that Mr. Easton's letters to her on my firm's letterhead is

14   that confusion.

15             So I'm happy to try to work it out, but I'm not

16   going to do it on terms dictated by Mr. Easton right here and

17   now.  Whether by agreement, Your Honor, or by the Court's order

18   I would respectfully request that the Court enter a temporary

19   restraining order for 14 days, order expedited discovery if

20   after the next three or four days we have not resolved this

21   matter by agreement.  I am not -- I do not believe my firm --

22   but I can't speak for my firm or this -- will hold up

23   resolution based upon a claim for damages; but I can't make

24   agreements with Mr. Easton right here and now.  I answer to a

25   management committee that's based throughout the country.

1      THE COURT:  Do defendants oppose a 14-day temporary

2  restraining order?

3      MR. BITGOOD:  We do, Your Honor.  We don't see the

4  necessity of being enjoined when we're not going to do anything

5  until we try to resolve this.  What he wants is an order from

6  this Court to go waving it around all over the place saying,

7  "We beat them back."

8      MR. HELFAND:  Judge, if I have compliance, I don't need

9  to wave it anywhere; and I don't like when other lawyers, or in

10  this case laypeople, tell me what they think I'm going to do.

11  I am focused on solving this problem.  It is a waste of time

12  and significant resources of a big law firm that has other

13  things to do.  I believed Mr. Bitgood when he told Law 360 that

14  he did it to screw with my law firm, and so far he's been

15  successful.  I'm happy to try to resolve it, but Mr. Bitgood is

16  not going to dictate those terms here and now.

17      THE COURT:  I really -- the only thing a judge brings

18  to a case is neutrality.  He doesn't bring nearly the knowledge

19  that either side has.  And I'm striving to be neutral here, but

20  I still haven't understood why.  Regardless of what went on in

21  the Secretary of State's office, regardless of what oversights

22  might have occurred in the offices of Lewis Brisbois Bisgaard &

23  Smith, I don't understand why defendants ever had any right to

24  use the firm's name.  I've never seen a case like where one

25  side uses another side's name to gain tactical advantage.  It

1    doesn't compute to me.

2            And, Ms. Norman, I'd think you'd understand that.

3        MS. NORMAN:  Yes, sir.

4        THE COURT:  Do you understand -- do you have any basis

5    for saying you have a right to use the law firm's name?

6        MS. NORMAN:  Well, I looked at the history of

7    relinquishment of that name -- the relinquishment of the name

8    with the authority to do business in Texas multiple times.  It

9    looked like a voluntary relinquishment; and it looked like, as

10   Mr. Easton said, a business opportunity.  That's all it was.

11       The COURT:  Well, if General Motors were to lapse in

12   its registration, would you think you could call yourself

13   "General Motors"?

14       MS. NORMAN:  Depending upon the circumstances, Your

15   Honor, possibly.  If they lost the right to do business in

16   Texas under that name, which is what Lewis Brisbois did when

17   they lost the right.

18       MR. HELFAND:  Judge, may I -- I need to hasten to point

19   out that Ms. Norman's premise is absolutely false.  Your Honor

20   has it on March 28th the Secretary of State acknowledged

21   payment for the foreign company Lewis Brisbois Bisgaard &

22   Smith, L.L.P., to conduct business in Texas.  It wasn't until

23   two months later that Ms. Norman and Mr. Easton, with

24   Mr. Beer's complicity, registered the assumed name and then

25   more than two months later that they created the company in the

1   exact same name.  It's just a fact, Judge.  Why Ms. Norman will

2   not acknowledge a fact to the Court in violation of her duty to

3   the Court makes no sense to me.

4         MS. NORMAN:  In my duty to the Court, Your Honor, I

5   will also acknowledge that starting in early May I began

6   checking the website of the Secretary of State.  I looked

7   virtually every day.  The -- what Mr. Helfand is saying about

8   March 28th is because on June the 9th the Secretary of State

9   accepted their filing, which may have been mailed in

10  March 28th; but that was not on the website.  That was not

11  available to see and I spoke with the Secretary of State on

12  June 9th and the filing number for their new application, which

13  they say -- the Secretary of State stamped, backdated as to

14  March 28th, is 9,342 or -24 numbers later than what we filed on

15  May the 26th.  So his statement that this happened --

16        MR. HELFAND:  It doesn't explain the mistake of doing

17  it -- Judge, it has nothing to do with the right to use the

18  name; but even if Ms. Norman actually honestly believes that,

19  she's already admitted she found out that the Secretary of

20  State made an authorization for the firm to conduct business

21  dated March 28th.  So I could understand if she did something

22  for a short time and then said, "Oops, now that I know the

23  Secretary of State authorized your law firm to continue to

24  conducting business as of March 28th, I'm going to stop doing

25  this"; but a moment ago on the record she told you she still

1    has the right to do that.  She doesn't as a matter of law.

2    MR. BITGOOD:  Your Honor, I'd just like to be brief if

3    you would allow me.

4    THE COURT:  Yes, sir.

5    MR. BITGOOD:  The Secretary of State maintains serial

6    numbers for each filing as to who has the right to use a name.

7    Now, I may be completely wrong and out of -- completely out of

8    the water on this issue, because I can assure you this is my

9    first time having engaged myself in this; but our number, our

10   serial number, 804584868, we got approved to do business.

11   That's the day we started.  Their serial number, Your Honor,

12   irrefutable before the Court, is 804594502.  That comes 9,634

13   registrations with that name behind ours.  We did it by the

14   book.  Now, if we are still wrong by having done it all by the

15   book, I'm willing to surrender now.  I raise the white flag

16   before His Honor to terminate this thing.

17   THE COURT:  I don't think the question of what happened

18   to the Lewis Brisbois status in Texas has anything to do with

19   the right of individuals not associated with the firm to use

20   that name.  Those are two entirely different concepts.  Lewis

21   Brisbois is far and away the senior user of the name and it has

22   acquired secondary meaning and I don't think the consequence of

23   a delay in paying a registration fee or renewal fee needs to

24   result in anybody can then start practicing under that name.

25   That's the part that puzzles me about this.

1      MR. BITGOOD:  Well, it should puzzle you no more, Your

2  Honor.  I raise the white flag.

3      THE COURT:  Well, I'm going to enter a temporary

4  restraining order to prevent further use of the name; and we'll

5  have a 14-day period where parties can attempt to achieve a

6  settlement that's documented in writing, and I hope that will

7  then be the end of this case.  It really is not a good use of

8  anybody's time to be arguing about this, and I can only see

9  further harm if the status quo is continued.

10     MR. BEERS:  May I comment further on that issue, Judge?

11     THE COURT:  Who's speaking, please?

12     MR. BEERS:  Brad Beers.

13     THE COURT:  Yes, sir.

14     MR. BEERS:  In as much as it's never been alleged, I

15  don't believe, that I've ever used that name, the allegation

16  against me is that I filed a certificate of assumed name in the

17  Secretary of State's office in a period when there was no

18  registration on file.  I would ask the Court to exclude me from

19  that temporary restraining order.  I have no intention of

20  starting to use that name.  I'm never used it, but I would just

21  as soon not have a temporary restraining order against --

22  entered against me for what I did practicing law on behalf of

23  Mr. Bitgood four months ago.

24     MR. HELFAND:  Your Honor, Mr. Beer misstates

25  allegations against him.  Mr. Beers, who has had numerous cases

1    with lawyers of Lewis Brisbois Bisgaard & Smith, knowingly
2    conspired with Mr. Easton and Ms. Norman to falsely appropriate
3    the law firm's name.  Mr. Beers voluntarily participated in
4    that conduct.  He's not sued just for filing something.  He's
5    sued for conspiring with the other defendants to misappropriate
6    the law firm's name; and if he's not going to do it, then he
7    should be part of the temporary restraining order telling him
8    he can't.  What I don't want to find out -- let me say this as
9    to Mr. Beers.  If he is stipulating on the record that he will
10   comply with the TRO even if not named in the TRO, I will tell
11   you on behalf of Lewis Brisbois excluding Mr. Beers by name is
12   fine, although I think the TRO is going to say, "the
13   defendants"; and Mr. Beers is and will be a defendant in this
14   lawsuit if it's not resolved by agreement.  But if it means
15   something to Mr. Beers and the Court thinks it's appropriate to
16   not name him individually as restrained, based upon his
17   stipulation as a member of the bar of this Court, then I will
18   agree that the Court need not name Mr. Beers.  But if Mr. Beers
19   does something further to impugn the name of the law firm or
20   assist others in doing so, then I will ask the Court to hold
21   him in contempt because Mr. Beers has a very misunderstood
22   impression of why he's being sued.  Mr. Beers knowingly,
23   perhaps with greater knowledge than any other defendant,
24   assisted others in appropriating my law firm's name; and
25   Mr. Beers knew at all times during that -- because up until

1    recently I counted Mr. Beers as a friend.  He knew at all times

2    he was doing that, that he was misappropriating the name of a

3    going law firm that has 1600-plus lawyers around the country.

4         THE COURT:  I'm going to ask for each side to submit a

5    proposed order by noon tomorrow.  I'll decide, based on that,

6    what the order is going to say.

7         MR. HELFAND:  Yes, sir.

8         THE COURT:  Are there any questions?

9         MR. HELFAND:  Not from the plaintiffs, Judge.

10        MR. BEERS:  No, sir.

11        MS. NORMAN:  No, sir.

12        THE COURT:  Thank you.

13             Yes?  Yes?  I can't hear you.

14        MR. BITGOOD:  I'm sorry, sir.

15             Pending the Court entering this order, I would

16   like to remind the Court we're not going to do anything in

17   state court until you enter this order.

18        THE COURT:  Not going to do anything what?

19        MR. BITGOOD:  We're not going to do anything in the

20   state court system until you enter this order.

21        THE COURT:  I can't control what happens in the state

22   court other than through the order I'm going to enter, and I

23   would hope that those cases could be brought to an end

24   contemporaneously with the resolution of this case.

25        MR. HELFAND:  We share in your hope in that regard,

1    Your Honor.

2              THE COURT:  Thank you very much.

3              MR. HELFAND:  Thank you for your time, Judge.

4              MR. BEERS:  Thank you.

5              MR. EASTON:  Thank you.

6                   (The proceedings were adjourned.)

7                              * * * *

8                       REPORTER'S CERTIFICATE

9              I, David S. Smith, CSR, RPR, CRR, Official
     Court Reporter, United States District Court, Southern District
10   of Texas, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
11   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

12

13                         ___/s/ David S. Smith_____
                           Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25