```
 1                    REPORTER'S RECORD

 2                 VOLUME 3 OF 3 VOLUMES

 3            COURT OF APPEALS NO 14-22-00694-CV

 4            TRIAL COURT CAUSE NO 22-CCV-070378

 5

 6   RICHARD P. JONES &        )      IN THE COUNTY COURT
     MICHAEL JOSEPH BITGOOD
 7   AKA MICHAEL EASTON        )

 8          Plaintiff,         )

 9   VS                        )      OF LAW NUMBER THREE (3)

10   MARIANNA SULLIVAN,        )
     IMPERIAL LOFTS LLC,
11   AND KARINA MARTINEZ       )

12          Defendant(s).      )      FORT BEND COUNTY, TEXAS

13   ************************************************************

14

15                      MOTIONS HEARING

16

17   ************************************************************

18          On the 13th day of September, 2022, the foregoing

19   proceedings came on to be heard outside the presence of a

20   Jury, in the above-entitled and enumerated cause; and the

21   following proceedings were held before the Honorable Lewis

22   White, Presiding Associate Judge of County Court #3, Fort

23   Bend County, Texas:  Proceedings reported by Oral

24   Stenography; Reporter's Record produced BY COMPUTER-ASSISTED

25   TRANSCRIPTION.
```

```
 1                A P P E A R A N C E S

 2

 3   MR. MICHAEL JOSEPH BITGOOD AKA MICHAEL EASTON, PRO SE

 4        - AND -

 5   MR. BRAD BEERS
     Beers Law Firm
 6   SBOT NO. 02041400
     5020 Montrose Blvd Ste 700
 7   Houston, TX 77006-6575
     (713) 654-0700
 8   ATTORNEY FOR MICHAEL BITGOOD, SLAPP MOTION ONLY

 9        - AND -

10   MS. SUSAN CECILIA 'SUSAN' NORMAN
     Ms Susan Cecilia Norman, Private Law Practice
11   SBOT NO. 15083020
     P. O. Box 55585
12   Houston, Texas 77255
     (713) 882 - 2066
13   ATTORNEY FOR RICHARD P. JONES

14     ************

15   MR. DAVID A. OUBRE
     Lewis Brisbois Bisgaard & Smith, LLP
16   SBOT NO. 00784704
     24 Greenway Plaza Ste 1400
17   Houston, TX 77046-2410
     (713) 659 -6767
18   ATTORNEY FOR THE DEFENDANT(S)

19

20

21

22

23

24

25
```

```
 1                    I N D E X

 2              VOLUME 3 OF 3 VOLUMES

 3                 MOTIONS HEARING

 4                                    Page    Vol.

 5   SEPTEMBER 13, 2022

 6
```

```
 7   Announcements. . . . . . . . . . . . . . . . 4        2

 8   Case Called. . . . . . . . . . . . . . . . 6          2

 9   Opening Announcements . . . . . . . . . .   12         2

10   Case resumed. . . . . . . . . . . . . . .   25         2

11   Judicial Notice . . . . . . . . . . . . .   26         2

12   Offering evidence. . . . . . . . . . . .    37         2

13   Court's Findings . . . . . . . . . . . . . 39          2

14   Reporter's Certificate . . . . . . . . . . 46          2
```

```
15

16

17

18

19

20

21

22

23

24

25
```

1    SEPTEMBER 13, 2022

2

                    P R O C E E D I N G S

3

4                    THE COURT:  Let's go on the record.  Okay,

5    before we get started what we are going to do is we are

6    going to start off with the Rule 12, okay.  And then, we are

7    going to do the Motion to Compel SLAPP, okay.  And then, we

8    are going to discuss the Discovery Issue.  And then, at the

9    end, the Docket Control Order.  Is everybody on the same

10   page?

11                    MR. OUBRE:  Yes, Your Honor.

12                    THE COURT:  Okay.  And this all determines if

13   we get there but we got to go in order, okay.  That is the

14   order that we are going to go in and I understand you all

15   have -- you also have an agreement for the jury trial date

16   if we need one.

17                    MR. BITGOOD:  No, Your Honor.

18                    THE COURT:  No, Mr. Easton, you don't have to

19   get up.

20                    MR. BITGOOD:  Okay, the order was if the

21   Court grants our relief today then the only thing left to do

22   would be to Move to Damages.  So we have a November 10th at

23   1:30 in the afternoon, if we don't settle at mediation.

24   Mr. Oubre and I have agreed to voluntarily go to mediation

25   October the 4th.

1          MR. OUBRE:  Well, Your Honor, I've got an

2   adjuster who is out on leave and as soon as he gets back I

3   will be able to confirm mediation dates.  So it might not be

4   on the 4th but I am hoping to get it settled sometime in

5   October.

6          THE COURT:  Okay.  So we don't have a trial

7   date?

8          MR. OUBRE:  No.

9          MR. BITGOOD:  No.

10          THE COURT:  Okay.

11          MR. OUBRE:  And, Your Honor, for the Docket

12   Control Order do we submit an agreed DCO or do you just pick

13   a trial --

14          THE COURT:  I would love for you to submit an

15   Agreed Docket Control Order.  If you don't have an Agreed --

16   both sides can submit one and I will make a decision.

17          MR. OUBRE:  Okay.

18          THE COURT:  Okay.

19          MS. NORMAN:  Your Honor, I am here on be -- I

20   am Susan Norman.

21          THE COURT:  Okay.

22          MS. NORMAN:  And I am here on behalf of

23   Dickie Richard P. Jones and Lewis Brisbois Bisgaard & Smith

24   LLP, The Domestic Texas Partnership, who is the Plaintiff in

25   this case.

1          THE COURT:  And you are representing who

2   again?  Can you say it again, Ms. Norman?

3          MS. NORMAN:  I'm sorry, Your Honor, what?

4          THE COURT:  Who are you representing?

5          MS. NORMAN:  I represent Richard P. Jones and

6   Lewis Bisgaard -- Lewis Brisbois Bisgaard & Smith, The Texas

7   -- Texas Domestic LLP, Limited Liability Partnership, who is

8   the Plaintiff in this case.

9          THE COURT:  Okay.

10          MS. NORMAN:  And, Your Honor, one more thing.

11   I have litigated with Mr. Easton for 18 years and during

12   that time -- in front of the Judge's with whom we have

13   litigated for -- our respective parties and I have found

14   that many times we are making the same argument and using

15   the same exhibits.  And under Fibreboard v. Pool, attorneys

16   are encouraged to adopt other correct arguments and exhibits

17   and I would like the Court's permission today to -- if that

18   is the case with Mr. Bitgood -- to adopt his arguments if

19   those come up as the same as mine.

20          THE COURT:  No objections?

21          MS. NORMAN:  Thank you, Your Honor.

22          MR. OUBRE:  No.

23          THE COURT:  Okay, we are going to proceed.

24          The Court calls cause number 22-CCV-070378;

25   Richard P. Jones, Michael Joseph Bitgood AKA Michael Easton

1  and Lewis Brisois Bisgaard & Smith LLP vs. Karina Martinez,

2  Marianna Sullivan, Imperial Lofts LLC.

3              And as I stated earlier, we are going to

4  start with the Rule 12.

5              MR. OUBRE:  Your Honor, do you prefer if we

6  stand or sit?

7              THE COURT:  That is totally up to you.  I am

8  aware of Mr. Easton's situations so I prefer he doesn't --

9  have to -- he doesn't stand.  I prefer he doesn't stand.

10              MR. BITGOOD:  Every so often I can.

11              THE COURT:  Okay, well I'd prefer it if you

12  don't.

13              MR. BITGOOD:  Okay, well your preference is

14  my selection.

15              THE COURT:  So I am not going to make

16  everybody -- anybody else stand but if you would like to

17  stand that is fine as well, okay.

18              MS. NORMAN:  Your Honor, we are also here --

19  the total list of Defendant's in this case is: Imperial

20  lofts LLC, Imperial Lofts Owner, David Oubre, Karina

21  Martinez --

22              THE COURT:  That -- we are not there yet, Ms.

23  Norman.  When we get there I will let you know.  Because

24  they are not necessarily Defendant's until we rule on that.

25              THE REPORTER:  Judge.

```
1                    MR. BITGOOD:  Your Honor, I miss what you

2    said.

3                    THE REPORTER:  I need a couple of minutes to

4    restart my computer.

5                    THE COURT:  Go ahead.

6                         (BREAK TAKEN)

7                    THE COURT:  Okay.  Ms. Norman, what I was

8    stating earlier is that I have several motions that were

9    filed this morning regarding, this morning or last night,

10   regarding whether to strike Mr. Oubre and someone else --

11   which I haven't had a chance to read -- as far as parties to

12   this suit.  This was filed yesterday.

13                   MR. BITGOOD:  Your Honor, we are not aware of

14   any Motion to Strike --

15                   MS. NORMAN:  We haven't seen --

16                   MR. BITGOOD:  -- we haven't received a copy

17   of it.  We don't know what you --

18                   THE COURT:  Okay.  Well, maybe -- I mean, can

19   somebody take this up?  I just got this today.

20                        (Bailiff complies)

21                   MR. BITGOOD:  Okay.  We know about this.  We

22   know about this exhibit.  We know about this.

23                   MR. OUBRE:  Oh, Your Honor, those --

24                   MR. BITGOOD:  There is not a motion, Judge.

25                   MR. OUBRE:  -- are supplements that were
```

1    filed last week.

2              THE COURT:  Okay, so they are supplements --

3              MR. OUBRE:  I think we sent -- both parties

4    sent copies in for the Court in case the documents didn't

5    hit the system.

6              MR. BITGOOD:  Yeah, we are good.

7              THE COURT:  Okay.

8              MR. BITGOOD:  None of them are requesting a

9    strike, that is what scared me.

10             THE COURT:  Okay.  I just got all that --

11             MR. BITGOOD:  Understood.  And again, Your

12   Honor, I can remain seated when I address the Court.

13             THE COURT:  You can remain seated when you

14   address the Court.

15             MR. BITGOOD:  Thank you.  What concerned me

16   is you said a Motion to Strike there is no Motion to Strike

17   here.  Ah!  There is, it is buried in there.

18             THE COURT:  Yes.

19             MR. BITGOOD:  Got it.

20             THE COURT:  So you guys are saying that, that

21   is a previous motion?

22             MR. BITGOOD:  Excuse me, Your Honor?

23             THE COURT:  You guys are saying that these

24   new motions that I received this morning are --

25             MR. BITGOOD:  Yes, we have copies of them.

1          THE COURT:  -- a part of the previous motions

2    that have already been filed?

3          MR. BITGOOD:  He claims --

4          MR. OUBRE:  Yeah, Your Honor, those are

5    supplements to the previous responses.

6          THE COURT:  Okay.  So I don't need to

7    consider anything that is in these motions that have been

8    filed yesterday?

9          MR. OUBRE:  No, Your Honor.  Those are --

10   those are supplements.  Both of the parties sent in

11   supplements and responses and they were emailed to the clerk

12   just so that Your Honor would have them because we weren't

13   sure if it would get through the electronic system in time.

14         MR. BEERS:  If I can add to that, Judge?

15         THE COURT:  Yes.

16         MR. BEERS:  Two of the items in that packet

17   that you have were filed yesterday.  One of them is in

18   Exhibit 2A that I filed, which is an updated attorneys fee

19   affidavit updated from two weeks ago when we were here.  And

20   then, one of the things is a proposed order on the SLAPP

21   Motion that was updated from the one that I filed two weeks

22   ago.  So there are two things in there that were actually

23   filed yesterday.  I don't know if they have been accepted

24   yet or not but they were filed yesterday.

25         THE COURT:  They were accepted this morning.

1          MR. BITGOOD:  Your Honor, if I may point out

2    one thing in that Prayer for Relief, he is not asking for

3    the relief of striking the pleading.  So you can call it

4    anything you want at the State Bar v Heard, you can call it

5    a deed of trust, it is what you ask for in your Prayer for

6    Relief that controls and puts me on notice as to what you

7    really want.  If you look at the Prayer for Relief nowhere

8    does he ask for the Court to strike the pleading.  What he

9    asks is that he not be disqualified and disqualification is

10   not on the table today.  You asked him last time, do you

11   know what a Rule 12 is and he said he did.  That is what we

12   are going on first as per the Court's instructions.

13          THE COURT:  That is why I wanted to make sure

14   that we are all on the same page.  And that is why --

15          MR. BITGOOD:  We are now.

16          THE COURT:  Are we going to -- everybody has

17   to understand where I am coming from.

18          MR. OUBRE:  And so, there is no argument that

19   we should be disqualified today it is simply under Rule 12,

20   Motion to Show Authority.

21          MR. BITGOOD:  That --

22          THE COURT:  That is my understanding that's

23   what I thought we were going on today.

24          MR. BITGOOD:  That is correct.

25          THE COURT:  When I spoke earlier I was saying

1    -- that was what I was talking about when I was telling you

2    you are not there yet.  I have not read your supplement at

3    all, okay, because I just received them about ten minutes

4    before we started Court.

5                   MR. BITGOOD:  Your Honor, you are correct.

6                   Disqualification and Rule 12 are two

7    different sets of animals.  They both have different

8    remedies so disqualification is not set today.  But because

9    of the allegations made in those pleadings -- which are live

10   pleadings -- they will be relevant to everything that takes

11   place today.  So those are called judicial admissions.  But

12   no, disqualification is not on the table.  The only thing

13   set today according to the docket is the Rule 12 Motion, the

14   SLAPP Motion and then his Motions if he survives 12 and the

15   SLAPP.  So on that, we all agree.

16                   THE COURT:  Okay.  We will hear 12 -- in this

17   order:  Rule 12, Motion to Compel and then we will hear the

18   SLAPP Motion.

19                   MR. BEERS:  I think the SLAPP would follow

20   the Rule 12 if we are still going after that, Judge.

21                   THE COURT:  Okay, we can do that.

22                   MR. BEERS:  I am not going to arm wrestle you

23   but that is what I believe, Judge.

24                   THE COURT:  Okay.  Let's start with the Rule

25   12.

1          Mr. Oubre, you may proceed.

2          MR. BITGOOD:  Excuse me, it is my motion but

3  I need to make an announcement.

4          Your Honor, the 682 rules in the Texas Rules

5  of Civil Procedure -- you pegged it correctly, there is only

6  one that shifts the burden.  It is Rule 12.

7          The burden is on you, David.

8          MR. OUBRE:  Okay.

9          Your Honor, the Plaintiff's have alleged that

10  we do not have authority to represent our clients.  I have

11  attached the affidavits from all of my clients indicating

12  that I and the law firm of Lewis Brisbois Bisgaard & Smith

13  have authority to represent them in this case.  I have

14  attached the affidavit from Thomas Larson, who is General

15  Counsel for NRES Holdings, his job duty includes the

16  management of legal matters for Imperial Lofts including

17  retention of Counsel's and he indicates that I have

18  authority to represent Imperial Lofts.  I filed an

19  additional affidavit from Mr. Larson indicating -- even

20  though it wasn't alleged in the motion that the additional

21  Defendant who was added -- that I have the authority to

22  represent that Defendant which was Imperial Lofts Owner,

23  LLC.  I have also attached the affidavits from Ms. Sullivan

24  -- Ms. Sullivan and Karina Martinez which indicate that I

25  have the authority to represent them in this lawsuit.

```
 1                    THE COURT:  Mr. Easton, your response?
 2                    MR. BITGOOD:  Response?  Your Honor, I have
 3    one question.  Does he rest on his presentation?
 4                    THE COURT:  I --
 5                    MR. OUBRE:  Yes.
 6                    MR. BITGOOD:  He rests.  Okay, he said yes.
 7                    Judge, first of all, the affidavits are not
 8    before the Court because they have not been adopted and
 9    incorporated by reference.  Take the case up to him, Susan.
10                    MS. NORMAN:  May I approach?
11                    MR. BITGOOD:  He has to do that.  It is
12    fundamental, without that you can't even look at those
13    affidavits.  Number two, the affidavits are hearsay.  And
14    number three, the case law is legent.  He's got to put on
15    evidence before he rests.  Do you want the cases?  I got
16    them here for you.
17                    MR. OUBRE:  Your Honor, in response to that
18    --
19                    MR. BITGOOD:  No, you rested.
20                    MR. OUBRE:  Well --
21                    THE COURT:  You can respond to that part of
22    it.
23                    MR. BITGOOD:  Okay.
24                    MR. OUBRE:  Your Honor, in the Second Amended
25    Response to Plaintiff's Motion to Show Authority filed
```

1    7/21/2022 it says, "See Exhibits A-C, incorporated herein

2    and Lewis Brisbois and Exhibits D-F, incorporated herein and

3    attached."  Those -- so those are showing that, that is

4    incorporated.  So I don't know what he is talking about when

5    he says, "See Exhibits A-C, incorporated herein and

6    attached."

7                    MR. BITGOOD:  I'm -- may I respond?

8                    THE COURT:  You may respond, Mr. Easton.

9                    MR. BITGOOD:  On September 7th, which was the

10   last live pleading, he submitted 6 affidavits -- or he

11   thought he was submitting 6 affidavits -- none them are

12   incorporated by reference into his live pleading.

13   Therefore, they are not even before the Court.  So the Court

14   can't even look at them for examination or sufficiency --

15   that preserves our objection.  But all of that --

16   notwithstanding, he made a stipulation that he was not going

17   to bring his clients to court.  When he made that

18   stipulation I prepared, according to the Bear Opinion and

19   also Phillips v Phillips -- he has to put on evidence, live

20   testimonial evidence.  He has already stipulated he is not

21   going to do that.  This part of it is over.

22                    MS. NORMAN:  May I further --

23                    MR. BITGOOD:  And he rested.

24                    MS. NORMAN:  May I further respond, Your

25   Honor?

1          Under Harrison v Baer an Amended Pleading

2    completely supplants a prior pleading.  So his Amended --

3    Second Amended has been supplanted by his Third Amended,

4    which does not contain attachment and incorporation.

5          MR. OUBRE:  Your Honor, in the Second Amended

6    Response to the Motion to Show Authority I attached

7    affidavits from my clients indicating that I have authority

8    to represent them in this matter.  The supplements that they

9    are talking about -- there was a Second Supplemental

10   Response and the affidavits were attached to the

11   Supplemental Response and filed with the Court.  Several of

12   them are the same affidavits that were previously filed but

13   I did not file an Amended Response.  It says, "Second

14   Supplemental Response to Plaintiff's Motion to Show

15   Authority."  It is not an Amended Response.

16          MR. BITGOOD:  But, Your Honor, in any event

17   his failure to put on evidence -- live testimonial evidence

18   is fatal.  I cite the case in Re B-A-A-R.

19          MS. NORMAN:  B-E-A-R.

20          MR. BITGOOD:  It is part of the Lexis 5889.

21          Did you take him the case law?

22          MS. NORMAN:  No.

23          MR. BITGOOD:  And this was the key holding in

24   that case.  It said he -- there was no testimony.  The

25   record shows Turner's statements were not evidence, no

1  witnesses were called and no offer of proof was made,

2  because he failed to carry his burden, the Court had no

3  discretion and had to sustain the Rule 12 Motion.

4           He rested his case and didn't call any

5  witnesses, there is no getting around that.

6           MR. OUBRE:  Your Honor, I might add that this

7  Supplemental Response -- not Amended Response but the Second

8  Supplemental Response -- says Defendant's have attached the

9  affidavits of Karina Martinez, Marianna Sullivan and Tom

10  Larson as Exhibits A, B, C and D.  These affidavits have

11  already been attached on several pleadings in a Response

12  that was filed -- an Amended Response that was filed -- a

13  Supplemental Response that was filed and they are before the

14  Court.  He is asking the Court to ignore affidavits which

15  are testimony and which are evidence that I have authority

16  to represent my clients in this matter.

17           MR. BITGOOD:  Your Honor.

18           MR. OUBRE:  And I can read the testimony.

19  The affidavits --

20           MR. BITGOOD:  No.

21           MR. OUBRE:  -- of Karina Martinez, they are

22  before the Court.  And she -- they indicate that both me and

23  my firm located at 24 Greenway Plaza have authority to

24  represent them in this lawsuit.

25           MR. BITGOOD:  Your Honor, I need to object,

1    please.  He rested.

2                   THE COURT:  What is your legal objection, Mr.

3    Bitgood?

4                   MR. BITGOOD:  Objection, he has rested his

5    case.  He cannot produce new evidence.  He rested.

6                   THE COURT:  The objection will be sustained.

7                   MR. OUBRE:  So, Your Honor, you --

8                   THE COURT:  The --

9                   MS. NORMAN:  Your Honor, may I ask the deputy

10   to hand you this?

11                  THE COURT:  Okay.  Do either parties have the

12   San Antonio v. Aguilar case?

13                  MR. BITGOOD:  Which case?

14                  THE COURT:  San Antonio v. Aguilar.

15                         (No response)

16                  THE COURT:  Okay.  Neither party has it,

17   right?  You don't have it either?

18                  MS. NORMAN:  No, sir.

19                  THE COURT:  Okay, give me -- let me take a 5

20   minute break.

21                         (Break taken)

22                  THE COURT:  Let's go back on the record.

23                  Mr. Easton, you may proceed.

24                  MR. BITGOOD:  Under the case -- I knew I had

25   him back on March 11th, like I told him, under the case of

1    In re Salazar cited at 315 S.W.2d 279; when he represents a

2    corporation, Your Honor, he could only represent the

3    corporation.  He can't represent any officers, he cannot

4    represent any employees, he cannot represent anybody else.

5    That is Texas law.  While he might've gotten away today,

6    okay, with representing the LLC's he cannot represent

7    individuals.  He just can't.  That is the law in Texas.  So

8    I told him I had him then on March the 11th.

9                And the third thing I had him on is that he

10   didn't have a certificate to do business in Texas on March

11   the 11th.  When he filed his original pleading their

12   certificate to do business was expired, failing to renew it

13   and filing a pleading makes the pleading void.  And on top

14   of that, it also constitutes a misdemeanor.  I don't want to

15   accuse my friend of a crime, but inadvertently he may have

16   committed it and you can't be party to that.  Under 71.012

17   of the Texas Business and Commerce Code; he must, must -- he

18   is a foreign corporation -- with no grace period have a

19   certificate on file with the Secretary of State before he

20   files a document in a Texas court.  He did not do that.  He

21   did not even apply until March the 28th.  Therefore, every

22   pleading he filed is Void Initio on top of the fact that he

23   cannot represent individuals if he represents the

24   corporation.  Would the Court like a copy of the Salazar

25   case?

1                    THE COURT:  Yes, please.

2                    MR. BITGOOD:  Susan.

3                    THE COURT:  Sir, you may respond.

4                    MR. OUBRE:  Your Honor, we filed the

5     application on March 28th -- that was accepted by the

6     Secretary of State -- that doesn't disqualify us as

7     attorneys from representing a party and filing an answer.

8     Second, we have filed Amended Answers and so it is just a

9     Moot point.

10                    THE COURT:  You filed an Answer as a

11    corporation, as a firm or as an individual?

12                    MR. OUBRE:  I filed it as David Oubre under

13    law firm of Lewis Brisbois Bisgaard Smith.

14                    MR. BITGOOD:  In answer to the Courts

15    question, Your Honor, on March 11th the block said Lewis

16    Brisbois Bisgaard, LLP by David Oubre.  So no, he filed it

17    in the name of that firm and they did not have authority to

18    appear in a Texas court.

19                    MR. OUBRE:  Your Honor, I have authority as

20    an attorney licensed in the state of Texas to appear in the

21    Texas court.

22                    MR. BITGOOD:  Understood.

23                    MR. OUBRE:  There are things that a

24    partnership or a corporation can or cannot do or may be

25    fined for doing but that has no bearing on an Answer filed

1   by an attorney who has filed Amended Answers on behalf of

2   all the Defendant's.

3                    MR. BITGOOD:  There you go, he just said it.

4                    Now --

5                    MR. OUBRE:  I represent both Imperial

6   entities, Karina and --

7                    THE COURT:  Let him finish.  Then, you can

8   respond.

9                    MR. OUBRE:  Okay.

10                   THE COURT:  Go ahead.

11                   MR. BITGOOD:  Me?

12                   MR. OUBRE:  I -- well, I have filed Amended

13  Answers on behalf of the two Imperial Loft entities, Ms.

14  Sullivan and Ms. Martinez.  But regardless, there is no

15  exclusion of an Answer or me not being able to represent

16  parties as a licensed attorney in the state of Texas.

17  Subsequently, we did file the application which was accepted

18  by the Secretary of State.

19                   THE COURT:  Mr. Bitgood, you can respond.

20                   MR. BITGOOD:  Thank you, Your Honor.

21                   I don't disagree that a lawyer has authority

22  to represent clients in a Texas court but if a lawyer signs

23  a pleading on behalf of a company that cannot appear in a

24  Texas court -- just like a tax franchise and

25  franchisement -- the pleading is void, 71.012 of the Texas

1    Business and Commerce Code is clear.  In addition, under

2    Texas Rule of Discipline for Lawyers 109; a lawyer employed

3    by an organization represents the entity and the entity

4    only.  He cannot represent Karina Martinez, who is adverse

5    to him now, Mariana Sullivan and the corporations.  He can't

6    do that, Texas law forbids it.  So I had him there too.

7                I just don't want you to go pull a case and

8    then you say, you pulled the rabbits out of your hat and

9    made me go through all that work -- either way he is out.

10   And 1.12 is organization of a client he signed on and that

11   is, you know -- early on, Your Honor, I had asked him to

12   please furnish me with his contract of employment and he

13   won't do it.  Neither will he furnish me with the

14   declaration page from his insurance policy, which the Texas

15   Supreme Court says he should have done that six months ago.

16   He said it in front of me the other day he was going to do

17   it, he is yet to keep his word there.  But more importantly

18   than all of that, I bet you if the Court was to Compel the

19   Contract what the contract would show -- it would show they

20   hired Lewis Brisbois Bisgaard & Smith, LLP, not him.

21               Now, if you want to settle the issue once and

22   for all, have the Court order and compel him to produce his

23   contract In Camera for the Court and I'm telling you, that

24   is what it is going to say.  Because this is an insurance

25   company and when it comes to insurance companies I am

1  well-versed.  The first letter I sent him cited a case

2  called Tilley v. Employers Insurance it is a 1963 case and

3  the Texas Supreme Court --  73' case, I'm sorry -- set down

4  the standard by which when an insurance company hires a law

5  firm the client remains the only client, they can have

6  nobody else.  I know that law.  I sent them a letter dated

7  March 14th -- Counsel, watch where you are walking, you are

8  walking into a bad position here but it kept on and on and

9  on -- oh, I don't know what you are talking about, I don't

10 know what you are trying to do -- okay, it is not my job to

11 do his job.  Remember, I am the one without the law bar

12 card.  He is the one with the bar card, been doing it for 29

13 years.  The fact that he didn't take me serious now comes

14 home to roost.  But he cannot do that because the law cannot

15 allow him and the Court's cannot allow a lawyer to dip below

16 a standard.  The disciplinary rules are mandatory on all of

17 us and he can't -- the Court can't allow that, besides the

18 fact that he rested his case.

19          MR. OUBRE:  Your Honor, I have affidavits

20 which have been filed with the Court incorporated into --

21          MR. BITGOOD:  Here we go.

22          MR. OUBRE:  -- supplements several times.

23 Saying from each individual and a representative of the

24 corporations that I have the authority to represent them in

25 this case.

1            MS. NORMAN:  Your Honor, I have to make a

2   hearsay objection.  The affidavits are hearsay.  He cannot

3   sponsor someone else's words -- even though they may be

4   filed in Court -- if the person is not here to sponsor their

5   own affidavit.  If he had his own affidavit, for some

6   reason, he might be able to sponsor it but it is hearsay and

7   I object under hearsay on behalf of Mr. Jones and my other

8   -- the Texas Domestic Partnership, to a hearsay being --

9   attempting to be used as evidence in this case.

10           THE COURT:  My issue is -- before I rule on

11  your objection -- is that you rested and that is the only

12  issue I am having.

13           MR. OUBRE:  Well, Your Honor, my response

14  with the evidence was already before the Court.

15           THE COURT:  No, it was not.  You never asked

16  me to take judicial notice.  You never asked me to do any of

17  that.

18           MR. OUBRE:  Your Honor, I filed a response

19  with the Court incorporating the affidavits and attaching

20  them.

21           THE COURT:  And I am sure Mr. Easton is going

22  to say he objects to the affidavits.

23           MR. BITGOOD:  If I may, Your Honor?  I think

24  we finally found what you have been looking for.

25           American Fire and Insurance Company v. Jones

1    reported at 828 S.W.2d 767 -- we are about to hand you up

2    the case.  To answer what he just told you, instruments

3    attached to pleadings are not evidence.  Unless, they have

4    been formally introduced, marked and admitted -- give him

5    the case.  Judge, wait till we give you the case before you

6    run out.

7                        (Bailiff complies)

8                   MR. BITGOOD:  American Fire, that would be

9    number one of the new table.  Number one, American Fire and

10   Insurance Company v. Jones.  He can attach everything he

11   wants but it is not evidence of anything.  If that was the

12   case the Court would never have to conduct a trial it could

13   just look at the pleadings.

14                  THE COURT:  I am aware of that.

15                  MR. BITGOOD:  Thank you, sir.

16                  THE COURT:  Let's take a 2 minute break.

17                        (Break taken)

18                  THE COURT:  We are back on the record.

19                  What I would like both parties to do just so

20   that I can have a clear record, I am going to allow you to

21   make your statement again.  Although, you did rest I want

22   you to make your statement clear for the record.  And Mr.

23   Easton, you can make your argument clear for the record as

24   well.  Both parties.  And I want you to -- when you make

25   your argument about the Rule 12 I want you to make your

1    arguments about as far as he -- Mr. Oubre, correct -- has

2    authority to represent them based on the affidavits.  I also

3    want you to touch base on the Secretary of State, as well as

4    when that was filed.

5                    MR. BITGOOD:  With that being said, Your

6    Honor, we can take care of a few housekeeping matters now,

7    that he didn't do and I will do it for him.

8                    I'd ask the Court to take judicial notice of

9    certain things.  Would the Court do so providing they are

10   within the law?

11                   THE COURT:  Yes.

12                   MR. BITGOOD:  I will ask the Court to take

13   judicial notice of the court's file at this time.

14                   THE COURT:  I take judicial notice of the

15   court's file.

16                   MR. BITGOOD:  I'd ask the Court to take

17   judicial notice of Chapter 27 of The Civil Practice and

18   Remedies Code.

19                   THE COURT:  So noted.

20                   MR. BITGOOD:  I would ask the Court to take

21   judicial notice of the Texas Penal Code 42.07, which is the

22   law.

23                   THE COURT:  So noted.

24                   MR. BITGOOD:  Texas Penal Code 37.10.  Texas

25   Business and Commerce Code, Section 71.202.  Yes?  Wait a

```
 1   minute, I have to hand you a copy of it.  Susan, take this
 2   up there.
 3                     (Complies)
 4             THE COURT:  So noted.
 5             MR. BITGOOD:  My apologies, Judge.  There it
 6   is in writing, exactly what you are looking at.  I gave a
 7   copy to opposing Counsel.
 8             Texas Business and Commerce Code Section
 9   71.203.
10             THE COURT:  So noted.
11             MR. BITGOOD:  Texas Penal Code 37.02.
12             THE COURT:  So noted.
13             MR. BITGOOD:  Texas Penal Code 36.08.
14             THE COURT:  So noted.
15             MR. BITGOOD:  Texas Penal Code 15.02.
16             THE COURT:  So noted.
17             MR. BITGOOD:  Texas Penal Code 39.03.
18             THE COURT:  So noted.
19             MR. BITGOOD:  Texas Penal Code 39.06.
20             THE COURT:  So noted.
21             MR. BITGOOD:  The Texas State Bar Rules of
22   Professional Conduct.
23             THE COURT:  That is noted as well.
24             MR. BITGOOD:  Rule 13 of the Texas Rules of
25   Civil Procedure.
```

```
 1                    THE COURT:  So noted.

 2                    MR. BITGOOD:  Chapter 10 of the Texas Civil

 3   Practice and Remedies Code.

 4                    THE COURT:  So noted.

 5                    MR. BITGOOD:  Chapter 11 of The Texas Civil

 6   Practice and Remedies Code.

 7                    THE COURT:  So noted.

 8                    MR. BITGOOD:  The Texas Rules of Evidence.

 9                    THE COURT:  So noted.

10                    MR. BITGOOD:  15 United States Code 116, The

11   Cares Act.

12                    THE COURT:  So noted.

13                    MR. BITGOOD:  Texas Rule of Civil Procedure

14   11 Agreement in file -- the court's file dated April 26th

15   between the parties.

16                    THE COURT:  Okay, so noted.

17                    MR. BITGOOD:  And 21 Texas Penal Code 7.02.

18                    Hand him the order, please.

19                    THE COURT:  Now, going back to what I

20   instructed.

21                    Mr. Oubre, regarding the Rule 12 you are

22   stating that the affidavits are sufficient?

23                    MR. OUBRE:  Yes, Your Honor, and my

24   understanding is the Court -- he asked you to take judicial

25   notice of the court's file and that was accepted.  I would
```

1  note that part of the court's file in the response that I

2  filed to this motion was a Supplemental Response to Motion

3  to Show Authority was Exhibit A, the affidavit of Karina

4  Martinez showing you I have authority -- we have authority

5  to represent her in this suit.  Exhibit B, the affidavit

6  from Karina Martinez saying that I have -- David Oubre has

7  the authority to represent her in the lawsuit.  Exhibit C,

8  the affidavit of Marianna Sullivan indicating that myself

9  and my law firm have authority to represent her in this case

10 and that we are her attorneys.  The affidavit of Thomas

11 Larson who is Outside General Counsel for NRES Holdings,

12 that was attached as Exhibit D.  His job duties for an NRES

13 Management includes management of legal matters for Imperial

14 Lofts, LLC --

15          MR. BITGOOD:  Your Honor, I object him

16 reading from the affidavit.

17          MR. OUBRE:  Imperial Lofts, LLC.  That is --

18          MR. BITGOOD:  Hold up.  Hold up, let him

19 rule.

20          THE COURT:  Are you reading from the

21 affidavit?

22          MR. OUBRE:  Yes, Your Honor.

23          THE COURT:  Okay.  That objection will be

24 sustained.

25          MR. OUBRE:  The affidavit of Thomas Larson

1    which was part of the court's file, which the Court

2    indicated that judicial notice has been taken is attached as

3    Exhibit D.  I have also attached as Exhibit E a certified

4    copy of the application of Lewis Brisbois Bisgaard & Smith

5    dated March 9, 2021.  And an application attached as

6    Defendant's Exhibit F dated March 28, 2022 which indicates

7    that it was effective on filing and that is dated March 28,

8    2022.

9                THE COURT:  All right.  When was the

10   expiration date?

11               MS. NORMAN:  March 9th --

12               MR. BITGOOD:  March 9, 20 -- I'm sorry.

13               MR. OUBRE:  March 9, 2022.

14               And, Your Honor, on March 28th I've already

15   filed -- to that Exhibit, which was attached as Exhibit F.

16   And then, Exhibit G was a Proof of Payment for the

17   Application for Registration.

18               THE COURT:  So --

19               MR. OUBRE:  I attached as Exhibit H --

20               THE COURT:  Mr. Oubre --

21               MR. OUBRE:  -- what happened was we filled on

22   March 28, 2022, the Application for Registration for Limited

23   Liabilty Partnership and Mr. Bitgood filed --

24               THE COURT:  Before we get into that, Mr.

25   Oubre, it expired on March the 9th, 2022?

```
 1                    MR. OUBRE:  Yes.

 2                    THE COURT:  Okay.  And you renewed it on

 3   March 28th?

 4                    MR. OUBRE:  Yes.

 5                    THE COURT:  Okay.

 6                    MR. OUBRE:  Yes, Your Honor, and I requested

 7   the -- Amended Answers were filed on behalf of my clients

 8   last week and that is part of the court's file.  And I

 9   requested -- the Court has taken judicial notice of those

10   Amended Answers, it is my understanding, from him moving for

11   the entire file.

12                    THE COURT:  Okay.  Mr. Easton, you can

13   respond.

14                    MR. BITGOOD:  I got something easier for --

15                    MR. OUBRE:  And, Your Honor, I would also

16   like to lodge an objection to the Declaration of Custodian.

17   The Motion to Show Authority, Mr. Bitgood filed --

18                    MR. BITGOOD:  He rested his case, Your Honor,

19   and now he is object --

20                    MR. OUBRE:  Your Honor.

21                    MR. BITGOOD:  Objection, Your Honor, he

22   rested his case.

23                    THE COURT:  Okay --

24                    MR. OUBRE:  I am going to object to the

25   affidavit that was attached, the Declaration of Custodian.
```

1    First of all, I would object to the exhibits attached to

2    Plaintiff's reply to Amended Response to Defendant's Motion

3    to Show Authority.  There is a Declaration of Custodian

4    filed by Mr. Bitgood AKA Michael Easton.  It is not

5    notarized at all.

6              There are several documents which I would

7    object to -- attached to Exhibit A, the Declaration of

8    Custodian.  In that Declaration, he refers to Exhibit A;

9    applications before Liability Partnership Correspondence and

10   there are screenshots from websites.  I would object to all

11   of those exhibits as -- under Exhibit A, as hearsay.  There

12   is no affidavit proving those up.  There is no affidavit

13   from anyone.  It is simply Mr. Bitgood having an unsworn

14   Declaration and indicating that these are correct copies

15   maintained by the Secretary of State when he is obviously

16   not the custodian of Secretary of State.  They are not

17   certified.

18             THE COURT:  Okay.  I understand that, Mr.

19   Oubre.  Let me just ask you a question.  Do you want me to

20   take judicial notice of the court's file or do you not?

21             MR. OUBRE:  I do want you to take judicial

22   notice of the court's file but I do have an objection to

23   that exhibit.

24             THE COURT:  Well, if you -- did you raise

25   that objection when you agreed to the judicial notice of the

ASHLEY AVILA, CSR #11807
COUNTY COURT AT LAW NO. 3
FORT BEND COUNTY

1    court's file?  Because if you don't want me to take judicial

2    notice of the court's file then your affidavits they don't

3    come in.  Do you understand that?

4                    MR. OUBRE:  Your Honor, I am asking the Court

5    to take judicial notice of the court's file.  I am saying I

6    just have an objection to the evidence that was submitted.

7                    THE COURT:  The Court has already taken

8    judicial notice of the court's file.  What I am telling you

9    is that, what would have been proper, is in the beginning

10   when you made your arguments you would have said, can the

11   Court take judicial notice of the court's file.  And then, I

12   would have had to -- I would have taken judicial notice of

13   the court's file based on his objection or another objection

14   or not, right.  I think now what you are asking me to do is

15   to just take judicial notice of certain parts of the court's

16   file.

17                    MR. OUBRE:  Your Honor, I am asking the Court

18   to take judicial notice of the court's file including the

19   Amended Answer that I have on file, which is before the

20   Court.

21                    THE COURT:  Okay.

22                    MR. OUBRE:  I am just saying, I have a

23   hearsay objection to this Declaration of Custodian and the

24   exhibits that were attached.  It is hearsay, it is not even

25   an affidavit.

1    MR. BITGOOD:  Your Honor, you had it correct.

2 The time for him to have requested it, before I requested

3 it, was before he rested.  That was crucial to his case.

4 Now, I hope the Court doesn't think my old age I going to

5 cut my throat by asking you to take judicial notice of

6 something that is going to kill me.  So the case is called

7 Tschirhart v. Tschirhart 876 -- it is number 42 Susan -- 876

8 S.W.2nd 507.  And the case holds, the Court may take

9 judicial notice of a pleading in the court's file but it can

10 never take judicial notice of the truth of the matter

11 asserting.  And that is exactly what he is asking you to do,

12 he can't do it.

13    MR. OUBRE:  Your Honor, is my objection

14 sustained or overruled?

15    THE COURT:  As far as --

16    MR. OUBRE:  His Declaration of Custodian,

17 attached as Exhibit A to his Plaintiff's --

18    MR. BITGOOD:  Should have put it in writing.

19    MR. OUBRE:  -- reply to the Amended, Amended

20 Response to Defendant's Motion to Show Authority.

21    THE COURT:  Okay, your response to that?

22 Just -- he is objecting to just one part of the Declaration,

23 I guess the Declaration.  Correct?

24    MR. OUBRE:  Yes.

25    MR. BITGOOD:  Your Honor.

1          MR. BEERS:  Judge, I guess -- I don't want to

2    get -- I know I am next on the SLAPP Motion but I don't want

3    this record to look like it is confused or muddled as to the

4    distinction between the Court taking judicial notice of some

5    piece of paper being in the file, as opposed to that piece

6    of a paper being evidence in a hearing.  Mr. Oubre rested

7    and now he is making objections to things.

8          When my SLAPP Motion is heard there is an

9    affidavit attached to my SLAPP -- Declaration attached to my

10   SLAPP Motion but SLAPP Motions are to be determined.  Like

11   Motions for Summary Judgment, where you file an affidavit or

12   things attached to the motion -- which is very distinctive

13   from a Rule 12 Motion, that requires the Court to receive

14   evidence.  Somebody puts an exhibit sticker on something and

15   gives it to the Court, somebody gets on the witness stand or

16   raises their right hand and swears to tell the truth.

17         So I don't want this record to look like oh,

18   wait, we were equating taking judicial notice as being

19   evidence in a hearing versus a 166a Motion for Summary

20   Judgment type hearing.

21         THE COURT:  And I would agree.  I guess the

22   problem I am having -- and maybe, Mr. Oubre, you can help me

23   with it.  The issue I am having is since we have Covid

24   issues the affidavit has been given a little bit more

25   credibility, okay.  But again, you never -- you rested.  So

1   technically, those affidavits are not into -- in evidence.

2   So -- but if we allow Mr. Easton, you know, judicial notice

3   then we can let those, you know, affidavits come into

4   evidence, correct?

5                    MS. NORMAN:  No, sir.

6                    MR. BITGOOD:  No, sir.

7                    THE COURT:  No, no.  I asked Mr. Oubre.

8                    MS. NORMAN:  I'm sorry.

9                    MR. BITGOOD:  We apologize.

10                   THE COURT:  Okay.

11                   MR. BITGOOD:  We are going to shut our mouth.

12                   THE COURT:  I asked Mr. Oubre to respond to

13  this.  So they would come in.  Correct?

14                   MR. OUBRE:  Your Honor has already taken

15  judicial notice.  I filed a response to this motion and

16  attached as evidence affidavits from my clients.

17                   THE COURT:  But --

18                   MR. OUBRE:  That is evidence in my authority.

19                   THE COURT:  So what you are saying is that

20  anything that I take judicial notice of is considered

21  evidence?

22                   MR. OUBRE:  I -- Your Honor, I am saying that

23  I have filed a response.

24                   THE COURT:  That is not what I asked you, Mr.

25  Oubre.

1          MR. OUBRE:  Your Honor, you are taking

2     judicial notice of the entire file.  I am just saying I have

3     an objection to this portion of the motion.

4          THE COURT:  I'm not even talking about the

5     motion right now.  What I am saying to you is that when I

6     take judicial notice are you saying to the Court that, that

7     is evidence?  That everything that I take judicial notice of

8     is considered evidence?

9          MR. OUBRE:  Yes.

10          MS. NORMAN:  May I approach?

11          THE COURT:  You may respond now.

12          MR. BITGOOD:  To your what?  Question?

13          THE COURT:  You may respond.

14          MR. BITGOOD:  Your Honor, Tschirhart says if

15     it was evidence we would never need a trial, we would never

16     have to come down here, we would never need to impanel

17     jurors because you can just take judicial notice and pick

18     what side you like the most and render a judgment.  It is

19     never evidence.  He has to put on evidence.  He had his

20     opportunity.  He rested without putting on evidence.  Now, I

21     can help him out for November the 10th if you let me -- if

22     you let me.

23          THE COURT:  Okay.  Go ahead, you may proceed.

24          MR. BITGOOD:  Yes, Your Honor.  I would like

25     to be sworn first, please, from where I sit.

1          THE COURT:  Will you please raise your right

2   hand?  Do you solemnly swear or affirm the testimony you are

3   about to give will be the truth, the whole truth and nothing

4   but the truth so help you God?

5          MR. BITGOOD:  I do.

6          Your Honor, I am going to offer BE1 through

7   16 as evidence -- and that is the list.  I am handing

8   Counsel a copy of that list and that is for the court

9   reporter and I move to admit BE1 through 16 into evidence

10  for the purpose of this hearing and any subsequent hearing.

11  BE, Your Honor, stands for Bitgood Easton just so that there

12  is no confusion.

13          THE COURT:  Before I -- I am going to ask for

14  any objection but before I rule I want to finish the Rule

15  12.

16          MR. BITGOOD:  That will -- okay, but I still

17  offer them.

18          THE COURT:  Any objection?

19          MR. OUBRE:  Yes, Your Honor, I haven't even

20  seen exactly what has been attached.

21          MR. BITGOOD:  Hand it to him.  Susan, hand it

22  to him.

23          THE COURT:  You can get that.  I will allow a

24  few more minutes until Mr. Oubre sees them but let's take up

25  the Rule 12 before I make my decision.

1           Mr. Oubre, let me ask you a question

2    regarding the Rule 12.  Do you have witnesses that you can

3    get here?

4                   MR. OUBRE:  Today?

5                   THE COURT:  Yes, today.

6                   MR. OUBRE:  No.

7                   THE COURT:  Okay.

8                   I am going to grant the Rule 12.

9                   MR. BITGOOD:  Thank you.

10                  MR. OUBRE:  And, Your Honor, for the purposes

11   of them drafting the order can I request exactly what the

12   basis --

13                  MR. BITGOOD:  Hold on.  Hold on, give him the

14   order.  Wait, wait, wait.  He is right.  I need to give --

15   show him.  And I filled in the date for the next hearing.

16                  THE COURT:  I am -- let me just say this for

17   your record.  I am going to say this for the record so you

18   can have it.  Even if I say that you put on evidence with

19   the affidavits, okay, they were never admitted into

20   evidence.  Anything he filed from the date that it was

21   expired would be gone anyway.  You understand that, right?

22   You know that, because that is why you filed the Answers --

23   the Amended Answer.  So I guess that is part of the issue

24   and I will let you have that for the record.  Normally, I

25   wouldn't say anything.

```
1              MR. OUBRE:  Your Honor, can I at least
2    request that this case be abated pending appeal of this
3    issue?
4              MR. BITGOOD:  I will respond to that.
5              THE COURT:  You can.
6              MR. OUBRE:  He is not entitled to an
7    interlocutory appeal on this issue, okay.  If he wants to
8    abate the case as he told me -- no, I promised not to do
9    that to him.  We are not going to push each other about what
10   we spoke on the phone -- this is the law.  He wants to go to
11   mediation October 4th.  This is why I didn't want to pass
12   this hearing.  The gentleman needs some positive
13   reinforcement because every time we've tried to make a deal
14   with him we have been pranked, badly pranked.  So I don't
15   want anymore pranks.  If he is serious about settling he can
16   show up at that mediation take care of what was mine
17   minimal, minimal -- I mean I was under $20,000 including
18   attorney fees until they pranked -- and take care of this
19   gentleman back here named Richard P. Jones for what they did
20   to him.  And I haven't had a chance to tell this Court
21   exactly what they did to him.  But he keeps telling me he
22   doesn't understand this case.  This case is really simple.
23   He don't have a defense.  They had no standing and they
24   moved to evict 12 black tenants from the apartment complex
25   without standing, and I caught them and they came after me.
```

1    And while this was going on, this 21 day prank, his client

2    was on the phone trying to get me indicted.  Calling the

3    office of the District Attorney alleging, among other

4    things, that there was a conspiracy --

5                        (Interruption)

6                MR. BITGOOD:  Oh!  That is Mr. Healy.  Let

7    him in.

8                        (Bailiff complies)

9                MR. BITGOOD:  -- that there was a conspiracy

10   between John Healy, Brian Middleton and Michael Easton.  Not

11   to prosecute Michael Easton.

12               MR. OUBRE:  Let --

13               MR. BITGOOD:  Let me finish there, Counsel.

14               All these things were going on while we were

15   supposed to be in settlement talks.  There was no legitimate

16   settlement.  Now, today's ruling puts him behind the 8 ball.

17   He has to go to mediation in good faith.  Which is what I am

18   glad we did today.  He can settle this.  The next set of

19   orders you see -- Motion to Vacate all Previous Orders and

20   Dismiss the Case with Prejudice.  It is a win-win for

21   everybody with dignity and with honor.  Because I was

22   retired, Judge Lewis, retired.  Until this man called me

23   begging me to help him.  And I said, I don't have time for

24   this.  He said Michael, they are going to nail me.  And as I

25   went down that list of tenants I noticed something that was

1  very distinct, they all happened to be one race.  And that

2  ain't right, by anybody's stretch of the imagination.  And

3  if his client ever went before a jury, ever, I would hate to

4  think what a jury is going to do to his client.  So this is

5  in his best interest -- to pay the pennies on the dollars

6  we've asked for and get rid of this case.  So I can go back

7  to retirement and running around Houston with my friend,

8  John Healy, trying out different restaurants every week --

9  that is what I really want to be doing.  And writing, sir.

10            Now, the Court has made it's ruling and all

11  we ask is that you sign the order.  But that is what this

12  case was about, Judge.

13            THE COURT:  Mr. Oubre?

14            MR. OUBRE:  Well, Your Honor, I object to the

15  order.  Striking the pleadings --

16            MS. NORMAN:  It is required.

17            MR. OUBRE:  -- of the Defendant's in entering

18  the Default --

19            MR. BITGOOD:  It has to.

20            THE COURT:  The Default part is not -- I

21  haven't seen the order but the Default part -- I have to

22  Strike the Pleadings, okay.  That is required.

23            MR. OUBRE:  Your Honor, there are Amended

24  Answers on file that --

25            MR. BITGOOD:  Makes no --

```
 1                    MR. OUBRE:  -- are before the Court.

 2                    MR. BITGOOD:  Judge.

 3                    THE COURT:  Hold on.

 4                    MR. BITGOOD:  Okay.

 5                    THE COURT:  I have made my decision, okay.

 6               So we can move on.

 7                    MR. OUBRE:  Well, Your Honor, if that is the

 8      Courts ruling I can't go forward with any other hearings

 9      today.

10                    MR. BITGOOD:  That is correct.

11               Hand him the order.

12                    MR. OUBRE:  I object to the entry of the

13      order with regard to Striking the Pleadings and entering a

14      Default Judgment.

15                    THE COURT:  I am not going to enter a Default

16      Judgment.

17                    MR. OUBRE:  Okay.

18                    MR. BITGOOD:  Can you interlineate the word

19      "Default" then?

20                    THE COURT:  I am not going to enter a Default

21      Judgment.  I am going to Strike the Pleadings because I have

22      no choice.  It says, "I shall."  So I have to Strike the

23      Pleadings but I am not going to enter a Default Judgment.

24                    MR. BITGOOD:  Your Honor, would you like the

25      case or you have already made your ruling on that?
```

1              THE COURT:  I have already made my ruling.

2              MR. BITGOOD:  Thank you, sir.

3              THE COURT:  Thank you.

4              MR. BITGOOD:  Now, Judge, Mr. Beers motion is

5     what is left and he can't say a word.

6              MR. OUBRE:  Your Honor, I'm going to -- can I

7     at least request a continuance of any additional motions?

8     In light of the fact that you have ruled that my clients

9     have lost their lawyers and they -- I think they are

10    entitled to have representation in this case.

11             MR. BITGOOD:  There is a school of thought

12    that goes with this, Judge.  When you are given a hundred

13    warnings it is not my job nor this poor lady's job or Mr.

14    Jones' job nor mine to do his work.  He had enough advance

15    notice.  I sent him case sites, if you will look them up.

16             THE COURT:  Mr. Oubre is correct.  His

17    clients do not have representation at this time.  So you are

18    correct in that.  So I cannot move forward because they

19    don't have representation.

20             MR. BITGOOD:  If that is your feeling --

21             THE COURT:  That is the thing about doing the

22    Rule 12 first.

23             MR. BITGOOD:  Okay.  If the Court will sign

24    the order, interlineate the Default, we will go to

25    mediation.  If mediation doesn't settle then we will be

1    back.

2                    THE COURT:  Then you come back, yes.

3                    MR. BITGOOD:  November 10th at 1:30 is what

4    the order says.

5                    THE COURT:  Yes.

6                    MR. BITGOOD:  Good.  Okay, David.

7                    THE COURT:  We are off the record.

8        *(Whereupon, thereafter the proceedings for the*

9        *above-referenced case this date were concluded.)*

10                      * * * * * * * * * * * * * * * * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  THE STATE OF TEXAS )

2  COUNTY OF FORT BEND )

3     I, ASHLEY AVILA, Official Court Reporter in and

4  and for County Court #3, Fort Bend County, State of

5  Texas, do hereby certify that the above and foregoing

6  contains a true and correct transcription of all

7  portions of evidence and other proceedings requested in

8  writing by counsel for the parties to be included

9  in this volume of the Reporter's Record, in the

10 above-styled and numbered cause, all of which occurred

11 in open Court or video telephonically and were

12 reported by me.  I further certify that this Reporter's

13 Record of the proceedings truly and correctly reflect

14 the exhibits, if any, offered by the respective parties.

15     I, further, certify that the total cost for

16 preparation of this Reporter's Record is $308 and is

17 due and owing by DAVID OUBRE.

18     WITNESS MY OFFICIAL HAND this 13th day of

19 September, 2022.

20                              /s/Ashley Avila
                             ASHLEY AVILA, CSR
21                            TEXAS CSR # 11807
                          OFFICIAL COURT REPORTER
22                         COUNTY COURT OF LAW # 3
                           RICHMOND, TEXAS 77469
23                            PHONE: 281-292-7780

24

25

ASHLEY AVILA, CSR #11807
COUNTY COURT AT LAW NO. 3
FORT BEND COUNTY