| | |
|---|---|
| **Lewis Brisbois Bisgaard & Smith, LLP,** | |
| Plaintiff, | **Civil Action No. 4:22-cv-3279** |
| v. | |
| **Michael Joseph Bitgood a/k/a "Michael Easton,"** *et al.* | **Jury Demanded** |
| Defendants. | |

## PLAINTIFF LEWIS BRISBOIS BISGAARD & SMITH, LLP'S MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

Consistent with Rule 56, Plaintiff, Lewis Brisbois Bisgaard & Smith, LLP moves for

summary judgment on LBBS' trademark and trade name infringement and Lanham Act claims

against Defendants Michael Joseph Bitgood a/k/a Michael Easton, Susan C. Norman, and Bradley

B. Beers.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING ................................................................ 1

STATEMENT OF THE ISSUES .......................................................................................... 2

SUMMARY JUDGMENT EVIDENCE ................................................................................ 3

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 7
   A. LBBS' HISTORY ................................................................................................. 7
   B. LBBS' TRADEMARKS ........................................................................................ 8
   C. THE IMPERIAL LOFTS CASE AND CREATION OF THE INFRINGING ENTITY ........... 9

SUMMARY JUDGMENT STANDARD .............................................................................. 17

SUMMARY OF THE ARGUMENT .................................................................................... 17

ARGUMENT AND AUTHORITIES ................................................................................... 19
   A. LBBS IS ENTITLED TO SUMMARY JUDGMENT ON LBBS' TRADEMARK INFRINGEMENT
      AND UNFAIR COMPETITION CLAIM AGAINST DEFENDANTS. ............................... 19
   B. LBBS' EVIDENCE PROVES DEFENDANTS INFRINGED ON LBBS' TRADEMARKS AND
      TRADENAME. ..................................................................................................... 20
      *a. This Court already found Defendants infringed on LBBS' marks, all of which*
         *acquired secondary meaning* ...................................................................... 20
      *b. LBBS has legally protectable trademarks* ................................................... 21
         *i. LBBS' mark is inherently distinctive* ................................................. 21
         *ii. LBBS' marks have acquired secondary meaning* ................................ 22
      *c. There is a likelihood of confusion as to source, affiliation, or sponsorship* .............. 27
         *i. Type or strength of mark allegedly infringed* ..................................... 28
         *ii. Similarity between the marks* ............................................................ 29
         *iii. Similarity of the services* ................................................................. 29
         *iv. Identity of retail outlets and purchasers* ........................................... 30
         *v. Identity of the advertising media used* ............................................... 30
         *vi. Defendants' intent* .......................................................................... 30
         *vii. Evidence of actual confusion* ......................................................... 32
         *viii. Degree of care exercised by potential purchasers* ........................... 33
   C. DEFENDANTS' INFRINGEMENT WAS WILLFUL. ................................................... 33
   D. SUMMARY JUDGMENT EVIDENCE PROVES LBBS' FRAUD CLAIM. ....................... 38
   E. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON LBBS' CONSPIRACY CLAIM. ......... 39
   F. THE COURT SHOULD PERMANENTLY ENJOIN DEFENDANTS FROM INFRINGING LBBS'
      MARKS AND AWARD PLAINTIFF STATUTORY DAMAGES AND ATTORNEYS' FEES. ............... 41
      *a. The preliminary injunction standard* .......................................................... 41
         *i. LBBS has suffered irreparable injury* ............................................... 42

    *ii.  Other remedies, including monetary damages, are inadequate to compensate
        LBBS for its injuries* ............................................................................ 43

    *iii. The balance of equities favors a permanent injunction* ....................................... 44

    *iv. Public interest favors protection against trademark infringement, trade name
        infringement, and unfair competition* ................................................................. 44

  *B.  LBBS is entitled to statutory damages from Defendants* ........................................... 45

  *C.  LBBS is entitled to its reasonable attorneys' fees and costs of suit* ........................... 46

CONCLUSION .................................................................................................................... 48

CERTIFICATE OF SERVICE ............................................................................................ 49

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abraham v. Alpha Chi Omega*,
　708 F.3d 614 (5th Cir. 2013) .................................................................42

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
　518 F.3d 321 (5th Cir. 2008) .................................................................20

*Am. Rice, Inc. v. Ark. Rice Growers Coop. Ass'n*,
　532 F. Supp. 1376, 1389 (S.D. Tex. Mar. 2, 1982) (Gibson, J.).............42

*Amazing Spaces, Inc. v. Metro Mini Storage*,
　608 F.3d 225 (5th Cir. 2010) .............................................................19, 20

*Amstar Corp. v. Domino's Pizza, Inc.*,
　615 F.2d 252 (5th Cir. 1980) .................................................................31

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986).................................................................................17

*Angel Flight of Ga. Inc. v. Angel Flight Am., Inc.*,
　522 F.3d 1200 (11th Cir. 2008) .............................................................44

*Angel v. La Joya Indep. Sch. Dist.*,
　717 F. App'x 372 (5th Cir. 2017) .........................................................40

*Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*,
　214 F. Supp. 3d 573 (S.D. Tex. 2016) (Ellison, J.)...............................28

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
　550 F.3d 465 (5th Cir. 2008) .............................................................19, 22

*Berg v. Symons*,
　393 F. Supp. 2d 525 (S.D. Tex. Sept. 30, 2005) (Rosenthal, J.).............34

*Calpetco 1981 v. Marshall Exploration, Inc.*,
　989 F.2d 1408 (5th Cir. 1993) .................................................................17

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986).................................................................................17

*Chevron Intellectual Prop., LLC v. Allen*,
　Civ. Action No. 7:08-CV-98-O, 2009 U.S. Dist. LEXIS 74751 (N.D. Tex. Aug. 24, 2009) .................................................................................34, 47

*Coach, Inc. v. Brightside Boutique*,
   Cause No. 1:11-CA-20 LY, 2012 U.S. Dist. LEXIS 1464 (W.D. Tex. Jan. 6,
   2012) ..........................................................................................................45

*Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*,
   No. Civ. A. H-07-0315, 2007 U.S. Dist. LEXIS 68182 (S.D. Tex. Sept. 14,
   2007) (Rosenthal, J.) .................................................................................46

*Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Houston, Inc.*,
   Case No. H-07-0170, 2007 U.S. Dist. LEXIS 77630 (S.D. Tex. Aug. 16,
   2007) (Rosenthal, J.) .................................................................................41

*Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*,
   616 F. Supp. 2d 622 (N.D. Tex. 2009) ........................................................20

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ...................................................................................42

*Elvis Presley Enters. v. Capece*,
   141 F.3d 188 (5th Cir. 1998) ................................................................28, 32

*Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.*,
   735 F. Supp. 1334 (S.D. Tex. May 16, 1986) (Vela, J.) ..........................42, 47

*Flowserve Corp. v. Hallmark Pump Co.*,
   Civ. Action No. 4:09-cv-0675, 2011 U.S. Dist. LEXIS 42802 (S.D. Tex. Apr.
   20, 2011) (Ellison, J.) ...............................................................33, 34, 43, 44

*Ill. Tool Works Inc. v. Rust-Oleum Corp.*,
   346 F. Supp. 3d 951 (S.D. Tex. 2018) (Hittner, J.) .....................................42

*Red Giant, Inc. v. Molzan, Inc.*,
   Case No. H-07-2657, 2009 U.S. Dist. LEXIS 63990 (S.D. Tex. July 24, 2009)
   (Johnson, M.J.) ..........................................................................................41

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
   10 F.4th 422 (5th Cir. 2021) ................................................................19, 20

*Laerdal Med. Corp. v. Basic Med. Supply, LLC*,
   No. CV H-16-35, 2016 WL 6436557 (S.D. Tex. Oct. 31, 2016) (Miller, J.) .........47

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*,
   112 F.3d 1296 (5th Cir. 1997) ....................................................................47

*Mary Kay, Inc. v. Weber*,
   661 F. Supp. 2d 632 (N.D. Tex. Sept. 29, 2009) ...............................42, 43, 44

*Microsoft Corp. v. Software Wholesale Club Inc.*,
  129 F. Supp. 2d 995 (S.D. Tex. Dec. 15, 2000) (Rosenthal, J.) .......................................34, 45

*Nola Spice Designs, L.L.C. v. Haydel Enters.*,
  783 F.3d 527 (5th Cir. 2015) ...........................................................................................21

*Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*,
  469 U.S. 189 (1985)...........................................................................................................44, 45

*Paulsson Geophysical Servs., Inc. v. Sigmay*,
  529 F.3d 303 (5th Cir. 2008) ...........................................................................................42, 43

*Philip Morris USA Inc. v. Lee*,
  547 F. Supp. 2d 685 (W.D. Tex. Apr. 10, 2008) .........................................................33, 38, 41

*Polo Ralph Lauren L.P. v. Schuman*,
  1998 WL 110059 (S.D. Tex. 1998) ...................................................................................48

*Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*,
  83 F. Supp. 2d 810 (S.D. Tex. Aug. 13, 1999) (Rosenthal, J.) ..................................44

*Savage Tavern v. Stag*,
  589 F. Supp. 3d 624 (N.D. Tex. 2022) ...........................................................................1

*Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., Inc.*,
  520 F.3d 393 (5th Cir. 2008) ...........................................................................................47

*Sculpt Inc. v. Sculpt N. Y., LLC*,
  Civ. Action No. H-14-3398, 2015 U.S. Dist. LEXIS 148653 (S.D. Tex. Nov.
  3, 2015) (Miller, J.).............................................................................................................45

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
  607 F.3d 1029 (5th Cir. 2010) .........................................................................................38

*Springboards to Educ. v. Houston Indep. Sch. Dist.*,
  912 F.3d 805 (5th Cir. 2019) .........................................................................................27, 28, 33

*Streamline Prod. Sys. v. Streamline Mfg.*,
  851 F.3d 440 (5th Cir. 2017) ...........................................................................................21

*Sys. One Holdings LLC v. Campbell*,
  Civ. Action No. B:18-cv-54, 2018 U.S. Dist. LEXIS 153965 (S.D. Tex. Aug.
  21, 2018) (Morgan, M.J.)...................................................................................................38, 39

*Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*,
  799 F.3d 437 (5th Cir. 2015), *cert. denied sub nom. Robin Singh Educ. Servs.,
  Inc. v. Testmasters Educ. Servs., Inc.*, 137 S. Ct. 499, 196 L. Ed. 2d 405
  (2016)....................................................................................................................................22

**Statutes**

15 U.S.C. § 1114(1) ............................................................................................2, 19

15 U.S.C. § 1117(a) .................................................................................................46

15 U.S.C. § 1117(c) .................................................................................................45

15 U.S.C. § 1125 ........................................................................................................2

15 U.S.C. § 1125(a) .................................................................................................20

Lanham Act .................................................................................................................4

Lanham Act Section 32(1) .......................................................................................19

Lanham Act Section 34(a) .......................................................................................41

Lanham Act Section 43(a) ..................................................................................19, 41

Trademark Act of 1946, 15 U.S.C. §1051, *et seq.*...............................................1, 19

**Other Authorities**

FED. R. CIV. PRO. 56(c) ...........................................................................................17

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 cmt. F (1995)...............................1

FED. R. CIV. PRO. 54(d)............................................................................................48

FED. R. CIV. PRO. 56 ................................................................................................17

## NATURE AND STAGE OF THE PROCEEDING

On September 23, 2022, Plaintiff, Lewis Brisbois Bisgaard & Smith, LLP ("LBBS") sued[1] Michael Joseph Bitgood a/k/a Michael Easton, Susan C. Norman, Bradley B. Beers (collectively with Bitgood and Ms. Norman, "Defendants"), Richard P. Jones, and a recently formed Texas entity known as "Lewis Brisbois Bisgaard & Smith, LLP"[2] for trademark and trade name infringement, unfair competition in violation of the Trademark Act of 1946, 15 U.S.C. §1051, *et seq*., as amended (the "Lanham Act"),[3] and related claims arising under Texas law. LBBS applied for a temporary restraining order in conjunction with its lawsuit and on October 7, 2022, the Court entered the TRO.[4]

On February 16, 2023, the Court entered a preliminary injunction order, which immediately restrained Defendants from "(a) using, directly or indirectly, in any manner, the trademarks owned by Plaintiff, the name Lewis Brisbois Bisgaard & Smith, LLP, the name Lewis Brisbois, and/or the initials "LB" or "LBBS" or any variation or derivative of those names in any manner and for any purpose," and from "(b) holding themselves out as members of, representatives of, or otherwise having any relationship with or to Lewis Brisbois Bisgaard & Smith, LLP or as being in any way affiliated with Lewis Brisbois Bisgaard & Smith, LLP.[5]

---

[1] Doc. 1.

[2] To avoid confusion, LBBS is the law firm founded in 1979 in Los Angeles, California, known today as Lewis Brisbois Bisgaard & Smith, LLP and refers to the entity Defendants unlawfully registered as a domestic limited liability partnership known as "Lewis Brisbois Bisgaard & Smith, LLP," as the "Infringing Entity."

[3] To be precise, the U.S. Patent and Trademark Office granted LBBS a service mark. The term "trademark" is generally understood to include both trademarks (for goods) and service marks (for services). RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 cmt. F, at 82 (1995). Because the statutory definitions of trademarks and service marks "closely track each other, and the cases construing the two terms inform[s] [the] analysis equally," LBBS refers to its claims herein as trademark infringement. *See Savage Tavern v. Stag*, 589 F. Supp. 3d 624, 635 (N.D. Tex. 2022).

[4] Doc. 14.

[5] Doc. 124.

Based on the same evidence and findings that support the Court's preliminary injunction as well as additional evidence submitted with this motion, Plaintiff is entitled to judgment as a matter of law of all of Plaintiff's claims against the Defendants.

## STATEMENT OF THE ISSUES

1. Whether Defendants violated LBBS' trademark rights under 15 U.S.C. § 1114(1) and Texas law by using LBBS' marks to market, promote, advertise, and conduct "mediation and related services" on behalf of the Infringing Entity.

2. Whether Defendants violated LBBS' trade name rights under 15 U.S.C. § 1125 and Texas law by using LBBS' trade names to market, promote, advertise, and conduct "mediation and related services" on behalf of the Infringing Entity.

3. Whether Defendants' unauthorized use of LBBS' trademarks and names to promote, market, advertise, and conduct "mediation and related services" on behalf of the Infringing Entity constitute unfair competition under 15 U.S.C. § 1125 and Texas law.

4. Whether Defendants' infringement of LBBS' trademarks and trade name was willful.

5. Whether LBBS is entitled to a judgment and a permanent injunction prohibiting Defendants from committing any further violations of LBBS' rights under the Lanham Act.

6. Whether Defendants committed fraud by filing with the Fort Bend County Clerk or Office of the Secretary of State documents containing material and false misrepresentations.

7. Whether Defendants committed conspiracy to infringe LBBS' trademarks and name or to commit fraud.

8. Whether statutory damages are appropriate for Defendants' willful infringement of LBBS' trademarks.

9. Whether LBBS is entitled to its reasonable attorneys' fees of $275,396.50 against Defendants.

Exhibit 1:      LEWIS BRISBOIS BISGAARD & SMITH, Registration No. 3,722,172.

Exhibit 2:      LB, Registration No. 5,151,123.

Exhibit 3:      LB LEWIS BRISBOIS, Registration No. 5,151,128.

Exhibit 4:      LBBS' Registration of a Foreign Limited Liability Partnership, dated March 28, 2022.

Exhibit 5:      Original petition filed in Cause No. 22-CCV-070378, *Jones, et al. v. Martinez, et al.*, in the County Court at Law No. 3 of Fort Bend County, Texas (the "Imperial Lofts Case").

Exhibit 6:      The Infringing Entity's Assumed Name Certificate for Certain Unincorporated Persons, filed in Fort Bend County, Texas on May 2, 2022.

Exhibit 7:      The Infringing Entity's Registration of a Limited Liability Partnership, filed in the Office of the Secretary of State of Texas on May 26, 2022.

Exhibit 8:      The Infringing Entity's Assumed Name Certificate, filed in the Office of the Secretary of State of Texas on June 1, 2022.

Exhibit 9:      3rd Amended Petition, dated June 15, 2022, filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case.

Exhibit 10:     4th Amended Petition, dated June 24, 2022, filed in the Imperial Lofts Case.

Exhibit 11:     Bitgood's letter/pleading to William Moye and Bennett Fisher, dated September 19, 2022, filed by Bitgood in the Imperial Lofts Case.

Exhibit 12:     "Soft" Objections/Motion to Strike [Underlying] Defendant's "Original" Answer, filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on September 22, 2022.

Exhibit 13:     LBBS' cease-and-desist letter to Bitgood and Ms. Norman dated September 16, 2022.

---

[6] LBBS took the deposition of Mr. Beers on August 16, 2023. During Mr. Beers' deposition, Mr. Beers' counsel objected and instructed Mr. Beers not to answer questions regarding conversations between Mr. Beers, Ms. Norman, and Bitgood as it relates to, among other things, the formation of the Infringing Entity. While there is an abundance of evidence to support Plaintiff's claims against Mr. Beers, LBBS will seek to compel Mr. Beers to answer such deposition questions in the event the Court finds it necessary for LBBS to provide additional evidence or if LBBS requires such testimony to support a reply.

Exhibit 14:     Bitgood's e-mail dated September 23, 2022, including images attached thereto.

Exhibit 15:     American Lawyer article/survey on LBBS' revenue.

Exhibit 16:     Article – Leading National Law Firm Lewis Brisbois Selects Bottomline's Law Firm Analytics to Assist in Managing Billing Operations.

Exhibit 17:     Article – The Law Firms that Get Hired When a Firm is Hacked.

Exhibit 18:     Article – The 2022 Am Law 100: By the Numbers.

Exhibit 19:     Article – Glass Ceiling Report: How Does Your Firm Stack Up?.

Exhibit 20:     Article – Women in Focus.

Exhibit 21:     Article – The Largest Law Firms With the Most Women Lawyers (2021).

Exhibit 22:     Excerpts from October 6, 2022 hearing transcript.

Exhibit 23:     Excerpts from December 15, 2022 hearing transcript.

Exhibit 23A:    Letter from Bennett Fisher to Ms. Norman, dated September 28, 2022.

Exhibit 24:     Letter from Ms. Norman to Bennett Fisher, dated September 29, 2022.

Exhibit 25:     Email from Meredith Riede to Norman Giles, dated August 17, 2022.

Exhibit 26:     Email from Ms. Norman to Bitgood dated May 2, 2022 with subject line "Lewis Bobo Still Expired," produced as "Resp to Req Prod 1 – 5-22 23, Page 2 [and 3] of 50".

Exhibit 27:     Email from Ms. Norman to Bitgood dated May 31, 2022 with subject line "Lewis Bobo – Dallas Office," produced as "Resp to Req Prod 1 – 5-22 23, Page 4 [– 12] of 50".

Exhibit 28:     Email from Ms. Norman to Bitgood dated May 31, 2022 with subject line "Houston Office of Lewis Bobo," produced as "Resp to Req Prod 1 – 5-22 23 Page 13 [– 19] of 50".

Exhibit 29:     Email from Ms. Norman to Bitgood dated May 31, 2022 with subject line "NEW LEWIS BRISBOIS LLP – Sent PDF of each section at Sec State," produced as "Resp to Req Prod 1 – 5-22 23 Page 20 [– 27] of 50".

Exhibit 30:     Email from Ms. Norman to Bitgood dated June 9, 2022 with subject line "Lewis Bobo," produced as "Resp to Req Prod 1 – 5-22 23 Page 28 of 50".

Exhibit 31:    Email from Ms. Norman to Leigh A. Gonnet dated June 9, 2022 with subject line "Foreign LLP filed with same name as domestic LLP," produced as "Resp to Req Prod 1 – 5-22 23 Page 29 [– 30] of 50".

Exhibit 32:    Email from Ms. Norman to Bitgood dated July 22, 2022 with subject line "This will definitely cause a hiccup".

Exhibit 33:    Email from Ms. Norman to Bitgood dated July 21, 2022 with subject line "Table of Sec State Filings".[7]

Exhibit 34:    Email from Ms. Norman to Bitgood dated July 21, 2022 with subject line "Filing History for LBBS in Texas".

Exhibit 35:    Text messages between Bitgood and Mr. Beers [Beers_000011 – 000014].

Exhibit 36:    Email between Defendants dated May 23, 2022 with subject line "LLP" [Beers_000015 – 000017].

Exhibit 37:    Email chain between Defendants dated May 23, 2022 – May 26, 2022 [Beers_000018 – 000030].

Exhibit 38:    Beers Law Firm invoice to Bitgood [Beers_000039 – 000040].

Exhibit 39:    *Plaintiffs' Reply to Defendant's Response to the Motion to Show Authority* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on June 21, 2022.

Exhibit 40:    *Application for Entry of Partial Default & Severance* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on June 23, 2022.

Exhibit 41:    *Motion to Strike the J.P. Court Jury Demand and Request for Judicial Notice Under Texas Rule of Evidence 201* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on June 24, 2022.

Exhibit 42:    *Plaintiff's Reply to Defendant's "Amended" Response to the Motion to Show Authority & Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on July 11, 2022.

---

[7] Ms. Norman's document production, and specifically e-mails and e-mail attachments, do not appear to be in sequential order. Therefore, LBBS has done its best to identify what appears to be the correct attachments to the appropriate respective e-mails.

Exhibit 43:      *Plaintiff's Reply to Defendant's "Amended" + "Amended" Response to the Motion to Show Authority* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on July 12, 2022.

Exhibit 44:      *Plaintiffs' Reply to the Amended-Amended Response to the Defendant's Motion to Show Authority With Incorporated Motion to Strike the "Affidavits" of Larson, Sullivan, & Martinez* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on July 22, 2022.

Exhibit 45:      Letter/pleading to Trayneisha Sanford and Eralyn Fisher filed by Bitgood in the Imperial Lofts Case on August 16, 2022.

Exhibit 46:      *Time Line and Chronology* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on August 17, 2022.

Exhibit 47:      *Notice of Partial Non-Suit as to Defendant Chinasa Ogubureke* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on August 17, 2022.

Exhibit 48:      *First Supplement to the Motion to Disqualify Lewis Brisbois Bisgaard & Smith LLP and David A. Oubre* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on August 22, 2022.

Exhibit 49:      Letter to the Honorable Keith P. Ellison filed by Bitgood in Civil Action No. 4:22-cv-03279, on October 5, 2022, as Docket No. 8.

Exhibit 50:      *Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez* filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on July 12, 2022.

Exhibit 51:      Affidavit of Robert F. Lewis.

Exhibit 52:      Affidavit of William S. Helfand.

Exhibit 53:      Excerpts of Ms. Norman's deposition transcript of July 26, 2023.

Exhibit 53A:     Excerpts of Ms. Norman's deposition transcript of August 16, 2023.

Exhibit 54:      Excerpts of Mr. Beers' deposition transcript of August 16, 2023.

Exhibit 55:      The State Bar of California certificate of registration certifying that Lewis D'Amato, Brisbois & Bisgaard is registered with the State Bar of California as a limited liability partnership, effective December 29, 1995.

Exhibit 56:    Certificate of registration for limited liability partnership filed by Lewis D'Amato, Brisbois & Bisgaard in Secretary of State for the State of California on December 29, 1995.

Exhibit 57:    LBBS' limited liability partnership amendment to registration filed in the Secretary of State for the State of California on June 21, 2002.

Exhibit 58:    Law 360 Article – Lewis Brisbois Gave Up Name Rights, Company Argues

Exhibit 59:    Law 360 Article – Lewis Brisbois Sues Lewis Brisbois in Texas Name Spat

Exhibit 60:    Law 360 Article – Lewis Brisbois Trademark Suit Moving Forward in Texas Court

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. LBBS' History

LBBS formed under California law as "Lewis D'Amato, Brisbois & Bisgaard" in 1979.[8] In 1995, following a modification in California law, the firm became registered as a limited liability partnership, and the firm's name became "Lewis, D'Amato, Brisbois & Bisgaard, LLP."[9] Since 2002, LBBS has been known as "Lewis Brisbois Bisgaard & Smith, LLP."[10] In addition to conducting business as "Lewis Brisbois Bisgaard & Smith, LLP," LBBS conducts business and has continuously conducted business using shortened or abbreviated versions of its name including, but not limited to "Lewis Brisbois Bisgaard & Smith," "Lewis Brisbois," and "LBBS."[11] LBBS currently employs more than 1,550 lawyers across the United States in over 50 offices, including offices in Houston, Texas and Dallas, Texas.[12]

---

[8] Ex. 51.

[9] Exs. 51, 55 & 56.

[10] Exs. 51 & 57.

[11] Ex. 51.

[12] Ex. 51.

## B. LBBS' Trademarks

On May 15, 2009, LBBS applied for registration with the U.S. Patent and Trademark Office ("PTO") for the following service mark depicted below:



[13]

On December 8, 2009, the PTO registered the above service mark, "LEWIS BRISBOIS BISGAARD & SMITH," as Registration Number 3,722,172.[14]

On July 25, 2016, LBBS also sought to be registered with the PTO the following service marks as depicted below.



[15]                                                                                              [16]

On February 28, 2017, the PTO registered the above service marks, "LB LEWIS BRISBOIS" and "LB," as Registration Numbers 5,151,128 and 5,151,123, respectively.[17]  LBBS first used the "LB" and "LB Lewis Brisbois" service marks in commerce on June 6, 2016.[18]

---

[13] Ex. 1.

[14] Ex. 1.

[15] Ex. 2.

[16] Ex. 3.

[17] Exs. 2 & 3.

[18] Exs. 2 & 3.

As a foreign limited liability partnership doing business in Texas, LBBS is and has been registered with the Office of the Secretary of State of Texas.[19] LBBS is currently registered to conduct business in the State of Texas effective March 28, 2022.[20]

## C. The Imperial Lofts Case and Creation of the Infringing Entity

On January 7, 2022, Bitgood and Richard P. Jones sued Karina Martinez, Mariana Sullivan, and Imperial Lofts, LLC in Fort Bend county court (previously defined as the Imperial Lofts Case) alleging, in pertinent part, that Martinez, Sullivan, and Imperial Lofts had improperly charged rental fees and filed eviction petitions against Bitgood and Jones.[21] Bitgood appeared *pro se* and Ms. Norman appeared as attorney-of-record for Jones. The defendants in the Imperial Lofts Case retained LBBS to defend against Bitgood and Jones's claims. On March 11, 2022, LBBS filed an answer of behalf of the underlying defendants. David A. Oubre of LBBS' Houston office appeared as attorney-of-record and lead counsel for the defendants in the Imperial Lofts Case.

Unbeknownst to LBBS and certainly without LBBS' authorization or permission, on May 2, 2022, Bitgood and Ms. Norman filed a sworn and notarized assumed name certificate for certain unincorporated persons for a business named "Lewis Brisbois Bisgaard & Smith" in the Office of the County Clerk, Fort Bend Cunty, Texas.[22] Bitgood and Ms. Norman identified the registrant as an "individual" and "further state[d] that this registrant is not a limited partnership, limited liability company, limited liability partnership, or foreign filing entity."[23]

---

[19] Ex. 4.

[20] Ex. 4.

[21] Ex. 5.

[22] Ex. 6.

[23] Ex. 6.

Later, in May 2022, Ms. Norman and Bitgood formed a partnership with the exact same name as LBBS.[24] Specifically, on May 26, 2022, Bitgood filed a registration for a domestic limited liability partnership Bitgood named "Lewis Brisbois Bisgaard & Smith, LLP" in the Office of the Secretary of State of Texas.[25] Prior to the filing of the registration form, Bitgood retained Mr. Beers to assist Bitgood in preparing such form on behalf of the Infringing Entity.[26] Mr. Beers' associate (and son), Baker Beers, prepared the May 26, 2022 registration form on behalf of the Infringing Entity at Mr. Beers' direction.[27] Bitgood listed the street address for the Infringing Entity as 503 FM 359-130, Suite 116, Richmond, Texas 77406 and identified the Infringing Entity's business as "mediation and related services."[28] Bitgood electronically signed the registration "subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument."[29]

On June 1, 2022, Mr. Beers, acting not as an attorney-at-law, but instead expressly identifying himself in the capacity of attorney-in-fact for the Infringing Entity, filed an assumed name certificate in the Office of the Secretary of State.[30] Mr. Beers filed the assumed name certificate after Bitgood contacted Mr. Beers in late May 2022.[31] The assumed name certificate Mr. Beers filed identified the Infringing Entity's assumed name as "Lewis Brisbois Bisgaard &

---

[24] Ex. 53A, at 41:3-8.

[25] Ex. 7.

[26] *See* Ex. 54, at 59:3-9.

[27] Ex. 37; Ex. 54, at 40:6-13, 42:12-25.

[28] Ex. 7.

[29] Ex. 7.

[30] Ex. 8.

[31] Ex. 54, at 23:10-24:2.

Smith."[32]  Mr. Beers electronically signed the assumed name certificate "subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument."[33] Thus, even if, despite his express statement that he was not acting as an attorney-at-law, but rather an attorney-in-fact, Mr. Beers knowingly participated in his co-Defendants' fraud.

On June 15, 2022, Bitgood and Jones filed their third amended petition in the Imperial Lofts Case to add the Infringing Entity as a plaintiff.[34] In so doing, Bitgood and Ms. Norman acted with purposeful intent to cause confusion by using LBBS' trademark name in the same case in which Mr. Oubre was acting as counsel (for the defendants in the Imperial Lofts Case) and as such, utilizing LBBS' trademark-protected name.  The effect of Defendants' fraud listing LBBS as counsel for both plaintiffs and defendants in that same court was confusing, on its face, and an egregious example of Defendants' arrogance and flouting of the law; both, the Lanham Act and the Unfair Competition laws of Texas.  In addition to appearing as Jones's counsel, Ms. Norman appeared as counsel for the Infringing Entity.[35] Bitgood and Ms. Norman attached as exhibits to the third amended petition the sworn and notarized assumed name certificate Bitgood and Ms. Norman filed in the Fort Bend County Clerk's Office and the registration of a limited liability partnership that Bitgood filed in the Office of the Secretary of State of Texas.[36]

---

[32] Ex. 8.

[33] Ex. 8.

[34] Ex. 9.

[35] Ex. 9, p. 13 of 18.

[36] Ex. 9, pp. 14-16. Notably, Bitgood's registration of the Infringing Entity as an "LLP" contradicts Bitgood and Ms. Norman's sworn statement that the "registrant is not a … limited liability partnership" in their notarized assumed name certificate. *Compare* Ex. 9, pp. 14-15 *with* p. 16.

On June 24, 2022, Bitgood, Jones, and the Infringing Entity filed their fourth amended petition to add LBBS—*i.e.*, Lewis Brisbois Bisgaard & Smith, LLP—as a defendant in that suit.[37] Again, Ms. Norman and Bitgood filed the fourth amended petition with Ms. Norman appearing as counsel for the Infringing Entity.[38]

Against LBBS and Mr. Oubre, Bitgood, Jones, and the Infringing Entity allege, among other things, that:

> David Oubre … on behalf of Martinez, Sullivan, and Imperial conduct[s] business in Fort Bend County, Texas **using the [Infringing Entity's] name in an illegal and unauthorized manner** reasonably calculated to create mass confusion and damage [the Infringing Entity].[39]
>
> . . .
>
> Plaintiffs [in the underlying lawsuit] would further show that Martinez and Sullivan … contracted with, and aided, abetted, and encouraged Oubre… to file pleadings and papers in the Courts of Fort Bend County, Texas, using the [Infringing Entity]—an act they were not authorized to do—**as the name Lewis Brisbois belongs to the [Infringing Entity]**, not the defendants or their co-conspirators.[40]
>
> . . .
>
> Clearly, there cannot be a Plaintiff named Lewis, Brisbois, Bisgaard & Smith LLP … and a set of imposters, Oubre … signing [his] name[] to pleadings and documents without the consent of the [Infringing Entity]. This is tantamount to the [Infringing Entity] suing itself … . For these reasons, [Bitgood, Jones, and the Infringing Entity] seek both a temporary and permanent injunction to enjoin all the defendants from using the [Infringing Entity's] name anywhere in the State of Texas, along with all the proceeds that were billed and collected by the phony Lewis Brisbois since May 26, 2022, along with a declaration that the

---

[37] Ex. 10. The Fourth Amended Petition is currently the operative pleading in the Imperial Lofts Case.

[38] Ex. 10, p. 14 of 16.

[39] Ex. 10, ¶ 2 (emphasis added)

[40] Ex. 10, ¶ 22(f) (emphasis added).

phony Lewis Brisbois has no partnership, limited or otherwise in the State of Texas.[41]

Bitgood and Jones further allege that:

> The phony Lewis Brisbois voluntarily gave up its right to do business in Texas under that name, when despite repeated warnings from the Secretary of State directed at Oubre, and to its California office to renew, Oubre did nothing, as the Secretary of State allowed him to surrender the name, and allowed the foreign LLP to expire, thereby allowing the domestic LLP to be formed, registered and approved by the Texas Secretary of State. **Like any other race in the world, the first to the "finish line" is declared the "winner" by the Secretary of State.[42]**

However, that issue is immaterial to Defendants' infringement upon LBBS' trademark rights. Contrary to Bitgood, Jones, and the Infringing Entity's allegations, LBBS *is* registered to do business in the State of Texas and LBBS' current registration pre-dates Bitgood's registration of the Infringing Entity.

As discussed *supra*, LBBS has since 2002 conducted business as "Lewis Brisbois Bisgaard & Smith, LLP," "Lewis Brisbois Bisgaard & Smith," "Lewis Brisbois," and "LBBS,"[43] and LBBS is the owner and senior user of the mark "LEWIS BRISBOIS BISGAARD & SMITH," and the owner and senior user of the registered marks "LB" and "LB LEWIS BRISBOIS."[44]

Despite this, Defendants began filing correspondences and public court documents using the following letterhead:

---

[41] Ex. 10, ¶ 23.

[42] Ex. 10, ¶ 23 n.7 (emphasis added).

[43] Exs. 51 & 57.

[44] Exs. 1, 2, & 3; Ex. 22, at 23:17-25.

**Lewis Brisbois Bisgaard & Smith, LLP**
503 F.M. 359-130, Suite 216,
Richmond, Texas, 77406-2195
*Mediations & Arbitrations*

Michael Joseph Bitgood
a/k/a/ "Michael Easton"
Mediator &
International and Domestic
Arbitrator
**President**
281-415-8655
EastProLaw@msn.com

Susan Cecilia Norman
Attorney & Counselor at Law
**Vice President**
713-882-2066
Certified Mediator
SueNorman@SueNormanLaw.com

45

Indeed, Defendants, acting jointly, filed public correspondences and court pleadings using the above letterhead and representing themselves as counsel for the Infringing Entity in the Imperial Lofts Case in at least thirteen (13) instances:

- On 06/15/2022 – Plaintiffs' Third Amended Petition for Declaratory Relief and Application for Temporary Injunction Pending Trial;[46]

- On 06/21/2022 – Plaintiff's Reply to Defendant's Response to the Motion to Show Authority;[47]

- On 06/23/2022 – Application for Entry of Partial Default & Severance;[48]

- On 06/24/2022 – Plaintiffs' Fourth Amended Petition for Declaratory Relief and Application for Temporary Injunction Pending Trial;[49]

- On 06/24/2022 – Motion to Strike the J.P. Court Jury Demand and Request for Judicial Notice Under Texas Rule of Evidence 201;[50]

- On 07/11/2022 – Plaintiff's Reply to Defendant's "Amended" Response to the Motion to Show Authority & Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez;[51]

---

[45] *See, e.g.,* Exs. 11, 12, 45, 46, & 47; Ex. 53A, at 73:11-74:21.

[46] Ex. 9; Ex. 53A, at 88:19-89:17.

[47] Ex. 39; Ex. 53A, at 91:18-92:24.

[48] Ex. 40; Ex. 53A, at 93:1-18.

[49] Ex. 10; Ex. 53A, at 96:6-21.

[50] Ex. 41; Ex. 53A, at 94:1-10.

[51] Ex. 42; Ex. 53A, at 101:8-102:3.

- On 07/12/2022 – Plaintiff's Reply to Defendant's "Amended" + "Amended" Response to the Motion to Show Authority;[52]

- On 07/12/2022 – Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez;[53]

- On 07/22/2022 – Plaintiffs' Reply to the Amended-Amended Response to the Defendant's Motion to Show Authority With Incorporated Motion to Strike the "Affidavits" of Larson, Sullivan, & Martinez;[54]

- On 08/16/2022 – Letter/pleading to Trayneisha Sanford and Eralyn Fisher;[55]

- On 08/17/2022 – Time Line and Chronology;[56]

- On 08/17/2022 – Notice of Partial Non-Suit as to Defendant Chinasa Ogubureke;[57]

- On 08/22/2022 – First Supplement to the Motion to Disqualify Lewis Brisbois Bisgaard & Smith LLP and David A. Oubre.[58]

In an effort to avoid the necessity of this suit, on September 16, 2022, LBBS demanded Defendants desist in their fraudulent and infringing conduct.[59] Defendants refused to do so and, instead, continued to file public court documents and send letters on the Infringing Entity's letterhead containing LBBS' name:

- On 09/19/2022 – Letter/pleading to William Moye and Bennett Fisher in the Imperial Lofts Case;[60]

[52] Ex. 43; Ex. 53A, at 103:3-16.

[53] Ex. 50; Ex. 53A, at 102:5-103:1.

[54] Ex. 44; Ex. 53A, at 103:21-104:14.

[55] Ex. 45; Ex. 53A, at 81:22-82:10.

[56] Ex. 46; Ex. 53A, at 73:11-74:21.

[57] Ex. 47.

[58] Ex. 48.

[59] Ex. 13; *see* Ex. 23A.

[60] Ex. 11.

- On 09/22/2022 – Plaintiff's "Soft" Objections/Motion to Strike Defendant's "Original" Answer Filed in the Imperial Lofts Case on 09/21/2022;[61]

- On 09/23/2022 – E-mail with attached images of a business card for the Infringing Entity, as described in more detail below;[62]

- On 09/29/2022 – Letter to Bennett Fisher with the Bitgood Entity's letterhead.[63]

- On 10/05/2022 – Letter to the Honorable Keith P. Ellison filed in Civil Action No. 4:22-cv-03279, on October 5, 2022, as Docket No. 8.[64]

Defendants could not have been more brazen in Defendants' infringement upon LBBS' tradenames. In response to LBBS' request that Defendants desist in Defendants' fraudulent use of LBBS' marks, on September 23, 2022, Bitgood sent an email with the subject line "NOT AFFILIATED WITH 'LEWIS & BOBO' A CALIFORNIA FOREIGN LLP" to LBBS.[65] In the email, Bitgood states:

> This should "cool" Jana Lubert's "jets" until I can get to "Little" Billy Helfand, and Bennett Fisher next week---no possible name confusion at all, we are not that incompetent, all they have to do is like "Doc Holiday" said in "Tombstone": "SAY WHEN"!-- and say otherwise, thereby holding open the door in court for me to put on evidence to the contrary! "Don't be a daisy" Bennett & Billy, just "SAY WHEN"!--see the back of the card!

Bitgood attached the following images to his September 23, 2022 e-mail:

---

[61] Ex. 12.

[62] Ex. 14; *see* Ex. 22, at 13:25-14:10.

[63] Ex. 24.

[64] Ex. 49.

[65] Ex. 14.

 

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c). If the Rule 56 standards are met, summary judgment is not to be regarded as a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1412-16 (5th Cir. 1993). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## SUMMARY OF THE ARGUMENT

The Court's February 16, 2023 Preliminary Injunction Order immediately restrained Defendants in the above-entitled action from "(a) using, directly or indirectly, in any manner, the trademarks owned by LBBS, the name Lewis Brisbois Bisgaard & Smith, LLP, the name Lewis Brisbois, and/or the initials "LB" or "LBBS" or any variation or derivative of those names in any manner and for any purpose," and from "(b) holding themselves out as members of, representatives of, or otherwise having any relationship with or to Lewis Brisbois Bisgaard & Smith, LLP or as

being in any way affiliated with Lewis Brisbois Bisgaard & Smith, LLP.[66] In issuing the Preliminary Injunction Order, the Court found Defendants infringed "on [LBBS'] trademarks and service marks, both registered and unregistered and which the Court finds have achieved secondary meaning, . . . ."[67]

Aside from being an inherently strong trademark, LBBS has achieved national brand name recognition as a result of its reputation in the legal community as well as LBBS' marketing, advertising, and providing legal services in various practice areas. Indeed, summary judgment evidence shows LBBS has a legally protectable trademark because LBBS' marks have acquired distinctiveness through secondary meaning—which, again, this Court previously determined at the preliminary injunction stage. Also, evidence shows Defendants' use of LBBS' trademarks supports a conclusion that there is a likelihood of confusion.

Not only do Defendants' actions constitute trademark infringement and unfair competition under the Lanham Act, Defendants' actions were also willful, which warrants, among other things, statutory damages, a permanent injunction against Defendants, and an award of reasonable attorneys' fees incurred by LBBS. Indeed, the equities in this case strongly favor a permanent injunction barring Defendants from continuing to use LBBS' marks to advertise, promote, or market the Infringing Entity. A permanent injunction is necessary to prevent irreparable harm to LBBS, and would serve significant public interests.

All Defendants acted in concert with one another, and based on the same deceitful, fraudulent, and unlawful conduct by Defendants, LBBS is entitled to summary judgment on LBBS' fraud and conspiracy claims as to all Defendants as well.

---

[66] Doc. 124.

[67] Doc. 124.

**ARGUMENT AND AUTHORITIES**

**A. LBBS is entitled to summary judgment on LBBS' trademark infringement and unfair competition claim against Defendants.**

Summary judgment is proper in a trademark case if the "record compels the conclusion that the movant is entitled to judgment as a matter of law." *See Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co*., 550 F.3d 465, 474 (5th Cir. 2008).

"Trademark and service mark infringement claims are governed by the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051 et seq." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010). Section 32(1) of the Lanham Act, allows the owner of a federally registered trademark to bring an action for infringement against anyone using that mark or a similar mark in a manner likely to cause consumer confusion. 15 U.S.C. § 1114(1). In pertinent part, Section 32(1)(a) provides that anyone who, without the consent of the registered owner of a trademark "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" will be liable to the registrant for the remedies provided in the Lanham Act. *Id.*

Similarly, Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition or infringement of unregistered marks. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 426 (5th Cir. 2021). In pertinent part, Section 43(a) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his

19

or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

**B. LBBS' evidence proves Defendants infringed on LBBS' trademarks and tradename.**

The same elements apply to both a trademark infringement cause of action and an unfair competition cause of action. *Jim S. Adler, P.C.*, 10 F.4th at 426. To succeed in a trademark infringement or unfair competition claim, a party merely must prove that: (1) it has a legally protectable mark, and (2) the infringer's use of that mark is likely to cause confusion. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

The same test governs the unfair competition claims brought under the common law of the State of Texas. The analysis with respect to claims under the Lanham Act will be "dispositive" of corresponding claims for common law unfair competition under Texas law. *Amazing Spaces, Inc.*, 608 F.3d at 236 n.7. A trademark infringement and unfair competition action under Texas common law presents essentially "no difference in issues than those under federal trademark infringement actions." *Id.* (citation omitted); *See also Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*, 616 F. Supp. 2d 622, 637 (N.D. Tex. 2009).

a. This Court already found Defendants infringed on LBBS' marks, all of which acquired secondary meaning

At the October 6, 2022 hearing, the Court stated on the record: "Lewis Brisbois is far and away the senior user of the name and it has acquired secondary meaning . . . ."[68] The Court memorialized its findings in the February 16 preliminary injunction order where the Court found: "Defendants are infringing on [LBBS'] trademarks and service marks, both registered and

---

[68] Ex. 22, at 23:20-22.

unregistered and which the Court finds have achieved secondary meaning, . . . ."[69] As this Court previously found at the preliminary injunction stage, the Court should again find LBBS is the senior user of the trade name and LBBS' trademarks have acquired secondary meaning.

b. <u>LBBS has legally protectable trademarks</u>

To be legally protectable, a mark "must be distinctive in one of two ways: (1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 450 (5th Cir. 2017) (internal quotation marks and citation omitted). A mark is inherently distinctive "if its intrinsic nature serves to identify a particular source." *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 537 (5th Cir. 2015) (citation omitted). A mark has acquired distinctiveness "if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Id.* (citation omitted).

i. *LBBS' mark is inherently distinctive*

"Registration of a mark with the PTO is prima facie evidence that the mark [is] inherently distinctive." *Streamline Prod. Sys.*, 851 F.3d at 451; *Nola Spice Designs, L.L.C.*, 783 F.3d at 537. Since 2002, LBBS has conducted business as "Lewis Brisbois Bisgaard & Smith, LLP," "Lewis Brisbois Bisgaard & Smith," "Lewis Brisbois," and "LBBS."[70] In 2009, LBBS registered the service mark, "LEWIS BRISBOIS BISGAARD & SMITH," with the PTO as Registration Number 3,722,172.[71] In 2017, LBBS registered the service marks, "LB LEWIS BRISBOIS" and "LB," as

---

[69] Doc. 124.

[70] Exs. 51 & 57.

[71] Ex. 1.

Registration Numbers 5,151,128 and 5,151,123, respectively.[72] LBBS' registration of its marks with the PTO constitutes prima facie evidence that LBBS' marks are inherently distinctive.

> ## ii. LBBS' marks have acquired secondary meaning[73]

The evidence shows LBBS' trademarks meet several of the distinctiveness through secondary meaning factors. The Fifth Circuit uses a seven-factor test to determine whether a mark has acquired secondary meaning: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the [mark]." *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 445 (5th Cir. 2015) (citation omitted), *cert. denied sub nom. Robin Singh Educ. Servs., Inc. v. Testmasters Educ. Servs., Inc.*, 137 S. Ct. 499, 196 L. Ed. 2d 405 (2016). "These factors in combination may show that consumers consider a mark to be an indicator of source even if each factor alone would not prove secondary meaning." *Smack Apparel Co.*, 550 F.3d at 476.

The first factor, length and manner of use, supports a finding of secondary meaning. The record shows LBBS has been using the marks for a significant period of time to identify and distinguish itself from other law firms and competitors in the legal field. Since 2002, LBBS has been known as "Lewis Brisbois Bisgaard & Smith, LLP" and has continuously conducted business using shortened or abbreviated versions of its name including, but not limited to "Lewis Brisbois

---

[72] Exs. 2 & 3.

[73] The Court previously found "Defendants are infringing on [LBBS'] trademarks and service marks, both registered and unregistered and which the Court finds have achieved secondary meaning, . . . ." [Doc. 124, Preliminary Injunction Order]; "Lewis Brisbois is far and away the senior user of the name and it has acquired secondary meaning . . . ." [Ex. 22, at 23:20-22].

Bisgaard & Smith," "Lewis Brisbois," and "LBBS."[74] In 2009, LBBS registered the service mark, "LEWIS BRISBOIS BISGAARD & SMITH," with the PTO as Registration Number 3,722,172.[75] Then, in 2017, LBBS registered the service marks, "LB LEWIS BRISBOIS" and "LB," as Registration Numbers 5,151,128 and 5,151,123, respectively.[76]

The evidence also shows that LBBS' legal services using LBBS' marks annually exceed the hundreds of millions for the past 17 years.[77] The third factor, amount and manner of advertising, also favors LBBS, as LBBS' advertising and marketing of its legal services has not only been pervasive nationally but has also, apparently, been quite effective.[78] Regarding the fourth factor, nature of use of the mark in newspapers and magazines, favors LBBS. LBBS and its legal services are regularly referenced in social media postings and other media outlets.[79] While LBBS did not conduct a formal consumer survey or elicit direct consumer testimony, the fact Defendants intentionally and knowingly used LBBS' exact trade name to improperly advertise the Infringing Entity's "mediation services" and to influence consumers to perceive the Infringing Entity is related in some manner to LBBS further supports the conclusion there is secondary meaning.

Finally, the seventh factor, Defendants' intent to infringe on LBBS' trademarks, weighs heavily in favor of LBBS. Indeed, Defendants, working in concert, on several occasions admitted to the Court Defendants intended to infringe LBBS' marks:

---

[74] Exs. 51 & 57.

[75] Ex. 1.

[76] Exs. 2 & 3.

[77] Exs. 15 & 51.

[78] *See* Exs. 15 & 51.

[79] Exs. 16, 17, 18, 19, 20, & 21.

**Bitgood**

- Bitgood: "**We took the name Lewis Brisbois Bisgaard** because it seemed like a sound business investment at the time."[80]

- In response to the Court's question:[81]

    Court:    I understand that they may have let the registration lapse or decided affirmatively not to renew it, but why did you want to use the firm's name?

    Bitgood:    It seemed like a good business investment at the time, Judge . . . .

- In response to the Court's statement:[82]

    Court:    I understand that they may not have wanted the name, but why would you think it was yours to take? It seems like the firm had an institutional identity very different from your own. I don't understand why you wanted to use their name.

    Bitgood:    Your Honor, it seemed at the time – it may not be sound at the time now – to be a good business investment. We would open a mediation store and an arbitration store. . . .

- Bitgood: "What I did shouldn't have been done, period. But we fixed it."[83]

**Ms. Norman:**

- Ms. Norman: "It looked like a voluntary relinquishment; and it looked like, as [Bitgood] said, a business opportunity. That's all it was."[84]

- In response to the Court's question:[85]

    Court:    Ms. Norman, I did see stationary where you appear to list yourself as a lawyer for Lewis Brisbois Bisgaard & Smith.

---

[80] Ex. 22, at 5:18-20 (emphasis added).

[81] Ex. 22, at 6:16-20.

[82] Ex. 22, at 7:5-13.

[83] Ex. 23, at 13:9-10.

[84] Ex. 22, at 21:8-10.

[85] Ex. 22, at 13:17-15:7.

| | |
|---|---|
| Ms. Norman: | Yes, sir. |
| Court: | . . . Why are you best listing yourself on law firm stationary as a member? |
| Ms. Norman: | As a member? |
| Court: | As a member of the firm, yes. |
| Ms. Norman: | I'm a member of the mediation and arbitration – the firm was – the L.L.P. for Texas was formed to do mediations and arbitrations, and I'm a member. I'm a partner in that firm. |
| Court: | Which firm is that now? |
| Ms. Norman: | Lewis Brisbois Bisgaard & Smith, L.L.P., filed in Texas on March the 26th of this year.[86] |
| . . . | |
| Court: | Why did you do it [list yourself as a member] with Lewis Brisbois? |
| Ms. Norman: | For the same reason that Mr. Bitgood is stating. When I – I have a practice, and I have had a practice for many years of reviewing filings of opposing entities. I found that in the filings of Mr. Oubre in the underlying case, when he filed the original answer on March the 11th, the law firm Lewis Brisbois Bisgaard & Smith was not authorized to conduct business in Texas because it had voluntarily relinquished its right to do so, making the filings by Mr. Oubre on behalf of the plaintiff void filings. |
| Court: | Whether they are properly registered or not, what makes you think you can use the name for yourself? |
| Ms. Norman: | Because it was available. |

- In response to the Court's question:[87]

| | |
|---|---|
| Court: | Do you understand – do you have any basis for saying you have a right to use the law firm's name? |

---

[86] Defendants formed the Infringing Entity through a filing with the Office of the Secretary of State of Texas on **May** 26, 2022, not March 26, 2022. *See* Ex. 7.

[87] Ex. 22, at 21:4-10.

| Ms. Norman: | Well, I looked at the history of relinquishment of that name – the relinquishment of the name with the authority to do business in Texas multiple times. It looked like a voluntary relinquishment; and it looked like a voluntary relinquishment; and it looked like, as [Bitgood] said, a business opportunity. That's all it was. |

Aside from Defendants' admission to the Court, there is overwhelming evidence demonstrating Defendants' intent to infringe LBBS' marks, with the specific intent of causing LBBS harm. Defendants testified in depositions they knew of the existence of LBBS months prior to Defendants forming the Infringing Entity[88] and prior to Defendants' filing the Infringing Entity's limited liability partnership registration and the assumed name certificate in the Office of the Secretary of State of Texas.[89] Ms. Norman testified in deposition she had permission to use LBBS' name merely because LBBS had not renewed its registration to do business in Texas with the Office of the Secretary of State.[90] Mr. Beers admitted in deposition he knew LBBS was using the name "Lewis, Brisbois, Bisgaard & Smith" when Mr. Beers deliberately prepared and filed the assumed name certificate.[91] Additionally, when Law 360 asked why Bitgood registered LBBS' name, Bitgood admitted in a public article: "I don't like the way [LBBS] treated us, I don't like the pranking"[92] and "[w]hat I do resent is being bullied, and that's what happening here."[93] Bitgood also publicly admitted in an article that "he 'bought' the Lewis Brisbois name for $750 when it became available because **[Bitgood] was upset about Oubre's behavior during settlement**

---

[88] Ex. 53, at 26:8-22, 38:2-5, 39:2-4, 81:5-8; Ex. 53A, at 41:3-8; Ex. 54, at 10:15-19, 25:21-25.

[89] Exs. 7 & 8.

[90] Ex. 53, at 55:3-21.

[91] Ex. 54, at 24:18-23.

[92] Ex. 59; *see* Ex. 58.

[93] Ex. 60; *see* Ex. 58.

**negotiations**."[94] Further, Defendants actively and knowingly created business cards advertising mediation and arbitration services to be provided by the Infringing Entity,[95] and finally, even after Defendants knew LBBS was authorized to do business in Texas, Defendants filed several public pleadings with letterheads and signature blocks containing LBBS' name.[96] The evidence clearly establishes Defendants' intent to copy and infringe LBBS' name and marks.

These factors weigh heavily in favor of finding LBBS' trademarks acquired secondary meaning. Thus, there is no genuine dispute of fact LBBS has a legally protectable right in its trademarks.

c. There is a likelihood of confusion as to source, affiliation, or sponsorship

Defendants' use of LBBS' service marks creates a "likelihood of confusion in the minds of potential consumers as to source, affiliation, or sponsorship of [the Infringing Entity's] services. *Springboards to Educ. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019) (internal quotation marks omitted).

In assessing likelihood of confusion, the Fifth Circuit requires the Court to consider a non-exhaustive list of "digits of confusion": "(1) the type [or strength] of mark allegedly infringed, (2) the similarity between the marks, (3) the similarity of the products or services, (4) the identity of retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,] . . . [and] (8) the degree of care exercised by potential purchasers." *Id.* (citations and quotations omitted). "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these

---

[94] Ex. 60 (emphasis added).

[95] Ex. 14.

[96] Exs. 9, 10, 11, 12, 24, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50; Ex. 53A, at 44:4-14.

digits of confusion." *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (internal quotation marks and citation omitted). Notwithstanding, the evidence supports a finding of a likelihood of confusion.

### i. Type or strength of mark allegedly infringed

The type of the mark "refers to the strength of the mark." *Id.* at 201. Courts analyze two factors in determining the strength of the mark: "(1) the mark's position along the distinctiveness spectrum, and (2) the standing of the mark in the marketplace." *Springboards to Educ.*, 912 F.3d at 812 (citations omitted). "[T]he second factor that courts consider—and the more important of the two—is a mark's commercial strength." *Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 585 (S.D. Tex. 2016) (Ellison, J.). "Marks may be strengthened in the marketplace by extensive advertising, length of time in business, public recognition, and uniqueness." *Id.* (citation omitted). Further, in assessing the strength of a trademark, "the focus is the senior user's mark." *Elvis Presley Enters.*, 141 F.3d at 201. "The stronger the mark, the greater the protection it receives because the greater the likelihood that consumers will confuse the junior user's use with that of the senior user." *Id*. It is undisputed LBBS' name and marks have been used since 2002,[97] and has been featured in several public and social media articles.[98] Further, LBBS is a nationally-known law firm with a wide presence across the United States for providing legal services.[99] The evidence proves LBBS' name and marks are strong—the first digit supports a finding of a high likelihood of confusion.

---

[97] Exs. 1, 2, & 3; *see* Exs. 51 & 57.

[98] Exs. 16, 17, 18, 19, 20, & 21.

[99] *See* Exs. 16, 17, 18, 19, 20, & 21.

### ii. Similarity between the marks

The second digit also favors LBBS because the Infringing Entity's marks are not only similar, but identical to LBBS' marks. Specifically, Defendants named the Infringing Entity using only four names—"Lewis Brisbois Bisgaard & Smith, LLP"—all of which are the same exact four names of LBBS' law firm.[100] Indeed, Ms. Norman testifies in her deposition that she takes responsibility for filing public pleadings on behalf of the Infringing Entity in which the pleadings contain LBBS' exact names, in many instances making no distinction between LBBS' California LLP and LBBS' Texas LLP.[101] Mr. Beers further acknowledged the Infringing Entity's name is identical to LBBS' name.[102]

### iii. Similarity of the services

LBBS provides legal services in numerous practice areas and advertises and marks those legal services using its registered service marks and name marks—namely, "LEWIS BRISBOIS BISGAARD & SMITH," "LB LEWIS BRISBOIS," and "LB."[103] Defendants created the Infringing Entity in order to provide "mediation[, arbitration] and related services."[104] Evidence demonstrates LBBS provides mediation and arbitration services and employs more than 20 lawyers nationwide in 59 offices who routinely conduct mediation and arbitration proceedings.[105] The third digit supports a finding of a high likelihood of confusion.

---

[100] Exs. 7, 8, & 14; Ex. 53, at 14:9-15:22; Ex. 53A, at 12:1-25, 20:11-24, 41:3-8, 58:23-59:5; *see* Exs. 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50.

[101] Ex. 53A, at 83:3-17, 105:12-22, 112:6-15.

[102] Ex. 54, at 37:19-38:3.

[103] Exs. 1, 2, & 3; *see* Exs. 16, 17, 18, 19, 20, & 21.

[104] Ex. 14.

[105] Ex. 23, at 26:19-28:25, 34:21-35:20.

### iv. Identity of retail outlets and purchasers

The fourth digit, while not fitting neatly under these circumstances, nonetheless suggests a likelihood of confusion. LBBS is a law firm and does not market its legal services in retail outlets or has retail purchasers. Regardless, LBBS markets its legal services to any individual or entity in need of any kind of professional legal services, which LBBS provides nationally and throughout Texas including, but not limited to, conducting mediations and arbitrations.[106] Likewise, Defendants have held the Infringing Entity out to the public as some legal entity with exactly the same name as LBBS[107] and providing exactly the same type of legal mediation and arbitration services as LBBS.[108]

### v. Identity of the advertising media used

Defendants, conspiring together, have represented themselves as acting on behalf of the Infringing Entity in public court pleadings[109] and produced business cards reflecting same.[110] Doing so, Defendants have displayed and advertised the Infringing Entity in the public domain as a legal entity offering legal services. The fifth digit suggests a likelihood of confusion.

### vi. Defendants' intent

The sixth digit strongly weighs in favor of a conclusion that there is a likelihood of confusion. The Fifth Circuit has said that when a "mark was adopted with the intent of deriving benefit from the reputation of [the mark holder] that fact alone 'may be sufficient to justify the

---

[106] Ex. 23, at 26:19-28:25, 34:21-35:20.

[107] Exs. 7, 8, 9, 10, 11, 12, 14, 24, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50.

[108] Ex.14; Ex. 22, at 7:12-13; Ex. 23, at 26:19-28:25, 34:21-35:20.

[109] *See, e.g.*, Exs. 7, 8, 9, 10, 11, 12, 24, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50; Ex. 53A, at 20:11-24, 44:4-14, 79:13-81:17, 81:22-82:10; Ex. 54, at 40:6-13, 42:12-25, 48:5-51:1.

[110] Ex. 14.

inference that there is confusing similarity.'" *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (quoting Restatement of Tort § 729, comment f (1938)). Here, as discussed *supra*, the record clearly establishes Defendants had every intent to infringe upon LBBS' name and marks. Defendants admitted to the Court on numerous occasions that using LBBS' name was a "good business investment."[111] Additionally, Ms. Norman's deposition testimony demonstrates the very deliberate intent to form an entity with LBBS' exact four names.[112] Specifically, Ms. Norman testified Defendants intentionally used the name "Lewis, Brisbois, Bisgaard & Smith" because "the name [] appeared available,"[113] and "there were a lot of considerations that went into this name."[114] Defendants also testified in depositions they knew of the existence of LBBS months prior to Defendants forming the Infringing Entity[115] and prior to Defendants' filing the Infringing Entity's limited liability partnership registration and assumed name certificate in the Office of the Secretary of State of Texas.[116]  Mr. Beers admitted in deposition he knew LBBS was using the name "Lewis, Brisbois, Bisgaard & Smith" when Mr. Beers deliberately prepared and filed the assumed name certificate.[117] Additionally, when Law 360 asked why Bitgood registered LBBS' name, Bitgood admitted in a public article: "I don't like the way [LBBS] treated us, I don't like

---

[111] *See supra* Section B(b)(ii).

[112] *See* Ex. 53A, at 58:23-59:5.

[113] Ex. 53, at 24:7-14.

[114] Ex. 53, at 25:22-26:3.

[115] Ex. 53, at 26:8-22, 38:2-5, 39:2-4, 81:5-8; Ex. 53A, at 41:3-8; Ex. 54, at 10:15-19, 25:21-25.

[116] Exs. 7 & 8.

[117] Ex. 54, at 24:18-23.

the pranking"[118] and "[w]hat I do resent is being bullied, and that's what happening here."[119] Bitgood also publicly admitted in an article that "he 'bought' the Lewis Brisbois name for $750 when it became available because [Bitgood] was upset about Oubre's behavior during settlement negotiations."[120] Further, Defendants created business cards advertising mediation and arbitration services to be provided by the Infringing Entity[121] and finally, Defendants filed several public pleadings with letterheads and signature blocks containing LBBS' name.[122] The evidence clearly shows Defendants had the intent to confuse, mislead, or deceive the public.

### vii. Evidence of actual confusion

The Fifth Circuit has held that "evidence of actual confusion is not necessary to a finding of a likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 203 (citation omitted). Regardless, there is clear evidence of actual confusion here. The record shows Meredith Riede, the City Attorney for the City of Sugarland, Texas, reached out to LBBS' counsel questioning Bitgood's e-mail and attached public pleading to Riede.[123] Defendants also admitted to the Court that using LBBS' name was a "good business investment,"[124] which reflects confusion in the public eye created by Defendants' deliberate actions to usurp LBBS' marks and name. The seventh digit, while not necessary to establish a finding of a likelihood of confusion, still weighs in favor of such finding.

---

[118] Ex. 59; *see* Ex. 58.

[119] Ex. 60; *see* Ex. 58.

[120] Ex. 60.

[121] Ex. 14.

[122] Exs. 9, 10, 11, 12, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50.

[123] Ex. 25.

[124] *See supra* Section B(b)(ii).

*viii. Degree of care exercised by potential purchasers*

"Under this digit, the greater the care potential purchasers exercise, the less likely it is they will confuse a junior mark user's products or services with the senior mark user's products or services." *Springboards to Educ.*, 912 F.3d at 817. This eighth digit is not applicable under these circumstances because LBBS is a law firm that provides only legal services to its clients versus goods to potential purchasers.

The preceding analysis demonstrates all factors, if applicable, weigh heavily in favor of LBBS. Specifically, the strength of LBBS' marks, the similarity of the marks, the similarity of the services, Defendants' intent, and the evidence of actual confusion all support the conclusion there is a likelihood of confusion. Defendants' unauthorized use of LBBS' trademarks and name to promote, market, advertise, and conduct the Infringing Entity's purported "mediation and related services" business is likely to cause confusion and mistake, and is likely to deceive the public, including state and federal courts, and LBBS' clients, prospective clients, employees, and adversaries, by suggesting some affiliation, connection, or association between LBBS and the Infringing Entity when there is, in fact, no such connection.

Accordingly, the Court should grant summary judgment in favor of LBBS for Defendants' trademark and tradename infringement as well as unfair competition in violations of the Lanham Act and Texas law.

## C. Defendants' infringement was willful

A willful Lanham Act violation occurs when the defendant "knows his actions constitute an infringement." *Flowserve Corp. v. Hallmark Pump Co.*, Civ. Action No. 4:09-cv-0675, 2011 U.S. Dist. LEXIS 42802, *22 (S.D. Tex. Apr. 20, 2011) (Ellison, J.) (quoting *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. Apr. 10, 2008)). "A finding of willfulness does not

[necessarily] require actual knowledge, but rather [only] willful blindness." *Microsoft Corp. v. Software Wholesale Club Inc*., 129 F. Supp. 2d 995, 1010 (S.D. Tex. Dec. 15, 2000) (Rosenthal, J.). Accordingly, courts have found willful conduct where a defendant acts with "reckless disregard for, or with willful blindness" toward a Lanham Act violation. *Berg v. Symons*, 393 F. Supp. 2d 525, 539–40 (S.D. Tex. Sept. 30, 2005) (Rosenthal, J.). Ignoring a cease-and-desist letter can constitute "willful and deliberate" infringement. *See Chevron Intellectual Prop., LLC v. Allen*, Civ. Action No. 7:08-CV-98-O, 2009 U.S. Dist. LEXIS 74751, *10 (N.D. Tex. Aug. 24, 2009). "Moreover, the defendant's knowledge need not be proven directly, but may be inferred from the defendant's conduct." *Flowserve Corp.*, 2011 U.S. Dist. LEXIS 42802, at *17. Here, Defendants' actual knowledge of their unlawful actions and intent to confuse and deceive the public is evident.

Again, Defendants admitted to the Court on numerous occasions that using LBBS' name was a "good business investment."[125] Defendants also testified in depositions they knew of the existence of LBBS months prior to Defendants forming the Infringing Entity[126] and prior to Defendants' filing the Infringing Entity's limited liability partnership registration and assumed name certificate in the Office of the Secretary of State of Texas.[127] Indeed, Ms. Norman testified she had permission to use LBBS' name merely because LBBS had not renewed its registration to do business in Texas with the Office of the Secretary of State.[128] Mr. Beers admitted in deposition he knew LBBS was using the name "Lewis, Brisbois, Bisgaard & Smith" when Mr. Beers deliberately prepared and filed the assumed name certificate.[129] Additionally, when Law 360 asked

---

[125] *See supra* Section B(b)(ii).

[126] Ex. 53, at 26:8-22, 38:2-5, 39:2-4, 81:5-8; Ex. 53A, at 41:3-8; Ex. 54, at 10:15-19, 25:21-25.

[127] Exs. 7 & 8.

[128] Ex. 53, at 55:3-21.

[129] Ex. 54, at 24:18-23.

why Bitgood registered LBBS' name, Bitgood admitted in a public article: "I don't like the way [LBBS] treated us, I don't like the pranking"[130] and "[w]hat I do resent is being bullied, and that's what happening here."[131] Bitgood also publicly admitted in an article that "he 'bought' the Lewis Brisbois name for $750 when it became available because [Bitgood] was upset about Oubre's behavior during settlement negotiations."[132] Further, Defendants actively and knowingly created business cards advertising mediation and arbitration services to be provided by the Infringing Entity,[133] and finally, even after Defendants knew LBBS was authorized to do business in Texas, Defendants filed several public pleadings with letterheads and signature blocks containing LBBS' name.[134]

Specifically, Defendants, as plaintiffs in the Imperial Lofts Case, conspired together to willfully and deliberately infringe LBBS' marks by filing public documents and representing themselves as being associated with LBBS in numerous instances in the Imperial Lofts Case despite the fact Ms. Norman knew LBBS had already renewed its registration for authority to do business in Texas by at least June 9, 2022:[135]

- On 06/15/2022 – Plaintiffs' Third Amended Petition for Declaratory Relief and Application for Temporary Injunction Pending Trial;[136]

- On 06/21/2022 – Plaintiff's Reply to Defendant's Response to the Motion to Show Authority;[137]

---

[130] Ex. 59; *see* Ex. 58.

[131] Ex. 60; *see* Ex. 58.

[132] Ex. 60.

[133] Ex. 14.

[134] Exs. 9, 10, 11, 12, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50; Ex. 53A, at 44:4-14.

[135] Ex. 53, at 61:15-19, 62:2-10.

[136] Ex. 9; Ex. 53A, at 88:19-89:17.

[137] Ex. 39; Ex. 53A, at 91:18-92:24.

- On 06/23/2022 – Application for Entry of Partial Default & Severance;[138]

- On 06/24/2022 – Plaintiffs' Fourth Amended Petition for Declaratory Relief and Application for Temporary Injunction Pending Trial;[139]

- On 06/24/2022 – Motion to Strike the J.P. Court Jury Demand and Request for Judicial Notice Under Texas Rule of Evidence 201;[140]

- On 07/11/2022 – Plaintiff's Reply to Defendant's "Amended" Response to the Motion to Show Authority & Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez;[141]

- On 07/12/2022 – Plaintiff's Reply to Defendant's "Amended" + "Amended" Response to the Motion to Show Authority;[142]

- On 07/12/2022 – Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez;[143]

- On 07/22/2022 – Plaintiffs' Reply to the Amended-Amended Response to the Defendant's Motion to Show Authority With Incorporated Motion to Strike the "Affidavits" of Larson, Sullivan, & Martinez;[144]

- On 08/16/2022 – Letter/pleading to Trayneisha Sanford and Eralyn Fisher;[145]

- On 08/17/2022 – Time Line and Chronology;[146]

---

[138] Ex. 40; Ex. 53A, at 93:1-18.

[139] Ex. 10; Ex. 53A, at 96:6-21.

[140] Ex. 41; Ex. 53A, at 94:1-10.

[141] Ex. 42; Ex. 53A, at 101:8-102:3.

[142] Ex. 43; Ex. 53A, at 103:3-16.

[143] Ex. 50; Ex. 53A, at 102:5-103:1.

[144] Ex. 44; Ex. 53A, at 103:21-104:14.

[145] Ex. 45; Ex. 53A, at 81:22-82:10.

[146] Ex. 46; Ex. 53A, at 73:11-74:21.

- On 08/17/2022 – Notice of Partial Non-Suit as to Defendant Chinasa Ogubureke;[147]

- On 08/22/2022 – First Supplement to the Motion to Disqualify Lewis Brisbois Bisgaard & Smith LLP and David A. Oubre.[148]

Indeed, Ms. Norman admits in deposition she takes responsibility for filing public court documents on behalf of the Infringing Entity which contain LBBS' exact name.[149] Then, on September 16, 2022, LBBS sent a "cease-and-desist" letter to Defendants demanding Defendants "dissolve immediately the [Infringing Entity] and cease any further activity which serves to identify yourself as [LBBS'] law firm."[150] Despite receiving this cease-in-desist letter, the evidence shows Defendants, in collaboration with one another, continued to use LBBS' marks by filing public court pleadings on behalf of the Infringing Entity in the following instances:

- On 09/19/2022, Defendants filed a letter with the Infringing Entity's letterhead in the Imperial Lofts Case;[151]

- On 09/22/2022, Defendants filed their "Soft" Objections/Motion to Strike Defendant's "Original" Answer" with the Infringing Entity's letterhead in the Imperial Lofts Case;[152]

- On 09/23/2022, Defendants sent an email with attached images of a business card for the Infringing Entity;[153]

---

[147] Ex. 47; Ex. 53A, at 79:13-80:18.

[148] Ex. 48; Ex. 53A, at 20:11-24.

[149] Ex. 53A, at 74:2-75:9, 103:21-104:14, 112:6-15.

[150] Ex. 13; *see* Ex. 23A.

[151] Ex. 11.

[152] Ex. 12.

[153] Ex. 14.

- On 09/29/2022, Defendants sent a letter to Bennett Fisher with the Infringing Entity's letterhead[154] the day after Fisher sent a letter to Ms. Norman demanding Ms. Norman cease using LBBS' marks.[155]

Because Defendants were on actual notice that Defendants' pleadings contained LBBS' registered marks, did not remove or correct such filings, and even after a cease and desist letter was sent by LBBS, Defendants continued to file more pleadings with LBBS' marks. Thus, Defendants, jointly, acted at least with reckless disregard and willful blindness. Defendants' actions are therefore willful violations of the Lanham Act. *Philip Morris*, 547 F. Supp. 2d at 693.

**D. Summary judgment evidence proves LBBS' fraud claim.**

LBBS is able to prove Defendants committed fraud as LBBS can prove: "(1) [Defendants] made a material representation that was false; (2) [Defendants] knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) [Defendants] intended to induce [LBBS] to act upon the representation; and (4) [LBBS] actually and justifiably relied upon the representation and suffered injury as a result." *Sys. One Holdings LLC v. Campbell*, Civ. Action No. B:18-cv-54, 2018 U.S. Dist. LEXIS 153965, *10-11 (S.D. Tex. Aug. 21, 2018) (Morgan, M.J.) (applying Texas law). "A false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010).

The evidence shows Defendants knowingly made false, material representations to the Fort Bend County Clerk and Secretary of State for the State of Texas. On May 2, 2022, Bitgood and Ms. Norman filed a sworn and notarized assumed name certificate identifying the Infringing Entity as an "individual" and "further state[d] that this registrant is <u>not</u> a limited partnership, limited

---

[154] Ex. 24.

[155] Ex. 23A.

liability company, limited liability partnership, or foreign filing entity."[156]  On May 26, 2022,

Bitgood signed his registration of a limited liability partnership for the Infringing Entity "subject

to the penalties imposed by law for the submission of a materially false or fraudulent

instrument."[157] On June 1, 2022, Beers, acting in the capacity of attorney-in-fact of the Infringing

Entity, filed an assumed name certificate identifying the Infringing Entity's assumed name as

"Lewis Brisbois Bisgaard & Smith."[158] Beers signed the assumed name certificate "subject to the

penalties imposed by law for the submission of a materially false or fraudulent instrument."[159]

Defendants also knowingly made false, material representations to the state court in the Imperial

Lofts Case.[160]

 As a result of Defendants' knowingly false representations to the Fort Bend County Clerk

and Secretary of State for the State of Texas, and the court in the Imperial Lofts Case, Defendants

have caused LBBS to suffer damages including, but not limited to, damage in LBBS' reputation

and goodwill. Accordingly, the Court should grant summary judgment in favor of LBBS on LBBS'

fraud claim.

## E.  The Court should grant summary judgment on LBBS' conspiracy claim.

 The elements of civil conspiracy are: "(1) that two or more persons, (2) with an object to

be accomplished, (3) with the meeting of minds on the object or course of action, (4) commit one

or more unlawful or overt acts, (5) that causes damage or injury." *Campbell*, 2018 U.S. Dist.

---

[156] Ex. 6 (emphasis in original).

[157] Ex. 7.

[158] Ex. 8.

[159] Ex. 8.

[160] Exs. 9, 10, 11, 12, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50; *see* Ex. 53A, at 20:11-24, 44:4-14, 79:13-81:17, 81:22-82:10; Ex. 54, at 40:6-13, 42:12-25, 48:5-51:1.

LEXIS 153965, at *10. "[I]n short, there must be a preconceived plan and *unity of design and purpose*, for the common design is of the essence of the conspiracy." *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 379-80 (5th Cir. 2017) (emphasis in original).

Defendants actively and fraudulently conspired together to unlawfully organize, register, conduct business, and file suit using LBBS' name and trademarks.[161] The purpose of Defendants' unlawful and fraudulent conduct was to infringe upon and usurp LBBS' intellectual property, name, goodwill, and reputation.[162] There is ample evidence showing Defendants concertedly conspired with one another to infringe LBBS' trademarks. For example, Ms. Norman produced several e-mails between Ms. Norman and Bitgood revealing Ms. Norman's active role in the conspiracy to intentionally and knowingly create the Infringing Entity and infringe LBBS' trademarks.[163] Mr. Beers also actively and knowingly engaged in the conspiracy with Bitgood and Ms. Norman to infringe LBBS' trademarks by, among other things, working together with Bitgood and Ms. Norman to file an assumed name certificate in public records on behalf of the Infringing Entity and conspiring with Bitgood and Ms. Norman to misappropriate LBBS' name and marks.[164] Further, Mr. Beers' associate (and son), Baker Beers prepared the May 26, 2022 registration form on behalf of the Infringing Entity at Mr. Beers' direction.[165] All Defendants voluntarily, deliberately, and willingly participated in such conspiracy.

---

[161] *See* Exs. 7, 8, 9, 10, 11, 12, 14, 25, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50.

[162] *See* Ex. 22, at 5:18-20, 6:16-20, 7:5-13.

[163] Exs. 26, 27, 28, 29, 30, 31, 32, 33, & 34.

[164] Exs. 8, 35, 36, 37, & 38; *see* Ex. 54, at 48:5-51:1.

[165] Ex. 37; Ex. 54, at 40:6-13, 42:12-25, 48:5-51:1.

Accordingly, Defendants, acting in concert with one another, committed conspiracy which resulted in LBBS' damages, and the Court should grant summary judgment on LBBS' conspiracy claim against Defendants.

**F. The Court should permanently enjoin Defendants from infringing LBBS' marks and award Plaintiff statutory damages and attorneys' fees.**

As a result of Defendants' Lanham Act violations, LBBS seeks (1) permanent injunctive relief; (2) statutory damages in the amount of $2,000,000 against Bitgood, $2,000,000 against Ms. Norman, and $10,000 against Mr. Beers for the infringement of LBBS' trademarks; and (3) reasonable attorneys' fees in the amount of $275,396.50. *Philip Morris*, 547 F. Supp. 2d at 679.

LBBS asks this Court to enter an order permanently enjoining Defendants from infringing any of LBBS' trademarks and from taking any action to promote, market, advertise, and conduct the Infringing Entity's purported "mediation and related services" business.

Section 34(a) of the Lanham Act authorizes courts "to grant injunctions . . . to prevent a violation" of Section 43(a) of the Lanham Act. 15 U.S.C. § 1116(a). Courts also regularly issue injunctions as part of summary judgments, including in cases where statutory damages, attorneys' fees, and costs were also awarded. *See Red Giant, Inc. v. Molzan, Inc.*, Case No. H-07-2657, 2009 U.S. Dist. LEXIS 63990, at *32-33 (S.D. Tex. July 24, 2009) (Johnson, M.J.); *Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Houston, Inc.*, Case No. H-07-0170, 2007 U.S. Dist. LEXIS 77630, at *10–11 (S.D. Tex. Aug. 16, 2007) (Rosenthal, J.).

a. <u>The preliminary injunction standard</u>

A party seeking permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

by a permanent injunction." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). LBBS can establish each of these elements.

### i. LBBS has suffered irreparable injury

The Fifth Circuit has found irreparable injury in a trademark infringement case when "[t]here was a substantial threat to [the plaintiff's] goodwill and the value of its . . . mark." *Paulsson Geophysical Servs., Inc. v. Sigmay*, 529 F.3d 303, 313 (5th Cir. 2008). Irreparable injury has also been found where the defendant's actions "caused a likelihood of confusion among customers." *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. Sept. 29, 2009). As the Fifth Circuit has noted, "loss of goodwill will be difficult to pinpoint as compensable damages." *Am. Rice, Inc. v. Ark. Rice Growers Coop. Ass'n*, 532 F. Supp. 1376, 1389 (S.D. Tex. Mar. 2, 1982) (Gibson, J.). Further, irreparable harm may be "presumed when a [trademark] is infringed." *Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc*., 735 F. Supp. 1334, 1343 (S.D. Tex. May 16, 1986) (Vela, J.). Moreover, "[t]he potential for ongoing harm if a defendant continues to make similar false or misleading statements and the likely impossibility of quantifying the extent of harm suffered as a result of false or misleading statements weigh in favor of finding irreparable injury." *Ill. Tool Works Inc. v. Rust-Oleum Corp.*, 346 F. Supp. 3d 951, 955-56 (S.D. Tex. Oct. 30, 2018) (Hittner, J.).

LBBS has suffered and continues to suffer irreparable harm from Defendants' actions. As a direct and proximate result of Defendants' unauthorized use of LBBS' trademarks and name to conduct "mediation and related services," Defendants and the Infringing Entity have gained a special competitive advantage without the burden of time, labor, skill, or monetary expense, and Defendants have likely caused and will likely continue to cause confusion between LBBS and the

Infringing Entity.  Additionally, LBBS' brand name has been established over the course of more than 40 years. The damage Defendants' infringing activities inflict on LBBS' trademark, reputation, and goodwill are very real, difficult to quantify, and cannot be cured by monetary remedies alone. And there is every risk Defendants have not learned their lessons as Defendants do not even acknowledge their infringing actions was a bad idea,[166] and admitted the creation of the Infringing Entity was "to see that justice was carried out."[167] Thus, LBBS has suffered, and will continue to suffer, irreparable injury absent a permanent injunction.

    ii. *Other remedies, including monetary damages, are inadequate to compensate LBBS for its injuries*

The remedies available at law, including monetary damages, are inadequate to compensate LBBS for its injuries. Injunctive relief is necessary and appropriate to preclude further injury by Defendants.  Injunctions are especially appropriate where the damage to plaintiff cannot be quantified, and therefore cannot adequately "be undone by monetary remedies." *Paulsson*, 529 F.3d at 313.  The damage to LBBS as a result of consumer confusion is similarly "difficult, if not impossible, to establish with dependable certainty." *Flowserve Corp.*, 2011 U.S. Dist. LEXIS 42802, at *29 (citation omitted).

Thus, a simple monetary remedy for past damages is insufficient. LBBS has been and continues to be irreparably harmed by Defendants' actions. The damage to LBBS' consumer goodwill and widely recognized brand name cannot be quantified, and therefore cannot adequately be undone by a monetary remedy. *See Mary Kay*, 661 F. Supp. 2d at 640; *Paulsson*, 529 F.3d at 313.

---

[166] Ex. 53A, at 15:14-20.

[167] Ex. 53A, at 125:15-17.

*iii. The balance of equities favors a permanent injunction*

Without a permanent injunction, LBBS would lose the ability to protect its intellectual property, goodwill, and brand name. *Mary Kay*, 661 F. Supp. 2d at 640. Conversely, granting an injunction would merely require Defendants to refrain from violating the law by using LBBS' trademark and trade name in the Infringing Entity's business cards and public filings. *See id.* Indeed, "the balance weighs strongly in favor of [LBBS] where all that is requested is that [Defendants] comply with the [Lanham] Act." *See Flowserve Corp.*, 2011 U.S. Dist. LEXIS 42802, at *29. Thus, this factor also favors granting a permanent injunction.

*iv. Public interest favors protection against trademark infringement, trade name infringement, and unfair competition*

The issuance of the injunctive relief sought is clearly in the public's best interest. An injunction will not disserve the public interest, as the public will not be harmed by Defendants' inability to infringe LBBS' trademarks. Indeed, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. Aug. 13, 1999) (Rosenthal, J.). "The Supreme Court has held that the Lanham Act exists to insure that the owner of a trademark reaps the benefits of the goodwill of his business, *and* 'to protect the ability of consumers to distinguish among competing producers.'" *Mary Kay*, 661 F. Supp. 2d at 640 (citing *Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985)). "The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks…" *Angel Flight of Ga. Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (citation omitted)).

Granting a permanent injunction will therefore serve the public interest by requiring Defendants' compliance with the Lanham Act, by protecting LBBS' trademarks, public image,

reputation, and goodwill, and by protecting "the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc.*, 469 U.S. at 198. Accordingly, it is in the interest of the public to protect LBBS' trademarks by granting the injunctive relief requested.

b. LBBS is entitled to statutory damages from Defendants

The Lanham Act allows a plaintiff to "elect, at any time before final judgment . . . to recover, . . . an award of statutory damages for any such use in connection with . . . distribution of [] services in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark . . . ; or (2) if the court finds the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark." 15 U.S.C. § 1117(c). Accordingly, "Plaintiff is entitled to statutory damages between $1,000 and $2,000,000 for each counterfeit mark used." *Sculpt Inc. v. Sculpt N. Y., LLC*, Civ. Action No. H-14-3398, 2015 U.S. Dist. LEXIS 148653, *11 (S.D. Tex. Nov. 3, 2015) (Miller, J.). Due to Defendants' willful conduct, LBBS is seeking $2,000,000 in statutory damages against Bitgood, $2,000,000 in statutory damages against Ms. Norman, and $10,000 in statutory damages against Beers. LBBS believes the request for statutory damages to be reasonable in light of Defendants' willful conduct, and also in line with legal precedent.

Courts generally consider the factors relevant for statutory damages in copyright infringement cases to calculate statutory damages in trademark counterfeiting cases. *Coach, Inc. v. Brightside Boutique*, Cause No. 1:11-CA-20 LY, 2012 U.S. Dist. LEXIS 1464, *11 (W.D. Tex. Jan. 6, 2012) (citing *Microsoft Corp.*, 129 F.Supp.2d at 1008). Therefore, in a trademark infringement case, courts "consider such factors as the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Commercial Law League of Am.,*

*Inc. v. George, Kennedy & Sullivan, LLC*, No. Civ. A. H-07-0315, 2007 U.S. Dist. LEXIS 68182, at *3 (S.D. Tex. Sept. 14, 2007) (Rosenthal, J.).

Four of the five factors—*i.e.*, Defendants' willfulness, the need to deter Defendants' conduct, the value of the trademarks, and the losses sustained by LBBS—justify a substantial award of statutory damages per counterfeit mark. The record demonstrates Defendants have willfully infringed LBBS' marks on at least 18 occasions over the span of only four (4) months by filing public pleadings using LBBS' marks and, thereby, representing to the public that Defendants are somehow associated with LBBS.[168] Indeed, Defendants continued to infringe LBBS' marks despite receiving at least two letters demanding Defendants to cease such actions.[169] Due to Defendants' willful actions, LBBS has sustained significant loss in terms of LBBS' time and attorneys' fees in pursuing this lawsuit as well as damage to LBBS' reputation.

In light of these facts, and as supported by legal precedent, the Court should (in addition to a recovery of its reasonable attorneys' fees) grant LBBS statutory damages in the amount of $2,000,000 against Bitgood, $2,000,000 against Ms. Norman, and $10,000 against Beers.

c. <u>LBBS is entitled to its reasonable attorneys' fees</u>

In light of the exceptional circumstances presented in this case, LBBS seeks reimbursement for its reasonable attorneys' fees LBBS incurred through September 21, 2023 in the amount of $275,396.50.[170] In the context of the Lanham Act, reasonable attorneys' fees may be awarded in "exceptional cases." 15 U.S.C. § 1117(a). "An exceptional case involves acts that can be called malicious, fraudulent, deliberate, or willful." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l*

---

[168] Exs. 9, 10, 11, 12, 14, 24, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, & 50.

[169] Exs. 13 & 23A.

[170] Ex. 52.

*Distrib. Co., Inc.*, 520 F.3d 393, 402 (5th Cir. 2008) (internal quotation marks omitted). "Great latitude is given the district court in awarding damages under the Lanham Act, which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997); *Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. CV H-16-35, 2016 WL 6436557, at *3 (S.D. Tex. Oct. 31, 2016) (Miller, J.). As previously demonstrated, Defendants' violation of the Lanham Act was fraudulent, deliberate, and willful.

This is a case where the Court should exercise its discretion to award LBBS its reasonable attorneys' fees and costs incurred from defending its intellectual property rights. First, because Defendants deliberately ignored at least two cease-and-desist letters from LBBS, LBBS was forced to file this action. *Entm't & Sports Programming Network, Inc.*, 735 F. Supp. at 1337; *Chevron Intellectual Prop., LLC*, 2009 U.S. Dist. LEXIS 74751, at *10. Second, an award of attorneys' fees and costs will serve the important functions of deterring future infringements, making Defendants account for their unlawful conduct, and compensating LBBS for the fees and costs it was forced to incur in order to protect its trademarks and end the consumer confusion caused by Defendants' actions. Stated differently, awarding at reasonable attorneys' fees and costs will put LBBS back in the position it would have been in but for Defendants' willful violations of the Lanham Act and subsequent refusal to cease-and-desist from those activities.

In light of the foregoing, LBBS respectfully seeks reimbursement for its attorneys' fees in the amount of $275,396.50 against all Defendants, for which Defendants are jointly and severally liable.[171] *See Polo Ralph Lauren L.P. v. Schuman*, 1998 U.S. Dist. LEXIS 5907, at *15 (S.D. Tex.

---

[171] Upon entry of a final judgment, and consistent with Rule 54(d), LBBS will submit a claim for attorneys' fees and related nontaxable expenses.

1998) (Milloy, M.J.). The amount LBBS seeks is not only the product of a reasonable number of hours and reasonable hourly rates, but is also less than its actual costs and attorneys' fees incurred in this lawsuit.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons set forth above, LBBS respectfully requests this Court grant LBBS' motion for summary judgment, enter final judgment that includes all monies and fees awarded, including statutory damages, permanently enjoin Defendants from infringing on LBBS' trademarks, and for further relief to which LBBS should be deemed to be justly entitled.

Dated: September 29, 2023

Respectfully submitted,

**Lewis Brisbois Bisgaard & Smith LLP**

*/ s / William S. Helfand*

William S. Helfand
Attorney-in-Charge
Texas Bar No. 09388250
Bennett G. Fisher
Texas Bar No. 07049125
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile
bill.helfand@lewisbrisbois.com
bennett.fisher@lewisbrisbois.com
**Attorneys for Plaintiff,**
**Lewis Brisbois Bisgaard & Smith, LLP**

**Certificate of Service**

I certify a true and correct copy of the foregoing document has been served on all parties and counsel *of record* by electronic filing on September 29, 2023

_/ s / William S. Helfand_
William S. Helfand