# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Lewis Brisbois Bisgaard and Smith LLP | § | |
| | § | |
| v. | § | **4:22-cv-03279** |
| | § | |
| Michael Joseph Bitgood, et al. | § | |

## DEFENDANTS BITGOOD's AND NORMAN'S RESPONSE TO PLAINTIFF *PRO SE'S* MOTION FOR SUMMARY JUDGEMENT AND
## BITGOOD's AND NORMAN'S CROSS-MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE JUDGEMENT ON THE PLEADINGS [1] [2]

---

[1]

§ 134.212 Summary judgment. (a) On motion by a party. At any time before the close of record, a party may move for summary judgment as to all or any portion of the case, on the grounds that there is no genuine issue as to any material fact, and that the moving party is entitled to a decision in its favor as a matter of law. (1) Contents of motion. The motion must include a statement of the material facts believed to be undisputed and the party's legal arguments. The motion may include supporting statements in accordance with 28 U.S.C. 1746. The motion must be filed, served, and accompanied by a certificate of service (see § 134.204). (2) Response. No later than 15 days after the service of a motion for summary judgment, all non-moving parties must file and serve a response to the motion or be deemed to have consented to the motion for summary judgment. (3) Cross-motions. In its response to a motion for summary judgment, a party may cross-move for summary judgment. The initial moving party must file and serve a response to any cross-motion for summary judgment within 15 days after the service of that cross-motion or be deemed to have consented to the cross-motion for summary judgment.

[2]

For the Court's convenience, the Master Log of Exhibits, and the numerical Docket entries relied upon—which has been judicially noticed—is annexed hereto as Defendants' MSJ Exhibit "1."

**TO THE HONORABLE JUDGE OF SAID COURT**:

## I.  INTRODUCTION

1.     This cross-motion, and responsive motion, turns on the law and the so-called "well-pled" complaint filed by Plaintiff *pro se* (hereinafter sometimes, LBBS) .  In addition, since Plaintiff *pro se's* entire case and arguments turn on the credibility of one William Scott Helfand, and to a lesser extent, on the credibility of one Robert F. Lewis, the Plaintiff *pro se's* Motion for Summary Judgment must be DENIED, as those declarations are firmly rebutted by Exhibit "2," the Declaration of Defendant Bitgood, annexed hereto and duly incorporated herein by reference, and the Declaration of Susan C. Norman, Exhibit "3," annexed hereto and duly incorporated herein by reference.  See: *Tolan v. Cotton*, 572 U.S. 650 (2014).[3]  In *Tolan,* the Supreme Court set down a bright-line rule that district courts are forbidden from weighing the evidence

---

[3]

"It is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." "And while "this Court is not equipped to correct every perceived error coming from the lower federal courts, we intervene here because the opinion below reflects a clear misapprehension of summary judgment standards in light of our precedents." *Tolan supra.*

attached to a motion for summary judgement, and, from making credibility choices.

## II.   OBJECTIONS TO PLAINTIFF *PRO SE'S* EVIDENCE

2.      Plaintiff *pro se* attached to its Motion for Summary Judgment  a litany of what it calls "exhibits," [4] listed below to which Bitgood and Norman object because Plaintiff *pro se* has failed to properly authenticate them:

> Exhibit 1:  Lewis Brisbois Bisgaard & Smith, LLP Registration No. 3,722,172;
>
> Exhibit 2:   LB Registration No. 5,151,123;
>
> Exhibit 3:   LB Lewis Brisbois, Registration No. 5,151,128.
>
> Exhibit 4:    LBBS' Registration of a Foreign Limited Liability Partnership, dated March  28, 2022;

---

[4]

Defendants object to Plaintiff *pro se's* use of the words, "Infringing Entity," in its MSJ and its "exhibits," in apparent reference to Defendants'  Texas Domestic LLP—which Defendants Bitgood and Norman terminated on October 6, 2022. As will be shown below, Defendants could not have infringed upon an "entity" which (1) had lost its right to transact business in Texas at the time it transacted business in Texas by appearing for clients in a state court, and (2) for which the USPTO had cancelled Plaintiff *pro se's* right to the four-name word mark on July 10, 2020, and, as of the time of filing this instant suit, the USPTO had not approved Plaintiff *pro se's* Sept. 29, 2022, new application.

Exhibit 5:   Original petition filed in Cause No. 22-CCV-070378, *Jones, et al. v. Martinez, et al.*, in the County Court at Law No. 3 of Fort Bend County, Texas (the "Imperial Lofts Case");

Exhibit 6:   The Infringing Entity's Assumed Name Certificate for Certain Unincorporated Persons, filed in Fort Bend County, Texas on May 2, 2022;

Exhibit 7:   The Infringing Entity's Registration of a Limited Liability Partnership, filed in the Office of the Secretary of State of Texas on May 26, 2022;

Exhibit 8:  The Infringing Entity's Assumed Name Certificate, filed in the Office of the Secretary of State of Texas on June 1, 2022;

Exhibit 9:   3rd Amended Petition, dated June 15, 2022, filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case;

Exhibit 10:  4 th Amended Petition, dated June 24, 2022, filed in the Imperial Lofts Case;

Exhibit 11:   Bitgood's letter/pleading to William Moye and Bennett Fisher, dated September 19, 2022, filed by Bitgood in the Imperial Lofts Case;

Exhibit 12:   "Soft" Objections/Motion to Strike [Underlying] Defendant's "Original" Answer, filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on September 22, 2022;

Exhibit 13:   LBBS' cease-and-desist letter to Bitgood and Ms. Norman dated September 16, 2022;

Exhibit 14:   Bitgood's e-mail dated September 23, 2022, including images attached thereto;

Exhibit 15:   American Lawyer article/survey on LBBS' revenue;

Exhibit 16:   Article – Leading National Law Firm Lewis Brisbois Selects Bottomline's Law Firm Analytics to Assist in Managing Billing Operations;

Exhibit 17: Article – The Law Firms that Get Hired When a Firm is Hacked;

Exhibit 18:   Article – The 2022 Am Law 100: By the Numbers;

Exhibit 19:   Article – Glass Ceiling Report: How Does Your Firm Stack Up?

Exhibit 20:   Article – Women in Focus;

Exhibit 21:  Article – The Largest Law Firms With the Most Women Lawyers (2021);

Exhibit 22:   Excerpts from October 6, 2022 hearing transcript;

Exhibit 23:   Excerpts from December 15, 2022 hearing transcript;

Exhibit 23A:   Letter from Bennett Fisher to Ms. Norman, dated September 28, 2022. Exhibit 24: Letter from Ms. Norman to Bennett Fisher, dated September 29, 2022;

Exhibit  24 - 2023 09-29 - SCN Response to Fisher "Dear Sue" "false claims in Fed suit;"

Exhibit 25:    Email from Meredith Riede to Norman Giles, dated August 17, 2022;

Exhibit 26:   Email from Ms. Norman to Bitgood dated May 2, 2022 with subject line  "Lewis Bobo Still Expired," produced as "Resp to Req Prod 1 – 5-22 23;

Exhibit 27:   Email from Ms. Norman to Bitgood dated May 31, 2022 with subject line  "Lewis Bobo – Dallas Office," produced as "Resp to Req Prod 1 – 5-22 23;

Exhibit 28:   Email from Ms. Norman to Bitgood dated May 31, 2022 with subject line  "Houston Office of Lewis Bobo," produced as "Resp to Req Prod 1 – 5-22;

Exhibit 29:   Email from Ms. Norman to Bitgood dated May 31, 2022, with subject line "NEW LEWIS BRISBOIS LLP – Sent PDF of each section at Sec State," produced as "Resp to Req Prod 1 – 5-22 23 Page 20 [– 27] of 50;"

Exhibit 30:   Email from Ms. Norman to Bitgood dated June 9, 2022 with subject line  "Lewis Bobo," produced as "Resp to Req Prod 1 – 5-22 23 Page 28 of 50;"

Exhibit 31:   Email from Ms. Norman to Leigh A. Gonnet dated June 9, 2022 with subject  line "Foreign LLP filed with same name as domestic LLP," produced as "Resp to Req Prod 1 – 5-22 23 Page 29 [– 30] of 50;"

Exhibit 32: Email from Ms. Norman to Bitgood dated July 22, 2022, with subject line "This will definitely cause a hiccup;"

Exhibit 33: Email from Ms. Norman to Bitgood dated July 21, 2022 with subject line "Table of Sec State Filings;"

Exhibit 34: Email from Ms. Norman to Bitgood dated July 21, 2022 with subject line "Filing History for LBBS in Texas;"

Exhibit 35: Text messages between Bitgood and Mr. Beers [Beers 000011 – 000014];

Exhibit 36: Email between Defendants dated May 23, 2022 with subject line "LLP" [Beers 000015 – 000017];

Exhibit 37: Email chain between Defendants dated May 23, 2022 – May 26, 2022 [Beers 000018 – 000030];

Exhibit 38: Beers Law Firm invoice to Bitgood [Beers_000039 – 000040];

Exhibit 39: Plaintiffs' Reply to Defendant's Response to the Motion to Show Authority filed by Bitgood and Ms. Norman, behalf of Jones and the Infringing Entity in the Imperial Lofts Case on June 21, 2022;

Exhibit 40: Application for Entry of Partial Default & Severance filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on June 23, 2022;

Dkt. 183-41 - Exhibit 41: Motion to Strike the J.P. Court Jury Demand and Request for Judicial Notice Under Texas Rule of

Evidence 201 filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on June 24, 2022;

Exhibit 42:  Plaintiff's Reply to Defendant's "Amended" Response to the Motion to Show Authority & Motion to Strike the "Affidavits" of Larson, Sullivan &  Martinez filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on July 11, 2022;

Exhibit 43:     Plaintiff's Reply to Defendant's "Amended" + "Amended" Response to the  Motion to Show Authority filed by Bitgood and Ms. Norman, on behalf of  Jones and the Infringing Entity in the Imperial Lofts Case on July 12, 2022;

Exhibit 44:  Plaintiffs' Reply to the Amended-Amended Response to the Defendant's  Motion to Show Authority With Incorporated Motion to Strike the  "Affidavits" of Larson, Sullivan, & Martinez filed by Bitgood and Ms.  Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts  Case on July 22, 2022;

Exhibit 45:    Letter/pleading to Trayneisha Sanford and Eralyn Fisher filed by Bitgood in the Imperial Lofts Case on August 16, 2022;

Exhibit 46:    Time Line and Chronology filed by Bitgood and Ms. Norman, on behalf of  Jones and the Infringing Entity in the Imperial Lofts Case on August 17,  2022;

Exhibit 47:    Notice of Partial Non-Suit as to Defendant Chinasa Ogubureke filed by  Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on August 17, 2022;

Exhibit 48:    First Supplement to the Motion to Disqualify Lewis Brisbois Bisgaard &  Smith LLP and David A. Oubre filed by Bitgood and Ms. Norman, on behalf  of Jones and the Infringing

Entity in the Imperial Lofts Case on August 22, 2022;

Exhibit 49:   Letter to the Honorable Keith P. Ellison filed by Bitgood in Civil Action No. 4:22-cv-03279, on October 5, 2022, as Docket No. 8;

Exhibit 50:   Motion to Strike the "Affidavits" of Larson, Sullivan & Martinez filed by Bitgood and Ms. Norman, on behalf of Jones and the Infringing Entity in the Imperial Lofts Case on July 12, 2022;

Exhibit 51:   Affidavit of Robert F. Lewis;

Exhibit 52:   Affidavit of William S. Helfand;

Exhibit 53: Excerpts of Ms. Norman's deposition transcript of July 26, 2023;

Exhibit 53A:   Excerpts of Ms. Norman's deposition transcript of August 16, 2023;

Exhibit 54:   Excerpts of Mr. Beers' deposition transcript of August 16, 2023;

Exhibit 55:   The State Bar of California certificate of registration certifying that Lewis D'Amato, Brisbois & Bisgaard is registered with the State Bar of California as a limited liability partnership, effective December 29, 1995;

Exhibit 56:   Certificate of registration for limited liability partnership filed by Lewis D'Amato, Brisbois & Bisgaard in Secretary of State for the State of California on December 29, 1995;

Exhibit 57:   LBBS' limited liability partnership amendment to registration filed in the Secretary of State for the State of California on June 21, 2002;

Exhibit 58:   Law 360 Article – Lewis Brisbois Gave Up Name Rights, Company Argues;

Exhibit 59:   Law 360 Article – Lewis Brisbois Sues Lewis Brisbois in Texas Name Spat;

Exhibit 60:   Law 360 Article – Lewis Brisbois Trademark Suit Moving Forward in Texas Court.

## III.   NATURE OF THIS CASE

3.    Since the Court has taken judicial notice without objection of the entire proceeding—with Plaintiff *pro se's* gleaming approval—[5] the facts as detailed below, along with the docket, defeat Plaintiff *pro se's* motion, and mandate that judgment be entered for the defendants as a matter of law.   Further, as shown below, Defendants Bitgood and Norman raise the affirmative defenses of *res judicata* and collateral estoppel, amply supported by Plaintiff *pro se's* own statements by its partners, Fisher, Helfand, and Oubre as shown in their depositions attached herein as exhibits and incorporated for all purposes as if fully set forth verbatim herein.

---

[5]

See: Exhibit "4" annexed hereto and duly incorporated herein by reference where Plaintiff *pro se* waives any objection it may have, and joins, by Fisher's "explaining" to the court **exactly what Bitgood has requested under Fed. R. Evid. 201, and the Court then grants the unopposed request**.

4.    When the Court granted Defendants' request to take judicial notice of the entire proceeding, that request in Defendants' favor conclusively established those facts as laid out below, and relieved Defendants of the burden of providing formal proof.  *See: United States v. Harrison,* 651 F.2d 353, 355 (5th Cir. 1981).  In civil cases, the judge must instruct the jury to accept the noticed fact as conclusive.  **See** Fed. R. Evid. 201(f).[6]

## IV.   THE LEGEND OF  "SLEEPY HOLLOW"

5.    The undisputed facts of this case fit squarely within the *Rooker/Feldman, Palmer, Riley, Shepherd,* and *Haywood*  exceptions to a federal district court case, much   less the federal district court's overturning the work of the state courts.  *Riley v. Louisiana* 214 F. App'x 456 (5th Cir. 2007), and *U.S. v. Shepherd,* 23 F.3d 923 (5th Cir. 1994).

## V.   WHAT WE DID THAT GOT US HERE--
## (WE "OUT-LAWYERED" THEM IN STATE COURT) [7]

---

[6]

"Appellant insists that the court was required to take testimony to show what the C.F.R. schedules showed as of the dates of the offenses charged, 1976 and 1977. ***The argument misconceives the nature of judicial notice, which dispenses with the necessity of proof."*** *Harrison supra.*

[7]

**WE,** is Bitgood, attorney Susan C. Norman, representing her clients in state court, and, attorney Brad Beers, representing Bitgood in state court as well.

6.      In connection with the formation of the now-terminated Texas domestic partnership, Lewis, Brisbois, Bisgaard & Smith, LLP,[8] and Plaintiff *pro se's* "settlement" demands, the following are the facts of this case:

7.      On  September 23, 2022, Plaintiff *pro se*, **after losing the same case in state court,** filed this instant case in this district court claiming that we violated the "Lanham Act" by misappropriating the name "Lewis Brisbois Bisgaard & Smith LLP," in filing the Texas Domestic Partnership."

8.      While at first blush such a claim might seem viable, it is <u>not viable</u> because we took an unorthodox, but completely legal approach in state court, and then **we quit** at the very first hearing in this case. **See**: **Docket 19, fn**.1.

9.      *Lewis  Brisbois  Bisgaard  &  Smith  LLP* [Plaintiff *pro se*], is a

---

**Mr. Beers has been Bitgood's  personal lawyer for over 20 years, and would be my lawyer in this case, until Plaintiff *pro se* attempted to bribe him, which forced him to withdraw, and hire his own counsel.**

[8]

Lewis Brisbois Bisgaard & Smith LLP, a Texas Domestic Partnership, was voluntarily terminated with the Texas Secretary of State on October 6, 2022, <u>prior to this Court's signing the TRO on Oct. 7, 2022.</u>

California foreign entity under Texas Law.  Under Texas Law, a foreign entity MUST—by law—pay its franchise taxes, and renew its registration yearly on a timely basis, or it forfeits the right to transact business in Texas, and the entity  is **BARRED** by law from transacting business in Texas—in this case, appearing in a Texas court .  It is that simple.  The Texas Secretary of State sent out ample and repeated notices to Plaintiff *pro s*e to pay the fees, and renew its foreign entity registration to transact business in Texas, **OR, its authority to transact business in Texas would cease as of a date certain set out in the notice**  (making the name available to anyone who paid the fees, and registered the name).

10.    Defendants checked with the **USPTO** to ascertain if the four-name word mark , *Lewis, Brisbois, Bisgaard and Smith,* was a protected name. We discovered that Plaintiff *pro se* had failed to renew its registration with the USPTO of the  four-name wordmark, Lewis Brisbois Bisgaard & Smith, LLP, and on July 10, 2020, the USPTO had underlined cancelled the four-name word mark, leaving it in the public domain.  We discovered that although the four-name word mark **was not a protected name**, the stylized, fanciful "LOGOs" with those four initials—LBBS— and the two-

name word mark, Lewis Brisbois, were protected.  **We did not use any protected word marks or logos.  In addition, we DID NOT conduct any business of any kind using the name Lewis, Brisbois, Bisgaard and Smith before we dissolved the Texas LLP .**   On September 23, 2022, Plaintiff *pro se* <u>did not</u> own the four-name word mark, Lewis Brisbois Bisgaard & Smith, LLP previously registered with the USPTO when it filed this lawsuit.   See Docket 35-2.  It is nothing new that William Helfand lied to the Court in Plaintiff *pro se*'s Docket 1, about owning the four-name word mark on September 23, 2022.  See: Docket 1-1.  And, William Helfand doubled-down on his original false filing again on the record on October 6, 2022, in order to acquire a TRO in this case .  Helfand is well-known to be an habitual liar, and nothing that turns on his word would support a judgment.  Bitgood has known William Helfand for thirty-eight (38) years, and his behavior in the district court, **<u>and now in the Fifth Circuit Court of Appeals</u>**, is consistent with the published opinion of Houston's First Court of Appeals in *Helfand v. Coane*, 12 S.W.3d 152 (Tex. App. 2000), wherein Helfand is aptly described as:

a. being a "habitual liar";
b. being a "sociopath" and,'
c. repeatedly lying to federal judges.[9]

11.    Before forming the Texas LLP,  so as not to transgress and perhaps break the law, we registered the entity, *Lewis Brisbois Bisgaard & Smith, LLP [Texas Domestic],* and brought a lawsuit against Plaintiff *pro se* to have a state court of record declare under Chapter 37 of the Texas Civil Practice and Remedies Code, who had the **legal right** to use the name

---

[9]

At page 5 of Plaintiff *pro se's* brief to the Fifth Circuit, which is in this record, and of which the Court has taken judicial notice, Helfand tells the Fifth Circuit that the following event took place, and, that this event is in the record:

> "**3. Defendants' conduct sows confusion.**
>
> Defendants' misuse of **LBBS's mark** has created confusion. **For example, Bitgood sent an email to the city attorney for Sugar Land, Texas offering mediation services through his infringing entity. ROA.2550.** The city attorney forwarded the e-mail to an LBBS partner. *Id.* Mr. Helfand spoke with the City attorney and explained how Defendants  "were improperly using the name of the law firm Lewis Brisbois Bisgaard & Smith." ROA.2326. **The City attorney "understood that there was some effort on [Bitgood's] part, Ms. Norman's part with Mr. Beers' assistance,  to create confusion regarding who was the firm of Lewis Brisbois Bisgaard & Smith." ROA.2346, ROA.19-ROC.145923.**

Of course, Helfand was lying yet again, a fact borne out by the deposition of Meredith Riede where she denies such [an outrageous lie] ever took place. See: Exhibit "5" the deposition of Meredith Riede, duly incorporated by reference as if set forth verbatim.

Lewis Brisbois Bisgaard& Smith in the State of Texas. **See: Docket 19. Our strategy was simple and straightforward ; if we win on that issue, we knock out the law firm, the clients, and the case is over.** The state-court case is a well-pled "Lanham Act" case by pleadings, and Plaintiff *pro se* said so by filing a counterclaim—after judgment, on October 6, 2022— alleging the same claims it alleges here. What Plaintiff *pro se* failed to do, was to timely object, or put forth any evidence whatsoever in support of any "Lanham" Act violation until after Plaintiff *pro se* lost in state court. And, Plaintiff *pro se*'s failure to file SPECIAL EXCEPTIONS to the live state court pleading, is fatal to its feigned ignorance that Plaintiff *pro se* did not know what the case was about, ("Lanham") and what was on the docket.[10]

12.   On September 13, 2022, with Plaintiff *pro se's* Houston managing partner, David Oubre, appearing for the defendant firm and the clients,

---

[10] A special exception is the appropriate vehicle to illustrate that a Plaintiff has failed to state a cause of action. TEX. R. CIV. P. 90--91; *State v. Houdaille Indus., Inc.,* 632 S.W.2d 723, 724 (Tex. 1982). If a party fails to file special exceptions, the court must accept as true all the material factual allegations and all factual statements reasonably inferred from the allegations set forth in the pleadings. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex. 1994).

and with the issues fully joined as pled by defendant in the state court [Plaintiff *pro se* here] we proceeded to try that issue in state court. **Defendant [Plaintiff *pro se*] Lewis Brisbois (California), LOST, and lost in a big way. The state court ruled that defendant, Lewis Brisbois (California LLP) [Plaintiff *pro se* here], had no right to appear in a Texas court; ejected the entire law firm from the case; struck its pleadings, and then struck Defendant [Plaintiff *pro se's*] "client's" pleadings.**[11]

13.    The transcript of that trial; the state court's orders; the state court's entry of judgment; the state court's **findings of fact and conclusions of law,** were all marked, offered, and ADMITTED into evidence in this instant case on December 2, 2022, and re-urged again on December 15, 2022, with Helfand stating, "no objection," and ADMITTED into evidence, and they are re-urged into this motion. **See: Dockets 272, 273, and 274.**

---

[11]

Obviously **our trial strategy** worked; the state court signed off on it; it ended the underlying lawsuit which settled within two weeks; and, made Plaintiff *pro se* the laughing stock of the courthouse which left them in peril of losing every case in a Texas state court because they were legally unable to appear in any Texas court. See: *Texas Business and Commerce Code* Sec. 71.202. A person commits an offense if the person: (1) conducts business or renders a professional service in this state under an assumed name; and (2) intentionally violates this chapter.

14.     Ten days later, **(after Plaintiff *pro se* [as defendant] lost in state court)**, Plaintiff *pro se* sued the defendants in federal court—this instant case—in flagrant violation of the binding Fifth Circuit precedents of *Riley v. Louisiana* 214 F. App'x 456 (5th Cir. 2007), and *U.S. v. Shepherd,* 23 F.3d 923 (5th Cir. 1994).

15.     The record in this case is littered with our objections to engaging in fraud against the state courts as demanded by Plaintiff *pro se* in its settlement demands, and, this case continues to stay alive **despite the Court's own words that the case has no usefulness**—something with which we completely agree. **Further, there is one more thing that should have ended this case on the spot;  on October 6, 2022, Plaintiff *pro se* filed a counterclaim in the state court, asking for the identical declaration from the state court (after having filed this case in federal court on September 23, 2022)**[12]**. See: Docket 9.**

---

[12]

Plaintiff *pro se* pled as follows: CAUSE OF ACTION – REQUEST FOR A DECLARATORY RELIEF. Pursuant to Section 37.003 et seq. of the Texas Civil Practice and Remedies Code, the Nominal Defendants [Plaintiff *pro se* here] request the court declare: 1. David Oubre is authorized to practice law in Texas; and **2. Lewis Brisbois  Bisgaard & Smith, LLP is authorized to do business in Texas**. See: Docket 9. **(There it is in plain black and white.)**

16.    That filing, Docket 9, is what judges call a "game changer" and required this Court  to abstain on the spot. **See: Docket 23.** Even Fisher, for Plaintiff *pro se*, admitted at his deposition that this filing was a colossal blunder—to put it mildly. See: Exhibit "6," the deposition of Bennett Fisher, for Plaintiff *pro se*, duly incorporated herein by reference.

17.    This is the extent of our **"bad acts"** that caused Bitgood, and two lawyers who were absolutely immune from suit, to be sued by Plaintiff *pro se*.  In other words, we broke no laws, committed no torts, violated no statutes, and Plaintiff *pro se*—by its own admission—knew what we did, but elected to challenge in state court, lost, and then came into federal court <u>**to complain about what we did open court and in their presence.**</u>

18.    It is well-settled law that state courts possess concurrent jurisdiction with federal courts <u>over all civil causes of action</u>, **Lanham included**, <u>except one</u>: Title 11 Bankruptcy. See: *Howlett v. Rose,* 110 S. Ct. 2430, 496 U.S. 356 (1990). Indeed, the United States Supreme Court, as recently as 2009, in *Haywood v. Drown*, 129 S. Ct. 2108, (2009), explained it as follows:

> **"Federal and state law "together form   one system of Jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are courts of the same country, having jurisdiction partly different and partly**

**concurrent. and, "so strong is the presumption of concurrency that it is defeated only when Congress expressly ousts state courts of jurisdiction."** [13]

19.    On October 6, 2022, once the Court expressed his disdain over what he viewed as a judicial "high-jacking" and we viewed the expense of fighting this case, as well as displeasing a federal judge—WE FOLDED, and told Judge Ellison, "OK ,Judge, we quit, they "win," and we dissolved Lewis Brisbois Texas, before Judge Ellison entered a TRO.  **See: Docket 16.**

20.    Not to be lost on the Court is another series of facts ranging from Plaintiff *pro se's* failure [actually refusal] to request summons and have us served —which is also  jurisdictional—to Bitgood's offer to submit the entire case on stipulated facts within five (5) days after Plaintiff *pro se* filed the instant district court lawsuit.  **Thus, five (5) days after it was filed, the case should have been over.  The "affidavit" submitted**

---

[13]

There is no legal requirement in State  court that one plead "magic" language such as ie., "Rico" "Copyright" "Lanham" "Title 15" etc., in that the language in the live pleading is what controls.  In the absence of "special exceptions" in state court, which Oubre admitted that he did not file, the live pleading in state court pled a cause of action under "Lanham" and that is how the state court adjudicated it.  See: Exhibit "7," the deposition of David Oubre.

**by Helfand is conclusory and does not detail what services were performed in this case, neither can anyone discern whether the fees were necessary—unless of course the setting Bitgood  up to be indicted on bogus felony charges as indicated in the fee statement, was part of the "work performed."  See: Docket 205 & 206.**

21.   Plaintiff  *pro se* concealed its filing of the instant district court lawsuit.  But for the media (Law 360) calling Bitgood and requesting a comment, we would never have known about this lawsuit, as Plaintiff *pro se* waited until after the state court ruled against it, and then filed  the instant district court case against us with no notification to us.

22.   Lying  to the Court is not only a serious breach of  everything we hold near and dear, but it is also tampering with the very system put in place to protect the public. <u>See:</u> *Hazel-Atlas Glass Co. v. Hartford- Empire Co.*, 322 U.S. 238 (1944); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946).  This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas*, 322 U.S., at 245, is necessary to the integrity of the courts, for "tampering with the

administration of justice in [this] manner involves far more than an injury to a single litigant.  **It is a wrong against the institutions set up to protect and safeguard the public.**" When you lie under oath in a matter material to the inquiry at hand, that's called perjury, ***and it cannot be tolerated in a federal court***— period, the end!  **See:** *18 U.S.C. 1623*. **So it is here with William Helfand. (Docket 86 &87)**

23.    As in *Mylett v. Jeane*, 910 F.2d 296 (5th Cir.1990), when a lawyer by the name of Lopez refused to do **the exact same thing** that Plaintiff *pro se* asked Brad Beers to do in this case—Helfand attempted to bribe Bitgood's lawyer **and we submitted proof** to the Court of this attempt.

24.    In connection with the legal services rendered to Bitgood by Bradley B. Beers, and Susan C. Norman, Beers has been Bitgood's personal attorney for well over 20 years.  Bitgood hired him to help form the Texas LLP, along with Susan Norman.  Bitgood knows  nothing about forming a company that would be an LLP, and thus, Beers was rendering legal services to Bitgood, and Norman was rendering legal services to the LLP. **Those facts are in evidence, and undisputed,  as seen in Exhibit 11, Bitgood admitted Exhibits 1-15,** when both  Beers and Norman

made their appearances for Bitgood  in state court in the case where Lewis Brisbois was the defendant and the issue of who possessed the right to use the name "Lewis Brisbois" was heard and determined.

25**. Neither lawyer—Beers nor Norman—did anything that lawyers do not normally do in representing a client, and indeed the state court warned David Oubre repeatedly that what was at stake was something he should take seriously—a warning he ignored**.

26.   Oubre's sudden bout with "Alzheimers" memory loss at his deposition is (a) pathetic for a 32-year practicing lawyer, and (b)  was induced by Helfand's helping him "forget" everything—except the controlling state law  procedural questions that slipped past Helfand.

27.   What Plaintiff *pro se* was doing in state court [transacting business under the  name Lewis Brisbois *et al*] was a criminal offense, and Oubre admitted to the state court that Plaintiff *pro se* did not re-apply for its registration with the Secretary of State nor or pay the statutory fees, until March 28, 2022—which was after Plaintiff *pro se* made an appearance in state court.  **Plaintiff *pro se* DID NOT submit an application to the**

**USPTO for the word mark: "Lewis, Brisbois Bisgaard & Smith LLP" until September 29, 2022—only after it filed this suit on September 23, 2022.**

28.    The issue of attorney's fees—if the U.S. Supreme Court's mandate is not followed here—**is an issue of fact to be determined by a jury**. This Court should not  be angry at the state court judges in this case, nor allow "Little Billy" Helfand, or Fisher, to continue to mock them.  To the contrary, the Court's ire should be directed toward the Plaintiff *pro se's* arrogance, incompetence, malfeasance, and failing to protect its "rights" in the state court when the issue was tried.

29.    As the Court also heard at the depositions taken in this case— despite Plaintiff *pro se's* false narrative that the underlying state court case was a rent/lease dispute—it has been established that Bitgood  was not a renter at Imperial Lofts when the state-court case was brought.  On November 30, 2023, the Fourteenth Court of Appeals sitting in Houston, Texas, "nailed" it when they wrote these words:

> "**BACKGROUND: "**Appellant [Bitgood] filed a petition seeking declaratory judgment and injunction and asserting claims for, inter alia, **fraudulent billing**

**under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.** (Bitgood v. Martinez, **NO. 14-22-00694-CV,** November 30th 2023). [14]

## VI.   THE COURT HAS SPOKEN
( This case is moot)

30.    The mootness doctrine requires that "litigants retain a personal interest in  a dispute at its inception and throughout the litigation." *Tex. Midstream Gas  Servs., LLC v. City of Grand Prairie,* 608 F.3d 200, 204 (5th Cir. 2010), and, because **mootness implicates jurisdiction, it can be raised for the first time at any point, including on  appeal**.  A claim is moot if it becomes "impossible for the court to grant  any effectual relief whatever to a prevailing party." *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992); see *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak  Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003). When a claim  becomes moot the case must be dismissed. *Church of  Scientology*, 506 U.S. at 12.

---

[14]

A copy of the opinion was supplied to the Court in **ECF 203  / 213**, and  the Court has taken  judicial notice of it.  It is a serious federal crime to steal from the taxpayers, and it was made worse when we  discovered that the targets of these thefts were citizens of color, that is Black people, the same Blacks that Plaintiff *pro se* refers to in its e-mails as "Niggers."

31.   This Court's judicial pronouncements that this case "has outlived any usefulness" indicate mootness, and as recently as April 1, 2024, during the proceedings before the Court, the Court said it again, with one addition : "What about the attorney's fees allegedly incurred"?   **We address it now.**

32.   First, Plaintiff *pro se* admitted at deposition before this Court that the fee statements were "incorrect."  Assuming now, that the Court would allow  Plaintiff  *pro se* the ability to  correct the  fee statements will not stave off the fatal flaw that Plaintiff *pro se* believes allows it a recovery. In *Kay v. Ehler,*111 S. Ct.1435 (1992) the United States Supreme Court rightfully held that:

> **"The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."  A rule that authorizes awards of counsel fees to pro se litigants- even if limited to those who are members of the bar-would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory  policy  of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case."**

33.     In *Kay v. Ehler*,  the United States Supreme Court held that pro se

litigants, even licensed attorneys, cannot recover attorneys fees.

34     In *Kay*, in which there was **even a stronger presumption than**

**Lanham** to award fees under 42 USC 1988, the Court held:

> "A ***pro se*** **litigant who is also a lawyer may not be**
> **awarded attorney's fees** under § 1988. Neither § 1988's text
> nor its legislative history provides a clear answer to the
> question whether a **lawyer who represents himself should**
> **be treated like a client who has an independent**
> **attorney or like other** ***pro se*** **litigants, who, the Courts**
> **of Appeals have correctly decided, are not entitled to**
> **attorney's fees**..... **That policy is best served by a rule**
> **that creates an incentive to retain counsel in every case**
> **rather than a disincentive to employ counsel whenever**
> **a plaintiff considers himself competent to litigate on his**
> **own behalf**. Even a skilled lawyer who represents himself is
> at a disadvantage in contested litigation because ethical
> considerations may **make it inappropriate for him to**
> **appear as a witness,** [15] **and because he is deprived of the**
> **judgment of an independent third party during the**
> **litigation.**"

31.     In short, let Plaintiff *pro se's* rant begin: that *Kay*  is inapplicable to

this case when the Supreme Court held:

---

[15]

"Presto"–and what did William Helfand testify to under oath when asked if he
was lead counsel, and did he voluntarily call himself as a witness in the case?
His answer was: **YES.**  See: Exhibit "8" the deposition of William Helfand which
is duly incorporated herein. That ends this inquiry, in addition that Helfand is
disqualified as a matter of law. See: *Mauze v. Curry*; 861 S.W.2d 869,(Tex. 1993).

**"The question then is whether a lawyer who represents himself should be treated like other pro se litigants or like a client who has had the benefit of the advice and advocacy of an independent  attorney?"**

32.     The Supreme Court answered: **NO,** and, in doing so eliminated all of  Plaintiff *pro se's* arguments  when (a), **<u>Plaintiff stipulated in the record that it appeared *pro se* in this case,</u>** and (b), when the Court took judicial notice of that undisputed fact and appended the Court's signature to that stipulation by signed order.  **<u>In the case at bar, the binding stipulation of Plaintiff *pro se*—that it was *pro se*—and asking the Court to sign such an order, ends the inquiry!</u>**

36.     Notwithstanding that Plaintiff *pro se* could have, and should have raised these claims in state court; the case is moot because the Court cannot grant Plaintiff *pro se* any relief beyond what it received on October 6, 2022, and, if there was a dispute as to its status, **and the fee question, that still would be an issue for the jury,** not the Court. [16]

---

[16]

**An amount incurred or contracted for by a claimant is not conclusive evidence of reasonableness or necessity; "[t]he fee claimant still has the burden to establish reasonableness and necessity."** *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497-98 (Tex. 2019). To obtain attorney's fees, a party generally must present evidence of the reasonable hours spent by its counsel  and its counsel's reasonable hourly billing rate. *Rohrmoos*

## VII.   PLAINTIFF *PRO SE* PERSISTS VIA HELFAND

37.   LBBS's Lanham Act claims are legally and factually unsupportable.

For example, LBBS failed to show any "commercial" activity by

Defendants which is  necessary to assert a trademark claim, nor did it

provide evidence of Defendants' use of any sort of its registered

trademarks.  The record contains no evidence, for instance, of any sales,

customers, or goods or services offered by Defendants under LBBS's

trademarks.  Because there was no evidence that any Defendant ever used

the LBBS name in a legally prohibited way—in connection with the sale

---

*Venture v. UTSW DVA Healthcare*, 578 S.W.3d 469, 498 (Tex. 2019).
    To be sufficient, this evidence must at a minimum include proof of:
        • the particular services performed;
        • the identity of the person who performed these services;
        • an approximation as to when these services were performed;
        • the reasonable amount of time required to perform these services; and,
        • the reasonable hourly rate of the person performing them. Once a party
has introduced this evidence, the resulting fee calculation—often referred to as
the base loadstar figure—is presumptively reasonable and necessary.  The
categories of evidence identified above take into account most of the *Arthur
Andersen* factors, such as the time and labor required, the novelty and difficulty
of the questions involved, the skill required to perform the legal services
properly, the fee customarily charged in the locality for similar legal services, the
amount involved, the experience and ability of the person performing the
services, whether the fee is fixed or contingent, the uncertainty of collection
before the performance of the services, and the result obtained. The fee
proponent may seek an enhancement of the base loadstar figure. However, the
issue of whether the fees were (1) reasonable, and (2), necessary, **is for the jury
to decide.** (The Erie Doctrine has been invoked, and applies in this case).

or advertisement of goods or services—this Court erred as a matter of law in concluding that Defendants were infringing LBBS's marks or that LBBS's claims were likely to succeed.

38.    In 2022, the law firm LBBS was representing a landlord in connection with a suit relating to the landlord's attempt to evict tenants: *Jones et al. v. Martinez et al.*, No. 22-CCV-070378 (CCL No. 3 Fort Bend, Texas) (the "*Imperial Lofts*" case).  Defendant attorney Susan Norman was representing the tenant with the assistance of non-attorney Michael Bitgood, who was also a Plaintiff.  When Norman and Bitgood discovered that LBBS had allowed its registration to transact business in Texas to lapse, they asked Bradley Beers to form a new Texas entity called "Lewis Brisbois Bisgaard & Smith LLP," to highlight the fact that LBBS was not authorized to transact business in Texas.  The strategy, however unorthodox, succeeded  in having the court in *Imperial Lofts* enter findings on that issue favorable to the tenant facing eviction, and in ejecting LBBS from the case.

39.    LBBS then filed this lawsuit against Norman, Bitgood, Beers, and

Richard Jones,[17] claiming that they violated the Lanham Act and conspired to commit fraud.  LBBS is a law firm which purported to be the owner (Docket1, ¶ 26) of the following registered trademarks: Reg. No. 3,722,172[18] (a four-name word mark  of Plaintiff's name), Reg. No. 5,151,128 (a fanciful design of the letters "L" and "B" to the left of the word "LEWIS" above the word "BRISBOIS"), and Reg. No. 5,151,123 (a fanciful design of the letters "L" and "B") (the "Registered Marks"), ROA.2544. Additionally, LBBS purports to be senior user of the following unregistered word marks: "Lewis Brisbois Bisgaard & Smith LLP," "Lewis Brisbois Bisgaard & Smith," and "Lewis Brisbois" (the "Word Marks").[19]

40.    After an initial hearing on October 6, 2022, at which this Court expressed doubts regarding whether defendants Bitgood and Norman could use the name "Lewis Brisbois, Bisgaard & Smith," Defendants Bitgood and Norman voluntarily dissolved the Texas LLP, and Bitgood

---

[17] Defendant Jones has never been served with process nor appeared in this action.

[18] Reg. No. 3,722,172 was cancelled on July 10, 2022, over two years  before Plaintiff *pro se* filed the instant case.

[19] Collectively, the Registered Marks and Word Marks are referred to as the Asserted Marks.

submitted a sworn declaration never to use the name in the future. **That declaration has never been rebutted or challenged, and the Court took judicial notice of it making it undisputed, which supports a judgement for the Defendants as a matter of law based on mootness**.

41.    On Dec. 15, 2022,  LBBS also called two witnesses in this case, neither of whom offered evidence showing commercial use of any the Asserted Marks, let alone the Registered Marks.  LBBS's first witness, Kent Altsuler, merely testified that in his role as a partner at LBBS, he conducts mediations and arbitrations, though he had no knowledge of Mr. Beers ever doing the same.  LBBS's lead counsel, Mr. Helfand, then testified in a narrative form but provided no further evidence of defendants using any Asserted Mark in commerce.  Helfand was then caught committing perjury on cross examination, (Docket 86 & 87), and to this date, beyond his lying, cannot come up with any evidence whatsoever of any violations under Lanham.  Helfand's lying was further exposed when his own client, Meredith Riede, refuted Helfand's lies about the Defendants using the name for any commercial purpose.  Based on

this factual record, which contained no evidence of any commercial use,

Plaintiff *pro se* should have: (a) stopped lying, and (b) dismissed this case.

42.    Further, in the short time that the Texas LLP existed, Defendants took no actions to start running the Texas LLP as a business or operating in commerce.  We made no capital contributions to LB Texas, Norman Depo. II at 114:4–7, nor did the Texas LLP have any physical assets, bank accounts, or revenues during its short existence. Id. at 114:8–14; 113:21–114:2.  The Texas LLP never offered or provided any goods or services to anyone—no mediation services, id. at 116:3–4, no arbitration services, id. at 116:3–4, and no legal services of any kind. Id. at 116:5–7. The Texas LLP had no clients or customers, id. at 116:8– 12, no employees, id. at 115:20–22, and did no advertising. Id. at 114:15–17.

43.    LBBS brings two claims under the Lanham Act: infringement of registered trademarks (15 U.S.C. § 1114(a)), and unfair competition for violation of common law trademark rights (15 U.S.C. § 1125(a)). The court incorrectly determined that LBBS has a substantial likelihood of success of its Lanham Act claims.

44    First, LBBS has no likelihood of success on its claims for

infringement of its Registered Trademarks because there was no evidence in the record showing any Defendant ever used any of LBBS's federally registered marks, which protect only stylized logos not at issue in this case.[20]

45.    Second, the court erred in determining that defendants' use of LBBS's unregistered common law Word Marks—to the extent there has been any such use—was commercial use which is actionable under the Lanham Act.

## VIII. NO DEFENDANT HAS EVER USE  THE REGISTERED MARKS

46.   To succeed on a claim under 15 U.S.C. § 1114(a), the plaintiff must prove that "the defendant use[d] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark." *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (emphasis added).LBBS based its § 1114(a) claim on infringement of the federally Registered Marks.  But the Registered Marks protect only logos or stylized uses of LBBS's name that were never

---

[20] LBBS conceded this in response to interrogatories by Defendant Beers.

copied or reproduced by any defendant.  A stylized wording of LBBS's name; (a fanciful design of the letters "L" and "B" to the left of the word "LEWIS" above the word "BRISBOIS").  LBBS never offered the Court any evidence that any Defendant used any of the Registered Marks.  Indeed, the only allegations of trademark infringement made against any Defendant are for alleged infringement of the unregistered, four-word word mark, Lewis Brisbois Bisgaard & Smith .  Moreover, as it relates to Beers, the only allegation against him is that he filed an assumed name certificate for an entity with the name "Lewis Brisbois Bisgaard & Smith. Because no Defendant has ever used any of the Asserted Marks in commerce, no Defendant can be liable for trademark infringement because no Defendant ever used any of the Asserted Marks in a manner which is prohibited by the Lanham Act. "A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." *Prestonettes, Inc., v. Coty*, 264 U.S. 359, 368 (1924). The Lanham Act's text requires that the use of a protected mark be "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a);  see also id.

§ 1125(a)(1) (requiring mark be used "in connection with any goods or services").

47.     Accordingly, as to registered marks, the Fifth Circuit has held that, under the Lanham Act, "[t]o be guilty of infringement of a registered mark under this statute the defendant must use the infringing mark 'in commerce.'" *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 795 (5th Cir. 1954). While the Fifth Circuit has not yet addressed whether the same limitation applies to unregistered marks, at least six other circuits "have interpreted this element as protecting from liability all noncommercial uses of marks." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 322 (4th Cir. 2015) (collecting cases); *see also All. for Good Gov't v. Coal. for Better Gov't.*, 901 F.3d 498, 506 n.8 (5th Cir. 2018) ("The 5th Circuit Court does not appear to have spoken directly on this debate but has held that a different section of the Lanham Act, 15 U.S.C. § 1125(a), encompasses only 'commercial advertising or promotion.'"). But it is beyond reasonable dispute that LBBS was required to <u>present evidence</u> that the Asserted Marks were used "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." *Springboards to*

*Educ., Inc. v. Houston Indep. Sch. Dist.*, 285 F. Supp. 3d 989, 993 (S.D. Tex. 2018). Because LBBS failed to make any such showing of a "commercial use," their Lanham act claims fail.[21]

48.     Corporate formation of an entity is not "use in commerce." The type of use alleged against defendants here—the registering of an entity with the Texas Secretary of State and filing assumed name certificates—is not "use in commerce." The lower courts have consistently held that this sort of conduct is not actionable under the Lanham Act. For example, in *Enea*, the court found that no commercial use of the mark occurred based on "Defendants' registration of *Enea Ab, Inc., Enea Inc., and Enea Embedded Technology, Inc.* as corporate names in both Oklahoma and Arizona." *Enea Embedded Tech., Inc. v. Eneas Corp.*, No. 08-CV-1595-PHX-GMS, 2009 WL 648891, at *6 (D. Ariz. Mar. 11, 2009). Further, plaintiff's claims that "Defendants used Plaintiffs' mark in their correspondence with Plaintiffs;" or that "ADES mistakenly mailed a letter to Defendants Anthony Amidei and Enea Embedded Technology, Inc.,

---

21

 The only EVIDENCE marked, offered, or admitted in this case has been Bitgood 1-15, and now the uncontroverted tender made herein.

which was intended to be delivered to Plaintiff Enea Embedded's parent company" were also insufficient to show use in commerce. Id. at *7.

49.     Similarly, in *Crown Realty*, the court found no showing of use "in commerce" based on allegations that the Defendant: (1) "formed a for-profit LLC using the Crown name;" (2) "stated she would consider selling the mark to Plaintiff;" (3) was "making her use of the Crown Realty mark known to the public through, among other things, letters to the publisher of several Maricopa County newspapers;" and (4) was "using the [plaintiff's] name to prevent Plaintiff from using it in Arizona." *Crown Realty & Dev., Inc. v. Sandblom*, No. CV 06-1442-PHX-JAT, 2007 WL 177842, at *2 (D. Ariz. Jan. 22, 2007) (explaining that "[t]he Lanham Act … does not offer protection against the type of behavior [defendant] has exhibited here."). Likewise, in *Modern Point*, the court found that "trade name filings" using plaintiff's name were not "actual use in commerce" sufficient to "state a cause of action for trademark infringement under 15 U.S.C. § 1114." *Modern Point, LLC v. ACU Dev., LLC*, No. 19-CV-0668 (NEB/HB), 2020 WL 13032696, at *8 (D. Minn. Oct. 22, 2020) (also dismissing claim under § 1125 for the same reason).

50.     LBBS's claims here fail for the same reasons. Here Defendants' conduct involving the four-name Word Marks is (1) filing paperwork to establish the Texas LLP with the Secretary of State, and (2) filing an assumed name certificate for the entity.  As in *Enea* and *Modern Point*, the registration of an LLP and the filing of an assumed name certificate do not constitute use in commerce sufficient to invoke the protections of the Lanham Act. Because none of the Defendants used any of the Asserted Marks in commerce, they are entitled to judgement as a matter of law.

## IX.    NORMAN AND BITGOOD ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF *PRO SE'S* FRAUD CLAIM.

51.     Plaintiff *pro se* has no evidence to support its fraud claim, necessitating summary judgment. Under Texas Law, proving a claim of fraud requires evidence of the following elements:

(1)     that a material representation was made;

(2)     the representation was false;

(3)     when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;

(4)     the speaker made the representation with the intent that the other party should act upon it;

(5)    the party acted in reliance on the representation; and

(6)    the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Here, Plaintiff has no evidence of any of these elements, requiring dismissal of its fraud claims.

### 1.    Plaintiff *pro se* cannot show any material misrepresentation of fact.

52.   Plaintiff has no evidence that Bitgood or Norman—or any Defendant—made a material misrepresentation of fact to Plaintiff *pro se*. The filings with the Secretary of State were not representations made to Plaintiff, nor do they contain any statements or attestations regarding use or ownership of trademarks. Dkt. 10-35. Plaintiff's theory of fraud is apparently that Defendants defrauded the Texas Secretary of State's office when filing various documents. Compl. at ¶¶ 47– 49 (describing actions Defendants took in filing documents with the State of Texas).  As a matter of law, this theory fails. A "fraudulent misrepresentation" must either be made directly to the plaintiff or be made to a third party "with the intent that it should be repeated to the intended party for the purpose of deceiving him." *Neuhaus v. Kain*, 557 S.W.2d 125, 138 (Tex. Civ. App.

1977). Plaintiff *pro se* has no evidence that Bitgood or Norman—or any Defendant—made a false statement of fact to Plaintiff *pro se* or to any other person with intent that it would be repeated to Plaintiff *pro se*. Thus, Plaintiff *pro se* has no evidence to support the first two elements of its fraud claim.

### 2. Plaintiff *pro se* cannot show *scienter*.

53.    There is no evidence to support the scienter requirement of Plaintiff *pro se's* fraud claim. The allegations in Plaintiff *pro se's* complaint are insufficient to obtain summary judgment, see *Springboards to Educ., Inc*, 285 F. Supp. 3d at 992, and Plaintiff *pro se* has no evidence of any false statement of fact to Plaintiff *pro se*—much less one made by Bitgood or Norman with the intent to defraud. For this additional reason, Plaintiff *pro se's* fraud claim fails as a matter of law.

### 3. Plaintiff cannot show reliance.

54.    To prevail on a fraud claim, a plaintiff must prove that it actually and justifiably relied on a factual misrepresentation to its detriment. *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 554 (Tex. 2019). The reliance element "can be negated as a matter of law when

circumstances exist under which reliance cannot be justified." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018). "[A] person may not justifiably rely on a representation if there are red flags indicating such reliance is unwarranted." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (cleaned up). For example, where the plaintiff "vigorously and repeatedly denie[s]" the alleged fraudulent misrepresentations and alleges "hostile … interactions," between the parties, it has no claim for fraud. *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 676 (S.D. Tex. 2010). Plaintiff *pro se* has no evidence that it justifiably relied to its determent on any false statement made by Bitgood or Norman or any Defendant. Even if the Court were to accept that Defendants made false statements of fact regarding ownership of the Asserted Marks or the right to conduct business under the Asserted Marks, Compl. at ¶¶ 47–49, Plaintiff *pro se* has denied that any Defendant had any ownership of or right to use the Asserted Marks and clearly never relied on any such statements to its detriment. Thus, the detrimental reliance element of a fraud claim is wholly unsupported.

### 4.   Plaintiff *pro se* cannot show injury.

55.    Plaintiff *pro se* has no evidence that it was harmed by reliance on any false statement made by any Defendants.  In the complete absence of such evidence, Norman and Bitgood are entitled to summary judgment on Plaintiff *pro se's* fraud claim.

## X.   BITGOOD AND NORMAN ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF *PRO SE'S* CIVIL CONSPIRACY CLAIM.

56.    Under Texas common law, a litigant must prove the following elements to establish a claim for civil conspiracy: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (same). Here, Plaintiff *pro se's* civil conspiracy claim fails for three reasons.

> (1)    First, without any valid underlying cause of action, the derivative tort of civil conspiracy necessarily fails.

> (2)    Second, Plaintiff *pro se* has no evidence, beyond its suppositions, that Bitgood or Norman—or any Defendant—agreed to participate in any conspiracy with the

specific intent to harm Plaintiff *pro se*.

(3)   Third, like with its other claims, Plaintiff *pro se* has no evidence of harm.

## 1.   Because conspiracy is a derivative tort, Plaintiff pro se's claim fails because the underlying claims fail.

57.   Civil conspiracy is a derivative tort. See *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex.1979).   A c c o r d i n g l l y , " a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 680–81 (Tex. 1996). Where the underlying torts fail, the conspiracy claims based on those torts must also fail.  See *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010) ("Because the fraud claim based on those misrepresentations fails, the conspiracy and aiding and abetting claims dependent on that fraud fail as well."). As demonstrated supra, Plaintiff *pro se* has no substantive claim against any Defendant. With no underlying tort, the derivative liability claim fails as a matter of law.

## 2.   Plaintiff has no evidence of Norman's participation in a conspiracy.

58.   To support its conspiracy allegations, Plaintiff *pro se* must show Norman specifically intended to cause Plaintiff *pro se* harm. Mere "proof of acting in concert does not show the specific intent necessary to prove a civil conspiracy claim." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 93 (Tex. App.—San Antonio 2003, pet. denied). It is similarly insufficient to show only that "the tortfeasors ... intend to engage in the conduct that resulted in the injury," instead "the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Here, at most, Plaintiff *pro se* has evidence that Norman and Bitgood asked Beers to assist his clients with forming the Texas LLP and filing an assumed name certificate, which is insufficient as a matter of law to show the necessary agreement and specific intent to commit some independent tort.

59.   The requisite proof for a civil conspiracy requires "more than mere suspicion." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995). But Plaintiff *pro se* simply assumes that Bitgood and Norman must have intended to cause harm to Plaintiff *pro se* and conspired with Beers to do

so.  This is the exact type of "piling inference upon inference" which is insufficient to support a conspiracy claim. See *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968); *see also Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995) ("some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence.").  Because Plaintiff *pro se* has no evidence of Norman's involvement in a conspiracy to harm Plaintiff *pro se*, Norman is entitled to summary judgment on Plaintiff's civil conspiracy claim.

### 3.  Plaintiff *pro se* has no evidence of harm resulting from an alleged conspiracy.

60.  Plaintiff has no evidence that it has been harmed either by Defendants' alleged use of the Asserted Marks or by any purportedly fraudulent statement made to Plaintiff *pro se*.  Because harm is a necessary element of Plaintiff *pro s'se*. conspiracy claim, and the harm from a conspiracy necessarily comes from the underlying torts, Plaintiff *pro se's* conspiracy claim fails for this additional reason.

## XI.   ATTORNEY IMMUNITY OF SUSAN C. NORMAN

61.    Norman adopts and incorporates here for all purposes as is fully set forth verbatim herein, ¶¶ 1 - 60 supra.

62.    Defendant Susan C. Norman ("Norman") is a Texas lawyer who has been sued by Plaintiff for alleged trademark infringement, unfair competition, fraud, and conspiracy for being a principal, and the lawyer for a Texas limited liability partnership (the "Texas LLP") along with Michael Joseph Bitgood a/k/a "Michael Easton" ("Bitgood"), and using that Texas LLP to prosecute a suit against Plaintiff *pro se*, a California LLP, a foreign entity in Texas.

63.    The threshold issue is that Norman has immunity from suit by Plaintiff *pro se* in connection with Norman's legal services in the state court proceedings which Norman provided to her clients, Richard P. Jones and the Texas LLP.  See, e.g., *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

## XII.   FACTUAL BACKGROUND

64.    Norman was licensed to practice law in Texas in 1990 and has maintained an active law practice in Texas for over 30 years. Exhibit 3,

Declaration of Susan C. Norman ("Norman Decl.").

65.　Norman opened her own law firm in 1990, which Norman continues to manage and operate to this day.　Deposition of Susan C. Norman at P. 6, LL 11-14.

## XIII.　ARGUMENT
### A.　Standard of Review

66.　Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc*., 920 F.3d 243, 247 (5th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 536

(5th Cir. 2015). Further, to succeed on her motion, Norman need not disprove any of Plaintiff *pro se*'s allegations from the complaint where the only evidence of those allegations is found in Plaintiff *pro se's* pleadings. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968); see also *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 285 F. Supp. 3d 989, 992 (S.D. Tex. 2018) ("the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint.").

### B. Norman is entitled to attorney immunity on all of Plaintiff *pro se*'s causes of action.

67.    "Texas common law is well settled that an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's [] representation of a client." *Cantey Hanger*, 467 S.W.3d at 481. "[I]mmunity applies to all legal representation and is not limited to conduct occurring during litigation." *Gooden v. Mackie*, No. 4:19-CV-02948, 2020 WL 714291, at *4 (S.D. Tex. Jan. 23, 2020), report and recommendation adopted, No. CV H-19-2948, 2020 WL 710340 (S.D. Tex. Feb. 12, 2020). The "focus of immunity is on the kind—not the nature—of the attorney's conduct." *Cantey Hanger*, 467 S.W.3d at 483

(cleaned up). Thus, "merely labeling an attorney's conduct fraudulent does not and should not remove it from the scope of client representation or render it foreign to the duties of an attorney." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 765–67 (5th Cir. 2019); *Johnson v. Ashmore*, 681 F. App'x 345, 346 (5th Cir. 2017) ("immunity protects even allegedly fraudulent statements made to non-clients in connection with a legal representation.").

68.   In evaluating immunity, the Court is obligated to look beyond Plaintiff *pro se's* characterization of the attorney's conduct. Id. at 767; see also *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019) ("the analysis does not focus on the alleged wrongfulness of the purported conduct such that a lawyer is no more susceptible to liability for a given action merely because it is alleged to be wrongful.") (cleaned up). Immunity applies even to "wrongful" attorney conduct, provided it is "part of the discharge of the lawyer's duties in representing his or her client." *Ironshore Europe DAC,* 912 F.3d at 765. Thus, if "the conduct at issue" is "part of the discharge of his duties in representing his client, that conduct is not independently actionable, even if frivolous or without merit."

*FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 671 (S.D. Tex. 2010). Here, Norman was acting as a lawyer for her clients Jones and the Texas LLP when she took action to file pleadings and in the state-court matter. he formed an entity and filed an assumed name certificate. Because that kind of conduct is not foreign to the duties of a lawyer, Norman is entitled to attorney immunity.

1. **The uncontradicted evidence shows that Norman was acting in her capacity as an attorney for her clients Jones and the Texas LLP when she filed pleadings, motions, responses, replies, and appeared at trial in the state-court lawsuit identified above.**

69. There is no evidence contradicting Norman's assertion that the conduct complained of was done in the course and scope of representing her clients Jones and the Texas LLP. Moreover, LBBS's complaint and the only evidence—Bitgood's Exhibits 1–15–admitted by the Court for the injunction uniformly show that Norman was acting as an attorney for Jones and the Texas LLP. Dkt 60-2, P 6, LL 5-8.

70. In its Complaint, Dkt. 1, p. 2 at fn 2, LBBS stated that: "Ms. Norman is an attorney licensed to practice law in the State of Texas, Texas Bar No. 15083020." Further, in Dkt 1, at ¶22, LBBS stated that:

"On June 15, 2022, Bitgood [*pro se*] and Jones [represented by Attorney Norman] filed their third amended petition in the Imperial Lofts case to add the [Texas LLP] Bitgood Entity as a Plaintiff and to add Mr. Oubre as a Defendant. In addition to appearing as Jones's counsel, Ms. Norman appeared as counsel for the [Texas LLP] Bitgood Entity."

71.   LBBS's judicial admissions in its Complaint, Dkt. 1, *supra*, as set out in Dkt. 1 at ¶ 63, show that Norman's acts comport with he recognized activities regularly undertaken by an attorney. Texas courts have found that similar activities constitute the practice of law. See, e.g., *Unauthorized Practice Comm. v. Cortez*, 692 S.W.2d 47 (Tex. 1985) (selecting and preparing immigration forms constitutes the practice of law); *Crain v. Unauthorized Practice of Law Comm.*, 11 S.W.3d 328 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (preparing and filing mechanic's lien affidavits constitutes the practice of law); *Fadia v. Unauthorized Practice of Law Comm.*, 830 S.W.2d 162, 165 (Tex. App.—Dallas 1992, writ denied) (selling will forms and manuals constitutes the practice of law). There is no genuine dispute that Norman was acting as a lawyer for her clients Jones and the Texas LLP with respect to the conduct at issue.

   **2.   Filing lawsuits, pleadings, documents, motions and**

**responses to motions and appearing at trial is conduct
routinely performed by attorneys.**

72.     Norman is entitled to attorney immunity because her activities are

the kind of conduct routinely performed by attorneys. Texas law defines

the practice of law to include

> "preparation of a pleading or other document … as a service
> rendered out of court, including the giving of advice or the
> rendering of any service requiring the use of legal skill or
> knowledge, such as preparing a will, contract, or other
> instrument, the legal effect of which under the facts and
> conclusions involved must be carefully determined." *Tex. Gov't*
> Code § 81.101.

73.     Texas courts have frequently described the kind of conduct here,

"filing legal documents," to "fall[] squarely within the scope of a lawyer's

duties in representing its client." *Deramus v. Shapiro Schwartz, LLP*, No.

4:19-CV-4683, 2020 WL 3493545, at *4 (S.D. Tex. June 2, 2020) (finding

attorney immunity); *Ruiz de Balderas v. ETX Successor Athens*, No.

6:19-CV-58-JDK-KNM, 2020 WL 1479583, at *3 (E.D. Tex. Mar. 4, 2020),

report and recommendation adopted, No. 6:19-CV-58-JDK-KNM, 2020 WL

1478563 (E.D. Tex. Mar. 26, 2020) ("filing liens on behalf of a client … [is]

the 'kind of conduct' that falls within the scope of an attorney's

representation of her client."); see also *Crain*, 11 S.W.3d 328 (preparing and filing mechanic's lien affidavits constitutes the practice of law). Here, the only substantive allegation against Norman is that she took action in state court on behalf of Jones and the Texas LLP in a case in which the Defendant therein [Plaintiff *pro se* here] had an adverse judgment, adverse findings of fact and conclusions of law found against it based on Norman's representation  of  the Texas LLP against the Defendant therein.

74.    Such conduct is typical of the kind of conduct to which attorney immunity routinely applies. Ms. Norman was not doing it "for [her] health;" she was "doing the kind of thing an attorney does for [her] client." *Johnson v. Ashmore*, 681 F. App'x 345, 346 (5th Cir. 2017). Because the kind of conduct at issue is not "foreign to the duties of a lawyer," *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 76 (Tex. 2021), Norman is entitled to attorney immunity.

## XIV.  CONCLUSION

Bitgood and Norman are entitled to summary judgment because (1) there is no evidence that Plaintiff *pro se's* fanciful Registered Marks were

ever used by any Defendant for any purpose; (2) there is no evidence that Plaintiff *pro se's* unregistered Word Marks were ever used "in commerce" by any Defendant; (3) there is no evidence to support any element of Plaintiff *pro se's* fraud claim; (4) there is no underlying claim or evidence to support vicarious liability against Bitgood and Norman for conspiracy; and, (5) attorney immunity bars Plaintiff *pro se* from suing Norman for rendering legal services to her clients.  All the claims against Bitgood and Norman should be dismissed with prejudice.

Respectfully submitted,

/s/Michael Joseph Bitgood    /s/ Susan C. Norman
a/k/a/ Michael Easton      Susan C. Norman
503 FM 359, Suite 130-216    State Bar No. 15083020
Richmond, Texas 77406     P. O. Box 55585
281-415-8655        Houston, Texas 77255
EastProLaw@msn.com     SueNorman@SueNormanLaw.com

## CERTIFICATE OF SERVICE

On this the 22nd day of April, 2024, I certify that service was accomplished on all parties by ECF.

/s/  Susan C. Norman
_____