UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


LEWIS BRISBOIS BISGAARD &    §
SMITH, LLP,                  §
                             §
     Plaintiff,              §
                             §
v.                           §
                             § Case No. 4:22-cv-3279
                             §
MICHAEL JOSEPH BITGOOD,      §
a/k/a "Michael Easton,"      §
et al.,                      §
                             §
     Defendants.             §


************************************************************
                    ORAL DEPOSITION OF
                     DAVID A. OUBRE
                      APRIL 1, 2024
************************************************************


     ORAL DEPOSITION OF DAVID A. OUBRE, produced as a
witness at the instance of the Defendants, and duly
sworn, was taken in the above-styled and numbered cause
on the 1st day of April, 2024, from 12:34 p.m. to
2:32 p.m., before John G. Rochelle, CSR in and for the
State of Texas, reported by machine shorthand, at 515
Rusk Street, Courtroom 3A, Houston, Texas, pursuant to
the Federal Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

```
 1                      A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF, LEWIS BRISBOIS BISGAARD & SMITH LLP:

 4         Mr. Bennett G. Fisher
           bennett.fisher@lewisbrisbois.com
 5         Mr. William S. Helfand
           bill.helfand@lewisbrisbois.com
 6         Lewis Brisbois Bisgaard & Smith LLP
           24 Greenway Plaza, Suite 1400
 7         Houston, Texas 77046
           Phone: (713) 659-6767

 8

 9

10    FOR THE DEFENDANT, BRADLEY BEERS:

11         Mr. S. Wallace Dunwoody IV
           wdunwoody@munckwilson.com
12         Munck Wilson Mandala
           600 Banner Place Tower
13         12770 Coit Road
           Dallas, Texas 75251
14         Phone: (972) 628-3616

15

16
      FOR THE DEFENDANT, MICHAEL JOSEPH BITGOOD, A/K/A
17    "MICHAEL EASTON," ET AL:

18         Mr. Michael Joseph Bitgood (pro se)
           eastprolaw@msn.com
19         EastProLaw
           503 FM 359, Suite 130
20         Richmond, Texas 77406
           Phone: (281) 415-8655

21

22

23

24

25
```

Page 3

```
1    FOR THE DEFENDANT, RICHARD P. JONES:
2         Ms. Susan C. Norman
          suenorman@suenormanlaw.com
3         Law Office of Susan C. Norman
          P.O. Box 55585
4         Houston, Texas 77255
          Phone: (713) 882-2066
5
6
7    PRESIDING JUDGE:
8         Mr. Keith P. Ellison
9
10
     ALSO PRESENT:
11
          Mr. Deshun Bradley
12        Ms. Rhonda Clark
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        INDEX
 2                                                PAGE
 3
 4   Appearances.......................................  2
 5   DAVID A. OUBRE
 6        Examination by Mr. Bitgood...................  7
 7        Examination by Mr. Dunwoody.................. 65
 8   Signature and Changes........................... 67-68
 9   Reporter's Certificate.......................... 69
10
11
12

                          EXHIBITS
13
     NO.  DESCRIPTION                                PAGE
14
     Exhibit 1
15        (Not admitted)
16
     Exhibit 1 A....................................... 34
17        Document 35-2 in Case 4:22-cv-03279
18
     Exhibit 1 B....................................... 59
19        Defendants' No-Evidence Motion for Summary
          Judgment
20
21   Exhibit 2
          (Not admitted)
22
23   Exhibit 2 A..................................... 20
          Document entitled "Texas Secretary of State
24        Filings California Foreign Lewis Brisbois
          Bisgaard & Smith, LLP," including attachments
25
```

1   Exhibits 3 through 5
         (Not admitted)
2
3   Exhibit 5 A....................................... 11
         Plaintiff's Fourth Amended Petition for
4        Declaratory Relief and Application for
         Temporary Injunction Pending Trial
5
6   Exhibit 6......................................... 35
         Letter from Michael Joseph Bitgood to David A.
7        Oubre dated July 22, 2022
8
    Exhibits 7 through 9
9        (Not admitted)
10
    Exhibit 10........................................ 22
11       Text messages
12
    Exhibit 11........................................ 44
13       Email from EastProLaw to David Oubre dated
         September 1, 2022, subject "Jones v. Martinez-
14       Sept 13th 2022"
15
    Exhibits 12 through 29
16       (Not admitted)
17
    Exhibit 30........................................ 50
18       Register of Actions in Case No. 22-CCV-070378
19
    Exhibits 31 and 32
20       (Not admitted)
21
    Exhibit 32 A...................................... 25
22       Motions Hearing, Document 60-2, in Case 4:22-
         cv-03279
23
24  Exhibits 33 through 37
         (Not admitted)
25

1    Exhibit 38......................................  52
         David Oubre and Lewis Brisbois Bisgaard &
2        Smith, LLP's Opposed Motion to Dismiss Appeal
         and Opposition to Appellant's Motion to Extend
3        Time to File Appellant's Brief
4
     Exhibits 39 through 42
5        (Not admitted)
6
     Exhibit 43......................................  53
7        Fourteenth Court of Appeals Order in Case No.
         14-22-00694-CV
8
9    Exhibit 44
         (Not admitted)
10
11   Exhibit 45......................................  60
         Fort Bend Independent article entitled "Judge
12       Morales invalidates evictions by Imperial
         Lofts in Sugar Land"
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                        DAVID A. OUBRE,
 2    having been first duly sworn, testified as follows:
 3                         EXAMINATION
 4    BY MR. BITGOOD:
 5         Q.   Please state your name for the record, sir.
 6         A.   David Oubre.
 7         Q.   Spell your last name.
 8         A.   O-U-B-R-E.
 9         Q.   Between you and I where do I begin, right,
10    would be the question?  Let's start with you work for
11    Lewis Brisbois Bisgaard & Smith, correct?
12         A.   Lewis Brisbois.  Yes.
13         Q.   And that is the plaintiff in this lawsuit,
14    correct?
15         A.   Yes.
16         Q.   Who was also a defendant in Fort Bend County,
17    correct?
18              MR. HELFAND:  That calls for a legal
19    conclusion.
20              MR. BITGOOD:  And he's a lawyer, and he can
21    make it.
22              MR. HELFAND:  No.  Don't give your legal
23    conclusion.  We're not here about legal conclusions.
24    We're here about facts.  He's not answering that
25    question.  You have another one?
```

1           MR. BITGOOD:  Yeah.  Go get the judge,

2    please.

3           MR. HELFAND:  Go right ahead.

4           MR. BITGOOD:  If he can read and write, he

5    can answer the question.

6           MR. HELFAND:  No.  He's not here --

7           MR. BITGOOD:  Helfand, I don't want to

8    discuss shit with you, you psychopathic liar.

9           MR. HELFAND:  Well, then don't --

10          MR. BITGOOD:  Okay?

11          MR. HELFAND:  Don't make a comment and

12    then --

13          MR. BITGOOD:  I'm not.  Okay?

14          MR. HELFAND:  -- tell me you don't want to

15    hear.  Only my wife is allowed to do that.  If you don't

16    talk to me, I won't talk to you.  But don't talk to me

17    and then start talking over me.

18          MR. BITGOOD:  Go ahead and get the judge,

19    please.

20          MR. HELFAND:  Do you have other questions

21    you want to ask while we're waiting for the judge?

22          MR. DUNWOODY:  We can probably go ahead and

23    go off the record.

24          MR. HELFAND:  No, we're not going off the

25    record.

Page 9

```
1              MR. BITGOOD:  Go ahead and go off the
2    record till the judge comes out.
3              THE REPORTER:  I can't --
4              MR. HELFAND:  You can't go off --
5              THE REPORTER:  I can't go off the record.
6              MR. HELFAND:  -- the record unless
7    everybody agrees to go off the record.  We're not going
8    off the record.  Is that clear?
9              (The judge enters the proceeding.)
10             THE COURT:  What's going on?
11             MR. BITGOOD:  Your Honor, I asked the
12   question of the witness is he employed by Lewis Brisbois
13   that is the plaintiff in this lawsuit.  He responded,
14   "Yes."  I said, "And you also were a defendant in Fort
15   Bend County" -- Mr. Helfand, let me finish, please.
16             MR. HELFAND:  Your Honor, I objected and --
17             THE COURT:  Let him finish.  Let him
18   finish.
19             MR. HELFAND:  Oh.  I thought he was done.
20             MR. BITGOOD:  I asked him, "You worked for
21   the same Lewis Brisbois that was once a defendant in
22   Fort Bend County?"  Mr. Helfand objected that it called
23   for a legal conclusion.  "Was he a defendant in Fort
24   Bend," is my question.
25             THE COURT:  Okay.  Let me hear counsel's
```

```
 1   response.
 2                MR. HELFAND:  The question was, "And that
 3   company was a defendant in Fort Bend County?"  I
 4   objected that that calls for a legal conclusion.  It's
 5   also completed unrelated to any issue in this case.
 6                MR. BITGOOD:  Your Honor, if I may.  This
 7   is one of their exhibits to the motion for summary
 8   judgment.  It's a pleading that was filed in Fort Bend
 9   County.  It shows Lewis Brisbois Bisgaard is a
10   defendant and --
11                THE COURT:  So why do you need any
12   interrogation on this question?
13                MR. BITGOOD:  I beg your pardon, Your
14   Honor?
15                THE COURT:  Why do you need to make an
16   inquiry about this?
17                MR. BITGOOD:  I need to ask him if it's the
18   same entity that was here.  It is an exhibit to their
19   motion for summary judgment as well.
20                MR. HELFAND:  Whether it's the same entity
21   is a legal conclusion, not a factual question to a
22   deponent.
23                THE COURT:  Yeah.  Let's move on.  We
24   don't -- we don't need questions like that.
25        Q.  (BY MR. BITGOOD)  Mr. Oubre, what is your
```

```
 1   position over there at Lewis Brisbois?

 2        A.  A lawyer.

 3              THE COURT:  I'm not hearing you.  If you

 4   can --

 5              THE WITNESS:  I apologize, Your Honor.

 6        A.  Lawyer.

 7        Q.  (BY MR. BITGOOD)  Okay.  Do you have any

 8   special position over there?

 9        A.  A managing partner.

10        Q.  What are the duties of a managing partner?

11        A.  I would say hiring, firing.  If people are not

12   doing what they're supposed to do, I have meetings with

13   them.  That's most of the tasks.

14        Q.  Of a managing partner?

15        A.  Right.

16        Q.  Okay.  As a managing partner were you assigned

17   to defend the defendants in Cause No. 22-CCV-070378 in

18   Fort Bend County, Texas?

19        A.  Can I see that pleading?  I don't recall the

20   specific cause number.

21        Q.  I'm handing you Defendants Exhibit 5 A.

22        A.  I was hired -- I was hired in this case, but it

23   was not as managing partner.  I mean, I was managing

24   partner when I was hired.

25        Q.  But you were the attorney of record for the
```

```
 1   defendants in this case?
 2        A.  I was the attorney of record for Martinez,
 3   Sullivan, Imperial Lofts.  And I think there was another
 4   Imperial entity.
 5        Q.  Is that a "yes"?
 6        A.  Yes, for those defendants.
 7        Q.  How long have you been a lawyer, sir?
 8        A.  Since 1992.
 9        Q.  That would be about roughly, what, 30 years?
10   Thirty --
11        A.  Thirty-two.
12        Q.  -- two?  Thirty-two years.  Can you tell the
13   Court in state court when you amend a petition what
14   happens to the other petitions?  Say this is the fourth
15   amended petition.  What happens to one, two, and three?
16        A.  They're not to be -- I guess the amended
17   petition is the only live pleading.
18        Q.  That would be the --
19             THE COURT:  I'm not hearing you at all.
20   I'm sorry.
21        A.  The amended petition would be the live
22   pleading.
23        Q.  (BY MR. BITGOOD)  Let's talk about the live
24   pleading that's attached to your pleading, which is
25   document one, and your motion for summary judgment.  On
```

Page 13

1    page 9 of the live pleading where you were the attorney

2    of record, and I read "Plaintiffs seek a declaration

3    from the Court, by way of jury charge, under Chapter 37

4    of the Texas Civil Practice and Remedies Code that the

5    Defendants have engaged in a scheme and a plan and

6    conducted an enterprise concealing Nolan Red's

7    identity," which is the "scheme to defraud the tax

8    payers as well as the State of Texas.  Clearly, there

9    cannot be a Plaintiff named Lewis, Brisbois, Bisgaard &

10   Smith LLP and a set of imposters, Oubre and Ogbureke,

11   and who signed their pleadings and documents without the

12   consent of the LLP."  You remember that statement?

13       A.  No.

14       Q.  Would you please look at it?

15              THE COURT:  What are we trying to do,

16   ascertain here?  That somebody signed this document?

17              MR. BITGOOD:  Yes.

18              THE COURT:  Was there any -- is there any

19   argument that the signature that appears is not valid?

20              MR. HELFAND:  It's Mr. Bitgood's pleading.

21   It's not something that was signed by Mr. Oubre.

22              THE COURT:  I assume that.  What's the

23   issue?

24              MR. HELFAND:  There's no dispute.  Whatever

25   he filed he filed, Judge.

1          **THE COURT:**  Sorry?

2          **MR. HELFAND:**  There's no dispute that

3    whatever he filed in the state court he filed in the

4    state court.

5          **MR. BITGOOD:**  And now they're using it as

6    an exhibit, Your Honor.

7          **THE COURT:**  Well, they're welcome to use it

8    as an exhibit.  What's the problem -- what's the

9    question that needs answering?

10         **MR. BITGOOD:**  I need to demonstrate, Your

11   Honor, that at some point they knew that the Lewis

12   Brisbois Texas was suing Lewis Brisbois California, and

13   that came before this suit was filed alleging a Lanham

14   Act violation.

15         **MR. HELFAND:**  Well, there's no evidence,

16   and Mr. Oubre is not going to establish any evidence,

17   that Lewis Brisbois Bisgaard --

18         **MR. BITGOOD:**  Your Honor, that's not an

19   objection.  He's testifying.  It's not an objection.

20         **THE COURT:**  I'm going to allow it.

21         **MR. HELFAND:**  Thank you.  There's no

22   evidence, and there's not going to be any evidence from

23   Mr. Oubre, that what Mr. Easton calls Lewis Brisbois

24   Texas was suing Lewis Brisbois California.  But, again,

25   Judge, there's no dispute that this pleading that

```
 1   Mr. Easton is talking about was on file in the state
 2   district court before Lewis Brisbois sued these three
 3   defendants.
 4               THE COURT:  I don't understand the issue.
 5   I mean, unless there's some question about authenticity
 6   it seems like we're wasting our time asking about a
 7   document that has been filed of record in a court.  Is
 8   there some issue of -- we need authenticated, a
 9   signature, or --
10               MR. BITGOOD:  No, Your Honor.
11               THE COURT:  -- or anything?
12               MR. BITGOOD:  No, Your Honor.  I wanted to
13   question him on the allegations because it's one of the
14   petitions that they attached to, in this case, alleging
15   a Lanham Act violation.
16               THE COURT:  Well, where there's a Lanham
17   Act violation is not something we can ask this -- this
18   witness.  But is there some factual question about
19   authenticity?
20               MR. BITGOOD:  No, sir, not on the document
21   itself.
22               THE COURT:  Well, let's move on, then.
23               MR. BITGOOD:  Yes, sir.
24        Q.   (BY MR. BITGOOD)  Mr. Oubre, as an attorney you
25   understand what the concept of standing is, correct?
```

```
 1        A.  Yes.

 2        Q.  Okay.  So if you don't own something, say you

 3   don't own Dell, you can't sue on Dell's behalf, correct?

 4        A.  If I don't own Dell?

 5             MR. HELFAND:  I'm sorry, Judge.  That calls

 6   for a legal conclusion.  And, again, it has nothing to

 7   do with the facts of this case.  The Court ordered a

 8   limited deposition here.  And this seems to be

 9   Mr. Easton arguing through the witness.

10             THE COURT:  Yeah.  Let's ask factual

11   questions to which there is some open question about the

12   response.  Just going through and asking him to identify

13   a document that's been filed in a court is not a good

14   use of our time.

15             MR. BITGOOD:  My question is standing.  If

16   you don't have standing, you can't bring suit, correct?

17             THE COURT:  That's another legal question.

18   This witness is not here to testify as a law expert.

19   Ask him a factual question.

20        Q.  (BY MR. BITGOOD)  Mr. Oubre, when did you

21   become aware that myself and Ms. Norman were using the

22   name Lewis Brisbois Bisgaard & Smith LLP?

23        A.  I mean, it would have to be sometime in the

24   summer of '22 I guess.  Can I see the date on that

25   pleading?
```

Page 17

1     Q.  You can have the pleading if you want to

2   testify.  Here.

3     A.  Yeah.  It would have been in June of '22.

4     Q.  June of 2022?  Is that correct?

5     A.  Right.

6     Q.  Here.  And could you tell the Court who is Jana

7   Lubert?

8     A.  General counsel for the firm.

9     Q.  Okay.  And you're aware that she received this,

10  in June of 2022 she was made aware of this lawsuit,

11  correct?

12          MR. HELFAND:  Objection, speculation.

13    Q.  (BY MR. BITGOOD)  Well, take a look at the

14  pleading.  It shows who was served with it

15  electronically.  You see Ms. Lubert's name on that

16  pleading?

17    A.  I see her on the automated certificate of

18  service list.

19    Q.  Thank you.  And she's general counsel, correct?

20    A.  Correct.

21    Q.  Did she raise any concerns or any objections to

22  the use of the name?

23          MR. HELFAND:  That's privileged.  That's a

24  party communication.  Don't answer that question.

25          MR. BITGOOD:  Your Honor, I'd prefer if you

```
 1   ruled, not Mr. Helfand.
 2                THE COURT:  I didn't hear the objection.
 3                MR. HELFAND:  The question was did the firm
 4   general counsel -- what did the firm general counsel
 5   tell Mr. Oubre about the misuse of the law firm's name.
 6   I told the witness not to answer.  That's a party
 7   communication in anticipation of litigation.
 8                THE COURT:  Why is that not privileged?
 9                MR. BITGOOD:  As far as this goes, Your
10   Honor?
11                THE COURT:  Yes.
12                MR. BITGOOD:  They were on notice that the
13   name was being used at least since June.  That's three
14   months before they brought suit.
15                THE COURT:  Well, ask him if they were on
16   notice.  Don't ask him what their lawyer told --
17                MR. BITGOOD:  Okay.
18                THE COURT:  -- the witness.
19        Q.  (BY MR. BITGOOD)  Were you on notice that the
20   name was being used at least June of 2022?
21        A.  I was.
22        Q.  Okay.  Did you file any objection to that in
23   state court?
24        A.  I don't remember.
25                THE COURT:  Pull the microphone a little
```

1   bit closer to you, please.

2                  THE WITNESS:  Sorry.

3        A.  I don't remember.

4        Q.  (BY MR. BITGOOD)  Were you present in state

5   court on August 30th of 2022 when we were going to have

6   a hearing in the Fort Bend County case?

7        A.  I had a hearing in the case that fall and

8   summer.  I can't recall the exact date.

9        Q.  That would be August 30th of 2022.  Do you

10  recall that hearing?

11       A.  I recall hearings in that case.  I don't recall

12  a specific date, if it was on August 30th.

13       Q.  Do you recall receiving an email from me

14  telling you not to use Lewis Brisbois LLP in your

15  pleadings?

16       A.  No.

17              MR. BITGOOD:  Get the email.

18              MS. NORMAN:  Which one?

19              MR. BITGOOD:  The one where he says --

20       A.  I don't remember that.

21              MS. NORMAN:  It was a text message.

22              MR. BITGOOD:  It was a text message.

23       Q.  (BY MR. BITGOOD)  I apologize.  It was a text

24  message.  Do you recall receiving a text message?

25       A.  I don't remember that.

```
 1              MR. BITGOOD:  I think it's page 36.
 2              MS. NORMAN:  Huh?
 3              MR. BITGOOD:  I think it's page 36.
 4      Q.  (BY MR. BITGOOD)  Is it safe to say that during
 5   the case we texted each other a lot?
 6      A.  Occasionally.
 7      Q.  Mr. Oubre, do you recall receiving from the
 8   Secretary of State of the state of Texas a series of
 9   letters telling you that you are going to -- or at least
10   to renew the name LBBS, Lewis Brisbois Bisgaard & Smith
11   in the state of Texas?
12              MR. HELFAND:  Objection.  Assumes facts not
13   in evidence.
14      A.  No.
15              MR. BITGOOD:  I asked him if he recalled.
16              MR. HELFAND:  You don't need to respond to
17   me.  My objection is it assumes facts not in evidence.
18   And if he knows the answer he can answer.
19      A.  No.
20      Q.  (BY MR. BITGOOD)  You don't recall receiving
21   any such letter?
22              MR. HELFAND:  Same objection.
23      Q.  (BY MR. BITGOOD)  Okay.  I'm handing you what's
24   been marked as Defendants Exhibit 2 A, a series of
25   communications from the Secretary of State to Lewis
```

1    Brisbois.  Some of them are addressed to you as managing

2    partner.

3          A.  I don't think any of these are addressed to me

4    as managing partner.  In fact, they're all -- the

5    letters from the Secretary of State are all addressed to

6    the Los Angeles office.

7          Q.  Were you the registered agent for service for

8    Lewis Brisbois Bisgaard & Smith in Texas?

9          A.  When?

10         Q.  March of 2022.

11         A.  I'm not sure.

12         Q.  Take a look at the document, sir.

13         A.  I see Chris White.

14              MR. HELFAND:  Well, answer his question.

15              THE WITNESS:  Yeah.

16         A.  No.  March 28th, 2022.  I would say no because

17   it's filed March 28th, 2022.  The registered agent is an

18   individual resident in the state whose name is Chris

19   White.

20         Q.  (BY MR. BITGOOD)  Were you the registered agent

21   at any time in 2022, sir?

22         A.  I don't know.  I might have been before that.

23         Q.  A moment ago I asked about a text message where

24   I sent you the following: "quit using my LLP on your

25   pleadings.  You know better than that.  I already know

Page 22

1    what your excuse will be-But I have an 'app' for that."

2    You recall that?

3         A.  No.

4                 MR. HELFAND:  Can you -- can we see the

5    document, please?  Thanks.  Thank you.

6                 MR. BITGOOD:  You yank it from him.

7                 MR. HELFAND:  Just -- you know what?  What

8    you're doing isn't helping you.

9                 MR. BITGOOD:  Objection, nonresponsive, and

10   side-bar.  Mr. Helfand, please.

11                MR. HELFAND:  Okay.  Let's make this an

12   exhibit to the deposition.  What's the next exhibit

13   number.  We have an exhibit?

14                THE REPORTER:  I'm not sure what the number

15   is, sir, because they're marking them, and I'm not

16   marking the exhibits.

17                MS. NORMAN:  It's -- I'll tell you the

18   number.  It's Exhibit 10.  And there's a page number at

19   the top.

20                MR. HELFAND:  Well, Exhibit 10 to what?

21                THE WITNESS:  Is there a question on the

22   table?

23                MR. HELFAND:  No.  Hang on.

24                MR. BITGOOD:  Yeah.

25         Q.  (BY MR. BITGOOD)  Do you recall --

Page 23

```
 1                    MS. NORMAN:  It's marked as Exhibit 10.
 2                    MR. HELFAND:  To what?
 3                    MS. NORMAN:  What do you mean "to what"?
 4                    MR. HELFAND:  To what pleading?
 5                    MR. BITGOOD:  There is no pleading.  It's a
 6      text message.
 7                    MR. HELFAND:  Oh.  It's deposition Exhibit
 8      10?
 9                    MS. NORMAN:  Deposition --
10                    MR. HELFAND:  That's what I meant "to
11      what?"  Okay.  This is in whose deposition, Exhibit 10?
12                    MS. NORMAN:  Mr. Oubre.
13                    MR. HELFAND:  Okay.  So this is going to be
14      Exhibit 10?
15                    MR. BITGOOD:  Yes.
16                    MR. HELFAND:  Okay.  It hasn't been marked
17      yet, but now it is.  Okay.  This will be Exhibit 10.  So
18      if you have a sticker you'll put it on later, right?
19                    THE REPORTER:  I can put it on later or
20      now.
21                    MR. BITGOOD:  Please don't write on the
22      exhibit.
23                    THE REPORTER:  Would you like me to go
24      ahead and put a sticker on it?
25                    THE COURT:  This is on the record.  The
```

```
 1   court reporter is having trouble, I think.
 2                   MR. HELFAND:  I just wrote "10" where you
 3   can put a sticker over it --
 4                   THE REPORTER:  Thank you, sir.
 5                   MR. HELFAND:  -- so you'll know it's 10.
 6   Thank you.
 7                   THE REPORTER:  Thank you.  Thank you, Your
 8   Honor.
 9                   THE COURT:  We have a pending question?
10                   MR. BITGOOD:  Yes, sir.
11      Q.  (BY MR. BITGOOD)  Do you recall getting the
12   text message now by looking at the exhibit?
13      A.  I -- I mean, really I don't.  I do remember one
14   photo on this exhibit, but I do not -- I mean, I'm not
15   saying it didn't happen, but I just don't remember
16   specifically.
17      Q.  So you don't recall your response "We
18   registered first" when I asked you to stop using the
19   Lewis Brisbois in state court?
20                   MR. HELFAND:  Objection.  Assumes facts not
21   in evidence.
22      A.  No, I don't remember that.
23      Q.  (BY MR. BITGOOD)  Okay.  Do you recall
24   attending a hearing on August 30th of 2022 in County
25   Court at Law No. 3?
```

```
 1        A.  I recall attending a hearing.  I don't -- I'm
 2   not sure on the date.
 3        Q.  Okay.  Do you recall the state court judge
 4   asking you, "Do you know what a Rule 12 hearing is"?
 5        A.  No, I don't recall that.
 6        Q.  Okay.  Do you recall you telling the state
 7   court judge, "Yes, Your Honor, I do know what a Rule 12
 8   hearing is"?
 9        A.  I don't recall that.
10        Q.  You recall that we -- the hearing had to be
11   reset to September the 13th?  You recall that?
12        A.  I do remember that a hearing was reset.
13        Q.  Okay.  Do you recall on September the 13th --
14   this will help you -- the court conducted an evidentiary
15   hearing on that Rule 12 motion?  Do you recall that?
16        A.  I know we had a hearing.  I can't recall the
17   date.
18        Q.  I'm handing you Defendants Exhibit --
19             MS. NORMAN:  Here.  Let me give it to him.
20        Q.  (BY MR. BITGOOD)  -- 32 A.
21             MS. NORMAN:  This is Exhibit 32 A, page 9
22   of 191.
23             MR. HELFAND:  It's Exhibit 32 to what?
24             MS. NORMAN:  32 A --
25             MR. BITGOOD:  Deposition of David Oubre.
```

```
 1              MR. HELFAND:  Oh.  It's Exhibit 32 --
 2   sorry.  I'm sorry.  Let me just talk to Ms. Norman here.
 3   It's Exhibit 32 to what?
 4              MS. NORMAN:  That's the motions.  It's --
 5              MR. BITGOOD:  That's not what I wanted him
 6   to do.
 7              MR. HELFAND:  Ms. Norman, it's Exhibit 32
 8   to what?
 9              MS. NORMAN:  It's Exhibit 32 A to his
10   deposition.
11              MR. HELFAND:  Okay.  It's also, just so
12   we're clear on the record, identified as document 60-2
13   filed in this lawsuit.
14              MR. BITGOOD:  And all those are exhibits
15   that were admitted into evidence by this court on
16   December 2nd.  Can I ask him my question now,
17   Mr. Helfand?
18              MR. HELFAND:  You have a question go ahead.
19       Q.  (BY MR. BITGOOD)  Would you go ahead and take a
20   look at that record and see if you remember it now,
21   September 13th, 2022?
22       A.  This transcript says it was September thirt --
23   September 13th, 2022.
24       Q.  Would you read the appearance page for the
25   Judge, please?
```

1     A.   "Michael" -- "Mr. Michael Joseph Bitgood aka

2   Michael Easton, pro se," "Mr. Brad Beers," "Ms. Su" --

3   "Cecilia 'Sue' Norman," "David A. Oubre."

4     Q.   **So you were present at this hearing, correct?**

5   **You made an appearance?**

6     A.   Yes.

7     Q.   **Okay.  And at this hearing after hearing the**

8   **evidence the court removed you from the case, correct?**

9     A.   I think so.

10    Q.   **You think so?  It's not clear to you that you**

11  **were removed from the case?**

12    A.   I'm agreeing with you.

13    Q.   **Okay.  And that was on a Rule 12, correct?**

14    A.   Yes.

15    Q.   **Do you recall telling the court when the judge**

16  **asked you, "When did you register the name Lewis**

17  **Brisbois Bisgaard & Smith"?**

18    A.   I don't recall that at all.

19    Q.   **Please look in the transcript.  I believe your**

20  **response to the judge was "March 28th."**

21            MR. HELFAND:  Hang on.  The transcript is

22  about 38 pages long.  Do you know where it is in the

23  transcript?

24            MR. BITGOOD:  I'll find it for you.

25            MS. NORMAN:  I believe it's page 38.

```
 1                    MR. HELFAND:  Thank you.  Oh.  It's more
 2       than 30 pages.  But look at page 38, please.
 3                    THE WITNESS:  I don't see that on page 38.
 4                    MS. NORMAN:  Where is the rest of your
 5       transcript?  I'm sorry.  It's page 30 of the transcript.
 6       I was looking at the footer.
 7                    MR. HELFAND:  Okay.
 8            Q.  (BY MR. BITGOOD)  Look at line 13 on page 30.
 9       I'm sorry.
10                    MS. NORMAN:  Line 6.
11            Q.  (BY MR. BITGOOD)  Line 6.
12            A.  Line 6 on page 30?
13            Q.  Uh-huh.
14            A.  Do you want me to just read it?
15            Q.  No.  It says "an application attached as
16       Defendant Exhibit F dated March 28th, 2022."
17                    MR. HELFAND:  What's your question?
18            Q.  (BY MR. BITGOOD)  Do you see that, sir?
19            A.  Yes.
20            Q.  Okay.  And the court goes "All right.  When was
21       the expiration date?"  What do you answer on page -- on
22       line 13?
23            A.  "March 9th, 2022."
24            Q.  So the registration expired on March the 9th,
25       and you admitted in court that you didn't renew it until
```

1   March 28th, correct?

2            MR. HELFAND:  Objection, multifarious.

3   Assumes facts not in evidence.

4        Q.  (BY MR. BITGOOD)  What did you tell the court?

5   That you didn't renew it till March 28th, correct?

6        A.  I think that's correct.

7        Q.  Look at page 31.  "THE COURT:  Okay.  And you

8   renewed it on March 28th?"

9            "MR. OUBRE:  Yes."

10           "THE COURT:  Okay."

11           So it's established.  The registration for

12  Lewis Brisbois Bisgaard in Texas had expired on March

13  9th of 2022.  That's what you told the court, correct?

14       A.  Right.

15       Q.  You didn't renew it till March 28th of 2022,

16  correct?

17       A.  Right.

18       Q.  And yet you made an appearance in that case on

19  March the 11th of 2022, correct?

20       A.  I don't remember if that's the date, but I did

21  make an appearance in that case.

22       Q.  Was it before the registration was renewed?

23  Correct?

24       A.  I don't remember.

25       Q.  Okay.  And as a result of what you don't

1    remember the court removed you from the case and struck

2    the pleadings of the defendants, correct?

3                    MR. HELFAND:  Objection, assumes facts not

4    in evidence, and object to the side-bar before the

5    question.  The question of whether he was removed from

6    the case has been asked and answered.

7                    THE COURT:  I'm not hearing you,

8    Mr. Helfand.

9                    MR. HELFAND:  I object to -- Mr. Easton has

10   a habit of making side-bar remarks and then asking a

11   question.  I object to the side-bar remarks.  The

12   question of whether the associate judge ordered that

13   Mr. Oubre be removed from the case has already been

14   asked and answered.  It's not in dispute.  It's in

15   writing, Judge.

16                    THE COURT:  Well, why don't we -- let's do

17   it from the beginning --

18                    MR. BITGOOD:  Your Honor, I believe

19   Mr. Helfand told this court that Mr. Oubre withdrew

20   because he had a conflict of interest.  I'm going to ask

21   him that question next.

22                    THE COURT:  Well, ask that question.

23                    MR. HELFAND:  Sure.

24        Q.   (BY MR. BITGOOD)  Did you withdraw because you

25   had a conflict of interest, or did the court remove you

1   on written order?

2        A.   There was an order to that effect.  I don't

3   recall the date that I was removed from the case.

4               THE COURT:  I'm not hearing you either.

5   I'm sorry.

6        A.   There was an order from the court removing me

7   from the case.  And then Thompson -- Will Moye at

8   Thompson, Coe took over.

9        Q.   (BY MR. BITGOOD)  Last week we took the

10  deposition of Mr. Fisher.  He told the court that you

11  put on evidence at this hearing on September the 13th.

12  Did you put on any evidence at that hearing?

13              MR. HELFAND:  Objection, assumes facts not

14  in evidence.  You want to show him the transcript that

15  you're referring to?

16              MR. BITGOOD:  I don't.  I'm asking him.

17              THE COURT:  The witness can remember he can

18  say.  If he can't remember, he can say that.

19       A.   I remember I had affidavits attached to my

20  response.  I think that's the only evidence I had at the

21  hearing.

22       Q.   (BY MR. BITGOOD)  Did you put on any

23  testamentary evidence; in other words, live witnesses?

24       A.   I didn't call any live witnesses.

25       Q.   Did you offer any exhibits?

1      A.  I had a couple of affidavits from my clients

2   saying that I had authority to represent them.  That's

3   the only evidence I can remember.

4      **Q.  And affidavits that have not been offered as**

5   **evidence, you call that evidence?**

6            MR. HELFAND:  I'm sorry.  Judge, that's

7   just argumentative.

8            MR. BITGOOD:  Your Honor, he said it was

9   evidence.

10           THE COURT:  I'm sorry.  What did you say?

11           MR. BITGOOD:  The witness said it was

12  evidence.  I want to know if that's his understanding of

13  what evidence is.

14           MR. HELFAND:  Judge, this has nothing to do

15  with this Lanham Act lawsuit.  The question now is what

16  evidence did Mr. Oubre present in the county court at

17  law as to his authority to represent the defendants in

18  that case.  And he said, "I had affidavits."  And

19  Mr. Bitgood just said to him, "You call that evidence?"

20           THE COURT:  Affidavits are evidence.  Let's

21  move on.

22           MR. HELFAND:  Thank you.

23     **Q.  (BY MR. BITGOOD)  Were your affidavits admitted**

24  **into evidence?**

25     A.  They were in the court's files, so I

Page 33

1    consider -- I considered them in evidence.

2        Q.  But the court found that Lewis Brisbois had no

3    authority to do business as of March 11th in a Texas

4    court, correct?

5        A.  I don't recall the specific language.

6            THE COURT:  That's a legal question.  I

7    mean, whatever the court did will speak for itself.  We

8    don't need to ask a lawyer what the court meant.

9        Q.  (BY MR. BITGOOD)  I want to come back to the

10   question of standing.

11           THE COURT:  Standing is not a legal

12   question.  Final briefs it goes into the issue of

13   standing, and I get the other side's response.  But a

14   fact -- a fact witness cannot testify about standing.

15   He's not an expert on Texas law.

16       Q.  (BY MR. BITGOOD)  Well, Mr. Oubre, if you file

17   a lawsuit, as was done in this case, and you tell the

18   court that trademark 3,722,172 belongs to you on

19   September the 23rd, 2022, and it does not, you believe

20   that would affect standing?

21           MR. HELFAND:  That --

22           THE COURT:  That's another legal question.

23           MR. HELFAND:  Thank you, Judge.

24           THE COURT:  The question is whether he

25   found something that was not true.  You can ask him that

```
1    but --
2                    MR. BITGOOD:  Okay.
3         Q.  (BY MR. BITGOOD)  Have you examined the
4    pleadings in this case?
5         A.  No.
6         Q.  Okay.  Would it surprise you to know that you
7    did not -- Lewis Brisbois Bisgaard & Smith did not own
8    trademark 3,722,172 on September 23rd?
9                    MR. HELFAND:  I'm sorry, Judge.  I need to
10   object.  First, that's a false statement.  Second of
11   all, that calls for a legal conclusion as to who owned
12   the trademark, the question that the Court will
13   determine.  This witness has already said he has no
14   knowledge of the lawsuit.
15                   THE COURT:  He's not being offered as a
16   Lanham Act expert.  He's being -- he was called upon to
17   testify by -- by the defendants, and he's a fact
18   witness.  Let's stick to fact questions.
19        Q.  (BY MR. BITGOOD)  I'm handing you what's been
20   marked as Defendants Exhibit 1 A.
21        A.  Okay.
22        Q.  You see what it says at the top, cancellation
23   of a trademark?
24        A.  It says "The attached U.S. trademark
25   registration is certified to be a true copy of the
```

1    registration issued by the United States Patent and

2    Trademark office and subsequently canceled."

3        Q.   What date was that cancellation, sir?

4        A.   I don't know.

5        Q.   Look on the document, please.

6        A.   The document says October 4th, 2022.

7             MS. NORMAN:   No.  Huh-uh.

8        Q.   (BY MR. BITGOOD)  And just by common sense,

9    October 4th, 2022, predates September 23rd, 2023,

10   correct?

11            THE COURT:   Okay.  It does.  I'll take

12   judicial notice of that.

13            MR. BITGOOD:   Thank you, sir.  Let me have

14   No. 6, please.  No. 6.

15       Q.   (BY MR. BITGOOD)  Mr. Oubre, I'm handing you

16   now what's been marked as Defendants Exhibit 6.

17       A.   Okay.

18       Q.   Could you tell the Court what that is?

19       A.   It is a letter from Lewis Brisbois Bisgaard &

20   Smith, LLP, Mediation & Arbitrations, Michael Joseph

21   Bitgood and Susan Norman, to me.

22       Q.   It's addressed to you, correct?

23       A.   Yes.

24       Q.   What date is it addressed?

25       A.   July 22nd, 2022.

Page 36

```
1        Q.  When you received that letter on July 22nd,

2   2022, did you lodge any objections to the use of that

3   letterhead?

4        A.  I don't even recall receiving this letter.

5        Q.  You don't recall receiving the letter?

6        A.  Not at all.  I'm not saying I didn't.  I just

7   don't -- I mean, I got correspondence from you every

8   other day.  So I don't recall this one specifically.

9        Q.  At any time did you object to the use of the

10  name Lewis Brisbois Bisgaard & Smith on our letterhead

11  at any time in writing, in any place?

12       A.  Me personally?

13       Q.  Yes.

14       A.  I don't recall if I did or didn't.

15       Q.  As managing partner of the law firm did you

16  lodge an objection in the state court?

17            MR. HELFAND:  I'm sorry.  It

18  mischaracterizes the witness' prior testimony.  He's not

19  the managing partner of the law firm.

20       Q.  (BY MR. BITGOOD)  As an attorney for the

21  defendants did you lodge an objection to the use of

22  Lewis Brisbois Bisgaard & Smith letterhead by us?

23       A.  I don't recall if I did or didn't.

24       Q.  Did you ever present that letter to

25  Ms. Martinez?
```

```
1              MR. HELFAND:  I'm sorry.  That would invade
2    attorney-client communications.  Don't answer that
3    question.
4              MR. BITGOOD:  What was the date on the
5    Martinez letter?  He's got it over there.  Make sure he
6    doesn't keep it.
7              MR. HELFAND:  Is this the one you need?
8              MS. NORMAN:  Yeah.
9              MR. BITGOOD:  What's the date on that?
10             MS. NORMAN:  July 22nd.
11        Q.  (BY MR. BITGOOD)  Do you recall asking me
12   regarding the letter that now you claim is
13   attorney-client privilege, asking me to put that offer
14   back on the table for your client?
15             MR. HELFAND:  Okay.  First of all --
16             THE COURT:  We're not going to get into
17   settlement discussions, are we?
18             MR. BITGOOD:  No, Your Honor.  Except that
19   it was on Lewis Brisbois letterhead.  I want to
20   establish that at all times they never objected to the
21   use of the letterhead.  If they would have objected to
22   the use of the letterhead, we would have stopped right
23   then and there.  This would not be necessary.
24             MR. HELFAND:  We did object, Judge.  We
25   wrote them a letter and said "stop doing it."
```

Page 38

```
 1                  MR. BITGOOD:  When?

 2                  MR. HELFAND:  He responded to our general

 3     counsel with the "Come and Take It" flag and said, "It's

 4     mine.  You can't have it."  We did object.  But that's

 5     not going to be established by Mr. Easton's letter to

 6     Mr. Oubre.  Mr. Oubre has already testified he doesn't

 7     remember whether he did or when he objected to the use

 8     of the name Lewis Brisbois.

 9                  MS. NORMAN:  Your Honor, if I may respond.

10     The timing of what Mr. Helfand just said happened three

11     days after the September 13th trial motion, Rule 12 --

12                  THE COURT:  This would be a contested

13     point.  I think any law firm would object to somebody

14     else --

15                  MR. BITGOOD:  It is.

16                  MS. NORMAN:  It is a contested point.

17     Prior to September 13th, nobody in -- nobody in

18     California at Lewis Brisbois who had been copied on

19     every document after June 24th, nobody sent a letter or

20     a pleading objecting to the use of that name by the

21     Texas domestic LLP.  Only after the court's ruling

22     ejecting Lewis Brisbois from the case, removing

23     Mr. Oubre from representing the parties, and striking

24     the pleadings, that's the first time that anything

25     official came from Lewis Brisbois in this -- so his --
```

```
 1   his failure to tell the court that that didn't happen

 2   till September 16th, and then they file suit on

 3   September 23rd, is --

 4              MR. HELFAND:  Is evidence of nothing,

 5   Judge.  The sequence of --

 6              MS. NORMAN:  It's evidence that --

 7              MR. HELFAND:  The sequence of events is

 8   undisputed.  If they want to file an affidavit that says

 9   they were not told by Lewis Brisbois to stop using that

10   name before X date, we'll be happy to look at that.  But

11   Mr. Oubre has already said he doesn't recall whether he

12   objected, and if so when.  What Mr. Easton is now

13   questioning him about is -- he said you -- you think my

14   letter is attorney-client privilege, but it's a

15   discussion.  It's not a question.

16              To Ms. Norman's concern, the time line is

17   not disputed.  If they want to put on evidence that they

18   were not aware that the firm objected, if there's some

19   argument that two months constitutes waiver of a mark,

20   we can address that as a matter of law.

21              THE COURT:  You really think that any law

22   firm would acquiesce the use of its name by a third

23   party?  I mean, is that really seriously in dispute?

24              MR. BITGOOD:  Your Honor, I agree with you

25   on that.  And that's the question I'm trying to raise.
```

1   I think I gave you an example a couple months into the

2   hearing.  If you were sitting in court, and I called

3   for -- the court called for announcements, and I said,

4   "Well, I'm Keith Ellison, and I represent Keith P.

5   Ellison," I'm sure you would get up out of your chair

6   and say, "Wait a minute, something is not right here,"

7   or you would be in objection.  When you go into court

8   and the judge asks Ms. Norman, "Who do you represent,"

9   and she says, "Lewis Brisbois Bisgaard & Smith LLP,

10  Texas domestic," we finish making the appearances, and

11  he makes no objection, that, Your Honor, is an

12  acquiescence.  He knows what's going on.  They make --

13  in their pleadings -- and in one of your memorandums you

14  said they had no idea this was going on.  The idea is we

15  have to prove they knew well in advance what was going

16  on, and this didn't have to happen.

17                    But now fast-forward if he wants to talk

18  about date lines.  That letter that was sent by general

19  counsel is dated September 16th.  We had the hearing

20  with you October the 6th.  The night of October the 6th

21  we ceased operations.  Period.  The end.  That should

22  have been the end of it.  We didn't get that letter

23  until September the 16th.  Now, on the 15th Mr. Oubre

24  called me on the telephone.  He asked me for a Rule 11

25  agreement that I would not use the name again.  I said,

Page 41

1    "Why do you need a Rule 11 agreement?  Come to

2    mediation.  We'll resolve the whole thing."  The next

3    day I get the letter from Jana Lubert through Mr. Oubre

4    telling me, "Don't use our name," and I -- that was in

5    the letter.  The letter says, "It's obvious you're

6    trying to impersonate us."  At no time were we trying to

7    impersonate the real Lewis Brisbois in California.

8              **MR. HELFAND:**  Now, first, Judge, I would be

9    remiss if I didn't point out that Mr. Easton just belied

10   what Ms. Norman said.  She said, "We didn't know it was

11   a problem until after the" --

12             **MR. BITGOOD:**  He's --

13             **MR. HELFAND:**  -- "hearing on" -- "on

14   September 13th."

15             **MR. BITGOOD:**  He can't help himself.

16             **MR. HELFAND:**  But Mr. Easton just said he

17   had a conversation which he was asked to stop using the

18   name on September 11th.  But as for a deposition --

19             **MR. BITGOOD:**  I did not say -- objection --

20   objection.  Your Honor, I want to make sure the record

21   is clear.  I did not --

22             **THE COURT:**  I will allow you to respond

23   after he's finished.

24             **MR. BITGOOD:**  Thank you, Your Honor.

25             **MR. HELFAND:**  He said what he said, and I'm

1  sure the court reporter took it down.  Here's my point,

2  Judge.  The time line is the time line.  You can't make

3  an argument of waiver of protection of the mark through

4  the fact witness.  He's already answered the question.

5  "I don't know when or how I objected, if at all."

6  That's on the record.  So what Mr. Easton is really

7  trying to do is just make an argument through the

8  witness.  Maybe it would just be easier if he asked the

9  question again.  The Court with this context can hear

10 it.

11              THE COURT:  Mr. Bitgood, you want to

12 respond?

13              MR. BITGOOD:  Yes, sir.  Your Honor, what

14 I'm trying to establish is that we came to you on

15 October the 6th.  We ceased operations, shut down

16 everything, and told you, "We're not going to fight

17 these people."

18              THE COURT:  Okay.

19              MR. BITGOOD:  You're correct.  I'm trying

20 to establish that since June before that they knew of

21 the use of the name, they knew they were being sued for

22 the use of the name, and they said nothing.  Had anybody

23 voiced an objection, a serious objection to it, and we

24 had been instructed by any court not to do it, we would

25 have stopped immediately.  That's what I'm trying to

Page 43

```
 1    establish.

 2                 THE COURT:  Did you really seriously

 3    entertain the thought that you could use another law

 4    firm's name for your own purposes?

 5                 MR. BITGOOD:  No, sir.  It was strategic.

 6    Because the fact that they had let it expire, didn't

 7    have the USPTO, was trial strategy to get them ejected

 8    from the case.  It worked.  It was a temporary measure.

 9    Now, in hindsight it may not have been the brightest

10    idea that ever came up, but at the time it worked.

11                 THE COURT:  Okay.  So let's -- let's assume

12    you're correct about that.  Let's move on.

13                 MR. BITGOOD:  Thank you, sir.

14        Q.  (BY MR. BITGOOD)  Did you ever ask me to put an

15    offer on the table back for Karina Martinez?  Yes or no?

16        A.  I don't remember that.

17        Q.  Okay.

18                 MR. BITGOOD:  Go ahead and give it to him.

19                 MR. HELFAND:  What are we looking at?  What

20    is this?  What is this?

21                 MR. BITGOOD:  It's obviously an exhibit,

22    but I can't --

23                 THE COURT:  I'm not hearing.  Somebody is

24    saying something?  I'm not hearing it.

25                 MR. HELFAND:  I'm asking what it is.  It's
```

```
 1   a -- what's the exhibit to the deposition, Ms. Norman?
 2   Are we going to make it an exhibit?
 3               MS. NORMAN:  It is an exhibit.  It's a
 4   series -- it's Exhibit 11.
 5               MR. BITGOOD:  Exhibit 11.
 6               MR. HELFAND:  Okay.  Exhibit 11 to --
 7               MS. NORMAN:  It's a series of emails --
 8               MR. HELFAND:  -- the deposition?
 9               MR. BITGOOD:  Yes.
10               MS. NORMAN:  To the deposition.
11               MR. HELFAND:  To this deposition?
12               MS. NORMAN:  To this deposition.
13               MR. HELFAND:  Okay.  So it's already marked
14   as Exhibit 11 to Mr. Oubre's deposition.  Thanks.  So
15   most of the time when somebody hands a document they
16   say, "Let me show you what I've marked" or "I'm having
17   marked as" such and such so we can know what we're
18   talking about.
19               MR. BITGOOD:  Objection to the side-bar by
20   Mr. Helfand.  I'm not paying for you.
21               MR. HELFAND:  That's how lawyers do it.
22               MR. BITGOOD:  Yeah, I know all about that.
23        A.  I'm sorry.  What's the question?
24        Q.  (BY MR. BITGOOD)  Did you --
25               THE COURT:  What's the question, pending
```

1  question?

2     Q.  (BY MR. BITGOOD)  Did you offer -- did you ask

3  me to put the offer for Ms. Martinez back on the table

4  after you lost the hearing on September 13th?

5           MR. HELFAND:  Asked and answered.

6     A.  I don't remember that.  I'm not saying it

7  didn't happen, but I don't remember that.

8     Q.  (BY MR. BITGOOD)  Is there anything you

9  remember about the case?

10    A.  Is that a serious question?

11    Q.  Yes, sir.

12    A.  Yes.

13    Q.  Because every question I ask you you claim you

14  don't remember things.

15    A.  I'm under oath.  If I remember something, I'll

16  tell you about it.

17    Q.  So you don't remember this either?

18    A.  I don't remember asking you to put it back on

19  the table.  I'm not saying it didn't happen, but I don't

20  remember that --

21    Q.  Exhibit 11 --

22    A.  -- conversation.

23    Q.  Exhibit 11 that you're looking at seems to

24  indicate I declined to put it back on the table,

25  correct?

Page 46

1          A.   It says right here "Regarding your request that

2     I put 'Baby' Karina Martinez offer to settle back on the

3     table, I DECLINE and I do so based on the following."  I

4     do remember this email because you said I was Gomer

5     Pyle, and you referenced "No Country for Old Men."

6          **Q.   Correct.  So you recall the email?**

7          A.   I remember the -- I remember the email.

8          **Q.   Okay.  And that offer came to you on a**

9     **letterhead that said Lewis Brisbois Bisgaard & Smith,**

10    **LLP Texas, correct?**

11         A.   I don't remember what letterhead it came on.

12                   **THE COURT:**  We're going to take a half hour

13    break for lunch.

14                   (Lunch recess from 1:26 p.m. to 2:08 p.m.)

15                   **MR. BITGOOD:**  Good afternoon.  Your Honor,

16    I have a request because I'm reading your order here.

17    This deposition, all of them are requested to be signed

18    and read, which is okay.  But that would give me less

19    than seven days to respond.  Could we push back our

20    response date say like two, three weeks?  Would that be

21    okay with you?

22                   **THE COURT:**  Any objection anyone has?

23                   **MR. HELFAND:**  No objection.  No objection

24    to two additional weeks.  But the court reporter said

25    the turnaround on the depositions is 10 days.  So that

Page 47

```
1   should be more than adequate time.
2              THE REPORTER:  Ten business days.  Yes,
3   sir.
4              THE COURT:  I can't control what the court
5   reporter's rules are.  For me two weeks is okay for a
6   response.  You talking about the response to motion for
7   summary judgment?
8              MR. BITGOOD:  Yes, sir.  That's their
9   response.  And we'll keep --
10             THE COURT:  Yeah.  That's fine for me.
11             MR. BITGOOD:  We'll keep our date of April
12  29th to file ours.  Thank you, Your Honor.
13      Q.  (BY MR. BITGOOD)  Mr. Oubre, before we took the
14  lunch break, I asked you about a letter that was sent on
15  Lewis Brisbois Bisgaard Texas domestic letterhead to you
16  regarding an offer to a Karina Martinez.  Do you recall
17  that -- what we talked about?
18      A.  Yes.
19      Q.  Okay.  And Mr. Helfand instructed you not to
20  answer because it violated the attorney-client
21  privilege, correct?
22             MR. HELFAND:  No.  I instructed him not to
23  answer the specific question, "Did you confer with your
24  client about that?"
25             MR. BITGOOD:  Okay.
```

```
1          Q.  (BY MR. BITGOOD)  Did you --
2               MR. HELFAND:  That's all I asked --
3               MR. BITGOOD:  Okay.  Okay.  Mr. Helfand,
4     thank you.
5          Q.  (BY MR. BITGOOD)  Did you ever present that
6     letter to Ms. Martinez?
7               MR. HELFAND:  Don't answer that question.
8     It's attorney-client privilege.
9          Q.  (BY MR. BITGOOD)  Which brings us to this
10    question.  Who was your client?  Was it Ms. Martinez?
11         A.  I had several clients in that case.
12         Q.  Was Karina Martinez one of your clients?
13         A.  Yes.
14         Q.  Okay.  And the court found she wasn't your
15    client when she removed you, correct?
16              MR. HELFAND:  No.  I'm sorry.  That mis --
17    that calls for a legal conclusion.  That also
18    misinterprets the order.  To find that he wasn't -- she
19    wasn't his client the court found that Mr. Oubre could
20    not proceed.
21              MR. BITGOOD:  Excuse me.  Let me have the
22    order from the state court.
23              MS. NORMAN:  Okay.
24              THE COURT:  What's the -- what's the issue
25    here?  Are we really -- who his client is, can't you
```

1  check the pleadings?  Doesn't the pleading reflect who
2  his client is?
3          MR. BITGOOD:  Your Honor, state court has a
4  different procedure.  When you remove somebody under
5  Rule 12, that person was never your client.  You never
6  had -- let me finish, Mr. Helfand.
7          THE COURT:  Okay.  Go ahead and finish.  Go
8  ahead and finish.
9          MR. BITGOOD:  Your Honor, Rule 12 allows
10 you to remove an attorney if he does not have the
11 authority to appear for a particular client.
12         THE COURT:  Okay.
13         MR. BITGOOD:  The motion was brought under
14 Rule 12.  The court found that he was not authorized to
15 appear for Ms. Martinez, Imperial Lofts, or LLC, and
16 struck all of their pleadings.  So if he's not her
17 lawyer he can't claim the attorney-client privilege.
18         MR. HELFAND:  There's a couple of things
19 wrong with that.  First of all, Mr. Easton is wrong
20 about the law.  Rule 12 is a -- is a question of
21 authority at the time the motion is presented, not
22 whether their lawyer ever had authority.  Second of all,
23 the associate judge in Fort Bend County cannot tell a
24 lawyer that someone is not their client.  He can tell
25 the lawyer that they cannot continue to represent that

Page 50

1   person, which is what the associate judge's order says.

2   But communications between Mr. Oubre and the lady who he

3   was hired to represent are attorney-client privilege.

4              **THE COURT:**  Yeah, I think so.  Let's --

5   let's move on to another question.

6              **MR. BITGOOD:**  Okay.

7      **Q.  (BY MR. BITGOOD)  Mr. Oubre, did you file any**

8   **special exceptions in the state court case when you**

9   **represented any of these clients?**

10     A.  I don't remember.

11             **MR. BITGOOD:**  May I have the state court

12  docket sheet?

13             **MS. NORMAN:**  I handed you one, but --

14             **MR. BITGOOD:**  I had it all highlighted.

15             **MS. NORMAN:**  Yeah.

16             **THE COURT:**  I'm not hearing anything.

17             **MR. BITGOOD:**  I'm sorry, Your Honor.  I was

18  talking to Ms. Norman.  My apology.

19     **Q.  (BY MR. BITGOOD)  Mr. Oubre, I'm handing you**

20  **what's been marked as --**

21             **MS. NORMAN:**  Exhibit 30.

22     **Q.  (BY MR. BITGOOD) -- Exhibit 30 to David Oubre's**

23  **deposition.  Beginning on 6-24 all the way to the end do**

24  **you see any entries on there where you filed special**

25  **exceptions for anybody?  Mr. Oubre, it's highlighted**

Page 51

```
 1    from 6-24 all the way down.  It's highlighted.
 2         A.  I'm going to read the whole thing.
 3              MR. HELFAND:  The question was does he see
 4    any entries on there.  So he's going to read all the
 5    entries because that's what you asked him to do.
 6              MR. BITGOOD:  Objection to the side-bar
 7    remark.
 8              THE COURT:  I'm sorry.  I'm not aware -- is
 9    the document being reviewed?  Is there a pending
10    question?
11              MR. BITGOOD:  He's looking at the docket
12    sheet, Your Honor, very slowly.
13              MR. HELFAND:  Here's what happened, Judge.
14    He asked the witness, "Did you file special exceptions?"
15    Mr. Oubre said, "I don't remember."  Then he's handed
16    him the docket sheet from state court and said, "Look
17    and see if there's anything on the docket sheet that
18    says special exceptions."  I would go so far as to say
19    for my client I'll stipulate whatever the docket sheet
20    says about that question.
21              THE COURT:  That acceptable?
22              MR. BITGOOD:  If he stipulates that he
23    didn't file special exceptions, yes.
24              MR. HELFAND:  No.  I'll stipulate the
25    docket sheet says whatever it says because that's the
```

1   only thing the witness can use right now.

2                  THE COURT:  I don't have any idea of the

3   filing system in state court, whether it's subject to

4   omissions.  I don't have any idea.

5                  MR. BITGOOD:  It's similar to federal

6   court, Your Honor.  Everything you file is given a -- a

7   date it's filed, and it --

8                  THE COURT:  Well, then, Mr. Helfand's offer

9   or stipulation should be acceptable.

10                  MR. BITGOOD:  Okay, Your Honor.

11        Q.  (BY MR. BITGOOD)  Mr. Oubre, in connection with

12   an appeal that was pending in the Fourteenth Court of

13   Appeals styled Bitgood versus Martinez, who you claim is

14   your client, what interest did you have in that appeal,

15   if any?

16        A.  What do you mean "what interest"?

17        Q.  What interest did you have in it?  Were you a

18   lawyer in that case?

19        A.  I was a lawyer in that case for a while.

20        Q.  Okay.  Would you take a look at Defendants

21   Exhibit 38?  This is your motion to dismiss my appeal.

22                  MR. HELFAND:  It's not his motion unless he

23   signed it.  It's a motion.

24                  MR. BITGOOD:  It is his motion.  It says

25   David Oubre's motion.

```
 1              MR. HELFAND:  Let me see the signature.

 2              MR. FISHER:  Is that in this case?

 3              MR. HELFAND:  No.  No.  This is an appeal.

 4    Can I see this for a second?  Okay.  No.  It's signed by

 5    me, so it's not Mr. Oubre's motion.

 6         Q.  (BY MR. BITGOOD)  What is the style --

 7              MR. HELFAND:  It's my motion.

 8         Q.  (BY MR. BITGOOD)  What is the style of the

 9    document?

10              THE COURT:  Hold on.  Hold on.  I'm not

11    hearing either of you now.  What were you --

12         Q.  (BY MR. BITGOOD)  What's -- what's the title of

13    the document, sir?

14         A.  "David Oubre and Lewis Brisbois Bisgaard &

15    Smith, LLP's Opposed Motion to Dismiss Appeal and

16    Opposition to Appellant's Motion to Extend Time to File

17    Appellant's Brief."

18         Q.  And you're that same David Oubre that sits

19    before this court today, correct?

20         A.  Yes.

21         Q.  Okay.  I'm handing you Exhibit No. 43.  Would

22    you read what Exhibit 43 says from the Fourteenth Court

23    of Appeals?

24              THE COURT:  This -- I don't think this is

25    very helpful.  I mean, the documents are going to be
```

Page 54

1   self-explanatory.  Is there some doubt about --

2              MR. BITGOOD:  I want to give you an

3   example, Your Honor, and I want to make sure -- I

4   normally don't have this problem.  But if he's going to

5   say, "Well, it's not Mr. Oubre's motion because I signed

6   it," but the title says "Comes now David Oubre," I've

7   got to attribute it belongs to him.  Now, Mr. Helfand

8   will tell you I don't know the law, but it's even the

9   law in federal court.  The lawyer may be doing the

10  talking, but what he says belongs to you.  So he's the

11  client then.  At that point he becomes the client.

12             MR. HELFAND:  The answer to your question

13  is, no, Judge, there won't be any dispute about what a

14  document says.  There may be disputes about the way

15  Mr. Easton tries to mischaracterize the documents, but

16  there won't be a dispute about what a written document

17  says.

18             MR. BITGOOD:  Your Honor, I object to that

19  statement because you've asked me not -- not to do it to

20  him, but he's being allowed to do it to me.  I would

21  really like to let him know how I feel about him.  So if

22  he could just make an objection we could get out of

23  here.

24             THE COURT:  This is all -- this is all so

25  unnecessary.  Unless there's a legitimate dispute about

```
 1   authenticity or verification let's quit asking what the
 2   document says.
 3                MR. BITGOOD:  Okay.
 4                THE COURT:  And let's move on to questions
 5   about facts.
 6                MR. BITGOOD:  Okay.
 7       Q.  (BY MR. BITGOOD)  You would agree, then, that
 8   the Court of Appeals struck your motion to dismiss,
 9   correct?
10       A.  That's what the order says.
11       Q.  Thank you.
12                MR. BITGOOD:  Give me those others.
13                MS. NORMAN:  Which one?
14                MR. BITGOOD:  That one.
15       Q.  (BY MR. BITGOOD)  Mr. Oubre, you are aware that
16   it is a crime in Texas to do business as an LLC or an
17   LLP without paying the registration under the business
18   code?  Are you aware of that?  Are you aware of it?
19                MR. HELFAND:  One, that's a misstatement of
20   the law.  Two, it calls for a legal conclusion.
21                MR. BITGOOD:  Your Honor, reading the
22   statute 71.02, "A person commits an offense if he
23   conducts business, renders a professional service in the
24   state under an assumed name, violates the chapter, it's
25   a Class A misdemeanor, except when tampering with
```

 1   governmental records."  So I'm asking Mr. Oubre at the

 2   time he filed that appearance in Fort Bend under the

 3   name Lewis Brisbois did he know that he was committing a

 4   crime.

 5                THE COURT:  I don't think that's the kind

 6   of conduct the law is meant to pick up.  I really don't.

 7   He -- you can have trademarks that are not registered

 8   with the Patent Office.  You can have trademarks that

 9   are not registered with the state.

10                MR. BITGOOD:  I understand His Honor's

11   gentle nature about this.  But I have to take for the

12   assumption, the way they're attacking us, I have to

13   marshal enough evidence to show that what he did was

14   wrong.  And that is wrong.  And I understand, Your

15   Honor, this is probably not what the statute intended to

16   reach.  I agree with you on that.  But, nonetheless, he

17   violated the statute.  So when they come after us and

18   they say we did this and we did that, that bothers me

19   because, first of all, at the first hearing, October

20   6th, you said, "I don't like this."  We shut it down.

21   Why are we still here?

22                THE COURT:  I wondered that many times.

23                MS. NORMAN:  Your Honor, may I be heard,

24   please?

25                THE COURT:  Yes.

1    **MS. NORMAN:**  There is a difference between

2    a foreign company which is a California LLP being

3    authorized by the Secretary of State to transact

4    business in Texas and any use of the name.  Those are

5    two separate categories.  This exhibit that -- the

6    statute that Mr. Bitgood is referencing applies only to

7    a company's being in a state, a foreign company being in

8    Texas and transacting business.  So if you don't have

9    authority from the Texas Secretary of State to transact

10   business in Texas that's when --

11          **THE COURT:**  That's a legal question.  But

12   asking this witness whether he agrees that it's a

13   violation of law is asking him for a legal opinion.

14          **MS. NORMAN:**  And I'm -- and I'm not going

15   to argue about that.  What I'm talking about is the

16   plaintiff is conflating two separate ideas.  One idea is

17   authorization to do business in Texas.  The other is use

18   of the four letter word mark, which at the time they --

19   from July 10, 2020 didn't exist on their behalf.

20          **MR. HELFAND:**  The question to the witness

21   was, "Are you aware of the fact that you were violating

22   the law?"  One, Mr. Easton has misstated the law.  Two,

23   this witness doesn't have to answer that question.

24          **THE COURT:**  He's not here as a legal

25   expert.  He's here as a fact witness.  And I don't think

Page 58

1    that's a fact question.

2        Q.  (BY MR. BITGOOD)  Mr. Oubre, do you recall what

3    the subject matter was of the case in Fort Bend County

4    that you were hired to represent the -- your clients on?

5        A.  Evictions.

6        Q.  And you claimed in your pleadings that I was

7    the subject of one of those evictions?

8        A.  I mean, I don't remember if we claimed that in

9    the pleading.

10       Q.  Would it surprise you to know that I have my

11   own residence, I was not evicted from Imperial Lofts?

12              MR. HELFAND:  Objection, assumes facts not

13   in evidence.

14              THE COURT:  He can answer whether he knows

15   that or not.  I didn't know that.  I'm not sure it was

16   relevant.  But, anyway, he knows that he can say so.

17       A.  I thought there was some type of eviction

18   proceeding against you to get you out of the apartment

19   complex because you were smoking in the hallway or

20   something or -- I don't know what it was you told me.

21   And then there was a lawsuit involving that eviction,

22   and I think Brad Beers is involved.  But I'm not sure of

23   the details of the whole process.

24       Q.  (BY MR. BITGOOD)  At the time you made an

25   appearance in 2022 I was not a resident of Imperial

Page 59

```
 1    Lofts.  Were you aware of that?
 2         A.  No.
 3         Q.  Okay.  But in your pleadings you put that I was
 4    improperly evicted.  You recall doing that?
 5         A.  No.
 6              MR. BITGOOD:  Get his motion for summary
 7    judgment.
 8              MS. NORMAN:  What?
 9              MR. BITGOOD:  The MSA -- MSJ filing.
10              MS. NORMAN:  I don't have the MSJ.
11              MR. BITGOOD:  It's here.  One -- 1 B.  1 B.
12              MS. NORMAN:  Okay.
13              THE COURT:  Is there a question pending?
14              MR. BITGOOD:  No, Your Honor.  I was
15    getting an exhibit.
16         Q.  (BY MR. BITGOOD)  Mr. Oubre, I'm going to hand
17    you Exhibit 1 B.  This is your no-evidence motion for
18    summary judgment in the Fort Bend County case.
19    Paragraph 2 it says "Plaintiffs Richard P. Jones and
20    Michael Bitgood filed suit claiming that Defendants
21    Imperial Lofts, along with its agents Karina Martinez
22    and Mariana Sullivan, improperly charged rental fees
23    and" --
24              THE COURT:  Slow down.
25         Q.  (BY MR. BITGOOD) -- "improperly charged rental
```

Page 60

1  fees and filed eviction petitions against them.

2  Plaintiffs further allege Defendants had no standing to

3  bring these eviction suits, and threatened Plaintiffs

4  when they challenged Defendants' actions."  Do you

5  recall this now?

6       A.  Vaguely.

7       Q.  Well, the statements were made by you in that

8  pleading, correct?

9       A.  Yes.

10      Q.  Mr. Oubre, you are aware that on August 1st of

11  2023 County Court at Law No. 1 in Fort Bend County

12  declared all of the Imperial leases void?

13      A.  No.

14      Q.  You're not aware of that?

15      A.  No.

16      Q.  What exhibit are you holding, Mr. Oubre?

17      A.  Forty-five.

18      Q.  Exhibit 45 to the Oubre deposition is an

19  article from the Fort Bend Herald.

20           MR. HELFAND:  Well, an article that reports

21  a court order is not an order of the court.

22           MR. BITGOOD:  Well, we agree on something.

23           MR. HELFAND:  But if you want to ask a

24  question go ahead and ask a question about an article.

25  That's not --

Page 61

```
 1                   MR. BITGOOD:  I didn't ask him about an
 2     order of the court.
 3                   MR. HELFAND:  Yes, you did.  You said, "Are
 4     you aware that the judge struck all your pleadings?"
 5                   MR. BITGOOD:  No.  The question I --
 6                   MR. HELFAND:  That's exactly the question.
 7                   MR. BITGOOD:  The question I asked him was,
 8     "Are you aware that a county court at law in Fort Bend
 9     County declared all of Imperial Lofts leases void?"
10                   MR. HELFAND:  Okay.  Do you have that
11     order?
12                   MR. BITGOOD:  His answer was, "No."
13                   MR. HELFAND:  Do you have that order?
14                   MR. BITGOOD:  Do I have to present it the
15     way you want?
16                   THE COURT:  The newspaper article is
17     hearsay, so we don't need to worry about that.
18                   MR. HELFAND:  Thank you.
19                   THE COURT:  If there's an order, we can
20     look at it.
21                   MR. HELFAND:  If you have the order, we'll
22     be happy to look at it.
23                   MR. BITGOOD:  Your Honor, I believe
24     Mr. Helfand has presented two or three publications and
25     claimed that under Rule 901 -- I disagreed with him, but
```

Page 62

1   the Court said it would look at it.  And these were

2   newspaper articles about Lewis Brisbois.  If they are

3   relevant for Lewis Brisbois, I can't see how they

4   can't --

5               THE COURT:  It's a statement made out of

6   court by somebody who's not here to cross-examine so --

7               MR. HELFAND:  It was 801, not 901.

8               MR. BITGOOD:  No.  It's nine.

9               MR. HELFAND:  I know what I told the Court.

10              MR. BITGOOD:  Which lie?

11      **Q.  (BY MR. BITGOOD)  Mr. Oubre, you are aware, or**

12   **at least I've made you aware throughout the lawsuit,**

13   **that your clients were allegedly stealing money from the**

14   **federal government through the CARES Act, correct?  That**

15   **was part of the --**

16              MR. HELFAND:  I'm sorry, Judge.  That's

17   going to invade the attorney-client privilege, and it is

18   so far afield of anything here.  The question now is in

19   that state court lawsuit did Mr. Easton allege that

20   Mr. Oubre's clients were stealing federal money.

21              MR. BITGOOD:  That's a good question.

22      **Q.  (BY MR. BITGOOD)  Can you answer that?**

23              MR. HELFAND:  No.  That would invade the

24   attorney-client privilege.

25              THE COURT:  Where does this issue come

Page 63

1   from?  I'm not familiar with any of this.

2              **MR. BITGOOD:**  Your Honor, in one of your

3   memorandums that you wrote early on in the case you put

4   this was a rental dispute, an eviction.  I've told the

5   Court counter to that it was not, it was anything but

6   that.  His people were ripping off the federal

7   government.  The government has given money to people --

8              **THE COURT:**  But what -- what does that have

9   to do at all with whether you're misusing Lewis

10  Brisbois' name?

11             **MR. BITGOOD:**  That was sent to them on

12  Lewis Brisbois letterhead as well.  Still no objection

13  from them.

14             **MR. HELFAND:**  I'm happy to look at that

15  document, Judge.  I've not seen that document before.

16             **THE COURT:**  Well, any law firm gets

17  negative publicity.  I'm just not sure how it bears on

18  our question today, which is whether somebody was

19  inappropriately using the firm's name.  Any law firm has

20  negative publicity.  I don't think it helps us to go

21  into it.  We'd be here in perpetuity I'm afraid.

22             **MR. BITGOOD:**  Your Honor, may I ask a

23  question, then, of you?  If we've shut this down, and

24  this ended October of 2022, why are we still fighting

25  this case?

Page 64

```
1              THE COURT:  Well --

2              MR. BITGOOD:  I don't understand.

3              THE COURT:  -- I'm not allowed to get into

4    questions of settlement.  I assume you've been unable to

5    achieve settlement.  I do think it's a -- a lawsuit that

6    has outlived its usefulness.  I think the battle lines

7    have been drawn for a long time.  I think the parties

8    need to settle it.  It's especially important that it be

9    settled because I -- I fear with each passing month it's

10   going to be harder to settle because there are going to

11   be more attorneys' fees incurred.  I can't settle it for

12   you, and I -- in judicial conduct tutorials and seminars

13   I'm specifically warned not to try.

14             MR. HELFAND:  Well, to be sure, Your Honor,

15   we've made numerous offers to settle, all of which have

16   been rejected.  So Your Honor is correct --

17             THE COURT:  I'm not going to get into

18   settlement --

19             MR. HELFAND:  We can't seem to settle.

20             MR. BITGOOD:  Offers to settle that include

21   criminal acts we cannot accept.  That's the reason why

22   we didn't settle.

23             MR. HELFAND:  Whatever reason you don't

24   want to settle.  You don't have to settle.

25             THE COURT:  Let's not talk about
```

Page 65

```
 1    settlement.  I don't want to know --
 2                 MR. HELFAND:  But I think you need to stop
 3    asking why we're here because we're here because we
 4    won't settle, because we can't settle.
 5                 MR. BITGOOD:  I'll pass the witness, Your
 6    Honor.
 7                 MS. NORMAN:  I have no questions, Your
 8    Honor.
 9                 THE COURT:  No questions?
10                      EXAMINATION
11    BY MR. DUNWOODY:
12        Q.  Mr. Oubre, you know Brad Beers?
13        A.  Through this case.
14        Q.  Which case are you referring to?
15        A.  I know that he's involved as a defendant in
16    this case.
17        Q.  Okay.
18        A.  I met him personally in the state court case.
19        Q.  Which one came first, state court case or this
20    one?
21        A.  The state court case.
22        Q.  And so you said you met Mr. Beers in connection
23    with the state court case.  What did he have to do with
24    the state court case?
25        A.  He was involved representing the plaintiffs in
```

1    a motion that they had filed.  He prepared a motion.
2         Q.  Anti-SLAPP motion?
3         A.  Yeah.
4         Q.  And he was -- appeared as a lawyer in the state
5    court action in connection with the anti-SLAPP motion?
6         A.  Right.
7         Q.  And that's how you knew him?
8         A.  Yes.
9         Q.  And who was he representing?
10        A.  I mean, I don't recall specifically which
11   plaintiffs --
12        Q.  Some of the opposing parties, though?
13        A.  Yes.
14             MR. DUNWOODY:  All right.  Nothing further.
15             MR. HELFAND:  We don't have any questions.
16             MR. BITGOOD:  Thank you, Your Honor.
17             MR. HELFAND:  Thank you for your time,
18   Judge.
19             (Whereupon at 2:32 p.m. the
20             deposition was concluded.)
21             (Exhibit No. 10 marked.)
22
23
24
25

Page 67

```
 1                    CHANGES AND SIGNATURE

 2           WITNESS NAME:  DAVID A. OUBRE

 3         DATE OF DEPOSITION:  APRIL 1, 2024

 4    PAGE LINE                 CHANGE              REASON

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25    _____
```

```
 1            I, DAVID A. OUBRE, have read the foregoing
       deposition and hereby affix my signature that same is
 2     true and correct, except as noted above.
 3
 4
                          _____
 5                        DAVID A. OUBRE
 6
 7
       THE STATE OF _____)
 8     COUNTY OF _____)
 9
10
              Before me, _____, on
11     this day personally appeared DAVID A. OUBRE, known to me
       (or proved to me under oath or through
12     _____) (description of identity
       card or other document) to be the person whose name is
13     subscribed to the foregoing instrument and acknowledged
       to me that they executed the same for the purposes and
14     consideration therein expressed.
              Given under my hand and seal of office this
15     _____ day of _____, _____.
16
17
                          _____
18                        NOTARY PUBLIC IN AND FOR
                          THE STATE OF _____
19                        COMMISSION EXPIRES: _____
20
21
22
23
24
25
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION
 3
     LEWIS BRISBOIS BISGAARD &    §
 4   SMITH, LLP,                  §
                                  §
 5        Plaintiff,              §
                                  §
 6   v.                           §
                                  § Case No. 4:22-cv-3279
 7                                §
     MICHAEL JOSEPH BITGOOD,      §
 8   a/k/a "Michael Easton,"      §
     et al.,                      §
 9                                §
          Defendants.            §
10
11
12              REPORTER'S CERTIFICATION
                DEPOSITION OF DAVID A. OUBRE
13                    APRIL 1, 2024
14
15        I, John G. Rochelle, Certified Shorthand Reporter
16   in and for the State of Texas, hereby certify to the
17   following:
18        That the witness, DAVID A. OUBRE, was duly sworn
19   and that the transcript of the oral deposition is a true
20   record of the testimony given by the witness;
21        That the deposition transcript was submitted on
22   _____ to the witness or to the attorney for
23   the witness for examination, signature and return to
24   Worldwide Court Reporters, Inc., by _____;
25        That the amount of time used by each party at the
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

```
 1   deposition is as follows:
 2        Mr. Bennett G. Fisher - 00:00
 3        Mr. William S. Helfand - 00:00
 4        Mr. S. Wallace Dunwoody IV - 00:01
 5        Mr. Michael Joseph Bitgood - 01:15
 6        Ms. Susan C. Norman - 00:00
 7        That pursuant to information given to the
 8   deposition officer at the time said testimony was taken,
 9   the following includes counsel for all parties of
10   record:
11        Mr. Bennett G. Fisher, Mr. William S. Helfand,
12   Attorneys for Plaintiff, Lewis Brisbois Bisgaard &
13   Smith, LLP;
14        Mr. S. Wallace Dunwoody IV, Attorney for Defendant,
15   Bradley Beers;
16        Mr. Michael Joseph Bitgood, Defendant Pro Se;
17        Ms. Susan C. Norman, Attorney for Defendant,
18   Richard P. Jones.
19        That $_____ is the deposition officer's
20   charges to the Defendant, Susan C. Norman, counsel for
21   Richard P. Jones, for preparing the original deposition
22   transcript and any copies of exhibits.
23        I certify that a review of the transcript was
24   required by court order.
25        I also certify pursuant to the presiding judge the
```

1    federal read on by the reporter for the record was not

2    required.

3         I further certify that I am neither counsel for,

4    related to, nor employed by any of the parties or

5    attorneys in the action in which this proceeding was

6    taken, and further that I am not financially or

7    otherwise interested in the outcome of the action.

8         Certified to by me this 13th day of April, 2024.

9

10

11

12

13

14   JOHN G. ROCHELLE

     Texas CSR No. 5644

15   Expiration Date:  10/31/25

     Worldwide Court Reporters, Inc.

16   Firm Registration No. 223

     12621 Featherwood Drive, Suite 290

17   Houston, Texas 77034

     (713) 572-2000

18

19

20

21

22

23

24

25