**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of  Susan Norman - Vol. 1

1

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF TEXAS
2            HOUSTON DIVISION

3   LEWIS, BRISBOIS, BISGAARD   )
    & SMITH, LLP,               )
4                               )
          PLAINTIFF,      ) CIVIL ACTION NO:
5                         ) 4:22-CV-3279
    VS.                   )
6                         )
    MICHAEL JOSEPH BITGOOD      )
7   a/k/a "MICHAEL EASTON," ET  )
    AL,                        )
8                         )
          DEFENDANTS.       )
9   _____

10          ORAL AND VIDEOTAPED DEPOSITION OF

11              SUSAN C. NORMAN

12              July 26, 2023

13              VOLUME 1 OF 2

14   _____

15

16      ORAL DEPOSITION OF SUSAN C. NORMAN, produced as a

17   witness at the instance of the PLAINTIFF, and duly

18   sworn, was taken in the above-styled and numbered cause

19   on July 26, 2023 from 10:47 a.m. to 3:00 p.m., before

20   Allison Garrett, CSR in and for the State of Texas,

21   reported by machine shorthand, at Lewis, Brisbois,

22   Bisgaard & Smith, 24 Greenway Plaza, Suite 1400,

23   Houston, Texas 77046, pursuant to the Federal Rules of

24   Civil Procedure and the provisions stated on the record

25   or attached hereto.

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of  Susan Norman - Vol. 1

**Page 2**

```
1      A P P E A R A N C E S
2
3  FOR THE PLAINTIFF:
4      Bennett G. Fisher, Esq.
       Anh Nguyen, Esq.
5      LEWIS, BRISBOIS, BISGAARD & SMITH
       24 Greenway Plaza
6      Suite 1400
       Houston, Texas 77046
7      (713) 659-6767
       Bennett.fisher@lewisbrisbois.com
8
   DEFENDANT MICHAEL JOSEPH BITGOOD, APPEARING PRO SE:
9
       Michael Joseph Bitgood
10     East Pro Law
       503 FM 359
11     Suite 130-216
       Richmond, Texas 77469
12     Eastprolaw@msn.com
13 DEFENDANT SUSAN C. NORMAN APPEARING PRO SE:
14     Susan C. Norman, Esq.
       ATTORNEY AT LAW
15     P.O. Box 52518
       Houston, Texas 77052
16     SueNorman@SueNormanLaw.com
17 FOR DEFENDANT BRAD BEERS:
18     Samuel Wallace, Esq.
       MUNCK, WILSON, MANDALA, LLP
19     12770 Coit Road
       Suite 600
20     Dallas, Texas 75251
       (972) 628-3600
21     Wdunwoody@munckwilson.com
22
   ALSO PRESENT:
23
       Myra Thetford, Videographer
24
25
```

**Page 3**

```
1              INDEX
2  Appearances...............................2
3
4  SUSAN C. NORMAN
5      Examination by Mr. Bennett................5
6
7  Signature and Changes..........................91
8  Reporter's Certificate........................93
9
10             EXHIBITS
11 NO.    DESCRIPTION            PAGE
12 Exhibit 1   Notice of Deposition...................54
13 Exhibit 2   E-mail from Susan Norman..............55
14 Exhibit 3   E-mail from Susan Norman..............56
15 Exhibit 4   E-mail from Susan Norman..............58
16 Exhibit 6   E-mail from Susan Norman..............59
17 Exhibit 11  E-mail from Susan Norman..............62
18 Exhibit 12  E-mail from Susan Norman..............65
19 Exhibit 14  E-mail from Susan Norman..............69
20 Exhibit 15  E-mail from Susan Norman..............73
21 Exhibit 16  E-mail from Susan Norman..............74
22 Exhibit 18  Advisory to the Court.................74
23 Exhibit 38  Application to Register Foreign LLP.....9
24 Exhibit 39  Certificate of Filing.................12
25 Exhibit 40  Assumed Name Certificate..............13
```

**Page 4**

```
1            EXHIBITS CONTINUED
2  NO.     DESCRIPTION           PAGE
3  Exhibit 42  Plaintiff's "Soft" Objections..........75
4  Exhibit 43  Registration of LLP...................16
5  Exhibit 45  Plaintiff's Third Amended Petition.....79
6  Exhibit 48  E-mail from East Pro Law..............84
7  Exhibit 49  Letter from Susan C. Norman............89
8  Exhibit 57  Letter from Bennett Fisher............87
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 5**

```
1      (July 26, 2023, 10:47 a.m.)
2
3          THE VIDEOGRAPHER:  Today is Wednesday
4  July 26th, 2023.  We're on the record at 10:48 a.m.
5          THE COURT REPORTER:  Can I have all counsel
6  please state your appearance and who you represent.
7          MR. FISHER:  My name is Bennett Fisher.  I
8  represent the law firm of Lewis, Brisbois, Bisgaard &
9  Smith.  With me today is Anh Nguyen, one of our
10 associates, as well as Elizabeth Heart who is our summer
11 associate.
12         THE WITNESS:  My name is Susan Norman.  I
13 am a defendant and I'm here pro se.
14         MR. BITGOOD:  My name is Michael Joseph
15 Bitgood.  I'm the lead defendant in this case, Lewis,
16 Brisbois, Bisgaard & Smith versus Bitgood here pro se.
17         MR. DUNWOODY:  This is Wallace Dunwoody
18 here for Brad Beers.
19         THE COURT REPORTER:  I'm sorry.  Here for
20 who?
21         MR. DUNWOODY:  Brad Beers, B-R-A-D
22 B-E-E-R-S.
23         SUSAN NORMAN,
24 having been first duly sworn, testified as follows:
25         EXAMINATION
```

**MSJ Exhibit 10 - Defendant's Response**
**Page 2 of 59**

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of  Susan Norman - Vol. 1

6

1 BY MR. FISHER:
2    Q. Please state your full name for the record.
3    A. Susan Cecilia Norman.
4    Q. And your home address?
5    A. 5826 Green Falls, Houston, Texas 77088.
6    Q. And your office address?
7    A. 10900 Northwest Freeway, Houston, Texas 77092.
8    Q. And your Texas driver's license number?
9    A. I decline to provide that. I will give you the
10 last four, which are publicly available: 9259.
11.  Q. How are you employed?
12   A. I am self-employed as a lawyer.
13   Q. And how long have you been an attorney?
14   A. Since 1990.
15   Q. I'm going to ask you to take a look at a
16 document that we've marked as Exhibit 38.
17          MR. BITGOOD: Excuse me a second. Are
18 there exhibits that were not given to us before this
19 deposition, Mr. Fisher?
20          MR. FISHER: There are exhibits that I'm
21 going to use in this deposition. The court reporter --
22          MR. BITGOOD: You didn't think to send it
23 to us the day before, sir, so we can see them? How are
24 we supposed to see them by Zoom?
25          MR. BITGOOD: The court reporter will make

7

1 them available to you.
2          MR. BITGOOD: But you didn't send them to
3 us so we could review them before the deposition.
4          MR. FISHER: I didn't know what I was going
5 to use until I started talking.
6          MR. BITGOOD: Okay. Well, apparently, you
7 have a bunch of exhibits that you did not give
8 Mr. Dunwoody or myself so that we can review them as
9 you're asking the witness questions. So how can we see
10 them on Zoom to make a proper objection if we can't see
11 the exhibits?
12          MR. FISHER: Are you going to post them on
13 Zoom?
14          THE COURT REPORTER: I -- can we go off the
15 record?
16          MR. FISHER: Sure.
17          THE VIDEOGRAPHER: Off the record at --
18          THE WITNESS: No, I object to going off the
19 record.
20          MR. BITGOOD: I cannot hear Ms. Norman now.
21          THE WITNESS: I object to going off the
22 record for this.
23          MR. FISHER: All right. Let's stay on the
24 record.
25          THE COURT REPORTER: I can't talk and write

8

1 at the same --
2          MR. BITGOOD: Can the court reporter e-mail
3 us the 38 or whatever number of exhibits so I can put
4 them on this screen and look at them as the witness is
5 being questioned because I might have an objection to an
6 exhibit and I can't see it.
7          MR. FISHER: It's a deposition.
8          MR. BITGOOD: You were supposed to e-mail
9 it to everybody last night.
10          MR. FISHER: I don't have to do that. Can
11 you send them to him?
12          MR. BITGOOD: If your position is you don't
13 have to do that, then I'm going to object to this
14 witness testifying from an exhibit that neither myself,
15 Mr. Beers, or Mr. Dunwoody can see and allege a proper
16 objection. So I don't have to instruct this witness.
17 She knows better. Send us the exhibits.
18          THE WITNESS: I'm going to give you
19 Mr. Bitgoood's e-mail address. It is east --
20 E-A-S-T-P-R-O-L-A-W at M-S-N dot com. Mr. Dunwoody, I
21 don't know what your e-mail address is. I apologize.
22          MR. DUNWOODY: It is W-D-U-N-W-O-O-D-Y at
23 Munck Wilson, and it's spelled M-U-N-C-K-W-H-L-S-O-N dot
24 com.
25          MR. BITGOOD: I think now we can safely go

9

1 off the record until those exhibits arrive, please.
2          THE WITNESS: That's fine with me.
3          THE VIDEOGRAPHER: Off the record at
4 10:53 a.m.
5          (Break taken from 10:52 a.m. to 11:11 a.m.)
6          THE VIDEOGRAPHER: Back on the record at
7 11:12 a.m.
8          (Exhibit 38 marked.)
9    Q. (BY MR. FISHER) Ms. Norman, I'm going to hand
10 you what we've previously marked as Exhibit 38 and ask
11 you if you've seen that document before or if you can
12 identify that document.
13   A. I will look at it, but first I want to make
14 sure that you know that I intend to read and sign, so I
15 will require that this be sent to me.
16          I have seen this document before.  It is
17 Document 10-31 filed on October the 6th, 2022. And this
18 is case 4:22-CV-03279, and I'll refer to that in the
19 future as this case.  I have seen this before.
20   Q. Okay. You'll agree with me that this is an
21 application for a registration of a foreign limited
22 liability partnership?
23          MR. BITGOOD: Objection to the form.  The
24 document speaks for itself.  Go ahead and answer,
25 Ms. Norman.

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of  Susan Norman - Vol. 1

10

1  A. The document does say that it's an application
2  for registration of a foreign limited liability
3  partnership.
4        MR. FISHER: I'm sorry. I have to go back.
5  Mr. Easton, were you just instructing the witness that
6  it's okay for her to answer the question?
7        MR. BITGOOD: Objection, nonresponsive.
8  Mr. Fisher, go ahead and take your deposition, please.
9  When it's your turn to depose me, then you can have that
10  fun. Move along, please.
11       MR. FISHER: I was just curious as to why
12  you were instructing the witness --
13       MR. BITGOOD: Well, you shouldn't be
14  curious. Okay? Don't be curious. This is not the time
15  to be a daisy. Move along.
16  Q. (BY MR. FISHER) And you would agree with me
17  that this document was filed on March 28th, 2022?
18  A. No, I don't.
19  Q. You don't. Why not?
20  A. Well, because the Secretary of State did not
21  identify this document as being in its possession until
22  June the 9th of 2022.
23  Q. Okay. So you don't think that the stamp that's
24  at the upper right corner where it says "Filed in the
25  Office of the Secretary of the State of Texas" was

11

1  actually an indication that the document was filed on
2  that date?
3  A. No, sir, because the Secretary of State
4  indicated that this is a -- this is a paper filing.
5  This is not a -- an online filing. And the Secretary of
6  State indicated that they were backed up on mail, so
7  they put in the date that it was -- the page -- the
8  envelope was received, but the document itself was not
9  available online until June the 9th, 2022.
10  Q. Okay.
11       MR. FISHER: I'm going to object as
12  nonresponsive.
13  Q. (BY MR. FISHER) The document is file stamped
14  March 28th, 2022, correct?
15  A. It is backdated to March the 28th, 2022.
16  Q. Do you know who backdated the document if the
17  document was, in fact, backdated?
18  A. It was the person -- whoever is opening mail at
19  the Secretary of State's office.
20  Q. Okay. On Line Number 1, there is a name of an
21  entity typed in. Can you please read that -- the name
22  of that entity?
23  A. Lewis, Brisbois, Bisgaard & Smith, LLP.
24  Q. And can you spell each of the words on that
25  name?

12

1  A. L-E-W-I-S, B-R-I-S-B-O-I-S, B-I-S-G-A-A-R-D,
2  ampersand, S-M-I-T-H, LLP.
3  Q. Thank you. I'm going to ask you now to take a
4  look at Exhibit 39.
5       (Exhibit 39 marked.)
6  A. Under the rule of optional completeness, I have
7  an objection to this document standing alone as
8  Exhibit 38. It is part of Document 10 and it is
9  apparently the 31st attachment to Document 10. So under
10  the rule of optional completeness, I am including as a
11  fully set forth verbatim in herein Document 10, which is
12  hearing exhibits, which are apparently to the hearing
13  that was set for October the 6th, 2022 in this case.
14  Q. All right. Your objection is noted, but this
15  document also says that it's Page 1 of 2. And if you'll
16  note, this is a two-page document that I've handed you,
17  correct?
18  A. It is a document which has a front and back
19  under -- on the same document, and the back of it says
20  Page 2.2 -- 2 of 2.
21  Q. Okay. So it's a two-page document and I've
22  handed you both pages and both pages are included in
23  this exhibit, correct?
24  A. Yes.
25  Q. Okay. Now, I'm going to hand you what we've

13

1  marked as Exhibit 39 and ask you to identify that for
2  the record.
3  A. This is Document 10-32 in this case. It is a
4  one-page document. And it is a certificate of filing of
5  this four-name law firm, the foreign entity, File Number
6  804594502 issued by the Texas Secretary of State
7  effective March 28th, 2022, dated March 28th, 2022.
8  Q. And this is the -- the name of the entity is
9  the same as you read from Exhibit 38, correct?
10  A. Yes, it is.
11  Q. Okay. And the spelling is the same?
12  A. Yes, it is.
13  Q. I'm going to hand you what we have previously
14  marked as Exhibit 40.
15       (Exhibit 40 marked.)
16  Q. (BY MR. FISHER) I'm going to ask you to
17  identify this document for the record.
18       MR. BITGOOD: Your 40 is not showing up.
19  Hold on, please.
20  A. And again, under exhibit --
21  Q. (BY MR. FISHER) Let's wait for Mr. Easton to
22  acknowledge that he has it in front of him. Mr. Easton,
23  have you found it?
24       MR. BITGOOD: Not yet, sir. I have it, but
25  it won't open, so let me start again. 40, correct?

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4484  Fax: 832-930-4485
Infinity Reporting Group, LLC

**Page 14**

1   MR. FISHER: Yes.
2   MR. BITGOOD: Thank you, sir. Okay.
3   Formation, assumed name certificate. I've got it.
4   Thank you, Mr. Fisher. I appreciate your patience.
5   Q. (BY MR. FISHER) Ms. Norman?
6   A. Yes. Under the rule of optional completeness,
7   Exhibit 10 goes with Document 10 as previously stated.
8   This document, Exhibit 10, in this case is
9   Document 10:35. It's Page 1 of 2. The front says
10  "Assumed Name Certificate For Filing With the Secretary
11  of State." The assumed name is Lewis, Brisbois,
12  Bisgaard & Smith filed on March – excuse me, May 31st,
13  2022
14  Q. I'm going to ask you to look at the top band
15  next to the Office of the Secretary of State corporation
16  section and take a look at the date just for accuracy,
17  the date of the filing. It says "Filed in the Office of
18  the Secretary of State"?
19  A. Yes, it does, June 1st, 2022.
20  Q. Okay. So you'll agree with me now that the
21  Secretary of State received or recognized the date of
22  filing of this document as June 1, 2022?
23  A. That's what this document says.
24  MR. BITGOOD: Ms. Norman, give me a chance
25  to object, I object to the form. The document speaks

**Page 15**

1   for itself. It says June 22.
2   Q. (BY MR. FISHER) All right. Take a look at
3   Number 2. And it says the name of the entity as stated
4   in its certificate is – and can you read that out loud?
5   A. Lewis, Brisbois, Bisgaard & Smith, LLP.
6   Q. And is the spelling the same as the spelling of
7   Lewis, Brisbois, Bisgaard & Smith on Exhibits 38 and 39?
8   A. Yes, it is.
9   Q. Is there a – and this is – this is a
10  partnership that you formed?
11  A. It was a partnership of which I was a member.
12  Q. Okay. Who were the other members?
13  A. Michael Joseph Bitgood.
14  Q. Okay. And in that firm, is there a Lewis,
15  anybody named Lewis?
16  A. No.
17  Q. Okay. Is there anybody named Brisbos?
18  A. No.
19  Q. Is there anybody named Bisgaard?
20  A. No.
21  Q. Is there anybody named Smith?
22  A. No.
23  Q. Okay. Now, take a look at Number 5 and
24  describe the type of entity on this assumed name
25  certificate.

**Page 16**

1   A. It's a domestic limited liability partnership,
2   domestic meaning state of Texas.
3   Q. Okay. So what does a limited liability
4   partnership mean under Texas law?
5   MR. BITGOOD: Objection to the form.
6   A. It's a partnership which has limited liability.
7   Q. (BY MR. FISHER) Okay. I'm going to ask you
8   now to turn – or I'm going to show you Exhibit 43
9   that's been previously marked.
10  (Exhibit 43 marked)
11  Q. (BY MR. FISHER) And I'll represent to you that
12  this is registration of a limited liability partnership
13  and ask you if you've seen that document before?
14  A. This is Document 1-6, meaning it's part of the
15  original petition filed in this case on September 23rd,
16  2022.
17  Q. Right. This is a one-page document.
18  MS. Norman, it says Page 1 of 1. It's only one page.
19  You might have read it with something else, but I'm
20  asking you just to look at this one page.
21  A. No, sir, I did not file this with something
22  else.
23  MR. BITGOOD: Whoa, whoa, whoa. Objection.
24  argumentative. Just ask the questions please.
25  Mr. Fisher.

**Page 17**

1   Q. This document – to identify this document, I'm
2   identifying it as Document 1 filed with Document
3   Number 1, which was filed on September the 23rd, 2022 by
4   the plaintiff in this matter. And I'm the –
5   the rule of optional completeness, this is Norman
6   Exhibit Number 1. This is the entire petition with all
7   the exhibits filed in this case by the plaintiff.
8   So I am identifying this document as
9   registration of a limited liability partnership. Filing
10  Number 80434859 filed September the – excuse me, May
11  the 26th, 2022 by Michael Bitgood. It's a one-page
12  document and it appears in the plaintiff's original
13  petition filing
14  Q. Okay. This is also a public record, is it not?
15  A. Yes, it is.
16  Q. Okay. And your partner, Michael Bitgood, filed
17  this or did you file it?
18  MR. BITGOOD: Object.
19  A. I did not – I can tell you that I personally
20  did not file this.
21  Q. (BY MR. FISHER) Okay. When did you first know
22  that this was filed?
23  A. Probably May the 26th, 2022.
24  Q. Okay. Now, take a look at Number 2, Section 2
25  on this document, on this form.

MSJ Exhibit 10 - Defendant's Response
Page 5 of 59

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4484   Fax: 832-930-4485
Infinity Reporting Group, LLC

---

**18**

1  A  Yes.
2  Q  Tell me what kind of a partnership was filed
3  based on his representation?
4  A  It says general partnership.
5  Q  Okay. Now, that different than a limited
6  liability partnership, is it not?
7  A  I assume so.
8  Q  You've been practicing law for 30 years?
9  A  Yes, I have.
10  Q  What type of law do you practice?
11  A  Generally, litigation.
12  Q  Have you ever formed any business entities?
13  A  I don't believe I've ever formed – I don't
14  believe I've ever personally formed a general
15  partnership.
16  Q  But you have formed business entities before as
17  part of your practice, have you not?
18  A  I believe so, many years ago.
19  Q  So you do know that there's a difference
20  between a general partnership and a limited liability
21  partnership, don't you?
22  A  Yes, there is.
23  Q  Okay. So this document is the registration
24  form for a limited liability partnership, but it's
25  formed as a general partnership; is that right?

---

**19**

1  A  Taking both exhibits into conjunction with each
2  other, that appears to be true.
3  Q  Okay. So what were the entity that you and
4  Mr. Bilgood were partners in? Was it a limited
5  liability partnership or was it a general partnership?
6  A  It was a limited liability partnership.
7  Q  Then why does this form state that the
8  partnership was a general partnership?
9  A  I don't know.
10  MR BITOOOO. Object.
11  Q  (BY MR. FISHER) You don't know?
12  A  I don't know.
13  Q  Okay. Did you ask the question when you saw
14  this form?
15  A  No, I did not.
16  Q  What features does the entity that was filed by
17  Mr. Bilgood have that would give rise to it being a
18  limited liability partnership as opposed to a general
19  partnership?
20  A  The features are that this is for mediation and
21  related services to mediation.
22  Q  No, that's not – that's not the feature. Why
23  would this be a limited liability partnership? Why is
24  there a difference between a limited liability
25  partnership and a general partnership in Texas law?

---

**20**

1  Why is there? I don't know.
2  Q  So after 30 years of the practice of law
3  including the formation of business entities, you can't
4  tell me the difference between a limited liability
5  partnership and a general partnership?
6  A  I told you, many years ago I may have formed a
7  business entity. I don't practice forming general
8  partnerships or limited liability. I do not form them.
9  And for the purposes of optional completeness, I am
10  introducing Norman Exhibit Number 1, which is the entire
11  document.
12  Q  Ms. Norman, when I'm done with my examination,
13  you can examine yourself and introduce whatever you
14  want.
15  A  Okay.
16  Q  Now, I want to go back to Exhibit 40, which I
17  believe is in front of you. Do you have that in front
18  of you?
19  A  Yes, I do.
20  Q  Okay. On the bottom left corner of that
21  document, who does it say filed this assumed name
22  certificate?
23  A  It says Brad Beers.
24  Q  Who asked Mr. Beers to file the fits on behalf of
25  the infringing entity known as Lewis, Bristol, Bisgard

---

**21**

1  & Smith, LLP located in Fort Bend County, Texas?
2  A  I object –
3  MR BITOOOO: Objection to the form of the
4  question, assumes a fact not in evidence. And objection
5  to the infringing entity characterization.
6  A  And I also object to the mischaracterization of
7  infringing entity.
8  Q  (BY MR. FISHER) Can you answer that question?
9  A  I can tell you that I did not ask Brad Beers to
10  form this entity.
11  Q  Okay. Do you know whether Mr. Bilgood asked
12  Brad Beers to form – or file this document?
13  A  There's something that you'll have to ask
14  Mr. Bilgood.
15  Q  Or Mr. Beers?
16  A  Or Mr. Beers.
17  Q  Okay. When did you first know that this
18  document was filed?
19  A  I don't recall. It could have been June 1st,
20  it could have been May 26th, or any date in-between.
21  Q  What year?
22  A  2022.
23  Q  Okay. All right. So when you learned that
24  this document was filed and Document 41 was filed, did
25  you see why there was a distinction or a difference

MSJ Exhibit 10 - Defendant's Response
Page 6 of 59

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**22**

1  between the partnership's name as a general partnership
2  versus a limited liability partnership?
3  A. No, I did not.
4  Q. And as we are here today, do you still maintain
5  that this was a limited liability partnership?
6  A. I maintain that it was formed presumably as
7  what was stated in the formation document.
8  Q. Which is a general partnership. And I'm
9  looking at Exhibit 43, Line 2
10  A. I'm looking at —
11  MR. DUNWOODY: Objection, argumentative.
12  It assumes facts that are not in evidence or disputed. Go
13  ahead.
14  A. This document is entitled registration of a
15  limited liability partnership. That's the
16  characterization and the manner in which it is carried
17  on the public records of the Texas Secretary of State.
18  Q. (BY MR. FISHER) But Line 2 says it's a general
19  partnership, so I'm asking you again what type of entity
20  was this?
21  MR. BITGOOD: Objection, asked and
22  answered.
23  A. I am maintaining that it's an LLP, limited
24  liability partnership. And I do not know saying here
25  if the difference in Line 2 obviates the LLP, so that is

**23**

1  not an answer that I'm prepared to discuss or give.
2  Q. (BY MR. FISHER) All right. And also my
3  understanding is you also don't know the difference
4  between a limited liability partnership and a general
5  partnership under Texas law?
6  A. My answer, Mr. Fisher, is that I have not
7  researched the difference because it has not come up in
8  my practice, if ever, to compare and contrast the two.
9  Q. Why did you form this business with
10  Mr. Bitgood?
11  A. We found that that the unauthorized entity, the
12  California LLP, was assisting its client in defending
13  the CARES Act and committing crimes against the citizens
14  of Fort Bend County.
15  And we took action to be available to
16  the models matters related to the business entity
17  purposedly represented by Lewis, Brisbois, Bisgaard &
18  Smith at a time when they had no right to do business in
19  Texas for filing fraudulent lawsuits for eviction
20  against minorities in Fort Bend County and putting
21  people out on the street who had no ability or the
22  financial wherewithal to fight illegal evictions.
23  Q. Is that your answer?
24  A. That is my answer.
25  Q. Okay.

**24**

1  MR. FISHER: Objection, nonresponsive.
2  Q. (BY MR. FISHER) Can you — so you're saying —
3  I'm trying to understand why you formed — why you went
4  into business with Mr. Bitgood, and I don't really
5  understand that answer.
6  A. That is my answer.
7  Q. Okay. Why did you use the name Lewis,
8  Brisbois, Bisgaard & Smith?
9  A. Because when I found out on March the 11th or
10  12th of 2022 that the foreign LLP was not authorized to
11  do business in Texas and yet was appearing in Texas
12  courts purposedly representing the defendant
13  particularly the purported business defendant, the name
14  was — appeared palatable.
15  Q. Okay. So why not use Fulbright and Jaworski?
16  Nobody's using that.
17  A. I didn't look up Fulbright and Jaworski.
18  Q. Okay. Why did you look up book &, Brisbois,
19  Bisgaard & Smith?
20  A. Because it has — interestingly enough, I have
21  I found multiple entities which have lost their right to
22  do business in Texas as your firm and multiple times in
23  Texas and as your firm has done throughout the United
24  States in multiple jurisdictions where it operates when
25  its right to do business has been lost.

**25**

1  Q. Under Texas law, what's the sanction for late
2  filing a reregistration or authority to do business in
3  Texas under Texas law?
4  A. Well, I know — okay, I think that's actually
5  the wrong question. The right question is: What is the
6  sanction for doing business in Texas under a name that
7  you are not authorized by the Texas Secretary of State
8  because and it's a criminal offense?
9  Q. Okay. So why didn't your report it as a crime
10  instead of taking the name?
11  MR. BITGOOD: Objection, assumes a fact not
12  in evidence. How would you know she didn't report it?
13  MR. FISHER: Please limit your objections
14  to form under the rules.
15  MR. BITGOOD: Form.
16  A. I didn't — it didn't — it didn't occur to me
17  to report it as a crime.
18  Q. (BY MR. FISHER) You just said it was a crime.
19  A. It's a crime.
20  Q. So why didn't you report it? You're a lawyer.
21  A. I didn't.
22  Q. Okay. Now, of all the names you could have
23  picked, why did you pick Lewis, Brisbois, Bisgaard &
24  Smith for your new business venture?
25  A. It was — I can't give you that answer.

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE
Phone: 832-930-4484   Fax: 832-930-4485
Infinity Reporting Group, LLC

**26**

1 A. That's something that I'm not qualified to
2
3
4
5
6
7
8 that name before.
9 Q. Okay. What's your relationship with Michael
10 Bigood?
11 A. He and I have been litigating together for
12 about 19 years.
13 Q. What do you mean litigate together? Is he an
14 attorney?
15 A. No, he's not.
16 Q. Okay. So do you litigate together?
17 A. We have been in multiple cases where he is a
18 party and I represent other parties.
19 Q. Okay. How do you meet Mr. Bigood?
20 A. I was retained to a wonderful, now-deceased
21 lawyer named Peter Riga, and Mr. Bigood worked with
22 him.
23 Q. How did Mr. Bigood work with Michael – Peter
24 Riga?
25 A. That's something that I'm not qualified to

**27**

1 Q. Why not?
2 A. Because there were a lot of considerations that
3 went into this name, partly which included the fact that
4 you're taking action against – representing people who
5 were taking action against minorities, representing
6 people who are taking action against minorities
7 illegally, and it seemed that it why not?
8 Q. Where's the first time you heard the name of the
9 law firm Lewis, Brisbois, Bisgaard & Smith?
10 A. I believe it was when your managing partner who
11 allowed the name to be expired and not authorized to do
12 business in Texas filed an answer on behalf of the
13 defendant entity and several individuals in this state
14 court case in Fort Bend County, which – the loss of
15 which for your firm generated this September 23rd filing
16 ten days after they filed in court.
17 Q. Well, let me – give me a date. I want to know
18 the first data. If you're just referencing whenever
19 that answer was filed in county court in Fort Bend
20 County, was it January of 2022? Was it February?
21 A. I was March the 11th – I believe it was March
22 the 11th, 2022.
23 Q. Okay. So March 11th, 2022, was when you first
24 I heard the name Lewis, Brisbois, Bisgaard & Smith?
25 A. There may have been an e-mail from David Dubra,

**28**

1 A. Well, he doesn't have clients, so –
2 Q. No, has he introduced you to any people who
3 became clients of yours?
4 A. The manner in which I begin representing
5 clients attorney/client privilege between me and a
6 particular client.
7 Q. Well, not if it was between you and
8 Mr. Bigood, though, was it? Because that would not be
9 privileged.
10 MR. BITGOOD: Objection to the form of the
11 question. If I'm acting as a paralegal, anything she
12 tells me would be privileged.
13 MR. FISHER: Okay. Once again, Mr. Easton
14 or Mr. Bigood, your objections should be limited to
15 form only, not cross during the witness and not testifying.
16 This is not your deposition.
17 MR. BITGOOD: No problem.
18 MR. FISHER: And he lost time I checked
19 the state bar records, you were not a member, so – and
20 you said that you're not representing Ms. Norman today,
21 so you can object on your own account, but only as to
22 form.
23 Q. (BY MR. FISHER) Has Mr. Bigood introduced you
24 to any people or entities that have become clients of
25 yours?

**29**

1 answer. All I know is that he worked with him.
2 A. You don't know –
3 A. That's something you'll have to ask.
4 A. Mr. Bigood.
5 Q. Okay. What's your business history besides
6 sharing cases with him?
7 MR. BITGOOD: Objection to the form of,
8 quote, sharing cases.
9 A. Yeah, I object to that.
10 Q. (BY MR. FISHER) Well, you said you litigated
11 together. So aside from litigating together, what is
12 your business history with Michael Bigood?
13 A. Well, you're going to have to define business
14 history.
15 Q. All right. Have you been in a business
16 relationship with Mr. Bigood before you formed your
17 company, your partnership known as Lewis, Brisbois,
18 Bisgaard & Smith?
19 A. You still haven't defined business
20 relationship. What do you mean by business
21 relationship? We have not formed another – we have not
22 formed another entity.
23 Q. Okay. Did he refer cases to you?
24 A. No.
25 Q. Has he introduced you to any clients?

MSJ Exhibit 10 - Defendant's Response
Page 8 of 59

Phone: 832-930-4484   Fax: 832-930-4485
Infinity Reporting Group, LLC

**Page 30**

```
1      MR. BITGOOD: Object to the form of the
2   question. Object on the grounds of relevancy.
3      MR. FISHER: That's not a proper objection
4   in a deposition.
5   A   I'm trying to determine – I have met people.
6   We know some of the same people, some of those same
7   people are my clients. Now, I want to go back and
8   revisit your question of a business relationship.
9   Q   (BY MR. FISHER) Sure.
10  A   I have used Mr. Easton Bilgood as a paralegal
11  on multiple occasions.
12  Q   Okay. Is he an employee of yours?
13  A   No.
14  Q   Okay. So how have you employed Mr. Bilgood as
15  a paralegal?
16  A   I have used his talent to look around, as a
17  colloquialism, eight sides of the octagon to see the
18  for the law. When I need a cite for a particular point,
19  the ninth side coming. He has an amazing ability to recall
20  many times I will call him first and he'll give me a
21  case and I will look it up and it's exactly what I need.
22  Q   Okay. You say many times. More than ten?
23  A   Absolutely.
24  Q   More than 20?
25  A   Over 19 years, multiple times.
```

**Page 31**

```
1   Q   And how have you compensated Mr. Bilgood?
2   A   Generally, I say thank you.
3   Q   So you've never paid him?
4   A   Well, yes, I have paid him.
5   Q   Okay. How do you compensate him?
6      MR. BITGOOD: Object to the form of the
7   question.
8   A   I'm going to object on the basis of
9   attorney/client privilege between me and my client as to
10  what I do on their behalf and who I use to represent my
11  clients.
12  Q   (BY MR. FISHER) Well, I just asked now you
13  compensate Mr. Bilgood. He already represented today
14  that he's a paralegal for you. You've acknowledged that
15  on occasions, many occasions, he's been your paralegal.
16  And it sounds like you've thanked him on a number of
17  occasions, but on other occasions you've paid him. I
18  just want to know how you pay him.
19      Well, as to the – its relevance in this case,
20  I'm not objecting to the relevance. It's not – what I have
21  done –
22  Q   Relevancy objections are not appropriate in
23  this deposition. So if you refuse to answer, then I'm
24  going to ask Judge Elison to compel your answer.
25  A   Then you're welcome to do that.
```

**Page 32**

```
1   Q   So you're not going to tell me whether you paid
2   him with cash or a check?
3   A   I'm not telling you, no, sir. You can ask
4   Judge Elison to compel me.
5   Q   Do you pay him by the hour or do you pay him –
6      MR. BITGOOD: Okay. Mr. Fisher, it's
7   11:50. Can we take break, please, then come back after
8   lunch?
9      MR. FISHER: After my – we're not
10  going to take lunch right now. I want to know the
11  answers.
12      MR. BITGOOD: No, no, no, hang on.
13  Mr. Fisher. As you know, I'm under a doctor's care.
14  I've got to eat when I'm told to. I've got to go to the
15  bathroom when I'm told to. So in about ten minutes, I'm
16  going to invoke first privilege given to me by Judge
17  Elison.
18      MR. FISHER: Who told you to go to the
19  bathroom?
20      MR. BITGOOD: Do we want to do it
21  voluntarily or do we want to do something –
22  remedial as that?
23      MR. FISHER: I want to know who told you to
24  go to the bathroom because I didn't hear anything. If
25  you need to go to the bathroom, you can ask to take a
```

**Page 33**

```
1   break to go to the bathroom.
2      MR. BITGOOD: I just asked you for that.
3   You said no.
4      MR. FISHER: No, you said you wanted to
5   break for lunch.
6      MR. BITGOOD: I do want to break for lunch.
7   at 12 noon. Is that okay with you?
8      MR. FISHER: No. I've got questions I want
9   to ask before we break for lunch.
10     MR. BITGOOD: Okay.
11     MR. FISHER: But if you need to go to the
12  bathroom, I will take – you can go to the bathroom.
13  Ms. Norman can continue to answer my questions.
14     THE WITNESS: I will not be answering
15  questions without all parties present on the Zoom.
16     MR. BITGOOD: Mr. Fisher, may I take a
17  15-minute break to go to the restroom, sir?
18     MR. FISHER: We'll go off the record for 15
19  minutes.
20     MR. BITGOOD: Thank you, Mr. Fisher.
21     THE VIDEOGRAPHER: Off the record at
22  11:52 a.m.
23     (Break taken from 11:52 a.m. to 12:08 p.m.)
24     MR. FISHER: Please read back my last
25  question.
```

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4484   Fax: 832-930-4485
Infinity Reporting Group, LLC

**Page 34**

```
1   THE VIDEOGRAPHER: Back on the record at
2   12:08 p.m.
3       (Requested portion was read back.)
4   A.  I'm going to object to form. And you're
5   welcome to clarify the question.
6   Q.  (BY MR. FISHER) Well, we haven't done that in
7   a very long time. But at any rate, did you communicate
8   with anybody while we were on a break?
9   A.  Yes.
10  Q.  With who?
11  A.  Mr. Bigood.
12  Q.  And did you talk to him by phone or did you
13  text?
14  A.  I did not text him. I did not call him.
15  Q.  How did you communicate with him?
16  A.  By phone.
17  Q.  Okay. What did you talk about?
18  A.  He told me to stay calm.
19  Q.  What else?
20  A.  That's all he told me.
21  Q.  How long was the conversation?
22  A.  A couple minutes.
23  Q.  Okay. Well, stay calm sounds to me like three
24  or four seconds, so what else did you talk about?
25  A.  We didn't talk about— we talked about nothing
```

**Page 35**

```
1   related to this case.
2       MR. BITGOOD: Bennett, just so you know, on
3   my phone it shows one minute. Would you like me to
4   screenshot it and send it to you?
5       MR. FISHER: I'm not taking your deposition
6   today, Michael.
7       MR. BITGOOD: Okay. But I'll keep the
8   screenshot for you.
9   A.  Mr. Bigood is a friend of mine and has been
10  for almost 20 years. He realizes that his is a
11  deposition to harass me and I'm here pro se. He wanted
12  me to stay calm and I told him that it aggravated his
13  call and I was staying calm.
14  Q.  (BY MR. FISHER) All right. Is Mr. Bigood's
15  real first name, surname, Bigood or Easton?
16      MR. BITGOOD: Object to the form.
17  A.  His real name is Michael J – Joseph Bigood
18  AKA Michael Easton.
19  Q.  (BY MR. FISHER) Okay. Do you know why he uses
20  an assumed name?
21  A.  No, sir.
22  Q.  So you've known him for – only 20 years.
23  you've known him both as Michael Easton and Michael
24  Bigood?
25  A.  That's correct.
```

**Page 36**

```
1   Q.  You've never asked him why?
2   A.  No, I have not.
3   Q.  Okay. What's your date of birth?
4   A.  My year's 1947. I decline to give you the
5   month and day.
6   Q.  Why?
7   A.  Its personal information. This is not a
8   subpoena duces tecum. This is not noticed as a subpoena
9   duces tecum and I decline to give you the year and
10  day – the month and day.
11      MR. BITGOOD: Mr. Fisher, I just sent you
12  the screenshot of the phone call, sir, to your e-mail
13  address.
14  Q.  (BY MR. FISHER) And what college did you
15  attend?
16  A.  North Texas State University.
17  Q.  And what is your degree in?
18  A.  Elementary Ed, English, with a minor in fashion
19  merchandising.
20  Q.  And what year did you earn your degree?
21  A.  I finished in 1971.
22      MR. BITGOOD: So you know, Bennett, the
23  Pirates won the World Series that year.
24  Q.  (BY MR. FISHER) When did you attend law
25  school?
```

**Page 37**

```
1   A.  I believe I started in 1985.
2   Q.  And when did you finish?
3   A.  1988.
4   Q.  And when did you first take the bar exam?
5   A.  1990.
6   Q.  Okay. Why did you wait two years to take the
7   bar exam?
8   A.  Objection to form.
9       MR. BITGOOD: Objection, form.
10  Q.  (BY MR. FISHER) If you graduated in 1988, did
11  you take the bar exam in 1988?
12  A.  No, I did not.
13  Q.  Okay. Why not?
14  A.  Objection, form.
15      MR. BITGOOD: Objection, form.
16  Q.  (BY MR. FISHER) What's the objection?
17  A.  Form. It's not relevant.
18  Q.  Well, relevancy objections are not appropriate
19  in a deposition.
20  A.  Well, okay. Objection, form. I'm – my
21  reasoning between 1988 and 1990 has nothing to do with
22  this case and I decline to answer.
23  Q.  How many times did you take the bar exam?
24  A.  One.
25  Q.  And what year were you admitted to the bar?
```

Videotaped Deposition of Susan Norman - Vol. 1

Videotaped Deposition of  Susan Norman - Vol. 1

---

**38**

1    A. 1990.
2    Q. With respect to the partnership between you and
3 Mr. Bitgood that was formed in – well, it was formed in
4 May of 2022?
5    A. Yes, sir.
6    Q. Okay. Did either of you put up any money or
7 capital into the partnership?
8    A. I know that I didn't.
9        MR. BITGOOD: Object to form.
10   Q. (BY MR. FISHER) You did not?
11   A. No.
12   Q. Okay. Who kept the books and records of the
13 partnership?
14   A. Mr. Bitgood.
15   Q. Okay.
16   A. To the extent that there were any.
17   Q. Who paid for the post office box at the – I
18 think it's a UPS Store?
19   A. I know that I did not.
20   Q. Okay. Do you know if anybody did?
21   A. I don't know that independently, no, sir.
22   Q. You never asked Mr. Bitgood?
23   A. No.
24   Q. He never asked you for any money to contribute
25 to the partnership?

**39**

1    A. No.
2    Q. Whose idea was it to form that partnership?
3    A. I don't know if it was his idea or if it was
4 mutual.
5    Q. Okay. Have you been a party to any other
6 lawsuits?
7    A. Yes.
8    Q. Can you tell me about them?
9    A. No, sir.
10   Q. Why not?
11   A. Whatever lawsuits I may have been a party to
12 are public record, so –
13   Q. Well, tell me what city or county those
14 lawsuits were in and then I can look them up on public
15 record.
16   A. Harris County. Harris County.
17   Q. All of them?
18   A. May have been Fort Bend County as well.
19   Q. How many times have you been a party to a
20 lawsuit?
21       MR. BITGOOD: Object to form.
22   A. Objection, form. Probably two or three.
23   Q. (BY MR. FISHER) Okay. What types of lawsuits?
24   A. I've been party to lawsuits by the state bar,
25 all of which were dismissed except – except one as far

**40**

1 as I recall.
2    Q. Okay. What were the – were you a defendant or
3 were you a plaintiff in the lawsuits?
4    A. I was a defendant.
5    Q. And what were the allegations?
6    A. Sitting here today, Mr. Fisher, one of them was
7 by a putative temporary guardian who alleged I did not
8 turn over my client's funds to the temporary guardian.
9 That was dismissed.
10       One was by a former client who, it turned
11 out, who filed a grievance – brought a lawsuit, which
12 the state bar dismissed when they realized he was lying.
13 He subsequently sued me and that case was ultimately
14 dismissed.
15   Q. Okay. And the third one?
16   A. I've been a party in a bankruptcy matter for
17 that same lawsuit, which was ultimately, gosh,
18 dismissed. I'm not sure. It's been a while, so my
19 memory is imperfect and I – require, if I need to, I
20 will respond appropriately later, but at this point, I
21 don't recall.
22   Q. When was that bankruptcy matter?
23   A. It was not – gosh, 2008/2009. I don't recall.
24 It was not my bankruptcy. It was a bankruptcy of my
25 client's client as far as I recall. It's very – my

**41**

1 memory is imperfect on that.
2    Q. Okay. What type of an action was that?
3    A. I don't remember.
4    Q. Okay. All right. Let's go back to your
5 history. What did you do between 1971 when you
6 graduated college and 1985 when you went to law school?
7    A. I joined the Marine Corps.
8    Q. Okay. And what did you do in the Marines?
9    A. I took the oath. I was told that I would be
10 going directly into officer's candidate school once a
11 class of female OCS candidates was collected. A
12 year-and-a-half later, I heard nothing, so I sent a
13 letter and resigned. I worked for several banks. I
14 worked for Hertz Rent-a-Car. I worked for Cayman
15 Airways. I worked for Frontier Airlines.
16   Q. Is that it?
17   A. And – yes, that's it.
18   Q. Okay. Why did you go to law school?
19       MR. BITGOOD: Object to form.
20   A. I object to form. Because –
21   Q. (BY MR. FISHER) What's the basis of the
22 objection?
23   A. It's irrelevant.
24   Q. Okay. Relevancy is not a proper objection.
25   A. Okay. The basis for my – I object to form.

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4484   Fax: 832-930-4485
Infinity Reporting Group, LLC

**Page 42**

1   Its – if it's a question that's so important, you can
2   take that up with Judge Ellson, but realistically, I
3   thought I could make a difference in preserving
4   people.
5   Q.  Now, you said that you're a litigator.  What
6   types of cases do you litigate?
7   A.  I've been doing a lot of adoptions to
8   guardianships being brought by people who want to make
9   sure that an adult certain – when the object of the
10  guardianship dies that their inheritance is protected.
11  A lot of guardianship type litigation, appellate work,
12  federal – federal litigation.
13  Q.  What types of cases?
14  A.  Right now, employment law, legal malpractice,
15  probate matters.
16  Q.  Do you practice law with anybody or just by
17  yourself?
18  A.  I practice by myself.
19  Q.  Did you practice with Peter Rigan?  Was
20  he a partner of yours?
21  A.  He was never a partner or associate.  I was
22  honored to have him in my office for a number of years.
23  Q.  Okay.  And you practice with your husband Fred?
24  A.  Naturally.  When he gets into a litigation
25  situation, I normally do the litigation.

**Page 43**

1   Q.  Okay.  So what part of the law does Fred work
2   at?
3   A.  Property tax protest.
4   MR. BITGOOD:  Objection, form.
5   Q.  (BY MR. FISHER) Now, the case you described
6   earlier about the eviction, how were you involved in
7   that case?
8   A.  The state court case that –
9   Q.  Yes.
10  A.  – generated this case?
11  Q.  Well, I don't think it generated this case, but
12  I'm talking about the –
13  A.  Your partner has said that the state court case
14  generated this case, so I'm just echoing something to
15  said.  But I represent a person who was being illegally
16  evicted by – ultimately which became Laws Bobo –
17  excuse me, Lewis Brisbois's client.
18  Q.  Why did you just say Laws Bobo?
19  A.  Because that's the short name that I have for
20  this law firm.
21  Q.  And is that a name that you created or that
22  Mr. Bitgood created?
23  MR. BITGOOD:  Objection, form.
24  A.  God, I really couldn't tell you.
25  Q.  (BY MR. FISHER) Mr. Laz?

**Page 44**

1   A.  It's a whole lot shorter than saying all four
2   names.
3   Q.  Okay.  But when you say Laws Bobo, do you mean
4   that in a pejorative sense are you shortening
5   Brisbois to Bobo?
6   A.  I mean it from the standpoint that from what I
7   have seen of the way in which your law firm conducts its
8   personal business and its client's business, it's pretty
9   appealing.
10  Q.  So that would be, then, in a pejorative sense?
11  A.  You could say that.
12  Q.  Okay.  And you're saying that's the – that the
13  law firm of Lewis Brisbois evicted somebody.  Is that –
14  is that what you mean?
15  A.  What firm I'm saying is the case in which Lewis,
16  your law firm, is involved arose as a – arose out of an
17  illegal eviction.
18  Q.  Okay.  And who own was evicted?
19  A.  Ultimately, my client was and ended.
20  Q.  Okay.  And who's your client?
21  A.  Richard Jones.
22  Q.  Okay.  And who was the – who was the plaintiff
23  in that action?
24  A.  I'm trying to remember if it was – it was
25  Imperial Lofts, Imperial Lofts, L-O-F-T-S.

**Page 45**

1   Q.  Okay.  And it's your testimony that our law
2   firm, Lewis, Brisbois, Bisgaard & Smith, represented
3   Imperial Lofts in an eviction proceeding?
4   A.  No, it's not my position.
5   Q.  Okay.  I thought you said that our law firm did
6   something –
7   A.  It arose – your firm represents the Imperial
8   Lofts, whichever one, the LLC – I forget which, I'd
9   have to look – as an entity, which is a defendant in a
10  case that arises out of Imperial Lofts' attempt to
11  illegally evict my client, Richard Jones.
12  Q.  Okay.  Now, you understand that the law firm
13  doesn't really practice law, that lawyers practice law,
14  correct?  You know that as a lawyer?
15  A.  Of course I know that as a lawyer.
16  Q.  So the law firm, even if it did represent
17  Imperial Lofts in that case, didn't evict anybody.
18  A.  I didn't say that the law firm evicted anybody.
19  I said they – I believe what I said was they represent
20  the entity which attempted to illegally evict my client.
21  Q.  Did any lawyer in his firm represent Imperial
22  Lofts in the eviction proceeding?
23  A.  No.
24  Q.  That's correct.
25  MR. BITGOOD:  Object to the sidebar.

MSJ Exhibit 10 - Defendant's Response
Page 12 of 59

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4485   Fax: 832-930-4485
Infinity Reporting Group, LLC

**Page 46**

1   Q. (BY MR. FISHER) This guy get involved only in
2   the defense of a lawsuit by Mr. Jones, and I think
3   Mr. Bigood, for allegedly wrongfully evicting?
4   A. That's correct.
5   Q. Okay. So the law firm of Lewis, Brisbois,
6   Bisgaard & Smith didn't do anything, but at least one
7   lawyer in this law firm defended Imperial Lofts in a
8   lawsuit, correct?
9   A. No, that's not correct.
10  MR. BITGOOD: Ms. Norman, forgive me,
11  please. Object to the form of the question.
12  multifarious. We didn't do anything, said, one lawyer.
13  represented the firm. Which is it? Did we do anything
14  or did a lawyer represent?
15  Q. (BY MR. FISHER) Do you understand the
16  question?
17  A. I understand the question, but your question
18  assumes facts not in evidence. Your law firm, at a time
18  when it was not authorized to do business in Texas, took
20  on representation of defendants in the case, I think
21  its 22-CV-07073, if I'm saying it correctly.
22  The law firm took on defending all the
24  defendants initially using David Oubre -- I call him
24  Oubre -- David Oubre as the lawyer from the firm.
25  Q. Okay. And in the course of that

**Page 47**

1   representation, that's how you got to know David Oubre
2   and the law firm of Lewis, Brisbois, Bisgaard & Smith?
3   A. Yes.
4   Q. Okay. Now, did you understand that David Oubre
5   has been practicing law for many years and has never
6   been suspended or lost his license to practice law,
7   correct?
8   MR. BITGOOD: Objection, form.
9   A. Objection, assumes facts not in evidence.
10  Q. (BY MR. FISHER) No, I'm asking you directly
11  the question. The court reporter can read it back.
12  It's not assuming anything
13  A. Well, you're making an assumption that I know
14  something. No, I don't know that.
15  Q. You don't know that. Okay. Well, that's an
16  answer, but my question was very straightforward.
17  A. Can she please read the question back.
18  (Requested portion was read)
19  A. Right. That is your statement. I have not
20  looked him up on the state bar website so that I
21  cannot -- if I assume that you're telling the truth, I
22  can assume that, but you want me to assume things that I
23  have not personally reviewed.
24  Q. (BY MR. FISHER) No, I'm asking you if you have
25  knowledge.

**Page 48**

1   A. I have no knowledge.
2   Q. Okay. Because I think either you or your
3   partner said that David Oubre was not authorized to
4   practice law in Texas at one time or another in Fort
5   Bend County court or in front of Judge Elison
6   in one of those bounds, either you or.
7   Mr. Bigood said that David Oubre is not authorized to
8   practice law.
9   MR. BITGOOD: Objection to form. The
10  document will speak for itself as will the Court's
11  findings on the issue.
12  MR. FISHER: Please only limit your
13  objections to form only.
14  MR. BITGOOD: Mr. Fisher, if you have a
15  problem with my objections, that's why we have
16  objections. Thank you.
17  MR. FISHER: Oh.
18  A. I don't recall Mr. Bitgood having said those
19  words, but what I do recall is Mr. Oubre appeared as
20  if -- a managing -- as a partner, as an employee,
21  whatever, of this firm, and this firm was not licensed
22  to do business in Texas.
23  And so as far as I know, Mr. Oubre did not
24  independently represent anybody in that case. So
25  Mr. Oubre appeared as an employee of a firm that lost

**Page 49**

1   its right to do business in Texas. So from that
2   context, that may have been the context in which that
3   statement was made, but I let that you that Judge White
4   found that this firm was not authorized. And I believe
5   Mr. Oubre was not authorized because he lost the Rule 12
6   motion to show authority.
7   Q. (BY MR. FISHER) Okay. Well, that --
8   MR. FISHER: I'm going to object to
9   responsiveness.
10  Q. (BY MR. FISHER) But you do understand that
11  only the State Bar of Texas has the authority to provide
12  an individual with the ability to practice law and no
13  other governing body?
14  A. That's --
15  MR. BITGOOD: Objection -- Ms. Norman, let
16  me object, please. Objection as to form, assumes a fact
17  not in evidence. It's the Texas Supreme Court that
18  makes that determination. It's delegated by the state
19  bar, but it's not by them. It's the Supreme Court of
20  Texas. Look at the license on your wall, Bennet.
21  Q. (BY MR. FISHER) Can you answer my question?
22  A. I'm going to object to the fact that what Mr.
23  Easton says is correct. It's objection, form. But
24  I have never independently said that Mr. Oubre is not
25  licensed to practice law in Texas nor would I because I

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4484 Fax: 832-930-4485
Infinity Reporting Group, LLC

---

**Page 50**

1 I am in no position to make that statement. I've never
2 made that statement.
3 Q. And he gains his authority to practice law
4 through the state bar as delegated by the Supreme Court
5 of the State of Texas, correct?
6 A. Yes, that's correct.
7 Q. Okay. So on the Secretary of State's office
8 and not the comptroller's office. Neither of those
9 offices have the authority to determine who can practice
10 law who and who can't?
11 A. Well, I'm going to object to form because --
12 here's the problem. Mr. Oubre did not appear as a sole
13 practitioner representing anybody. He appeared under
14 the auspices of a firm that lost its right to do
15 business in Texas.
16 So to the extent that he was appearing as a
17 part of a firm that had no right to do business, his
18 authority to act as a lawyer were not in question, but
19 his authority to act as a lawyer for these clients under
20 the auspices of this firm was definitely lost.
21 Q. Now, when -- when did he file knowing that
22 you think he's either -- either David Oubre or the firm
23 didn't have the authority to operate?
24 A. Okay. Hang on one second.
25 Q. And can you just list us what you're looking at?

---

**Page 51**

1 A. Yes. I'm looking at the docket of the -- it's
2 case, 4:22-CV-3279. And I will recall and I will add
3 under optional completeness when I cross-examine myself,
4 this law firm, probably for the second or
5 third time since it entered Texas, lost its ability to
6 operate as a law firm on March the 9th, 2022,
7 To the best of my recollection, Mr. Oubre filed an
8 answer in this case on March the 11th, 2022 on behalf of
9 this firm, not on his own individual behalf.
10 Q. Well, didn't he sign the pleadings?
11 A. He signed the pleadings, but he didn't sign the
12 pleading --
13 Q. As an attorney?
14 A. He signed as an attorney, working for this firm,
15 which had no right to appear in a Texas court.
16 Q. So what do you think that the remedy is for a
17 company that's operating in Texas without authorization
18 under Texas law? And you've been a lawyer now for 30
19 years.
20 MR. BITGOOD: Objection as to form. You
21 said company or law firm?
22 A. Any entity.
23 MR. BITGOOD: Okay. Thank you.
24 A. Well, it's my understanding from reading the
25 law that anything that was done by this firm after it --

---

**Page 52**

1 using a lawyer for this firm who is not a sole
2 practitioner, what was filed was void because there was
3 no authority to conduct business in Texas.
4 Q. (BY MR. FISHER) Do you have a cite for that
5 conclusion?
6 A. Not on me.
7 Q. Okay.
8 MR. FISHER: It's almost 12:40. Let's take
9 a one-hour break for lunch.
10 THE VIDEOGRAPHER: Off the record at
11 12:39 p.m.
12 (Break taken from 12:39 p.m. to 1:50 p.m.)
13 THE VIDEOGRAPHER: Back on the record at
14 1:50 p.m.
15 A. I have to leave by 3 o'clock. I have a
16 dementia patient at my home that I must take care of.
17 If you're not done, you can continue this by Zoom. I'm
18 available tomorrow if you'll just send me the exhibits,
19 however you want me to do that, but I -- I have no choice
20 about taking care of this person at my home.
21 Q. (BY MR. FISHER) Okay. Well, we're going to
22 continue in person, but it won't be tomorrow.
23 A. Okay.
24 Q. All right.
25 A. And number two, you passed me a couple of

---

**Page 53**

1 questions that I want to answer regarding Mr. Bigood's
2 name change.
3 Q. Yeah.
4 A. It was done on June 25th, 2013. I had
5 forgotten that I represented the then wife. The reasons
6 for the name change are set forth in his sworn
7 application, which was signed on of by a standing judge
8 in Fort Bend County. Okay.
9 And you also asked me if I had any
10 statutory authority regarding Judge White's findings in
11 his orders of September 13th.
12 Q. I'm not sure that was my question, but --
13 A. Okay. A couple things, Texas Business and
14 Commerce Code --
15 Q. Hold on. Why don't you save that for your --
16 A. Well, you asked me, I want to --
17 Q. All right. Go ahead.
18 A. Under optional completeness, I want to -- would
19 you read back the question regarding --
20 Q. How is she going to find it?
21 A. The word "statutory authority," it was toward
22 the end.
23 MR. BITGOOD: Susan, may I suggest you
24 want to make a statement to Mr. Bennot, go ahead and
25 don't make the court reporter go through miles of tape.

---

Videotaped Deposition of   Susan Norman - Vol. 1

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**Page 54**

1  A  You asked me about statutory authority for
2  my -- something related to whether my opinion was that
3  the orders were void, Texas Business and Commerce Code
4  Section 7.202, 7.201, 7.203, and Judge White's
5  findings of fact and conclusions of law signed on --
6  Q  (BY MR. FISHER) Well, that's not statutory
7  authority?
8  A  Well, this goes along with the statutory
9  authority -- signed 27th of September 2022. It's
10  Exhibit C to Document 60.7 filed on 11/18/22.
11  Q  Okay. That's not responsive to any question.
12  but let's move forward.
13  I'm going to hand you what we've marked as
14  Exhibit 1.
15  (Exhibit 1 marked)
16  MR BITGOOD: That would be the notice of
17  deposition, Mr. Fisher?
18  Q  (BY MR. FISHER) Can you please identify that
19  document for the record.
20  A  It's entitled Plaintiff's Amended Notice of
21  Intention to Take the Oral and Videotaped Deposition of Susan
22  C. Norman."
23  Q  And you're here today pursuant to this notice?
24  A  Yes.
25  Q  Okay. I'm going to hand you what we've marked

**Page 55**

1  as Exhibit Number 2.
2  (Exhibit 2 marked)
3  Q  (BY MR. FISHER) You can confirm to me that
4  that's a two-page document that are e-mails from you to
5  Mr. Easton?
6  A  Document 173 filed on May 22nd, 2023. It's
7  Page 13 of 81. This page appears to be the response to
8  request for production 5/22/22, Page 2 and 3 of 50. It
9  says, "Subject, Lewis Bobo still expired. Attachments:
10  that the effective date was Bobo still expired at 12:34 in a.m."
11  Q  Okay. And why did you send that e-mail to
12  Mr. Easton?
13  A  Because I continually checked to see if you --
14  the Texas Secretary of State showed that your firm had
15  renewed its business -- it's the authority to do business in
16  Texas. And according to the Texas Secretary of State,
17  it had not as of March -- May 22nd, 2023.
18  Q  Okay. And you thought that Bisgaard you
19  permission, then, to use the name Lewis, Brisbois,
20  Bisgaard & Smith?
21  A  Yes.
22  MR BITGOOD: Let me know when you're going
23  to make an objection, Ms. Norman, before you blurt out
24  another answer.
25  MR FISHER: Mr. Easton, once again, please

**Page 56**

1  confine your remarks to objection, form.
2  MR. BITGOOD: Okay.
3  (Exhibit 3 marked)
4  Q  (BY MR. FISHER) I'm going to hand you what
5  we've marked as Exhibit 3 and ask you to identify that
6  group of documents for me.
7  A  Okay.
8  Q  And this is an e-mail from you to Mr. Easton
9  with some attachments?
10  A  Yes, it appears to be.
11  Q  Okay. And why did you send this e-mail to
12  Mr. Easton?
13  A  Because as of May 31st, 2022, it shows that my
14  short name, Lewis Bobo-Dallas Office, with a filing
15  history including renewals until 2020, none after 2020.
16  So between November 2020 and I guess 2021, the firm had
17  no authority -- the firm had no authority to do business
18  in Texas.
19  The entity status was expired looks like at
20  least twice over the course of the -- because I was
21  frankly -- the reason I sent it, I was frankly amazed.
22  Q  Okay. That's not responsive, but --
23  A  You bposed me why.
24  Q  Okay. So you were amazed. So you sent this
25  because you were amazed?

**Page 57**

1  A  I sent it because I was amazed that a
2  1,600-lawyer law firm would allow their records to be deprived
3  of the authority to do business and represent clients in
4  Texas.
5  Q  Okay. But as of May when you sent this e-mail,
6  you knew that there was a law firm whose name was Lewis,
7  Brisbois, Bisgaard & Smith, did you not?
8  A  I did
9  Q  And you also know, if you look at Exhibit 33,
10  that the effective date was March 28th, 2022, of the
11  filing, the renewed filing?
12  A  Objection, form. Because as I stated earlier,
13  that document did not appear in the records of the Texas
14  Secretary of State until June the 9th, 2022.
15  Q  But you know that the reason why it didn't
16  appear is because the Secretary of State's office was
17  backed up from all of the COVID filings?
18  MR. BITGOOD: Objection to form, assumes a
19  fact not in evidence.
20  A  Objection, form.
21  Q  (BY MR. FISHER) You know that now?
22  A  I know now. I didn't know it until June the
23  9th.
24  Q  Okay. When did you know it?
25  A  I told you, June the 9th, 2022.

MSJ Exhibit 10 - Defendant's Response
Page 15 of 59

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Phone: 832-930-4485   Fax: 832-930-4485
Infinity Reporting Group, LLC

**58**

1   Q. Okay. And yet, you continued to use the name
2   Lewis, Brisbois, Beggard & Smith" in your business
3   venture with Mr. Bitgood?
4   A. Well, I can answer that this way.
5   Q. It's kind of a yes or no.
6   A. Yes or no doesn't answer the question because
7   at the time -
8   MR. FISHER: Can you read back the
9   question?
10  (Requested portion was read)
11  A. The answer is yes, and there was a dispute - I
12  don't recall the date, but we have a declaratory
13  judgment on file as to who is entitled to use the name.
14  Secretary of State doesn't make that determination.
15  Q. (BY MR. FISHER) Okay.
16  MR. FISHER: Objection, nonresponsive after
17  yes.
18  MR. BITGOOD: I think we went silent. Can
19  you hear me?
20  MR. FISHER: We can hear you.
21  THE WITNESS: Yes, sir.
22  MR. BITGOOD: Thank you.
23  (Exhibit 4 marked)
24  Q. (BY MR. FISHER) I'm going to hand you what
25  we've marked as Exhibit Number 4. And is this not an

**59**

1   e-mail from you to Mr. Easton also on May 31st, 2022?
2   A. Yes, its. The time on this e-mail on
3   Exhibit 4 is 12:23 p.m. And I don't know if I mentioned
4   on Exhibit 3, it is 12:21 p.m. This one is the subject,
5   "The Houston Office of Lewis Bobo."
6   Q. Lewis what?
7   A. The subject says "Houston Office of Lewis
8   Bobo."
9   Q. And again, that's - that's your pejorative
10  name for Lewis, Brisbois, Beggard & Smith?
11  A. That is my short name for the firm. And
12  it's - you can characterize it as pejorative if you
13  wish.
14  (Exhibit 6 marked)
15  Q. (BY MR. FISHER) I'm going to hand you a
16  document that he marked as Exhibit 6 and ask you if
17  you can identify that e-mail.
18  A. Yes, I can.
19  Q. Okay. Can you identify this document for the
20  Court?
21  A. It's an e-mail that's Document 173 filed on
22  May 22nd, 2023, in this case. It was sent Thursday,
23  June 2nd, 2022, at 3:31 p.m. from me to Mr. Bitgood.
24  Q. Okay. And this confirms that you knew on
25  June 5th that the registration or reregistration on

**60**

1   Lewis, Brisbois, Beggard & Smith in Texas had been
2   renewed and was recognized?
3   MR. BITGOOD: Objection to form, was
4   recognized.
5   A. Objection to form also. The e-mail reads.
6   "According to the staff attorney, Chase Howell, name
7   availability rules do not apply to LLP registrations as
8   they do to corporate registrations.
9   Although the March 26th, 2022 paper-not
10  online-filing was only accepted June 5th, the SOS,"
11  say subject to that objection, the Secretary of State
12  backdates to the date of this receipt.
13  Explanation for extreme delay in processing
14  paper filings is COVID and they never not caught up with
15  paper filings since the COVID lockdown"
16  Q. (BY MR. FISHER) Okay. And just to be clear,
17  SOS is your shorthand for Secretary of State?
18  A. That's what I just said, yes.
19  Q. Okay. You said the first line, not the
20  second. I just want to make sure that it's clear. So
21  it's fair to say that as of June 5th, 2022, you knew
22  that Lewis, Brisbois, Beggard & Smith, LLP, the
23  California limited liability partnership, had renewed
24  its registration with the State of Texas?
25  A. I can answer it this way. I know that the

**61**

1   Secretary of State backdated it to the date of the
2   receipt of the paper filing.
3   Q. Alright. I'm going to ask it a different
4   way, then. Yes or no, as of June 5th 2022 you knew
5   that Lewis, Brisbois, Beggard & Smith, LLP, a law firm
6   who was organized under the state laws of California,
7   had renewed its registration to do business and
8   authority to do business/request for authority to do
9   business in the state of Texas, yes or no?
10  A. I'm going to object to form. And I'm going to
11  say subject to that objection, the Secretary of State
12  backdated the receipt to -
13  Q. Alright.
14  MR. FISHER: Objection, nonresponsive.
15  Q. (BY MR. FISHER) That wasn't my question. My
16  question was: As of June 5th, you knew that Lewis,
17  Brisbois, Beggard & Smith had renewed its registration
18  for authority to do business in Texas?
19  A. Objection, form. The answer's yes.
20  Q. Okay. What's your objection?
21  A. My objection is that Secretary of State
22  backdating a paper copy does not obviate the fact that
23  the Texas LLP had been filed and accepted by the
24  Secretary of State.
25  Q. I didn't ask you that question.

Videotaped Deposition of Susan Norman - Vol. 1

---

**62**

1   A.  Okay.  That's my explanation for my answer.

2   Q.  I only asked you if you knew as of June 9th

3 that Lewis, Brisbois, Bisgaard & Smith had authority to

4 do business.  It might have been as of March 28th, but I

5 didn't ask you that question.  My question is when did

6 you know that Lewis, Brisbois, Bisgaard & Smith had

7 authority to do business in the state of Texas again?

8   A.  Now, to that question, I can say June 9th.

9   Q.  2022?

10   A.  2022.

11   Q.  Okay.  I'm going to hand you what we've marked

12 as Exhibit 11.

13       (Exhibit 11 marked.)

14   A.  Okay.

15   Q.  (BY MR. FISHER)  And ask you to identify that

16 e-mail for the record.

17   A.  It's also part of Document 173.  It is an

18 e-mail sent Thursday, October 6th, 2022, at 9:00 p.m. to

19 East Pro Law, subject:  Sec state letter, attachments:

20 2022 10-06 SCN letter Secretary of State.

21   Q.  Okay.  What does that mean, SCN letter?

22   A.  Susan C. Norman.

23   Q.  Okay.  And the 10-6 is the date, October 6th?

24   A.  That's correct.

25   Q.  All right.  Why did you send this letter to

---

**63**

1 Mr. Easton – Easton or Mr. Bitgood?

2   A.  Because we agreed to cease operations of the

3 limited liability partnership.

4   Q.  Okay.  And the next page of that exhibit is a

5 letter to the Secretary of State, correct?

6   A.  That's correct.

7   Q.  All right.  And what is it about this letter

8 that you think is significant?

9       MR. BITGOOD:  Objection, form.

10   A.  What I think is significant is that as of – as

11 of the date of the first hearing in this case where the

12 Court heard arguments as to this matter, we took the

13 Court's soft request to heart and dissolved – agreed to

14 dissolve the partnership and cease operations.  I think

15 that's what I think is significant.  This case could

16 have been over on October the 6th or the 7th.

17   Q.  (BY MR. FISHER)  Okay.  But absent any other

18 court order to the contrary, you could just form a new

19 company, couldn't you, with the same name?

20       MR. BITGOOD:  Objection, form.

21   A.  Objection, form.  Absolutely not.

22   Q.  (BY MR. FISHER)  Why not?  What is it about

23 this letter that would preclude you from forming another

24 company called Lewis, Brisbois, Bisgaard & Smith?

25   A.  Common sense.

---

**64**

1       MR. BITGOOD:  Objection, form, speculation.

2   A.  You're assuming that after having a hearing

3 where your partner made assertions which were not true

4 to the Court and used a fraudulent document with the

5 Court, we still heard the Court's soft request that this

6 case be concluded and that's my analysis.

7   Q.  (BY MR. FISHER)  All right.

8       MR. FISHER:  Objection, nonresponsive.

9   A.  No, you're asking me – excuse me.  I'm going

10 to finish my – you can strike it if you want, ask the

11 Court to strike it, but I have more to say.

12       It would be foolish for me to have started

13 another company with this name after ceasing operations

14 and letting the Court know that we had ceased

15 operations.  So the answer is, no, we could not have

16 done that in good conscience.

17   Q.  (BY MR. FISHER)  Okay.  But you're assuming,

18 are you not, that I think that it was perfectly okay for

19 you to use the name in the first place, right, with that

20 amount of logic?

21       MR. BITGOOD:  Objection, form.

22   A.  Objection, form.  It was perfectly okay.

23   Q.  (BY MR. FISHER)  That wasn't my question.  My

24 question was you're assuming that I think –

25       MR. BITGOOD:  Objection, form.

---

**65**

1   Q.  (BY MR. FISHER)  – or the 1,600 lawyers in our

2 firm think that it was okay for you to use the name in

3 the first place.

4       MR. BITGOOD:  Objection, form.  We know of

5 one lawyer who thought it was okay.  His name was David

6 Oubre.

7       MR. FISHER:  Objection, sidebar.  And I

8 hate to call the judge over stuff like this, Michael.

9 Would you please just use the rules?  Don't abuse them.

10       MR. BITGOOD:  Okay, Bennett.  In all

11 fairness, Bennett, how are you going to ask the witness

12 what you were thinking?  Think about that.

13       MR. FISHER:  I just asked her based upon –

14 I'm going to withdraw that.

15       (Exhibit 12 marked.)

16   Q.  (BY MR. FISHER)  I'm handing you or I've handed

17 you what I've marked as Exhibit 12.  And I will

18 represent to you that that's an e-mail that you wrote to

19 Mr. Bitgood on October 6th, 2022, at 8:34 p.m.  Can you

20 confirm that?

21   A.  Yes, I can.

22   Q.  Okay.  And –

23   A.  Excuse me.  If you want me to identify this, it

24 is Document 173, Page 3 of 18.

25   Q.  This is not Document 173.  It might have been

---

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE
Phone: 832-930-4485   Fax: 832-930-4485
Infinity Reporting Group, LLC

**67**

1   A. Yes, it does.
2   Q. So my question is: Who is the general partner
3   of this limited partnership? And I point to the top.
4   the band – the line of the documents is "Notice of
5   Agreement Winding Up and Terminating Limited
6   Partnership."
7   A. At the bottom – it's on the signature page.
8   It says first general limited partner is Michael Joseph
9   Bilgood, the second general limited partner is Susan C.
10  Norman.
11  Q. All right. Would you agree with me that every
12  limited partnership under Texas law must have at least
13  one general partner and one limited partner?
14  A. I won't challenge that statement. I haven't
15  looked that at up.
16  Q. Okay. So you don't know as we're sitting here
17  today, after 30 years of law practice that every Texas
18  limited partnership must have at least one general and
19  one limited partner?
20  A. I have told you before I did not form general
21  partnerships 30 years ago. In the few times that I have
22  done anything related to forming entities and –
23  Q. Who drafted this document?
24  A. I drafted it.
25  Q. Okay. Now, it says that you briefly

**69**

1   Q. Wait –
2   A. There isn't. I should have put it there.
3   Q. You had a first general limited partner and you
4   had a second general limited partner. I read you put a
5   slash there, what would the slash have meant?
6   A. General partner, limited partner. This may be
7   imperfect, Mr. Fisher. It was designed to accommodate
8   the winding up – as imperfect as it may be, designed to
9   put on notice to the Secretary of State and to the
10  Court, the Honorable Keith Ellison, that there was no
11  need to continue this case or an injunction or for a
12  temporary restraining order after October the 8th, 2022.
13  Q. Simply because you filed this document?
14  A. Simply because in good conscience this document
15  was filed and then was later followed up with specific
16  documents related to the complaint, other documents
17  which I don't have before me at this point.
18  And I will note that the Secretary of State
19  permitted – as imperfect as this may be, provided the
20  limited partnership to be wound up and closed.
21  Q. Okay.
22  MR. FISHER: Objection, nonresponsive.
23  (Exhibit 14 marked)
24  Q. (BY MR. FISHER) I'm going to hand you what
25  we've marked as Exhibit 14. And I will represent to you

**99**

1   filed with the federal court as part of Document 173.
2   A. That's exactly what it was.
3   Q. But that e-mail was sent independent of
4   Document 173. It was sent on October 6th, 2022, at
5   5:34 p.m., best I tell, by Mr. Bilgood.
6   A. That's correct.
7   Q. Document 173 was filed with the Court in May
8   of this year.
9   A. That's correct and I've testified to that.
10  Q. already as to Document 173.
11  Q. Okay. Have you seen the second page of this
12  document?
13  A. Is it Page Number 2?
14  Q. It's Page 2, 3, and 4 of this exhibit.
15  A. I have a Page 4.
16  Q. I know you don't, but it's the second, third,
17  and fourth page of this exhibit.
18  A. So it is – I'm looking at Page 1,
19  Page 2 and Page 3 as numbered on the bottom of the
20  pages, is that correct?
21  Q. That's correct.
22  A. Okay.
23  Q. Now, in there, it says at the top, "Michael
24  Joseph Bilgood and Susan Norman, limited partners, agree
25  as follows," does it not?

**68**

1   participated in a limited liability partnership,
2   correct? I'm looking at Section 1.01.
3   A. Yes, that's what it says.
4   Q. Okay. Now, on the second section,
5   Section 1.2, it says that you entered into an oral
6   partnership agreement. Is that correct?
7   A. That's what it says.
8   Q. And is that accurate?
9   A. Yes.
10  Q. Okay. Now, in 2.01, it says, "The parties have
11  ceased the operation of their regular partnership
12  business." Sorry my question is: What's a regular
13  partnership?
14  A. It's a description of this partnership.
15  Q. Okay. Now, going to the signature blocks on
16  Page 3, I need your help on this because I need to
17  understand this. I know what a general partner is and
18  the rights and obligations of a general partner and I
19  know what a limited partner is and I understand the
20  rights and obligations of a limited partner, but you
21  have to tell me what is a general limited partner?
22  A. There should have been a slash after – between
23  general and limited.
24  Q. Should have been?
25  A. There should have been.

## MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Videotaped Deposition of  Susan Norman - Vol. 1

70

1 that this is another e-mail to Mr. Bitgood on
2 October 6th, this time about an hour later at 9:28 p.m.
3 Can you confirm that?
4     A. As part of Document 173 that was filed on
5 May 22nd, 2023, and it's – the time is correct, October
6 6th, 9:28 p.m.
7     Q. All right. Now, I've got attached to that a
8 letter to Judge Ellison also dated October 6th, but
9 signed by Mr. Bitgood.
10    A. Yes, sir.
11    Q. So why are you sending a letter from you to
12 Mr. Bitgood if he's the one that wrote the letter, or
13 did you write the letter for his signature?
14    A. I don't believe that – if it's one long scan,
15 then there are attachments missing because one long scan
16 does not reflect a one-page document.
17    Q. Okay. And you're referring to the subject line
18 on the first page of that exhibit?
19    A. Yes.
20    Q. All right. I don't know what one long scan
21 means. Can you tell me?
22    A. Well, what it means is if you look at the first
23 line of the letter, "I enclose the paperwork filed on an
24 even date with the Texas Secretary of State, which
25 resolves grievances set forth by plaintiff pro se." And

71

1 that would be the recitals, which is in Exhibit 12. It
2 would be Exhibit 11. As far as I can tell, it would be
3 11 and 12.
4     Q. All right. Let's look up at the top of this
5 letter. Let me ask the question again. Who wrote this
6 letter?
7     A. Mr. Easton.
8     Q. Okay.
9     A. Mr. Bitgood.
10    Q. All right. So you didn't write this letter for
11 him?
12    A. No.
13    Q. Okay. I'm looking at the letterhead. And at
14 the top, it says Peter J. Riga and it references him as
15 everything but a member of the Professional Golfers
16 Association.
17    A. Excuse me. That's sarcasm and I object to
18 that.
19    Q. That's okay. It's my deposition.
20    A. Yes, but common courtesy –
21        MR. BITGOOD: Objection as to form. Don't
22 argue with him. Let him be a down. Continue, bozo.
23        MR. FISHER: Talking to you or me?
24        MR. BITGOOD: That would be you.
25        MR. FISHER: I can't tell.

72

1     Q. (BY MR. FISHER) All right. So Peter Riga,
2 Ph.D. J.S.D J.D. LL. M.St.D. Th.D. Ph.L. Emeritus, what
3 does all that mean?
4     A. Do you understand what Ph.D. means?
5     Q. Yeah. He's a doctor of philosophy.
6     A. J.S.D. is, I am assuming, a legal status from
7 some – he's a JD, he's a master at laws. S.T.D., I
8 think, is something with divinity and divinity –
9 theological divinity. That was Mr. Riga's –
10    Q. What's Ph.L?
11    A. I think it's philosophy of law. I don't know.
12 I did not create this letterhead.
13    Q. Do you know who did?
14    A. When he was alive, Peter J. Riga.
15    Q. Okay. And you say that you officed next to or
16 with Peter Riga?
17    A. He had his own space independent of me in my
18 office.
19    Q. Okay. And what was Mr. Bitgood's relationship
20 with Mr. Riga?
21        MR. BITGOOD: Oh, tell him, please.
22    A. Mr. Bitgood worked for Mr. Riga at various
23 times. They were very close friends.
24    Q. (BY MR. FISHER) Is that it?
25    A. Well, there's a lot more, but that's my –

73

1 that's my analysis of it and that's really for
2 Mr. Bitgood to answer.
3     Q. Okay. I'm just asking what you know today. Do
4 you know who is handling Peter Riga's estate?
5     A. No one so far as I know.
6     Q. Did he have any children?
7     A. I believe he did.
8     Q. Do you know their names?
9     A. I don't – I don't recall their names. I met
10 them one time after their father died and have had no
11 contact with them.
12    Q. You say them. Was there more than one child?
13    A. I think there's more than one. I think there's
14 a daughter. I think there's at least one son.
15    Q. Okay. So you don't know if anyone from the
16 Riga family or estate has given permission to use his
17 name in this manner?
18        MR. BITGOOD: Objection, form.
19    A. Objection. I don't know – I have no idea.
20    Q. (BY MR. FISHER) Okay. That's – that's an
21 answer to my question.
22        (Exhibit 15 marked.)
23    Q. (BY MR. FISHER) I'm going to hand you what has
24 been marked as Exhibit 15 and represent to you that
25 there is an e-mail from you to Mr. Easton and to Brad

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE
Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

74

1   Bears and to yourself dated October 11th, 2022, at
2   3:18 p.m. And why was this e-mail sent?
3   A   It was sent to memorialize that the Secretary
4   of State has officially withdrawn the registration of
5   the Texas LLP.
6   Q   In other words, the LLP that you and
7   Mr. Bitgood formed?
8   A   The domestic LLP --
9   Q   That was formed by you and Mr. Bitgood.
10  correct?
11  A   That's correct.
12  (Exhibit 16 marked.)
13  Q   (BY MR. FISHER) I'm going to hand you what
14  we've marked as Exhibit 16. And that is an e-mail that
15  you sent to Mr. Easton on October 7th. And the subject
16  is the June 3rd letter from the Secretary of State. And
17  why did you send the e-mail to Mr. Bitgood?
18  A   To keep him apprised.
19  (Exhibit 18 marked.)
20  Q   (BY MR. FISHER) Okay. I'm going to hand you
21  what we have marked as Exhibit 18. And that is a copy
22  of a pleading that you filed in the federal district
23  court. And can you tell me why you filed this?
24  MR. BITGOOD: Objection, form. The
25  document speaks for itself.

75

1   MR. FISHER: Doesn't say why.
2   A   I wanted to make the Court aware that I would
3   be willing to cooperate in proper discovery, but my
4   objections to the discovery, which I served on your
5   firm, were to -- as well as I can remember, because the
6   discovery itself was highly confusing.
7   You asked for things and you don't specify
8   what you want. It's -- basically it was a fishing
9   expedition, which is not appropriate. And I wanted the
10  Court to be aware that I was attempting to cooperate
11  with discovery.
12  Q   (BY MR. FISHER) Okay. That was it?
13  A   That was it.
14  (Exhibit 42 marked.)
15  Q   (BY MR. FISHER) All right. I'm going to hand
16  to you what we've marked as Exhibit 42. And I'll represent
17  to you that's only the front page of a pleading in the
18  county court case. I'm not concerned about what the
19  county court case, or issues are in that motion. I'm just
20  asking you to take a look at the letterhead up on top.
21  And this is letterhead in a suit involving
22  the clients that we represented, Imperial LLC, LLC,
23  and Imperial LLC's Owner, LLC, as well as Karina
24  Martinez and Marianna Sullivan. And somebody added
25  David Oubre and Lewis, Brisbois, Besgaard & Smith, LLP,

76

1   if this law firm, as a party to that case. Are you aware
2   of that?
3   A   Yes, I am.
4   Q   Okay. This is a pleading that you signed, if
5   you recall?
6   A   You're going to have to give me the entire
7   pleading because I don't have the entire pleading before
8   me.
9   Q   We'll go back to it, then. I will get that for
10  you.
11  MR. BITGOOD: Mr. Fisher, if I could assist
12  you, I'll tell you what it was because I filed it.
13  MR. FISHER: Go ahead.
14  MR. BITGOOD: The pleading was filed on
15  9/20 to pressure the objections of Thompson and Coe
16  attempting to file an answer after the Court struck the
17  client's pleadings. That's all it was. That's why I
18  filed it soft objections.
19  Q   (BY MR. FISHER) Okay. Now, going back to this
20  exhibit, why was a pleading filed in a case for which
21  both the law firm known as Lewis, Brisbois, Besgaard &
22  Smith, LLP and the business that you formed with this
23  Mr. Bitgood are both plaintiff and defendant with this
24  letterhead? Why was that done?
25  MR. BITGOOD: Objection to the form. As of

77

1   9/13, you didn't exist anymore in the eyes of the Court,
2   MR. FISHER: Objection, nonresponsive and
3   improper objection.
4   MR. BITGOOD: Okay. Then, we'll leave it
5   as form.
6   Q   (BY MR. FISHER) So I'm asking you why this was
7   filed?
8   A   I'll tell you why. For the Exhibits 1 through
9   15, which were admitted in this case, the federal court
10  case on December the 2nd, 2022 --
11  (Audio interruption.)
12  MR. FISHER: Mr. Bitgood, can you silence
13  everything on your end except when you're speaking?
14  MR. BITGOOD: I just did, Mr. Fisher.
15  MR. FISHER: I'm sorry?
16  MR. BITGOOD: It started paying music. I
17  told Google to shut it down. My apologies for that
18  interruption, sir.
19  Q   (BY MR. FISHER) Go ahead, Ms. Norman.
20  A   I'm referencing the order signed by Judge Lewis
21  While on September the 13th which struck the pleadings
22  of your client, granted the motion to show authority,
23  removed Lewis, Brisbois, Besgaard & Smith from the case
24  and issued findings of fact and conclusions of law as of
25  September the 27th, 2022 removing you from the case.

MSJ Exhibit 10 - Defendant's Response
Page 20 of 59

MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE

Infinity Reporting Group, LLC
Phone: 832-930-4485   Fax: 832-930-4485

**78**

1   And yet, there was an attempt made to
2   apparently bring you guys back in as representing the
3   plaintiffs – or the defendants, pardon me, Sulfkan and
4   Marknez and the Imperial Lofts, LLC and Imperial Lofts
5   Owner from this case when it was – all right. That's
6   my explanation for that.
7   MR. FISHER: Objection, nonresponsive.
8   Q   (BY MR. FISHER) I'm just asking why did you
9   file a pleading with what looks to be letterhead using
10  the name Lewis, Brisbois, Bisgaard & Smith LLP?
11  MR. BITGOOD: Objection from Objection
12  as to form. There's been no showing she filed that
13  pleading. I filed it.
14  MR. FISHER: Okay. Once again, your
15  objection must be limited to form only, not a whole
16  long speaking objection, which is used to coach the
17  witness. That's inappropriate and you know that.
18  MR. BITGOOD: You're correct, Mr. Fisher.
19  You are correct, but I believe you asked – I asked me
20  to tell you what this pleading was about and I did. So
21  I apologize if it's an improper objection.
22  MR. FISHER: It is.
23  Q   (BY MR. FISHER) Now, do you know why this
24  letterhead was used?
25  A   No.

**79**

1   Q   Okay.
2   A   And again, I have not seen the entire – okay.
3   (Exhibit 45 marked.)
4   Q   (BY MR. FISHER) I'm going to hand you what
5   we've marked as Exhibit 45. And I'll represent to you
6   that this is a pleading that was filed in Fort Bend
7   County, Texas. And if you look at Page 13, lines
8   submitted by you and Mr. Bilgood.
9   A   Well, this documents appears as Document 1-5,
10  which appears to be Exhibit Number 5 to your original
11  petition, but this document has no file stamp showing
12  that it was actually filed in Fort Bend County.
13  Q   Alright. Take a look at Page 9. Tell me
14  when you're there.
15  A   I am at Page 9.
16  Q   Okay. Do you see Footnote 6 at the bottom?
17  A   Yes, I do.
18  Q   Okay.
19  Is it your assertion as an officer of the court
20  A   Is it your assertion... Because this has no file
21  stamp?
22  Q   Well I got you a file stamped copy.
23  A   Okay.
24  Q   The first sentence says, "By way of clear
25  explanation, the phony Lewis Brisbois voluntarily gave

**80**

1   up its right to do business in Texas under that name,
2   when despite repeated warnings from the Secretary of
3   State directed at Outre and its California office to
4   renew, Outre did nothing, as the Secretary of State
5   allowed him to surrender the name and allowed the
6   foreign LLP to expire." Do you see those words there?
7   A   I do.
8   Q   Okay. Now, there was nothing affirmatively
9   done to surrender the name Lewis, Brisbois, Bisgaard &
10  Smith" by this law firm, was there?
11  A   Oh, I disagree completely.
12  MR. BITGOOD: Objection.
13  Q   (BY MR. FISHER) Okay. Now, nevertheless, this
14  was filed, according to your certificate of service, on
15  June 15th, 2022. You testified earlier that by
16  June 9th, you knew that the registration to do business
17  in Texas had already been approved, filed, received by
18  the Secretary of State's office, correct? That's what
19  you testified to?
20  A   That's true.
21  Q   Okay. And on top of that, you knew that the
22  name Lewis, Brisbois, Bisgaard & Smith" as a law firm
23  organized in the state of California existed as of March
24  of 2022, three months, easily, before you filed this
25  pleading, correct?

**81**

1   Would you say that again?
2   MR. FISHER: Can you read that back?
3   (Requested portion was read.)
4   A   That's incorrect.
5   Q   (BY MR. FISHER) You testified earlier that you
6   know of this law firm when an answer was filed in March
7   of 2022 in a case that involves the Imperial Lofts
8   A   I knew that, yes.
9   Q   Okay. And so that was the point of my
10  question. That's what I thought I asked is that as of
11  June 15th when you referenced Lewis Brisbois as being
12  phony, you know of the law firm Lewis Brisbois,
13  Bisgaard & Smith existed by that time. For at least
14  three months you knew that, and yet, you filed this
15  pleading regardless?
16  MR. BITGOOD: Objection, form.
17  – Objection –
18  MR. BITGOOD: Objection, form. Are we
19  having a Rule 13 sanctions hearing?
20  A   I'm focusing on the words "voluntarily gave up
21  its right to do business in Texas under that name, then,
22  despite repeated warnings from the Secretary of State
23  directed at Outre and its California office to renew,
24  Outre did nothing, as the Secretary of State allowed him
25  to surrender the name and allowed the foreign LLP to

**82**

1 expire thereby allowing the domestic LLP to be formed,
2 registered, and approved by the Texas Secretary of
3 State."
4       I'm referencing the fact that as of March
5 the 9th, 2022, that's a true statement. It's a true
6 statement of multiple warnings, multiple – I think two
7 or even three voluntary relinquishments by inaction by
8 the California LLP.  This doesn't say after June 9th.
9       It was filed on June 15th, but the facts of
10 this footnote were true as of – as of the time that the
11 Texas LLP was filed.
12    Q. (BY MR. FISHER)  Do you understand or do you –
13 can you agree that there's a difference between
14 authority to do business in the state of Texas and use
15 of a name in accordance with the Lanham Act, the federal
16 trademark law?
17    A. Well, here's the problem also.  You had no
18 trademark filed as of March the 9th, 2022 because your
19 trademark had expired ten years before.
20    Q. I don't think that that's the conclusion of the
21 Court.
22    A. Well –
23    Q. And I think you know that because you were on
24 the phone when Judge Ellison stated clearly that our
25 name has acquired secondary meaning.

**83**

1    A. That's true.
2    Q. You heard that?
3    A. That's true, but that's what the judge said
4 October the 6th, 2022.  And as of September the 23rd,
5 this firm knew that it had no trademark protected by the
6 U.S. Patent and Trademark Office.  And yet, it filed the
7 petition and used the expired trademark – I forget
8 what exhibit number it is.
9       And then on the 29th of September, your –
10 I guess it's your trademark lawyer in California
11 hurriedly filed a request to – application for that
12 trade – for that name.  So as of March, without
13 considering the doctrine of secondary usage, you had –
14 this firm had no trademark for the four-name trademark
15 Lewis, Brisbois, Bisgaard & Smith, LLP, not excluding,
16 so –
17    Q. Are you not confusing registered mark with
18 common law mark?
19    A. I am not confusing anything.  I am saying what
20 was available from the U.S. Patent and Trademark Office,
21 which I've filed the – and I forget what document it
22 is.  I have filed the confirmation by the USPTO patent
23 and trademark office that there was no four-name
24 trademark filed because it had been cancelled ten years
25 before.

**84**

1       And I could be wrong on the ten years, but
2 I have the date, at some point.  And it's been on file
3 in this case.
4       (Exhibit 48 marked.)
5    Q. (BY MR. FISHER)  I'm going to hand you what
6 we've marked as Exhibit 48.  It's also reference to this
7 LBBS Bates label 000019, 000020, 000021, and ask you if
8 you have seen this e-mail before.
9    A. It's an e-mail sent Friday, September 23rd.
10 I've seen this before.  Yes, I have.
11    Q. Okay.  Do you know what was meant by, "This
12 should 'cool' Jana Lubert's 'jets' until I can get to
13 'title' Billy Helfand and Bennet Fisher next week"?
14    A. No, sir, I do not.
15    Q. Okay.  Do you know what – and you never asked
16 Mr. Bitgood what he meant by this?
17    A. No, sir, I did not.
18    Q. Okay.  And then it goes on to say, "No possible
19 name confusion at all.  We are not that incompetent.
20 All they have to do is like 'Doc Holiday' said in
21 'Tombstone': 'Say when'" –
22       MR. BITGOOD:  Say when.
23    Q. (BY MR. FISHER) – "and say otherwise, thereby
24 holding open the door in court for me to put on evidence
25 to the contrary."  Do you know what that means?

**85**

1    A. No, sir, I do not.
2    Q. You didn't ask Mr. Bitgood what he meant by
3 that?
4    A. No, sir, I did not.
5    Q. Okay.  Then he says, "Don't be a daisy' Bennet
6 and Billy," referring to me and Bill Helfand?
7    A. I see those words.
8    Q. What are you reading?
9    A. I'm sorry?  I'm using my magnifier.  It's so
10 small I can't see.
11    Q. Okay.  What did he mean by don't be a daisy
12 Bennet and Billy?
13    A. I have no idea.
14    Q. You never asked him?
15    A. No, sir.
16    Q. Okay.  Now, the next page is a picture of what
17 looks to be a cannon.  Do you see that?
18    A. Are you talking about –
19    Q. The next page of the exhibit, Page 20.
20    A. I see that.
21    Q. Okay.  "A message for David Oubre, Bill
22 Helfand, Bennet Fisher & Jana Lubert of 'Lewis & Bobo',
23 a California foreign LLP."
24    A. I see that page.
25    Q. Okay.  And it says "Come and take it."  Do you

Phone: 832-930-4484   Fax: 832-930-4485
Infinity Reporting Group, LLC

86

1   I know what that means?
2   A   No, sir, I don't.
3   Q   Okay. Where did you grow up?
4   A   All over the world.
5   Q   Okay. In Texas at all?
6   A   No.
7   Q   Okay. Is this kind of a Texas thing, this
8   cannon?
9   A   Deep in the recesses of my mind, I believe it
10   is, but I couldn't tell you for sure.
11   Q   Okay. Is it a -- does it have something to do
12   with the Alamo?
13   A   I don't know.
14   Q   I don't either. I mean, I didn't grow up here.
15   And now on Page 21 --
16   A   Well, this is actually Page 3 of 3, is that
17   what you're talking about?
18   Q   Yeah, but I'm looking at Bates Number 000021,
19   A   Yes, sir.
20   Q   Okay. Is that a copy of the business card for
21   Mr. Bilgood?
22   A   It appears to be.
23   Q   Okay. And who notified Mr. Bilgood as a
24   mediator or yourself?
25   MR. BITGOOD: Objection to form as to

87

1   Mr. Bilgood. She can testify as to what she knows.
2   MR. FISHER: Thank you for that, but please
3   limit your objections to form only.
4   MR. BITGOOD: Objection to form, then.
5   Bennett.
6   A   I can tell you that I went to the A.A. White
7   Dispute Resolution Center and was allowed to participate
8   in the mediation course and graduate or complete it.
9   Q   (BY MR. FISHER) All right. So -- but are you
10   certified by any agency, organization?
11   A   No, sir.
12   (Exhibit 57 marked)
13   Q   (BY MR. FISHER) Okay. And I'm going to hand
14   you what we've marked as Exhibit 57. I'm represented to
15   you that that is a copy of a letter that I wrote to you
16   in September asking you to please stop using the name of
17   this law firm. Do you recall that?
18   A   I see this is a letter dated September the
19   28th, 2022. And after your law firm was found not to be
20   authorized to represent the defendants in the case
21   against Fort Bend County, you sent this letter.
22   Q   Okay. I don't really know what you're talking
23   about in Fort Bend County, but I'm talking about your
24   use of our name of our firm in this letter, did I not?
25   A   Well --

88

1   MR. BITGOOD: Objection, form. Assumes
2   facts not in evidence.
3   A   I'm going to object to form also because this
4   entire lawsuit was brought in relation to the judgments
5   and the findings of the Court in Fort Bend County. And
6   your own partner, William Helfand, talked about on
7   the record as being in relation to this -- the state
8   court lawsuit. So the state court lawsuit is
9   22-CCV-070378,
10   Q   (BY MR. FISHER) Okay. I don't reference any
11   lawsuit in this letter, do I?
12   A   No, sir. I'm not surprised.
13   Q   Well, I didn't participate in that lawsuit, did
14   I?
15   A   Well, you're a partner in the firm that did, so
16   you may not personally have made an appearance for the
17   firm, but your firm that you reference, the firm of
18   which you are a partner, participated. So you cannot
19   say that the global you did not participate. At least
20   that's my opinion.
21   Q   Okay. But this letter was a little bit more
22   personal, though, was it not? I referenced our 30 years
23   of knowing one another as colleagues, coounsel, and
24   friends, right? I didn't -- I didn't talk about my
25   other lawsuit in particular, but I just asked that you

89

1   stop using the name Lewis, Brisbois, Bisgaard & Smith,
2   A   You did ask me that, and eight days later we
3   stopped.
4   MR. BITGOOD: Uh-huh.
5   Q   (BY MR. FISHER) Let's take a look now at
6   Exhibit 49.
7   (Exhibit 49 marked)
8   Q   (BY MR. FISHER) I've handed you what we've
9   marked as Exhibit 49 and --
10   A   I see it.
11   Q   I'm sure you've seen that letter before. It
12   was written by you to me on September 29th, correct?
13   A   That's correct.
14   Q   All right. Now, after first complaining that I
15   addressed you as Sue or Susan, you go into great detail
16   to explain why you thought it was okay to use our name,
17   right?
18   MR. BITGOOD: Objection to the term --
19   objection to form.
20   A   Mr. Fisher, the letter speaks for itself.
21   Objection, form.
22   Q   (BY MR. FISHER) Okay. All right. We're going
23   to take about a 10- or 15-minute break, and to the
24   extent that the documents were either incomplete or
25   didn't show the stamps, I'm going to go get those

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of  Susan Norman - Vol. 1

---

**90**

1  documents.

2      A. Okay. I've got –

3          MR. BITGOOD: She has to – wait a minute.

4  Wait. She has to leave at 3 o'clock.

5          MR. FISHER: All right. Let's – let's

6  adjourn the deposition and we'll meet back here at a

7  mutually convenient day and time and complete the

8  examination. And thank you for coming.

9          THE VIDEOGRAPHER: Off the record at 3

10  o'clock p.m.

11      (Deposition concluded at 3:00 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

**91**

1          CHANGES AND SIGNATURE

2  WITNESS NAME: SUSAN C. NORMAN    DATE: JULY 26, 2023

3  PAGE LINE    CHANGE        REASON

4  _____

5  _____

6  _____

7  _____

8  _____

9  _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____

---

**92**

1      I, SUSAN C. NORMAN, have read the foregoing

2  true and correct, except as noted above.

3

4

5          SUSAN C. NORMAN

6

7

8

9  THE STATE OF _____)

10  COUNTY OF _____)

11

12      Before me, _____, on

13  this day personally appeared SUSAN C. NORMAN, known to

14  me (or proved to me under oath or through

15  _____) (description of identity

16  card or other document)) to be the person whose name is

17  subscribed to the foregoing instrument and acknowledged

18  to me that they executed the same for the purposes and

19  consideration therein expressed.

20      Given under my hand and seal of office this

21  _____ day of _____, _____.

22

23

24          _____

NOTARY PUBLIC IN AND FOR

25      THE STATE OF _____

COMMISSION EXPIRES: _____

---

**93**

1      IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

2          HOUSTON DIVISION

3  LEWIS, BRISBOIS, BISGAARD   )

& SMITH, LLP,        )

4                )

PLAINTIFF,    ) CIVIL ACTION NO:

5              ) 4:22-CV-3279

VS.        )

6              )

MICHAEL JOSEPH BITGOOD     )

7  a/k/a "MICHAEL EASTON," ET   )

AL,        )

8              )

DEFENDANTS.    )

9

10      REPORTER'S CERTIFICATION

DEPOSITION OF SUSAN C. NORMAN

11      JULY 26, 2023

12

13      I, Allison Garrett, Certified Shorthand Reporter in

14  and for the State of Texas, hereby certify to the

15  following:

16      That the witness, SUSAN C. NORMAN, was duly sworn

17  by the officer and that the transcript of the oral

18  deposition is a true record of the testimony given by

19  the witness;

20      I further certify that pursuant to FRCP Rule

21  30(e)(1) that the signature of the deponent:

22      XXX was requested by the deponent or a party before

23  the completion of the deposition and is to be returned

24  within 30 days from the date of receipt of the

25  transcript. If returned, the attached Changes and

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of  Susan Norman - Vol. 1

94

1  Signature Page contains any changes and the reasons
2  therefor;
3      ___ was not requested by the deponent or a party
4  before the completion of the deposition.
5      I further certify that I am neither counsel for,
6  related to, nor employed by any of the parties or
7  attorneys in the action in which this proceeding was
8  taken.  Further, I am not a relative or employee of any
9  attorney of record in this cause, nor am I financially
10  or otherwise interested in the outcome of the action.
11      Certified to by me this 21st day of July, 2023.
12
13
14      _____
        Allison Garrett, Texas CSR 8329
15      Expiration Date:  4/30/2025
        Infinity Reporting Group
16      11200 Richmond Avenue
        Suite 410
17      Houston, Texas 77082
        (832) 930-4484
18
19
20
21
22
23
24
25

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of Vol 2 Susan C. Norman

```
                                                              1
1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
2                      HOUSTON DIVISION

3   LEWIS, BRISBOIS, BISGAARD      )
    & SMITH, LLP,                  )
4                                  )
             PLAINTIFF,            ) CIVIL ACTION NO:
5                                  ) 4:22-CV-3279
    VS.                            )
6                                  )
    MICHAEL JOSEPH BITGOOD         )
7   a/k/a "MICHAEL EASTON," ET     )
    AL,                            )
8                                  )
             DEFENDANTS.           )
9           _____

10           ORAL AND VIDEOTAPED DEPOSITION OF

11                   SUSAN C. NORMAN

12                   August 16, 2023

13                   VOLUME 2 OF 2

14          _____

15

16       ORAL DEPOSITION OF SUSAN C. NORMAN, produced as a

17   witness at the instance of the PLAINTIFF, and duly

18   sworn, was taken in the above-styled and numbered cause

19   on August 16, 2023 from 10:14 a.m. to 2:52 p.m., before

20   Allison Garrett, CSR in and for the State of Texas,

21   reported by machine shorthand, at Lewis, Brisbois,

22   Bisgaard & Smith, 24 Greenway Plaza, Suite 1400,

23   Houston, Texas 77046, pursuant to the Federal Rules of

24   Civil Procedure and the provisions stated on the record

25   or attached hereto.
```

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

2

```
 1        A P P E A R A N C E S
 2
 3  FOR THE PLAINTIFF:
 4      Bennett G. Fisher, Esq.
        Anh Nguyen, Esq.
 5      LEWIS, BRISBOIS, BISGAARD & SMITH
        24 Greenway Plaza
 6      Suite 1400
        Houston, Texas 77046
 7      (713) 659-6767
        Bennett.fisher@lewisbrisbois.com
 8
    DEFENDANT MICHAEL JOSEPH BITGOOD, APPEARING PRO SE:
 9
        Michael Joseph Bitgood
10      East Pro Law
        503 FM 359
11      Suite 130-216
        Richmond, Texas 77469
12      Eastprolaw@msn.com
13  DEFENDANT SUSAN C. NORMAN APPEARING PRO SE:
14      Susan C. Norman, Esq.
        ATTORNEY AT LAW
15      P.O. Box 52518
        Houston, Texas 77052
16      SueNorman@SueNormanLaw.com
17  FOR DEFENDANT BRAD BEERS:
18      Samuel Wallace, Esq.
        MUNCK, WILSON, MANDALA, LLP
19      12770 Coit Road
        Suite 600
20      Dallas, Texas 75251
        (972) 628-3600
21      Wdunwoody@munckwilson.com
22
    ALSO PRESENT:
23
        Martin Flores, Videographer
24
        Bradley Beers
25
```

---

3

```
 1              INDEX
 2  Appearances.........................2
 3
 4  SUSAN C. NORMAN
 5      Examination by Mr. Bennett.............6
 6      Examination by Mr. Dunwoody..........112
 7      Examination by Mr. Bitgood...........118
 8      Examination by Mr. Bennett...........121
 9      Examination by Mr. Bitgood...........125
10
11  Signature and Changes..................127
12  Reporter's Certificate.................129
13
14              EXHIBITS
15  NO.        DESCRIPTION            PAGE
16  Exhibit 19
17  Exhibit 40
18  Exhibit 42
19  Exhibit 43
20  Exhibit 50
21  Exhibit 58
22  Exhibit 67
23  Exhibit 68
24  Exhibit 69
25  Exhibit 70
```

---

4

```
 1           EXHIBITS CONTINUED
 2  NO.        DESCRIPTION            PAGE
 3  Exhibit 71
 4  Exhibit 72
 5  Exhibit 73
 6  Exhibit 74
 7  Exhibit 75
 8  Exhibit 76
 9  Exhibit 77
10  Exhibit 78
11  Exhibit 79
12  Exhibit 80
13  Exhibit 81
14
15
16
17
18
19
20
21
22
23
24
25
```

---

5

```
 1           (August 16, 2023, 10:14 a.m.)
 2
 3           THE VIDEOGRAPHER:  We are going on the
 4  record.  Today's date is Wednesday, August 16th, 2023.
 5  The time is 10:14 a.m.  Will all attorneys present
 6  please introduce themselves for the record and who they
 7  represent.
 8           MR. FISHER:  I'll go first.  My name is
 9  Bennett Fisher and I represent the real Lewis, Brisbois,
10  Bisgaard & Smith, LLP, the law firm that has been around
11  for many, many years including in the state of Texas.
12  With me today is Anh Nguyen and spells her first name
13  A-N-H, Nguyen is N-G-U-Y-E-N.
14           MR. DUNWOODY:  Wallace Dunwoody here for
15  Brad Beers.  Brad Beers is also in the room.
16           THE WITNESS:  Susan Norman, attorney for
17  herself.
18           MR. BITGOOD:  Michael Joseph Bitgood also
19  known as Michael Easton appearing pro se, formerly
20  president of the Lewis Brisbois, LLP in Texas recognized
21  by the state.
22           THE WITNESS:  And I want to reaffirm that I
23  need to read and sign both divisions of this deposition.
24           MR. FISHER:  We will give you that
25  opportunity.
```

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

6

1          SUSAN NORMAN,

2 having been first duly sworn, testified as follows:

3          EXAMINATION

4 BY MR. FISHER:

5     Q.  Once again, Ms. Norman, please state your full

6 name for the record.

7     A.  Susan Norman.

8     Q.  Ms. Norman, when did you first realize that

9 holding yourself and Mr. Bitgood out as members of an

10 entity named Lewis, Brisbois, Bisgaard & Smith, LLP was

11 wrongful?

12          MR. DUNWOODY:  Object to form.

13          MR. BITGOOD:  Objection, assumes a fact not

14 in evidence.

15     A.  I don't think it was wrongful.

16     Q.  (BY MR. FISHER)  Okay.  And through a

17 partnership that you formed with Mr. Bitgood, did you

18 hold yourself out as a member of and vice president of

19 Lewis, Brisbois, Bisgaard & Smith, LLP?

20     A.  If you add the Texas entity, yes.

21     Q.  Was the words "Texas entity" ever in the name

22 of your partnership known as Lewis, Brisbois, Bisgaard &

23 Smith, LLP?

24     A.  I believe it was on the State of Texas

25 Secretary of State website, but this differentiates it

7

1 from the foreign LLP, which lost its right to do

2 business in Texas as opposed to our domestic LLP.

3          MR. FISHER:  Objection, nonresponsive.

4     Q.  (BY MR. FISHER)  I'm asking you if you ever

5 held yourself out -- in fact, I'm going to ask Allison

6 to repeat the question.  I just want an answer to that

7 narrow question.  And it relates to whether the words "a

8 Texas entity" were ever in the title.

9          MR. BITGOOD:  Objection, vague.  Title of

10 what?  A movie?  Stationary?  A business card?

11          (Requested portion was read.)

12     A.  It was designated as a Texas domestic entity on

13 the Secretary of State Texas website.

14     Q.  (BY MR. FISHER)  Right.  I understand that

15 you're -- that that's your answer, but did you ever use,

16 when you used the name, when you filed something, when

17 you sent the letter, when you sent correspondence, did

18 you ever use the name or the words "a Texas entity" in

19 the name Lewis, Brisbois, Bisgaard & Smith, LLP that you

20 claimed as your partnership?

21          MR. DUNWOODY:  Object to form.

22     A.  I -- I believe so with -- you're using the

23 words domestic -- "Texas domestic" or "Texas LLP."  I

24 would have to look back at every filing and every

25 communication sent to be fully sure, but sitting here

8

1 today, I believe so, yes.

2     Q.  (BY MR. FISHER)  Okay.  Well, I'm going to show

3 you a couple of documents and you can tell me whether

4 you still will maintain that answer.  Okay?

5     A.  I am not maintaining that every document filed

6 or used was that, but you didn't ask me if it was every,

7 so I don't --

8     Q.  No, I said did you ever --

9     A.  Did I ever, yeah.

10     Q.  Okay.

11     A.  Okay.

12     Q.  So let me change it a little bit and say did

13 you always include the words "a Texas entity" or a

14 domestic partnership every time you used the name Lewis,

15 Brisbois, Bisgaard & Smith, LLP?

16          MR. BITGOOD:  Object to the form of the

17 question.

18     A.  I object to the form of the question also, but

19 sitting here --

20     Q.  (BY MR. FISHER)  What's the basis of your

21 objection?

22     A.  The objection is I am not sure.  Okay.  I am

23 not going to testify that every instance of my use of

24 that name included Texas entity.  Sitting here today, I

25 do not remember.

9

1     Q.  All right.  I'm going to hand you a document

2 that was filed by you on October 10th, 2022, in the

3 Southern District of Texas.  It's listed as Document 8,

4 and the band at the top says "Case 4:22-cv-03279."

5          And this is -- this appears to be a letter

6 to Judge Ellison with -- at the top letterhead that says

7 Lewis, Brisbois, Bisgaard & Smith, LLP, but it has your

8 name and Mr. Bitgood's name on there.

9          MR. BITGOOD:  What exhibit is that,

10 Mr. Fisher?

11          MR. FISHER:  It's not an exhibit.

12     Q.  (BY MR. FISHER)  I'm going to ask you if you

13 recognize that.

14          MR. BITGOOD:  Do you mind telling us what

15 it is, sir?

16          MR. FISHER:  I just did.

17          THE WITNESS:  It's a letter dated

18 October 5th, 2022, Lewis, Brisbois, Bisgaard & Smith,

19 LLP with 503 FM 359-130, Suite 216, Richmond, Texas,

20 mediations and arbitrations.  And it is a letter that he

21 says that I filed.  I can't tell that to be correct, but

22 it was signed by Michael Joseph Bitgood a/k/a Michael

23 Easton.

24     Q.  (BY MR. FISHER)  He's your partner, isn't he?

25 Or was he?

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

10

1    A. He was.

2    Q. Okay. It was a general partnership, was it

3 not?

4    A. This was an LLP.

5    Q. No, ma'am, it wasn't. And I showed you last

6 week what the filing was.

7        MR. BITGOOD: Objection, argumentative.

8    Q. (BY MR. FISHER) As a general partnership --

9        MR. BITGOOD: And don't argue with the

10 witness.

11    Q. (BY MR. FISHER) -- I'm going to remind you of

12 your testimony last week when I showed you a document

13 that this entity was not an LLP. In fact, it was a

14 general partnership.

15        MR. DUNWOODY: Object to form.

16    A. I am not --

17    Q. (BY MR. FISHER) Do you need me to show you

18 that exhibit again?

19    A. No, you don't need to. I am not necessarily

20 arguing with you. This is what was filed and this is

21 how it was filed, so that was filed.

22    Q. All right.

23    A. I -- if you're saying that I filed this, I

24 don't know that to be correct, but I do know that it was

25 signed by Michael Joseph Bitgood a/k/a Michael Easton.

11

1 What exhibit number is that?

2    Q. I'm going to make this Exhibit 59 because I'm

3 not sure whether we have it or not.

4        MR. DUNWOODY: Do you have copies?

5        MR. FISHER: We're going to make copies

6 right now because I'm not sure that I got it or not, so

7 just out of an abundance of caution, we're going to take

8 a short break and I'm going to make copies right now for

9 everybody. And I'll have it scanned and sent to

10 Mr. Easton as well. This is a pleading that should

11 be --

12        MR. BITGOOD: Thank you.

13        MR. FISHER: It's Pleading Number 8 or it's

14 Docket Number 8. All right. Let's take a quick break.

15 I'm going to get copies or everybody.

16        THE VIDEOGRAPHER: We are going off the

17 record. The time is 10:23.

18        (Break taken from 10:23 a.m. to 10:34 a.m.)

19        (Exhibit 67 marked.)

20        THE VIDEOGRAPHER: Going on the record.

21 The time is 10:34.

22    Q. (BY MR. FISHER) All right. Ms. Norman, I've

23 handed you what we have now marked as Exhibit 67; is

24 that correct?

25    A. Yes, sir.

12

1    Q. Okay. And can you tell the Court what that

2 document is?

3    A. It is Document Number 8 filed on October the

4 5th, 2022 in Case Number 4:22-cv-03279. It is a

5 nine-page letter/pleading sent to the honorable Keith P.

6 Ellison and it's signed Michael Joseph Bitgood a/k/a

7 Michael Easton.

8    Q. All right. When's the first time you saw this

9 document?

10    A. I would say probably October the 5th.

11    Q. And did you see it before it was filed or

12 after?

13    A. I don't recall.

14    Q. Okay. And the letterhead at the top of this

15 document says "Lewis, Brisbois, Bisgaard & Smith, LLP,"

16 correct?

17    A. That is what it says.

18    Q. And that is the same as the name of the firm

19 which we're sitting in today, correct?

20    A. It is the same name as the California entity,

21 yes, sir.

22    Q. Okay. And it's also the same name as the name

23 of the law firm whose office we are sitting in today,

24 correct?

25    A. That is correct.

13

1        (Exhibit 42 marked.)

2    Q. (BY MR. FISHER) All right. And I'm going to

3 hand you Exhibit 42. Oh, by the way, let's go back to

4 Exhibit 67 real quick. Do you remember --

5        MR. BITGOOD: I don't have an Exhibit 67.

6        MR. FISHER: You'll get it. This is

7 Document 8 in the federal district court lawsuit known

8 as 4:22-cv-03279.

9    Q. (BY MR. FISHER) Ms. Norman, did you ever have

10 a discussion with Mr. Bitgood about this document?

11    A. Well --

12        MR. BITGOOD: When you say we'll have it,

13 what document are you talking about, sir?

14        THE WITNESS: It is what was previously

15 marked as Exhibit 59, which is Document Number 8, the

16 October 5th letter pleading.

17        MR. BITGOOD: Okay. Okay. Now I know what

18 it is.

19    Q. (BY MR. FISHER) All right. Did you ever have

20 a conversation or discussion with Mr. Bitgood about this

21 document?

22    A. I will have to --

23        MR. BITGOOD: Objection, form.

24    A. -- decline on the basis of attorney/client

25 privilege.

14

1    Q.  (BY MR. FISHER)  Okay.  So you're claiming now
2  that Mr. Bitgood is your client?
3    A.  No, sir.  I'm claiming that the Texas entity --
4  I represented the Texas entity.
5    Q.  I didn't ask about the entity.  I asked if you
6  had a conversation about the pleading that was filed, a
7  conversation with Mr. Bitgood?
8    A.  Well, since he's the --
9    MR. BITGOOD:  Objection, form.
10   A.  Objection, attorney/client privilege.
11   Q.  (BY MR. FISHER)  You're refusing to answer that
12  question?
13   A.  I am declining to answer that question.
14   Q.  Okay.  Did you -- did you tell Mr. Bitgood that
15  filing this document in a Lanham Act case was a bad
16  idea?
17   MR. BITGOOD:  Objection to form.
18   MR. FISHER:  I'll withdraw it.
19   MR. BITGOOD:  Assumes facts not in
20  evidence.
21   Q.  (BY MR. FISHER)  Did you -- did you ever tell
22  him that filing this pleading with the letterhead Lewis,
23  Brisbois, Bisgaard & Smith, LLP was a bad idea?
24   MR. BITGOOD:  Objection, form.
25   A.  I don't believe that as of October 5th that

15

1  I would have considered that to be a discussionable item
2  with Mr. Bitgood.
3    Q.  Why not?
4    A.  Simply because I didn't.
5    Q.  Why didn't you think it was a discussionable
6  item with Mr. Bitgood?
7    MR. BITGOOD:  Objection, form.
8    A.  Sitting here almost a year since, I don't
9  recall that I would have thought on October the 6th --
10  5th that I needed to have that discussion.  I don't know
11  if I did or not.  I don't recall whether I even thought
12  it or not, so no, I can't tell you that.  I can't answer
13  that.
14   Q.  All right.  Well, sitting here today, do you
15  see that filing a pleading with the name Lewis,
16  Brisbois, Bisgaard & Smith, LLP with the Court holding
17  yourselves out as a member of an organization known as
18  Lewis, Brisbois, Bisgaard & Smith, LLP was a bad idea?
19   MR. DUNWOODY:  Objection, form.
20   A.  No, sir.
21   MR. BITGOOD:  Objection, assumes a fact not
22  in evidence.
23   A.  And if I --
24   MR. BITGOOD:  Mr. Fisher, you're not
25  suggesting we would say that we're associated with your

16

1  law firm, are you?
2    MR. FISHER:  It's not my turn to give
3  answers to your questions, Mr. Bitgood.
4    MR. BITGOOD:  Okay.  Fair enough.
5    MR. FISHER:  If you want to take my
6  deposition, that's another story.
7    A.  Okay.  I will refer you to Document 60-1 filed
8  November 2nd -- excuse me, filed November 28th, 2022, in
9  Cause Number 4:22-cv-03279 as Exhibit C, which has
10  already been admitted as evidence in this case.  It is
11  the findings of fact and conclusions of law of Judge
12  Lewis White signed on September 27th, 2022, so --
13   Q.  (BY MR. FISHER)  Were those the same findings
14  of fact and conclusions of law in a proceeding that is
15  under appeal?
16   MR. BITGOOD:  Objection, assumes a fact not
17  in evidence.
18   MR. FISHER:  I'm asking a question.
19   MR. BITGOOD:  And I'm making an objection
20  whether you like it or not.
21   MR. FISHER:  Just object to form.  We've
22  had this conversation before.  You know the rules.
23   MR. BITGOOD:  Yes, I know Bennett.  You
24  want to be the judge and the plaintiff.  I get it.
25   A.  Mr. Fisher, the findings of fact and

17

1  conclusions of law are not under appeal by your firm
2  because your firm was disqualified.  The pleadings were
3  struck, so I have to take issue with your -- there is an
4  appeal, but --
5    Q.  (BY MR. FISHER)  And there is a motion for
6  reconsideration of that ruling, correct?
7    MR. BITGOOD:  Objection, form.
8    A.  To the extent that you believe there's one
9  pending, you may believe that.
10   (Exhibit 43 marked.)
11   Q.  (BY MR. FISHER)  All right.  Then we'll move
12  on.  I'm going to hand you what we've already -- I
13  believe we've already been over this.  This is
14  Exhibit 43.  And I'll ask you to identify this document
15  for the record.
16   A.  It was document registration of a limited
17  liability partnership filed in the Texas -- with the
18  Texas Secretary of State.
19   Q.  And that's the name of the form, correct?
20   A.  Registration of a limited liability
21  partnership, yes, sir.
22   Q.  Okay.  Now go down to Line 2.
23   A.  Yes, sir.
24   Q.  And read that out loud, please.
25   A.  As filled in, it says the partnership is a

Videotaped Deposition of Vol 2 Susan C. Norman

---

18

1  general partnership.

2      Q.  Right.  And that was what was filed with the

3  Secretary of State of Texas on September -- let's see.

4  I'm sorry --

5      A.  May 26th.

6      Q.  May 26th, 2022?

7      A.  Yes, sir.

8      Q.  Okay.  And that was -- that was what formed

9  this partnership by you and Mr. Bitgood known as Lewis,

10  Brisbois, Bisgaard & Smith, LLP, correct?

11          MR. DUNWOODY:  Object to form.

12          MR. BITGOOD:  Objection, form.  The

13  document speaks for itself, Mr. Fisher.

14          MR. FISHER:  Mr. Dunwoody, what's your

15  objection?

16          MR. DUNWOODY:  Your question assumes that

17  this formed the partnership, also asks for a legal

18  conclusion.

19          THE WITNESS:  I'm sorry.  I couldn't hear

20  Mr. Dunwoody.

21          MR. FISHER:  Yeah, I asked that of a lawyer

22  and a partner.

23          MR. DUNWOODY:  Okay.

24      Q.  (BY MR. FISHER)  All right.  Ms. Norman, does

25  that refresh your recollection that this was formed as a

---

19

1  general partnership?

2          MR. DUNWOODY:  Same objection.

3      A.  Objection, form.  It refreshes my recollection

4  as to that is what this document says.

5      Q.  (BY MR. FISHER)  Okay.  Well, if it's a limited

6  liability partnership, then who are the general partners

7  or who is the general partner?

8          MR. DUNWOODY:  Object to form.

9      A.  It's not stated on here.

10      Q.  (BY MR. FISHER)  I'm asking you if it's a

11  limited liability partnership, there must be general --

12  at least one general partner and at least one limited

13  partner, correct?

14          MR. DUNWOODY:  Object to form.

15      A.  Is that your -- is that your testimony?

16      Q.  (BY MR. FISHER)  I'm asking you a question as

17  somebody who's been practicing law for 20 or so years.

18          MR. DUNWOODY:  Object to form.

19      A.  This is not an area of law that I --

20      Q.  (BY MR. FISHER)  30 years.  I'm sorry.

21      A.  30 years.  32 years, maybe.  This is not an

22  area of the law that I regularly practice in.  Just like

23  Indian tribal law, if I had a client come to me on an

24  Indian tribal question, I would have to research that.

25  I would have to look at it.  So it says what it says.  I

---

20

1  will testify there.

2      Q.  Okay.  All right.  Now let's go to Exhibit 42.

3  And would you agree with me that this is also a

4  pleading, but one that's been filed in the Fort Bend

5  County Court At Law Number 3, not in federal court?

6      A.  Would you like to hand me Exhibit 42?

7      Q.  I'm sorry.  I thought you had it.  There you

8  go.

9      A.  Thank you.

10          MR. BITGOOD:  That's the cover page.

11      A.  Right.  It was filed August 22nd, 2022,

12  plaintiff's soft objections/motion to strike defendant

13  -- to strike defendant's, quote, original, quote, answer

14  filed on 9/21/2022.

15      Q.  (BY MR. FISHER)  Okay.  Now, and that was filed

16  on September 22nd, correct?

17      A.  Yes, it was.

18      Q.  All right.  And also the letterhead at the top

19  for which this was filed is Lewis, Brisbois, Bisgaard &

20  Smith, LLP, correct?

21      A.  Yes, with a Richmond, Texas address, yes, sir.

22      Q.  So this is the entity that you held yourself

23  out as, correct?

24      A.  Yes, sir.

25      Q.  All right.

---

21

1      A.  I will also point out to you that on the

2  signature page, counsel for Richard P. Jones and Lewis,

3  Brisbois, Bisgaard & Smith under my name, LLP, a Texas

4  domestic LLP.

5      Q.  Right.  But I'm talking about the letterhead

6  right at the top.

7      A.  Yes, sir.

8      Q.  The first thing you see on the form.

9      A.  Yes, it is.

10      Q.  And that is exactly the same name as the law

11  firm whose office you're sitting in right now, correct?

12      A.  It is the same name of the foreign entity whose

13  office I am sitting in.

14          MR. FISHER:  Objection, nonresponsive.

15      Q.  (BY MR. FISHER)  Please just answer the

16  questions.

17      A.  I am answering the question.

18      Q.  It is the same name as the law firm Lewis,

19  Brisbois, Bisgaard & Smith, LLP whose office you're

20  sitting in right now, correct?  Yes or no?

21      A.  It is the same name as the law firm who -- this

22  was filed September 22nd, and it's the same name as the

23  law firm which was confirmed by the judge on

24  September 13th did not have the authority to appear in

25  Texas.  I will refer you to the findings of fact and

---

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

22

```
1  conclusions of law.  So it's the same law firm.
2      Q.  It's the same law firm that you're sitting in
3  right now, whose office you're sitting in right now,
4  correct?
5      A.  That's correct.
6      Q.  Thank you.  Ms. Norman, do you carry legal
7  malpractice insurance?
8      A.  I do not.
9          MR. BITGOOD:  Objection, form.  She was not
10 deferring that she has to worry about legal malpractice.
11         MR. FISHER:  Please confine your
12 objections --
13         MR. BITGOOD:  I said objection, form,
14 Mr. Fisher.
15         MR. FISHER:  Then that's all you should be
16 saying.
17     Q.  (BY MR. FISHER)  Have you ever carried legal
18 malpractice insurance?
19     A.  No, sir.
20     Q.  Do you have homeowner's insurance?
21         MR. BITGOOD:  Objection, form.
22     A.  I'm going to object because I don't think it's
23 relevant, so I'm not going to answer that question.
24     Q.  (BY MR. FISHER)  You're refusing to answer that
25 question?
```

23

```
1      A.  I am.
2      Q.  Do you have an umbrella insurance policy?
3          MR. BITGOOD:  Objection, form.
4      A.  Objection, form.  I'm declining to answer that
5  question, but, actually, objection, form.  It's not
6  relevant.  The answer is no.
7      Q.  (BY MR. FISHER)  Okay.  Well, it's a
8  deposition, so relevancy objections really aren't
9  appropriate.
10     A.  I disagree, but go ahead.
11     Q.  Are you still going to refuse to answer?
12         MR. BITGOOD:  She just answered.  She said
13 no.
14     A.  I said no.
15         MR. FISHER:  Mr. Bitgood, please don't
16 interrupt and please don't act like the attorney for
17 Ms. Norman.  You're not an attorney and you're certainly
18 not Ms. Norman's attorney.  She doesn't need your help.
19         MR. BITGOOD:  She's not getting any help,
20 counselor.  I have a right to make my objections.  I
21 don't know how much you like that, but I have the right
22 to do so.  But I have not advised her.
23     Q.  (BY MR. FISHER)  How do you know Brad Beers?
24     A.  That's a pretty broad question.  I know him as
25 a lawyer.
```

24

```
1      Q.  Okay.  How long have you known Brad Beers?
2      A.  I don't know, 12/13 years.
3      Q.  Okay.  Can you tell me why he's involved in the
4  formation of your partnership with Mr. Bitgood known as
5  Lewis, Brisbois, Bisgaard & Smith, LLP?
6          MR. DUNWOODY:  Object to form.
7      A.  Objection, form.  No, I can't tell you.
8      Q.  (BY MR. FISHER)  Okay.  Did you ask him to get
9  involved or did Mr. Easton or you don't know how he's
10 involved?
11     A.  I did not ask him to get involved. .
12     Q.  Okay.  Have you paid him for any legal
13 services?
14     A.  Objection, form.  No.
15     Q.  Do you know if Mr. Bitgood has paid Mr. Beers
16 or Mr. Beers's firm for any legal services?
17     A.  I have no idea.
18         MR. BITGOOD:  Objection, form.
19     Q.  (BY MR. FISHER)  Can you tell me why Mr. Beers
20 performed legal services for the partnership that you
21 formed with Mr. Bitgood known as Lewis, Brisbois,
22 Bisgaard & Smith, LLP?
23     A.  Objection, form.  No.
24     Q.  Okay.  What's the matter with the question?
25     A.  How would I know that?  I don't know that.
```

25

```
1      Q.  Okay.  Well, I asked you if you did know.
2      A.  I don't know.
3      Q.  Okay.  Do you know why Mr. Beers prepared and
4  filed the assumed name certificate?
5      A.  I have no personal knowledge of that.
6      Q.  Okay.  Do you have other knowledge perhaps
7  through conversations with others?
8      A.  No.
9      Q.  Did you ever speak to Mr. Beers about his
10 filing of an assumed name certificate for the
11 partnership that you had with Mr. Bitgood known as
12 Lewis, Brisbois, Bisgaard & Smith, LLP?
13         MR. BITGOOD:  Objection, form, broad.
14     A.  Not that I recall.
15     Q.  (BY MR. FISHER)  Okay.  Do you know who
16 prepared the assumed name certificate that was filed on
17 June 1st, 2022, for your partnership with Mr. Bitgood
18 known as Lewis, Brisbois, Bisgaard & Smith, LLP?
19     A.  You'd have to show it to me.  I don't recall
20 it.  I don't recall what you're talking about.
21     Q.  Have you ever seen the assumed name certificate
22 that was filed on June 1st, 2022?
23     A.  If you will show it to me, I'll let you know if
24 I have seen it.  I don't -- does that have an exhibit
25 number?
```

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of Vol 2 Susan C. Norman

---

**26**

1   Q. Yeah, I don't know if it's got one in your
2   depo, but I've got one right here. I'm going to hand
3   you what we have marked -- and I'm not sure if we've
4   used this yet -- as Exhibit 40 -- and ask you if you've
5   seen this document before.
6        (Exhibit 40 marked.)
7   A. Oh, I believe I have, but I don't -- I couldn't
8   tell you when.
9   Q. (BY MR. FISHER) You can keep it.
10  A. I couldn't tell you when or the circumstances
11  under it.
12  Q. And can you tell me why -- well, do you know
13  who filed that document?
14  A. No, sir.
15  Q. It says at the bottom by Brad Beers.
16  A. Yes, it does.
17  Q. Does that lead you to believe that Mr. Beers
18  filed that -- that document?
19       MR. BITGOOD: What document is that again,
20  Mr. Fisher?
21       MR. FISHER: It's Exhibit 40.
22       MR. BITGOOD: Thank you.
23  A. One could believe that.
24  Q. (BY MR. FISHER) Okay. Well, this involves
25  your partnership, does it not?

**27**

1   A. Yes.
2   Q. Okay. And what is the purpose of this assumed
3   name certificate?
4        MR. BITGOOD: Objection, form, document
5   speaks for itself. Oh, look at that, domestic limited
6   liability partner.
7        MR. FISHER: Once again, Mr. Bitgood,
8   you're not following the rules. We ask you to keep your
9   comments to yourself.
10       MR. BITGOOD: I was reading from the
11  document, Mr. Fisher. Please forgive me.
12       MR. FISHER: Read to yourself, please.
13       MR. BITGOOD: I will, sir.
14  A. It appears to be intended to be able to leave
15  off the comma LLP.
16  Q. (BY MR. FISHER) Okay.
17  A. That's what it appears to be.
18  Q. Okay. Why was that done?
19  A. I don't know. I would assume so that --
20       MR. BITGOOD: Objection, form. Objection,
21  nonresponsive.
22  A. I would assume so that there's no violation of
23  the law as your client has regularly done.
24  Q. (BY MR. FISHER) What violation would that be?
25  A. To use a name in commerce or in legal matters

**28**

1   which is not registered anywhere.
2   Q. I'm not sure I understand.
3   A. Okay.
4   Q. So can you explain?
5   A. If the official name is Lewis, Brisbois,
6   Bisgaard & Smith, LLP, creating a -- using the name
7   without the LLP is a violation of the law.
8   Q. Okay. And why is that?
9   A. Because the statute says so.
10  Q. What statute is that?
11  A. Well, let's see. Let's figure it out here.
12  Okay. It's a group of three. Texas Business and
13  Commerce Code Section 71.201, .202, .203.
14  Q. And what is the penalty or the sanction for a
15  violation of this statute?
16  A. Without going --
17       MR. BITGOOD: Objection, form.
18  A. Without looking at the statute, I don't recall.
19  It's -- I believe it's a misdemeanor as far as I can
20  recall. I don't recall the penalty.
21  Q. (BY MR. FISHER) So it's a criminal violation?
22  A. Yes, it is.
23  Q. Okay. But that's in the Texas Business
24  Organizations Code?
25  A. Business and Commerce Code. And I will point

**29**

1   out to you that this is Document 60-1, Page 3 and 4 of 8
2   entitled "Order Taking Judicial Notice" signed on
3   September 13th, 2022, by Judge Lewis White and admitted
4   as evidence in this instant case.
5        MR. FISHER: Objection, nonresponsive since
6   I didn't ask a question.
7   Q. (BY MR. FISHER) Why didn't you or Mr. Easton
8   file this form?
9        MR. BITGOOD: What was that question again,
10  Mr. Fisher?
11  A. Why would -- repeat your question.
12  Q. (BY MR. FISHER) Sure.
13       MR. FISHER: Court reporter, go ahead.
14       (Requested portion was read.)
15  A. Well --
16       MR. BITGOOD: Objection, form.
17  A. I object to the fact that you're saying neither
18  one of us filed this form because if it were filed --
19       MR. BITGOOD: Filed where?
20  A. -- with the Secretary of State, it was, by
21  definition, filed on behalf of the partnership, which is
22  Mr. Easton and myself, so I really don't understand the
23  question.
24  Q. (BY MR. FISHER) Okay. All right. I'll
25  rephrase it, then. It's a relatively simple form and

Videotaped Deposition of Vol 2 Susan C. Norman

30

1  easily accessible, especially for somebody who's an
2  attorney and especially for somebody who's providing
3  legal services as you were with this partnership, so why
4  did you need to engage another attorney to prepare and
5  file this form?
6          MR. DUNWOODY: Object to form.
7      A. Objection. I did not engage Mr. Beers, so I
8  can't tell you -- I can't answer that question.
9      Q. (BY MR. FISHER) Okay. Then why did the
10 partnership engage Mr. Beers?
11         MR. BITGOOD: Objection, form.
12     A. Why not?
13     Q. (BY MR. FISHER) I'm just asking what was the
14 reason why you engaged Mr. Beers to prepare and file or
15 at least file a very simple form?
16         MR. DUNWOODY: Object to form.
17         MR. BITGOOD: Objection, assumes a fact not
18 in evidence. Bennett, I don't want to tell you how to
19 deposition, but why didn't you ask her did you ask him
20 to do it.
21         MR. FISHER: Thank you.
22     Q. (BY MR. FISHER) Did you understand the
23 question, Ms. Norman?
24     A. Yes, I did. I understood the question, but I
25 didn't see the need for me to do anything.

31

1      Q. Okay. Do you know who prepared this form?
2          MR. DUNWOODY: Object to form.
3      A. Now that's -- we're looking at Exhibit Number
4  40?
5      Q. (BY MR. FISHER) Yes, ma'am.
6      A. Do I have it here?
7      Q. If we have another one we'll give it to you.
8          MR. FISHER: Brad, do you have it?
9      A. Okay. So what was your question?
10         MR. FISHER: Mr. Dunwoody, do you have it?
11 Allison, can you read it back?
12         (Requested portion was read.)
13         MR. DUNWOODY: That wasn't the last
14 question.
15         (Requested portion was read.)
16         MR. DUNWOODY: Objection, form.
17     A. It appears to me if you take the electronic
18 signature down below, this is by, colon, Brad Beers. It
19 could appear that Mr. Beers prepared this.
20     Q. (BY MR. FISHER) Yes, ma'am.
21     A. Okay.
22     Q. Do you know for a fact that Mr. Beers prepared
23 this form?
24         MR. DUNWOODY: Object to form.
25     A. I have not spoken with Mr. Beers about this, so

32

1  I don't know for a fact that he did.
2      Q. (BY MR. FISHER) All right. You know he's
3  being sued in this lawsuit as a defendant for, amongst
4  other things, conspiracy. Is it your testimony that
5  you've had no conversations with Mr. Beers or only no
6  conversations about this document?
7          MR. DUNWOODY: Object to form.
8      A. I don't -- I do not recall having any
9  conversations with Mr. Beers about any of the filings at
10 the Secretary of State.
11     Q. (BY MR. FISHER) Including Exhibit 40?
12     A. Including Exhibit 40.
13     Q. Okay. Was there a particular reason, if you
14 know, why on Line 7 the assumed name certificate is to
15 cover all counties as opposed to just Fort Bend County
16 or Harris County and Fort Bend County?
17     A. I don't have an answer. I don't know.
18     Q. Okay. Did you ever check the federal patent
19 and trademark office or the copyright office or any
20 other listings to see if Lewis, Brisbois, Bisgaard &
21 Smith, LLP, known as our law firm, the law firm whose
22 office you're sitting in now, ever had a registered
23 trademark?
24         MR. DUNWOODY: Object to form.
25     Q. (BY MR. FISHER) Or servicemark?

33

1      A. Actually, yes, I did.
2      Q. Okay. When?
3      A. I would have to -- I don't recall, but I do
4  recall finding that as of February 20 -- September 23rd,
5  2022, you did not have a registered trademark for the
6  words "Lewis, Brisbois, Bisgaard & Smith, LLP."
7      Q. Okay. And did you do that search sometime in
8  2022?
9      A. Yes, I did.
10     Q. Would -- do you remember whether you did that
11 search in the spring of 2022?
12     A. I recall that I did not.
13     Q. You did not do that -- any kind of search for
14 the name of our law firm at any time in the spring of
15 2022?
16     A. That is correct.
17     Q. Okay. Was it the summer of 2022 that you did
18 this search?
19     A. Mr. Fisher, I don't remember. I just remember
20 that I was stunned and amazed to find that you had no
21 trademark for this name as of September the 23rd, 2022.
22     Q. But you did discover that we had a registered
23 servicemark known as -- under the name Lewis, Brisbois,
24 Bisgaard & Smith, LLP?
25     A. What are you calling --

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

**34**

1  MR. DUNWOODY:  Object to form.

2  A.  A servicemark?

3  Q.  (BY MR. FISHER)  The name "Lewis, Brisbois,

4  Bisgaard & Smith, LLP."

5  MR. DUNWOODY:  Object to form.

6  A.  No, sir.  I found that it -- I found that your

7  right to this trademark had been cancelled, I think, ten

8  years before you filed this lawsuit.

9  Q.  (BY MR. FISHER)  Ten years?

10  A.  I think it was ten years.  I have filed in one

11  of the filings with the Court the cancellation by patent

12  and trademark office of the document filed by Bill

13  Helfand, William Helfand.  I believe it's Exhibit 1 in

14  your September 23rd, 2022, original petition where he

15  asserted that that was an active -- an active filing and

16  it was not.

17  Q.  You found that was a mistake?

18  A.  No, I found it was --

19  MR. BITGOOD:  Objection, form.

20  Q.  (BY MR. FISHER)  It was an inaccurate

21  statement?

22  A.  It was perjury.

23  Q.  Okay.  Well, that's your opinion.

24  A.  That is my opinion.

25  Q.  Because you can't possibly know what the

---

**35**

1  intention was with Mr. Helfand, could you?

2  A.  Oh, I definitely can --

3  MR. BITGOOD:  Objection.  Ms. Norman,

4  please.  Objection as to form as to what was going on in

5  Helfand's mind, which, by the way, is a very sick mind.

6  A.  I will tell you that --

7  MR. FISHER:  Objection to any sidebars like

8  that.  This is an accommodation that we've made for you,

9  Mr. Easton.  Please don't abuse it.

10  A.  My answer is that he filed a document on

11  September 23rd which contained false assertions.  He

12  continued his false assertions on October the 6th

13  knowing that only on September the 29th, 2022, did one

14  of your patent and trademark attorneys from California

15  file a new application for this four-name, comma, LLP to

16  be re -- to be granted.

17  Q.  (BY MR. FISHER)  All right.  I'm going to ask

18  the question a different way because I don't think

19  you're answering the original question.  At least

20  sometime in September or October of 2022, from your

21  searches you discovered that at one time, the name of

22  our law firm, Lewis, Brisbois, Bisgaard & Smith, LLP was

23  registered with the USPTO --

24  MR. DUNWOODY:  Object to form.

25  Q.  (BY MR. FISHER)  -- correct?

---

**36**

1  A.  Objection, form.

2  MR. BITGOOD:  Objection, form.

3  A.  I found that it was registered and cancelled.

4  Q.  (BY MR. FISHER)  Okay.  That's fine.  I

5  understand that it's -- the registration lapsed or

6  something, but the bottom line is that you were able to

7  find that at one time, Lewis, Brisbois, Bisgaard &

8  Smith, LLP, the law firm whose office you're sitting in

9  right now, had a registered trademark or servicemark?

10  MR. DUNWOODY:  Object to form.

11  A.  Okay.  I found --

12  Q.  (BY MR. FISHER)  That's your testimony?

13  MR. DUNWOODY:  Object to form.

14  A.  It is my testimony that I found prior to -- it

15  was not lapsed.  It was cancelled by the USPTO.  Those

16  are two different words.  And I have filed that

17  cancelled -- a certified copy of that cancellation of

18  record.  I found that at one time, the four-word, comma,

19  LLP -- Lewis, Brisbois, Bisgaard & Smith, LLP -- had

20  been registered as a servicemark, if you will.

21  It was cancelled, I'm going to say,

22  possibly ten years ago.  And I am going to defer to the

23  actual certified copy that was filed in this case of the

24  cancellation.

25  Q.  (BY MR. FISHER)  Okay.  But in order to be

---

**37**

1  cancelled, you have to agree with me that it had to

2  exist?

3  MR. DUNWOODY:  Object to form.

4  Q.  (BY MR. FISHER)  Agreed?

5  A.  I have to agree -- I agree with you that at one

6  point in time it existed.

7  Q.  Okay.  And as we discussed last time, you knew

8  sometime in early March of 2022 that there was a law

9  firm located in Houston, Texas in this building on this

10  floor named Lewis, Brisbois, Bisgaard & Smith, LLP --

11  MR. BITGOOD:  Objection, form.

12  Q.  (BY MR. FISHER)  -- correct?

13  MR. BITGOOD:  Assumes a fact not in

14  evidence.

15  A.  I learned in March, after March the 11th, 2022,

16  that the law firm located in this building and the

17  Dallas -- as well as in Dallas lost its authority to do

18  business in Texas via the forfeiture of its right to do

19  business as a foreign LLP.  And it's the law firm that

20  we're sitting in now, which is a California foreign LLP.

21  Q.  (BY MR. FISHER)  All right.  So without regard

22  to your legal conclusion that the law firm lost its

23  right to do business, you knew at least on March 9th, I

24  think was your testimony, maybe March 11th, that the law

25  firm known as Lewis, Brisbois, Bisgaard & Smith, LLP was

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

**38**

1  organized and was practicing law, under your assumption
2  rightfully or wrongfully, but was practicing law in
3  Houston, Texas?
4  　　　　MR. DUNWOODY: Object to form.
5  　　A. No, sir, I did not found find that out. What I
6  found was law firms don't practice law. Individual
7  lawyers practice law. So the law firm was not
8  practicing law. The law firm was apparently appearing
9  in court through its lawyers. And the law firm had no
10 right to appear as a law firm as of March the 9th, 2022.
11 　　Q. (BY MR. FISHER) But you just said that law
12 firms don't practice law.
13 　　A. That's what I said.
14 　　Q. They don't appear in court.
15 　　A. So the law firm doesn't -- you said the law
16 firm was practicing law. It was not practicing law. It
17 was acting -- it was conducting business in Texas by
18 having its lawyers represent clients and it had no
19 rights to conduct business in Texas.
20 　　Q. Okay. That's your opinion of the law, correct?
21 　　A. No, sir. It is not my opinion. When the Texas
22 Secretary of State says that you have forfeited your
23 right to do business in Texas as a law firm, that's not
24 my opinion. That is a fact.
25 　　Q. But the lawyers are practicing under the name,

**39**

1  rightfully or wrongfully, subject to penalties of a
2  misdemeanor or some other penalty, but if they're
3  practicing law under the name Lewis, Brisbois, Bisgaard
4  & Smith, LLP, that was a fact that you knew of at least
5  on March 11th, 2022?
6  　　　　MR. DUNWOODY: Object to form.
7  　　　　MR. BITGOOD: Objection, form.
8  　　Q. (BY MR. FISHER) We already had that
9  conversation. I'm just trying to go a little bit
10 further with that. You already testified that you knew
11 of the name and the law firm Lewis, Brisbois, Bisgaard &
12 Smith. Do you recall that testimony?
13 　　A. Yes.
14 　　Q. Okay. Because I think the way that you
15 explained that you knew is that David Oubre, one of the
16 attorneys in this firm in this office filed a pleading
17 in a case that you were involved in?
18 　　A. That's correct.
19 　　Q. Okay. So on that date, rightfully or
20 wrongfully, David Oubre, under the name or practicing in
21 the offices of Lewis, Brisbois, Bisgaard & Smith,
22 appeared in a pleading that you had knowledge of,
23 correct?
24 　　A. He appeared as an employee/partner/managing
25 partner of an entity that had no right to conduct

**40**

1  business in Texas. He did not appear as a sole
2  practitioner or on his own accord doing business.
3  　　Q. But rightfully or wrongfully, the law firm
4  known as Lewis, Brisbois, Bisgaard & Smith, LLP has been
5  practicing law in Texas continuously for many years,
6  correct?
7  　　　　MR. DUNWOODY: Object to form.
8  　　A. I didn't --
9  　　　　MR. BITGOOD: Objection, form. Objection,
10 form.
11 　　　　MR. FISHER: We heard you.
12 　　A. No, it has not. No.
13 　　Q. (BY MR. FISHER) No?
14 　　A. Law firms don't practice law. Law firms
15 conduct business with lawyers appearing under the rubric
16 of that name. And if that name has no authority to
17 conduct business in Texas, that's one of the reasons
18 that Judge White granted the Rule 12 motion to -- on
19 September 13th.
20 　　Q. Well, I'm going to object to --
21 　　　　MR. FISHER: Objection, nonresponsive.
22 　　Q. (BY MR. FISHER) You can't possibly speculate
23 why Judge White ruled what he did and signed what he
24 did, can you?
25 　　A. It's not speculation to know that his findings

**41**

1  of fact speak for themselves and they're admitted as
2  evidence already.
3  　　Q. All right. I'm not going to argue with that
4  part of it, but then I want to move on to May. And you
5  formed a partnership with Mr. Bitgood under the exact
6  same name as the law firm Lewis, Brisbois, Bisgaard &
7  Smith, LLP, did you not?
8  　　A. Yes.
9  　　Q. Okay. And within a week or two after that, you
10 learned that, rightfully or wrongfully, the right to do
11 business in Texas by Lewis, Brisbois, Bisgaard & Smith,
12 the California limited liability partnership, had again
13 retained the right to do business in Texas retroactive
14 to late March. You did learn that, correct?
15 　　　　MR. DUNWOODY: Object to form.
16 　　　　MR. BITGOOD: Objection. Object to the
17 form of the question.
18 　　A. I learned on June 9th, 2022, that the Secretary
19 of State had filed on that day the reapplication.
20 　　Q. (BY MR. FISHER) Reinstatement?
21 　　A. No, I don't think it -- no, it was not a
22 reinstatement. It was a new application by the
23 California entity.
24 　　Q. Okay.
25 　　A. Reinstatement would have to have occurred by

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of Vol 2 Susan C. Norman

42

1 March 9th. That was not done.

2     Q. Okay. But it was -- it was granted authority

3 retroactive to March 26th or 27th?

4     A. It was granted authority to conduct business in

5 Texas, but when I questioned the attorney for the -- I

6 got to the attorney for the Secretary of State, they

7 don't get into who has the right to conduct name under

8 that business.

9         That's why we filed a declaratory action,

10 which was granted on September 13th. The orders --

11 declaratory action seeking who had the right to use that

12 name. And --

13     Q. All right. But at least -- at least by late

14 March, this law firm had the right to conduct business

15 in Texas, did it not?

16         MR. DUNWOODY: Object to form.

17         MR. BITGOOD: Objection, form.

18     A. As of June 9th -- as of June 9th, it was shown

19 that there was the right to conduct business in Texas,

20 but until June the 9th, that authority did not appear

21 anywhere in the Texas Secretary of State website.

22     Q. (BY MR. FISHER) Okay. So it wasn't until

23 June 9th that you knew that the law firm originally

24 organized in California and whose office you're sitting

25 in right now known as Lewis, Brisbois, Bisgaard & Smith,

43

1 LLP was authorized to do business in Texas?

2         MR. DUNWOODY: Object to form.

3     A. Yes.

4     Q. (BY MR. FISHER) Okay. So for one week --

5 well, two weeks since you formed your partnership with

6 Mr. Bitgood, did you file anything in any court or send

7 any correspondence under the name "Lewis, Brisbois,

8 Bisgaard & Smith, LLP"?

9     A. You would have to look at the state court

10 record. More than likely, yes, but I don't recall the

11 filings.

12     Q. Okay. But after June 9th, you did file on

13 several occasions pleadings or correspondence under the

14 name "Lewis, Brisbois, Bisgaard & Smith, LLP," did you

15 not?

16         MR. BITGOOD: Objection, form. Assumes a

17 fact not in evidence.

18     A. Okay. Mr. Fisher, if you want to show me

19 something that you say I filed, I'm happy to confirm or

20 deny it.

21     Q. (BY MR. FISHER) Sure. We already -- well, I

22 already showed you two. One was a letter to -- I think

23 that was Exhibit 67. And then there was another

24 document that was Exhibit 42. So I showed you two.

25     A. Okay. Let me get these rearranged here. Okay.

44

1 And Document 42 was filed September 22nd, 2022, after

2 Judge White's rulings on September the 13th. So that

3 was filed, yes, sir.

4     Q. Okay. So the answer is that after you knew

5 that the law firm known as Lewis, Brisbois, Bisgaard &

6 Smith, LLP was authorized to do business in Texas, you

7 filed on more than one occasion pleadings or other

8 documents for public record under your partnership name

9 also known as Lewis, Brisbois, Bisgaard & Smith, LLP,

10 correct?

11         MR. DUNWOODY: Object to form.

12     Q. (BY MR. FISHER) Yes or no?

13         MR. BITGOOD: Objection as to form.

14     A. Yes.

15         MR. FISHER: Okay. Let's take about a

16 five-minute break.

17         MR. BITGOOD: Can you make it ten, please,

18 so I can go to the restroom, Mr. Fisher?

19         THE VIDEOGRAPHER: We are going off the

20 record. The time is 11:25.

21         (Break taken from 11:25 a.m. to 11:39 a.m.)

22         THE VIDEOGRAPHER: Going on the record.

23 The time is 11:38.

24     Q. (BY MR. FISHER) Ms. Norman?

25     A. Yes, sir.

45

1     Q. If I understand reading between the lines or

2 listening between the lines to your testimony, do you

3 think that Judge White's ruling somehow allowed you to

4 again use the name "Lewis, Brisbois, Bisgaard & Smith,

5 LLP" --

6     A. Yes, sir.

7         MR. DUNWOODY: Object to form.

8     Q. (BY MR. FISHER) -- after his ruling?

9         MR. BITGOOD: Please let us object.

10 Objection to form.

11     A. Yes, I do.

12     Q. (BY MR. FISHER) Okay. And that's because he

13 concluded somehow that -- what?

14     A. Well, I'm going to point you to the findings of

15 fact and conclusions of law.

16     Q. Well, I can read them, but I want to know what

17 it is that you think allows you to use the name of our

18 law firm in the mediation and arbitration business that

19 you set up with Mr. Bitgood?

20         MR. BITGOOD: Objection, assumes --

21 objection, form.

22     A. Objection -- objection, form. You are stating

23 a question as if it is an ongoing use of the name and it

24 is not.

25     Q. (BY MR. FISHER) What do you mean it's not

Videotaped Deposition of Vol 2 Susan C. Norman

46

1  ongoing?  It was ongoing.
2      A.  It was -- at the -- between September the 13th
3  and October the 6th, it was ongoing until it was shut
4  down October the 6th.
5      Q.  But you formed it May 26th.
6      A.  That's right.
7      Q.  So wasn't it ongoing at that point forward?
8          MR. DUNWOODY:  Object to form.
9      Q.  (BY MR. FISHER)  The duration was perpetual?
10     A.  Right, until it was shut down on October 6th.
11     Q.  Right, but until that time, it was used
12 continuously, correct?
13         MR. DUNWOODY:  Object to form.
14     A.  It was used from September the 26th or --
15 excuse me, from May 26th or 31st, whichever the date is,
16 I don't have it in front of me, until October the 6th,
17 the name was used.
18     Q.  (BY MR. FISHER)  Okay.  And you think it was
19 okay to use the name after Judge White issued his ruling
20 on September 13th?
21     A.  Yes.
22     Q.  So you think after September 13th, it was okay
23 to use the name?
24     A.  Yes.
25     Q.  Okay.  Because in your opinion, Judge White's

47

1  ruling -- first of all, Judge White's an associate judge
2  of a county court?
3      A.  Objection, form.  It assumes -- you are lacking
4  a fact.
5      Q.  Okay.  What fact?
6      A.  The fact that there was an unopposed by your
7  firm and Mr. -- and Mr. Oubre, there was an unopposed
8  order signed by the elected judge appointing Judge White
9  to all matters relating to this case.
10         So that order conferred the elected judge's
11 authority on everything Judge White did.  So if you call
12 him an associate judge, that's technically his title,
13 but he was confirmed with a specific order to hear
14 everything in this case.
15     Q.  All right.
16         MR. FISHER:  Objection, nonresponsive.
17     Q.  (BY MR. FISHER)  Let's go back to my question.
18 Judge White is an associate judge in a county court in
19 Fort Bend County, correct?
20         MR. BITGOOD:  Objection, form.
21     A.  To that extent, yes.
22     Q.  (BY MR. FISHER)  Okay.  That's all I'm asking.
23 I'm not -- not going any further than that.  All right.
24 So just to recap, the -- you think it's okay that a
25 county court ruling allowed you to usurp the name "Lewis

48

1  Brisbois, Bisgaard & Smith, LLP," the name of our law
2  firm whose office you're sitting in right now?
3          MR. DUNWOODY:  Object to form.
4          MR. BITGOOD:  Objection as to form.
5      A.  Objection as to form.  Usurp is an incorrect
6  term.
7      Q.  (BY MR. FISHER)  Okay.  How about just use?
8  You think it's okay the use the name "Lewis, Brisbois,
9  Bisgaard & Smith, LLP" after September 13th because
10 that's what Judge White -- because of something Judge
11 White ruled?
12         MR. DUNWOODY:  Object to form.
13     A.  I took Judge White's ruling to mean that, yes,
14 we had the right to use that name.
15     Q.  (BY MR. FISHER)  Okay.  Regardless of any
16 federal law including the Lanham Act?
17         MR. DUNWOODY:  Object to form.
18     A.  Federal law does not supercede state law in
19 this case.  There is concurrent jurisdiction.
20     Q.  (BY MR. FISHER)  I didn't ask about
21 jurisdiction.  I asked about the law.
22     A.  Well, in order for the law to apply, there has
23 to be jurisdiction.  So the jurisdiction of state law,
24 there's concurrent jurisdiction.  There's no -- no
25 singular jurisdiction that applies in this matter.

49

1  There is concurrent jurisdiction of state and federal
2  court.
3          And your -- this California entity made no
4  opposition to anything done in state court, specifically
5  on the hearing of August -- excuse me, September 13th.
6  Mr. Oubre made no opposition.  He called no witnesses.
7          He put -- I don't think he put in one
8  exhibit.  He didn't oppose, so yes, the state court has
9  concurrent jurisdiction and that was the first entity in
10 which this contest over the name was brought.
11     Q.  Okay.
12         MR. FISHER:  Objection, nonresponsive.
13     Q.  (BY MR. FISHER)  So let me ask it another way.
14 Would it be, in your opinion, okay in accordance with
15 law for you and Mr. Bitgood to start up using the name
16 "Lewis, Brisbois, Bisgaard & Smith, LLP" again based on
17 what you've already testified to and based on all of
18 your knowledge of facts and the law?
19         MR. DUNWOODY:  Object to form.
20     Q.  (BY MR. FISHER)  Including, by the way, I'll
21 add this, too, Judge White's order and findings of fact?
22     A.  Not without filing another -- for another
23 entity with the Texas Secretary of State.
24     Q.  Or you could file just an assumed name
25 certificate, couldn't you?

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of Vol 2 Susan C. Norman

---

**50**

1           MR. DUNWOODY: Object to form.

2    Q.  (BY MR. FISHER)  It could be Sue Norman doing

3 business as Lewis, Brisbois, Bisgaard & Smith, LLP?

4           MR. BITGOOD: Objection, form.

5    A.  No.

6    Q.  (BY MR. FISHER)  Why not?

7    A.  Because knowing that there is now at least

8 applied for trademark and that presumably you're still

9 authorized to do business in Texas, it's not something I

10 would ever consider doing.

11           THE VIDEOGRAPHER:  Excuse me, Mr. Fisher.

12 Do you have your microphone on?

13           MR. FISHER:  Wow.  I'm sorry.  That would

14 explain why you can't hear me.

15           THE VIDEOGRAPHER:  I mean, I could hear

16 you.  I could just tell the audio was a little lower.

17           MR. FISHER:  I appreciate that.  I'm sorry.

18    Q.  (BY MR. FISHER)  All right.  So if the -- but

19 as of right now, and I haven't looked, but have you

20 looked to see whether we once again have a registered

21 trademark to use or servicemark to use the name

22 "Lewis, Brisbois, Bisgaard & Smith"?

23           MR. DUNWOODY: Object to form.

24    A.  No, I have not.

25    Q.  (BY MR. FISHER)  Okay.  But if there is no

**51**

1 registered mark for Lewis, Brisbois, Bisgaard & Smith,

2 LLP, based on your knowledge of the law and the facts

3 including Judge White's order, you believe it would be

4 okay to use the name "Lewis, Brisbois, Bisgaard & Smith,

5 LLP"?

6           MR. DUNWOODY: Object to form.

7           MR. BITGOOD: Objection as to form.

8    A.  No, I would not do it.

9    Q.  (BY MR. FISHER)  Why?

10    A.  Why would I not do it?

11    Q.  Well, I didn't ask you whether you would do it.

12 I said do you think that it's okay legally?

13           MR. DUNWOODY: Object to form.

14    Q.  (BY MR. FISHER)  Do you need me to repeat the

15 whole thing?

16    A.  No, I don't, but I see where you're going with

17 this.  And until September the 16th, I believe, 2022,

18 there was not one hint from the California entity or

19 Mr. Oubre that there was any opposition to the use of

20 this name.

21    Q.  Okay.  So you think that it was okay legally to

22 use the name "Lewis, Brisbois, Bisgaard & Smith, LLP"

23 because no lawsuit had been filed?

24           MR. DUNWOODY: Objection, form.

25    A.  No, sir.  At the time that the entity -- the

**52**

1 Texas entity was formed and filed --

2    Q.  (BY MR. FISHER)  Which Texas entity?

3    A.  There's only one Texas entity.

4    Q.  You're talking about your partnership with

5 Mr. Bitgood?

6    A.  Right.

7    Q.  Okay.

8    A.  The California entity as a foreign LLP got

9 registered, and I presume will stay registered from now

10 on.  But at that time -- at the time this was formed

11 originally, there was nothing showing that it was --

12 that the California LLP was authorized to do business in

13 Texas.

14    Q.  Okay.  So I'll ask you again.  In your opinion,

15 was it legal for you to use the name, in your opinion,

16 "Lewis, Brisbois, Bisgaard & Smith, LLP" after June 9th,

17 2022?

18           MR. DUNWOODY: Object to form.

19    A.  Yes.

20           MR. BITGOOD: Form.

21    (Exhibit 58 marked.)

22    Q.  (BY MR. FISHER)  Okay.  I'm going to hand you

23 what I've marked as Exhibit 58 and ask you if you've

24 seen that document before?

25           MR. BITGOOD: What's 58? Mr. Fisher, mine

**53**

1 ends at 57.

2           MR. DUNWOODY: So this has the Bates Number

3 on it that's LBBS 247 through 259.

4    A.  This is -- purports to be an e-mail from

5 Meredith Riede to Norman Ray Giles, which is forwarding

6 your e-mail -- that her e-mail is August 17th.  She's

7 forwarding your e-mail.

8    Q.  (BY MR. FISHER)  Who's me?

9    A.  I'm sorry?

10    Q.  It says -- the forwarded e-mail says from East

11 Pro Law.

12    A.  That's right.

13    A.  That's not me.

14    A.  I didn't say me.

15    Q.  You said you.

16    A.  No -- well, you being -- I'm in the --

17    Q.  You said your e-mail.

18    A.  Okay.  Excuse me.  It's a forwarded message

19 from East Pro Law at eastprolaw@msn.com dated

20 August 17th, 2022, at 4:27 p.m. attaching an

21 un-filestamped pleading of August 17th entitled

22 "Timeline and Chronology" regarding the -- beginning

23 November 5th, 2021, going through seven -- seven pages

24 of timeline up through August 2022 regarding the

25 lawsuit -- excuse me, 22-CCV-070378.

---

Infinity Reporting Group, LLC

Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of Vol 2 Susan C. Norman

54

1    Q.  Okay.  Now, this is the -- the lawsuit that you
2 just mentioned is the lawsuit in county court that
3 involved some sort of an eviction proceeding?
4    A.  No.  'It's -- this was not an --
5    Q.  Well, what is --
6    A.  Anyway --
7    Q.  You signed this pleading, so what was this
8 lawsuit about?
9        MR. BITGOOD:  Objection as to form.
10    A.  It's a lawsuit by Richard Jones and Michael
11 Bitgood of Lewis, Brisbois, Bisgaard & Smith versus
12 Karina Martinez, Marianna Sullivan, Imperial Lofts, LLC,
13 David Oubre, Chinasa Ogbureke, Imperial Lofts Owner,
14 LLC, and the California foreign entity over various
15 thefts, violations of the CARES act, a lot of -- I won't
16 go through the entire lawsuit with you -- filed in
17 County Court At Law Number 3 of Fort Bend County.
18    Q.  (BY MR. FISHER)  Okay.  Now, just to be clear,
19 this e-mail was sent from East Pro Law,
20 eastprolaw@msn.com, correct?
21    A.  Yes.
22    Q.  Okay.  And whose e-mail address is
23 eastprolaw@msn.com?
24        MR. BITGOOD:  Objection to form.
25    A.  Michael Easton/Michael Bitgood.

55

1    Q.  (BY MR. FISHER)  Okay.  And did you know about
2 this e-mail when it was sent?
3        MR. BITGOOD:  Objection as to form.  E-mail
4 sent to who?  From Meredith Riede or from me?
5    Q.  (BY MR. FISHER)  Did you know about
6 Mr. Bitgood's e-mail to Meredith Riede?
7        MR. BITGOOD:  Thank you.
8    A.  I don't see -- I don't see my name on the
9 service list here.
10    Q.  (BY MR. FISHER)  I didn't ask that question.
11 Did you know that this e-mail was sent?
12    A.  At some point I probably did.  I don't know
13 when.
14    Q.  Okay.  You don't know whether it was soon after
15 or before?
16    A.  I don't know that I would have known before it
17 was sent.
18    Q.  So you could have known?
19        MR. BITGOOD:  Objection as to form.
20    A.  How would I know an e-mail is sent if I --
21 before it's sent?
22    Q.  (BY MR. FISHER)  Easily.  Mr. Bitgood could
23 have sent it to you and say what do you think?  I'm
24 going to send this to Meredith Riede.
25    A.  No.

56

1        MR. BITGOOD:  Why don't you ask her that?
2    A.  I'm going to object.  No, that -- I can tell
3 you that almost categorically that didn't happen.
4    Q.  (BY MR. FISHER)  Okay.  But you found out about
5 this sometime after this was sent, this e-mail?
6    A.  At some point, yes.
7    Q.  All right.  Do you know who Meredith Riede is?
8    A.  Yes, I do.
9    Q.  Can you tell the Court?
10    A.  She is -- as best I can recollect, she is the
11 Sugar Land city attorney.
12    Q.  Okay.  Do you know why this e-mail was sent by
13 Mr. Bitgood to Meredith Riede?
14    A.  August 17th.  I don't recall what events
15 happened August 17th, but I -- I have -- I had been
16 attempting to contact her regarding my client, Richard
17 Jones.
18    Q.  Okay.
19    A.  And police corruption related to him.
20    Q.  Okay.
21    A.  And got pretty much zero response from her.
22    Q.  Pretty much.  What do you mean pretty much?
23    A.  Well, I'll -- it's something -- and I don't
24 recall.  I'd have to look at the -- I would have to
25 look.  We'll get back with you.  I'll get back with you.

57

1 I don't have anything the show you.  There's no
2 complaint form, etc.
3    Q.  But you don't know whether she followed up or
4 whether she did an investigation?
5    A.  I don't remember.
6    Q.  Okay.  But she could have?
7    A.  She could have.
8    Q.  Okay.  Now, why do you think, if you know, this
9 chronology was sent to her in the form of the pleading?
10    A.  I didn't send it to her, so I would hesitate to
11 speak for Mr. Bitgood.  You can ask him in a deposition,
12 if you'd like.
13    Q.  Was this pleading filed?
14        MR. BITGOOD:  Objection, form.  The
15 pleading will speak for itself when it was filed.
16    A.  Well, there's not a file stamp on this one.
17    Q.  (BY MR. FISHER)  I know there's not a file
18 stamp.
19    A.  So I don't know.  I don't remember if it was
20 filed or not.
21    Q.  Your name is attached to it.  Do you remember
22 whether this was filed or not?
23        MR. DUNWOODY:  Object to form.
24    A.  Do you want me to guess?  It would be a guess.
25    Q.  (BY MR. FISHER)  Okay.  Did you help put

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

58

1  together this timeline?

2      A.  It does not look like I did.

3      Q.  All right.  And just for the record, this

4  document, whether it was filed or not, is in a pleading

5  form with the letterhead at the top that says "Lewis,

6  Brisbois, Bisgaard & Smith, LLP," does it not?

7          MR. DUNWOODY:  Object to form.

8      A.  It does.  It's also dated August 17th, 2022.

9      Q.  (BY MR. FISHER)  Right, which was several weeks

10  before Judge White's --

11      A.  That's correct.

12      Q.  -- ruling, right?

13      A.  Yes.

14      Q.  Okay.  And you believe that it was legally

15  permissible to file a pleading of this nature with our

16  law firm's name at the top?

17          MR. BITGOOD:  Objection as to form, our law

18  firm.

19      A.  It is not your law firm.  It's the same name as

20  your law firm, but it is not your law firm's name.  It

21  clearly delineates that this is a mediation and

22  arbitration firm that has a Richmond, Texas address.

23      Q.  (BY MR. FISHER)  Would you agree with me that

24  the names at the top are at least exactly the same as

25  the names of our law firm, of my law firm?

59

1          MR. DUNWOODY:  Object to form.

2      Q.  (BY MR. FISHER)  The law firm for which this

3  office is located and you're sitting in today?

4          MR. BITGOOD:  Objection as to form.

5      A.  Yes.

6      Q.  (BY MR. FISHER)  Okay.  Now, looking at the

7  caption itself, what was the cause of action from the

8  plaintiff articulated as Lewis, Brisbois, Bisgaard &

9  Smith, LLP against David Oubre?

10      A.  Sitting here today --

11          MR. BITGOOD:  Objection, form.  Objection

12  as to form.  Mr. Fisher, are you ever going to ask a

13  question about the federal lawsuit?  Because it appears

14  to me you're litigating state court lawsuit, which you

15  already lost.

16      Q.  (BY MR. FISHER)  Please answer the question.

17          MR. BITGOOD:  The pleading speaks for

18  itself, sir.  The facts of the pleading are attached as

19  your exhibit, so you got --

20          MR. FISHER:  Please limit your

21  participation in this deposition to objection to form,

22  Mr. Bitgood.

23          MR. BITGOOD:  Thank you, sir.

24      A.  Sitting here today, I don't recall.

25      Q.  (BY MR. FISHER)  You don't know why -- well,

60

1  let me ask it this way.  Is the plaintiff in this

2  lawsuit, 22-CCV-070378, is the plaintiff your

3  partnership with Mr. Bitgood?

4      A.  At the time --

5          MR. BITGOOD:  Object to form.

6      A.  Okay.  At the time the pleading was filed, the

7  answer is yes.

8      Q.  (BY MR. FISHER)  Okay.  And is the defendant

9  Lewis, Brisbois, Bisgaard & Smith, LLP a California

10  foreign entity, is that my law firm, the law firm that

11  we're sitting in, whose office we're sitting in today?

12          MR. BITGOOD:  Objection as to form.  The

13  document speaks for itself.  The defendant is the

14  California foreign entity.

15      Q.  (BY MR. FISHER)  Okay.  Which is my law firm?

16      A.  Which is at least this office using that name,

17  yes.

18      Q.  Okay.  What is the cause of action that gave

19  rise to Lewis, Brisbois, Bisgaard & Smith, LLP, a

20  California foreign entity, being accused of?

21          MR. BITGOOD:  Objection, form.  The

22  document speaks for itself.

23      Q.  (BY MR. FISHER)  This document does not, by the

24  way.  That's why I'm asking you as the attorney of

25  record for the plaintiffs to explain to me what was the

61

1  cause of action against my law firm?

2      A.  This has been a year ago.  There's been a lot

3  of pleadings filed.  I would have to look at the June

4  24th, 2022, fourth amended petition including

5  declaratory judgment.  Part of it -- part of that was to

6  declare who had the right to use that name.

7      Q.  Okay.  So let me ask the same question, then.

8  Why -- why did your partnership with Mr. Bitgood and why

9  did Mr. Bitgood sue Chinasa Ogbureke?

10          MR. BITGOOD:  Objection to form.

11      A.  I don't know that she at this point was still a

12  defendant.  She was nonsuited at some point.

13      Q.  (BY MR. FISHER)  Why was she sued at all?

14      A.  I would have to look.

15          MR. BITGOOD:  Objection as to form.  What

16  is this?  A sanctions hearing?

17      A.  Mr. Fisher, I would have to look at the

18  pleadings.  I'm not going to try to guess what was filed

19  when.  There's been a lot of pleadings filed.

20      Q.  (BY MR. FISHER)  Okay.  You're the attorney of

21  record.  You can't tell me why your partnership and why

22  you filed --

23      A.  Not sitting here.

24      Q.  -- a pleading --

25      A.  Not sitting here today.

Videotaped Deposition of Vol 2 Susan C. Norman

62

1    Q.  Okay.  Well, same question, then.  Why did your
2  partnership with Mr. Bitgood and/or Mr. Bitgood and/or
3  Richard Jones file a lawsuit against David Oubre?
4    A.  The same answer.  Sitting here today, I don't
5  remember the original pleading, which was superceded by
6  an amended pleading, which was superceded by another
7  amended pleading.  I don't remember which one we're
8  talking about, so until I can refresh my memory on
9  everything that was filed, I don't have an answer for
10  you.
11    Q.  Are there still claims to this day against my
12  law firm, Lewis, Brisbois, Bisgaard & Smith, LLP?
13        MR. BITGOOD:  Objection as to form.
14    Q.  (BY MR. FISHER)  Claims by any of the
15  plaintiffs that are in the lawsuit in County Court
16  Number 3 of Fort Bend County, Texas?
17        MR. BITGOOD:  Objection as to form, sir.
18    Q.  (BY MR. FISHER)  If you know.
19    A.  I don't.  I'd have to look at the current state
20  of the record and I'm not able to do that.
21    Q.  Okay.  When did you first become aware that
22  there are lawyers in my law firm, Lewis, Brisbois,
23  Bisgaard & Smith, LLP, that do work as mediators or
24  arbitrators?
25    A.  I'm not currently aware of that.

63

1    Q.  Did you ever look at the website for --
2    A.  I did.
3    Q.  -- our law firm?
4    A.  I did.  I saw nothing related to mediation or
5  arbitration.
6    Q.  Did you look at any of the attorneys in the --
7  listed in the website in the Houston office?
8    A.  Some of them.
9    Q.  Some of them?
10    A.  Uh-huh.
11    Q.  Which ones?
12    A.  William Helfand, David Oubre.
13    Q.  That was it?
14    A.  I believe so.
15    Q.  Why Helfand?
16    A.  Do you really want an answer to that?
17    Q.  I do.
18    A.  Okay.  I was completely taken aback by false
19  statements made by Mr. Helfand willingly to a federal
20  judge, false documents filed by Mr. Helfand knowing that
21  what he was filing had to be false, failures to tell,
22  for example, Judge Ellison that the certificate of
23  issuance of the trademark, I think it's 32272 -- 322172
24  -- it's like a nine- or seven-digit number had been
25  revoked, had been cancelled by the USPTO despite

64

1  Mr. Helfand actually saying as an officer of the court
2  to Judge Ellison that this was a live -- attaching it as
3  an exhibit and failing to tell him that it had been
4  cancelled, and I'm going to say possibly ten years
5  before.
6        I was quite taken aback.  And when I looked
7  on the website, that's -- I wanted to see more about
8  him.
9        (Exhibit 19 marked.)
10    Q.  (BY MR. FISHER)  I'm going to hand you what
11  I've marked as Exhibit 19 and ask you if you've seen
12  that document before whether in digital form on a screen
13  or whether on a piece of paper.
14    A.  I believe --
15        MR. BITGOOD:  Can I see, Mr. Fisher?
16        MR. FISHER:  Exhibit 19.
17        MR. BITGOOD:  Thank you, sir.
18        MR. FISHER:  Bates Number 100.
19    A.  I've seen it before.
20    Q.  (BY MR. FISHER)  Okay.  And the registration
21  date?
22    A.  February 28th, 2017.
23    Q.  Okay.  And it's registered in the name of
24  Lewis, Brisbois, Bisgaard & Smith, LLP, correct?
25        MR. DUNWOODY:  Object to form.

65

1    A.  It's actually registered Lewis, Brisbois,
2  Bisgaard & Smith, LLP, parenthesis, California limited
3  partnership, close parenthesis.
4    Q.  (BY MR. FISHER)  Okay.  That's a fair point.
5  That's a registration with the U.S. Patent and Trademark
6  Office?
7        MR. DUNWOODY:  Object to form.
8    A.  Yes, sir.
9    Q.  (BY MR. FISHER)  Okay.  Do you remember the
10  first time you've seen this?
11    A.  I don't remember the date.
12    Q.  Okay.  Would you say it was before or after
13  March 9th, 2022?
14    A.  It was after.
15    Q.  And it's a servicemark, correct?
16        MR. DUNWOODY:  Object to form.
17    A.  According to the USPTO, yes, it's a
18  servicemark.
19    Q.  (BY MR. FISHER)  Okay.  And the service is?
20    A.  Class 45, colon, legal services.
21    Q.  Okay.
22        MR. DUNWOODY:  Counsel, it's not your
23  contention that that was ever used by anybody in the
24  lawsuit, is it?
25        MR. FISHER:  What do you mean that was ever

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

**66**

1  used?

2         MR. DUNWOODY: That mark that you just put

3  out there that said 19, that LB fanciful logo.

4         MR. FISHER: Right, not the logo itself,

5  but the name, the name "Lewis, Brisbois, Bisgaard &

6  Smith, LLP."

7         MR. DUNWOODY: Right, but it's not your

8  contention that that registered -- registration number

9  5151123 was ever used by anybody in this case?

10        MR. FISHER: The logo with the L and the B

11  interconnected like that, no, that was never used in

12  I'm not contending that.

13        (Exhibit 50 marked.)

14    Q. (BY MR. FISHER) I'm going to hand you what

15  we've marked as Exhibit 50 and ask you if you've -- if

16  you recall seeing that letter before?

17    A. Yes, I have. That's a September 16th, 2022,

18  via e-mail to Mr. Bitgood and to me three days after

19  Judge White's rulings from Ms. Lubert, who styles

20  herself general counsel, Lewis, Brisbois, Bisgaard &

21  Smith, LLP.

22    Q. Do you have any reason to believe that that's

23  not her title?

24    A. Well, I can say that it was her title almost a

25  year ago. I don't know what her current title is.

---

**67**

1    Q. Okay. But you did receive that letter on

2  September 16th, 2022?

3    A. Yes.

4    Q. Okay. And you did not heed the warnings or

5  acquiesce to the request of Ms. Lubert, did you?

6         MR. BITGOOD: Objection as to form, heed

7  the warnings. What is she, a female goddess?

8    A. Would you repeat your question? Heed the

9  warning? I mean, what warning was there?

10    Q. (BY MR. FISHER) Second to last paragraph,

11  "Based on the above, we demand that you dissolve

12  immediately the entity named Lewis, Brisbois, Bisgaard &

13  Smith, LLP, and cease any further activity which serves

14  to identify yourself as our law firm.

15        MR. BITGOOD: Objection, form. Assumes the

16  fact that we were doing such a thing.

17    A. Actually, the entity was dissolved within about

18  two weeks.

19    Q. (BY MR. FISHER) But that was pursuant to a

20  finding by Judge Ellison, not pursuant to this letter,

21  correct?

22        MR. DUNWOODY: Object to form.

23        MR. BITGOOD: Objection, assumes a fact not

24  in evidence again.

25    A. That -- no, I'm not -- I can't agree to that.

---

**68**

1    Q. (BY MR. FISHER) Okay. You can't even though

2  the testimony by Mr. Bitgood was pretty clear?

3         MR. BITGOOD: What testimony is that?

4  Objection as to form.

5    A. What testimony is it you're talking about?

6  You're going to have to show me his testimony if you

7  want me to --

8    Q. (BY MR. FISHER) You don't remember the hearing

9  where Mr. Bitgood said, "Judge, I hear you. Since you

10  found that Lewis, Brisbois, Bisgaard & Smith has

11  acquired secondary meaning, we will cease and we will

12  wind up our partnership or dissolve our partnership."

13  Do you remember that testimony?

14        MR. DUNWOODY: Object to form.

15    A. I don't recall --

16        MR. BITGOOD: Objection as to form. I have

17  never testified in this case, although I'd love to.

18    A. He's never testified in this case. He's never

19  been put under oath.

20    Q. (BY MR. FISHER) So you think that if you make

21  a statement as a party to a federal judge in open court

22  that if you're not under oath, it's not testimony?

23        MR. DUNWOODY: Object to form.

24    Q. (BY MR. FISHER) Or you can lie?

25        MR. BITGOOD: Objection as to form.

---

**69**

1    A. Excuse me.

2         MR. BITGOOD: Mr. Fisher, a statement is a

3  statement. Testimony is under oath.

4         MR. FISHER: I'm not deposing you today.

5  Please limit your participation to objections to the

6  form of the question and that's it.

7         MR. BITGOOD: Okay. I'm objection to the

8  form of the question.

9    A. I don't mean to argue with you, but so far as I

10  recall, he's never been put under oath in this case.

11    Q. (BY MR. FISHER) I heard that.

12    A. Okay.

13    Q. That's not my followup question. Do you think

14  it's okay, then, for a party to make statements in open

15  court to a federal judge that are not accurate or not an

16  intention of that party if they're not under oath?

17        MR. DUNWOODY: Object to form.

18        MR. BITGOOD: Ask Helfand that question.

19    A. No, I don't think it's okay. You might -- you

20  know, as I said, I was taken aback by Mr. Helfand's

21  false statements multiple times.

22    Q. (BY MR. FISHER) I'm not talking about

23  Mr. Helfand. Was Mr. Helfand ever sanctioned? He was

24  not, was he?

25    A. Not yet.

---

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

70

1    Q.   He was not sanctioned in this case, was he?

2    A.   Nobody has been sanctioned in this case.

3 Mr. Easton has not -- Mr. Bitgood has not been

4 sanctioned.

5    Q.   Well, we received $1,000 check from you --

6    A.   Yep.

7    Q.   -- Ms. Norman, which I think was the result of

8 a sanction.

9    A.   Actually, I retract that statement, but that

10 was under duress and that's still up for grabs.

11    Q.   All right.  Once again, do you recall the

12 statements made or the testimony, however you want to

13 characterize it, by Mr. Bitgood when he acknowledged to

14 Judge Ellison that because the Court found that Lewis,

15 Brisbois, Bisgaard & Smith, LLP has acquired secondary

16 meaning that he would or you two would dissolve your

17 partnership and not continue to do business under that

18 name?

19         MR. DUNWOODY:  Object to form.

20    A.   Before I agree that Mr. Bitgood said the exact

21 words that you are stating, I will acknowledge that

22 he -- that he said that he under -- that he understood

23 that Judge Ellison, and I'm using a broad bush, had used

24 the term "secondary meaning" and that the Texas entity

25 would be dissolved.

71

1    Q.   (BY MR. FISHER)  Your partnership?

2    A.   Yes.

3    Q.   All right.  Now, did you dissolve that entity

4 pursuant to this letter reflected as Exhibit 50?

5    A.   No.

6    Q.   Okay.  Why did you dissolve the partnership,

7 then?

8    A.   Because it seemed under the circumstances that

9 it was the most expeditious way to end this frivolous

10 lawsuit.

11    Q.   All right.  Can you tell me why you would not

12 agree to an injunction precluding you from ever using

13 the words or an entity or a name known as Lewis,

14 Brisbois, Bisgaard & Smith, LLP?

15    A.   Because I am not going to -- as an attorney, I

16 will not agree to be enjoined for something that under

17 all the facts and circumstances related to this entire

18 process without a jury hearing everything.  I'm an

19 officer of the court.

20         I have said I will -- we have dissolved any

21 entity which would allow that name to be used.  And I

22 would be a fool to even consider reforming such an

23 entity, so that's -- those are my reasons, part of my

24 reasons.

25    Q.   Okay.  So you're saying you wouldn't do it, but

72

1 you won't agree to it?

2         MR. DUNWOODY:  Object to form.

3    A.   No.  I'm saying I will not agree to an

4 injunction.  If there's going to be an injunction --

5 here's the problem.  Here's part of the problem.  This

6 lawsuit was brought in a fashion that violates the

7 Palmer Doctrine, violates Rooker-Feldman, in

8 contravention of Howlett versus Rose.

9         This lawsuit was brought for an improper

10 purpose because you lost a lawsuit in state court.  And

11 a federal court does not sit as an appellate court for a

12 state court matter until and unless you go all the way

13 up to the United States Supreme Court.

14         So you have asked Judge Ellison to do

15 something that Rooker-Feldman and Palmer and the United

16 States Supreme Court says he should not/cannot do, which

17 is to override and be the appellate court to undo a

18 state court judgment.

19    Q.   (BY MR. FISHER)  All right.

20         MR. FISHER:  Objection, nonresponsive.

21 We're going to take a short break.  I want to see if

22 I've got anymore questions, and if not, then we'll take

23 a lunch break.

24         THE VIDEOGRAPHER:  We are going off the

25 record.  The time is 12:25.

73

1         (Break taken from 12:25 p.m. to 12:33 p.m.)

2         THE VIDEOGRAPHER:  We are going on the

3 record.  The time is 12:33.

4    Q.   (BY MR. FISHER)  I'm going to hand you --

5         MR. FISHER:  What exhibit number --

6         MS. NGUYEN:  We're on 68.

7    Q.   (BY MR. FISHER)  -- what I'm marking as

8 Exhibit 68.

9         (Exhibit 68 marked.)

10    A.   Yes, sir.

11    Q.   (BY MR. FISHER)  This is the -- this is similar

12 to the document -- it might be -- that was attached to

13 the e-mail to Ms. Riede that we sent you, which was

14 Exhibit 58.  And you said you didn't know whether this

15 was filed and so this is a file stamped copy.  Can you

16 identify this document as such?

17    A.   I see a file stamp at the top, August 17th,

18 2022, at 1:09 p.m.

19    Q.   And on Page 10, can you confirm that you

20 submitted this document?

21    A.   No, I cannot.

22    Q.   You cannot?

23    A.   No, sir.

24    Q.   Why not?

25    A.   Because I didn't.  If you look on Page 11, it

Videotaped Deposition of Vol 2 Susan C. Norman

74

1  was submitted by Mr. Easton.
2      Q.  No.  I'm looking at Page 10 and it says
3  "respectfully submitted."  First Mr. Bitgood is on there
4  and then you're on there as counsel for Richard P. Jones
5  and Lewis, Brisbois, Bisgaard & Smith, LLP.
6          MR. BITGOOD:  What number is this again?
7          MR. DUNWOODY:  Objection, form.
8          MR. FISHER:  It's Exhibit 68.
9          MR. BITGOOD:  I don't have 68 on my exhibit
10  list.
11          MR. FISHER:  You'll get it.
12          MR. BITGOOD:  Ms. Norman, what is the
13  document, please?
14          THE WITNESS:  It is the timeline and
15  chronology that was sent to Ms. Riede.
16      A.  I do agree that my signature block is on there.
17  I took this to mean that you're saying that I filed it,
18  but that's fine.
19      Q.  (BY MR. FISHER)  Do you take responsibility or
20  not?
21      A.  Yes, of course.
22      Q.  Okay.  And you signed it as the attorney for
23  Lewis, Brisbois, Bisgaard, and Smith, LLP, did you not?
24      A.  That's right.
25      Q.  And at the top of this document, there's

75

1  letterhead that says "Lewis, Brisbois, Bisgaard & Smith,
2  LLP," correct?
3      A.  That is correct.
4      Q.  Spelled exactly the same as my law firm,
5  correct?
6      A.  Exactly the same as the California entity, yes.
7      Q.  And exactly the same as the law firm whose
8  office yourself sitting in at this moment, correct?
9      A.  Yes.
10      Q.  Okay.  Now, if you look at the next page, the
11  certificate of service says that Michael Easton
12  certified that he served all the parties via the Texas
13  e-file system.
14      A.  That's correct.
15      Q.  Okay.  And then the next page says "Automated
16  certificate of e-service," and it says, "Michael Easton
17  on behalf of Susan Norman," and it's got your bar
18  number, correct?
19      A.  Right.
20      Q.  All right.  Can you explain to me what that
21  means to you?
22      A.  No, sir.  I do not know how the automated
23  certificates of service work.
24      Q.  And do you know whether or how Michael Easton
25  can file something on your behalf?

76

1          MR. BITGOOD:  Thomas Larson filed on
2  Bennett's behalf, something like that.
3          MR. FISHER:  Sir, I'm not taking your
4  deposition today.  Please confine your comments --
5          MR. BITGOOD:  Object as to form.
6      A.  Mr. Fisher, I do not know how the automated
7  certificate of service works.
8      Q.  (BY MR. FISHER)  Okay.  Do you know why this
9  was filed?
10      A.  Because there have been so many filings, I
11  would assume, with so many filings to correlate in one
12  place the entire chronology of filings.
13      Q.  Right, but with most pleadings, there's a
14  reason for the pleading to be filed and there's some
15  sort of relief requested.  Would you agree with me?
16      A.  Not necessarily.
17      Q.  Okay.  Well, what was the purpose for this
18  pleading, then?
19      A.  I would categorize it probably as a notice.
20  That would be a guess on my part.
21      Q.  Okay.  But your name is submitted,
22  respectfully --
23      A.  Right.
24      Q.  -- with this document.
25      A.  It's a notice of the chronology of -- it's

77

1  pretty self-explanatory.
2      Q.  Okay.  So at the bottom of Page 10 on the right
3  side where you signed it, it says you're signing as
4  counsel for Lewis, Brisbois, Bisgaard & Smith, LLP?
5      A.  That's right.
6      Q.  Were you signing on behalf of my law firm known
7  as Lewis, Brisbois, Bisgaard & Smith, LLP?
8      A.  No, sir.
9      Q.  The same law firm whose office you're sitting
10  in at this moment?
11      A.  No, sir.  Because if you'll notice on the first
12  page, your law firm is identified as Lewis, Brisbois,
13  Bisgaard & Smith, LLP, a California foreign entity.
14          MR. BITGOOD:  Hey, Jay -- I'm sorry.  I'm
15  calling my caregivers.  Jay --
16          MR. FISHER:  If this keeps up, I'm going to
17  just shut it down and if he wants to go whine to Judge
18  Ellison, I don't care.  But I'm trying to take a
19  deposition.  We're trying to accommodate him.  This is
20  not very accommodating.  This is disruptive and it's
21  been going on now for hours.
22          MR. DUNWOODY:  We all get annoyed at time
23  to time at things that happen in depositions and I think
24  we can probably suffer through it and keep him in the
25  fold.

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

78

1    MR. FISHER:  Well, I've been suffering
2 through it first several weeks ago and now today.  It's
3 taking up my time.
4    MR. DUNWOODY:  As lawyers, sometimes we
5 have to deal with insufferable things and still suffer
6 through them.
7    MR. BITGOOD:  I was calling for my
8 caregiver.  If you have a problem with that, you can go
9 ahead and call the judge.
10    MR. FISHER:  I'm not going to call the
11 judge.  I'm just going to shut you off for your
12 participation in this deposition.  You can read about it
13 later.
14    THE WITNESS:  Then you'll shut me off from
15 testifying, so take your pick.
16    MR. DUNWOODY:  We don't have to do the
17 threats and all this.  This is --
18    THE WITNESS:  Let's just get this done.
19    MR. BITGOOD:  Mr. Fisher, I'll be leaving
20 the screen for a few minutes so you can go on and do
21 what you need to do.
22    Q.  (BY MR. FISHER)  This is another example of a
23 pleading that was filed under the name "Lewis, Brisbois,
24 Bisgaard & Smith, LLP," correct?
25    A.  Yes.

---

79

1    Q.  (BY MR. FISHER)  And it was a public filing; is
2 that correct?
3    A.  That's correct.
4    Q.  I'm going to hand you -- oh, what was the date
5 on that filing, by the way?
6    A.  August 17th, 2022.
7    Q.  And the time?
8    A.  1:09 p.m.
9    Q.  Okay.  The reason why I asked is because I'm
10 going to hand you another document we're going to mark
11 as Exhibit 69.
12    (Exhibit 69 marked.)
13    Q.  (BY MR. FISHER)  And this one is the same date
14 but a couple of hours later.  And I'm going to ask you
15 to identify that document.
16    A.  This is the notice over partial nonsuit as to
17 Chinasa Ogbureke.
18    Q.  All right.  And when was this filed?
19    A.  August 17th, 2022, 5:36 p.m.
20    Q.  Okay.  And can you tell the Court why this was
21 filed?
22    A.  To the best of my recollection, it was filed
23 because we realized that -- or found out that she was no
24 longer with the California foreign entity.
25    Q.  Also known as my law firm whose office you're

---

80

1 sitting in today?
2    A.  Yes.
3    Q.  And if she was still an associate in this law
4 firm, would you still be pursuing a cause of action
5 against her?
6    A.  It would be speculation on my part to answer
7 that, so the answer is I don't know.
8    Q.  Okay.  And again, this is a pleading in the
9 county court case, County Court At Law Number 3 in Fort
10 Bend County, Case Number 22-CCV-070378, correct?
11    A.  Yes.
12    Q.  And the heading on this pleading is a
13 letterhead that reflects Lewis, Brisbois, Bisgaard &
14 Smith, LLP, correct?
15    A.  Yes.
16    Q.  And in the caption of this lawsuit, there's a
17 plaintiff named Lewis, Brisbois, Bisgaard & Smith, LLP?
18    A.  Yes.
19    Q.  And there's a defendant that is reflected as
20 Lewis, Brisbois, Bisgaard & Smith, LLP a California
21 foreign entity?
22    A.  Yes.
23    Q.  Okay.  But you didn't say on here California
24 foreign entity authorized to do business in Texas, did
25 you?

---

81

1    A.  No.
2    Q.  But that was, in fact, correct if you put that
3 on there?
4    MR. DUNWOODY:  Object to form.
5    A.  I'm sorry.  Say that again.
6    Q.  (BY MR. FISHER)  On August 17th, 2022, even you
7 would admit that Lewis, Brisbois, Bisgaard & Smith, LLP,
8 a California foreign limited liability partnership whose
9 office you're sitting in today, was authorized to do
10 business in the state of Texas?
11    A.  Yes, it was.
12    Q.  Okay.  And on your signature block on Page 2,
13 your -- under your signature, it's reflected as counsel
14 for Richard P. Jones and Lewis, Brisbois, Bisgaard &
15 Smith, LLP, correct?
16    A.  That is -- yes.  And it's consistent with the
17 plaintiff as opposed to the defendant.
18    Q.  And I'm glad that you made that distinction
19 because without which I would not know that there was a
20 distinction, so thank you.
21    MR. DUNWOODY:  Object to the sidebar.
22    Q.  (BY MR. FISHER)  I'm going to mark the next
23 document as Exhibit 70 and hand this to you and ask if
24 you've seen that before?
25    (Exhibit 70 marked.)

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

82

1    A.  Yes, I have.

2    Q.  Okay.  And this pleading was filed on what

3  date?

4    A.  August the 16th, 2022.

5    Q.  And it again is filed under the banner of the

6  name "Lewis, Brisbois, Bisgaard & Smith, LLP," correct?

7    A.  That's correct.

8    Q.  And this was filed by your partner at the time,

9  Michael Bitgood, correct?

10    A.  Yes.

11    Q.  Okay.  And did you -- when is the first time

12  you saw this pleading?

13    A.  Well, I think possibly when I was served with

14  it at -- well, I wasn't awake at 12:42 a.m., but it was

15  served electronically by automated certificate of

16  service at 12:42 a.m., although file stamped at

17  8:12 a.m.

18       (Exhibit 71 marked.)

19    Q.  (BY MR. FISHER)  All right.  I'm going to hand

20  you what I'm marking as Exhibit 71 and ask you if you've

21  seen that document before?

22    A.  Yes, I have.

23    Q.  Okay.  And you filed this on behalf of Richard

24  P. Jones and Lewis, Brisbois, Bisgaard & Smith, which

25  here you say is a Texas domestic LLP in your signature

83

1  block on Page 2?

2    A.  Yes.

3    Q.  So you don't always differentiate between my

4  law firm whose office you're sitting in today, which is

5  a California limited liability partnership authorized to

6  do business in Texas, from the partnership between you

7  and Mr. Bitgood, which claims to be solely a Texas

8  domestic LLP, but I think we've shown is really a

9  general partnership, correct?

10       MR. DUNWOODY:  Object to form.

11    Q.  (BY MR. FISHER)  No distinction?

12    A.  Objection, form.  If the answer is do I always

13  put a domestic -- did I always -- was a Texas domestic

14  LLP always placed after --

15    Q.  After the name.

16    A.  -- in my signature block, the answer is, no,

17  not always.

18    Q.  Okay.  Now, attached as Exhibit A to this

19  document, this is filed in Fort Bend County, Court At

20  Law Number 3?

21    A.  Yes.

22    Q.  Okay.  Public record?

23    A.  Yep.

24    Q.  All right.  And attached to this pleading is

25  Exhibit A?

84

1    A.  Yes.

2    Q.  Can you turn to that?

3    A.  Yes.

4    Q.  And that is a settlement offer for Karina

5  Martinez; is it not?

6    A.  Well, Exhibit A is actually a request for

7  mandatory judicial notice.

8    Q.  Well, there's two Exhibit As.

9    A.  No, there's --

10    Q.  So I'm going to ask you to look at the second

11  Exhibit A.

12    A.  Well, there's Exhibit A to Exhibit A.

13    Q.  Okay.  That's confusing.  So if you can -- if

14  you can page down one, two, three, four, five pages,

15  then do you see settlement offer for Karina Martinez?

16    A.  Yes.

17    Q.  Okay.  And that was filed as part of this

18  public record, correct?

19    A.  Yes, it was.

20    Q.  And if you take a look at the top, this is

21  filed under the banner "Lewis, Brisbois, Bisgaard &

22  Smith, LLP" and it is -- it looks like it's then written

23  to David Oubre.  Do you see that?

24    A.  I do.

25    Q.  All right.

85

1       (Zoom interruption.)

2    Q.  (BY MR. FISHER)  If you take a look at the next

3  two pages, which this is Page 5 of 7 and 6 of 7 and Page

4  7 of 7.

5    A.  Yep.

6    Q.  Do you see that it's approved by Susan C.

7  Norman for Richard P. Jones and Lewis, Brisbois,

8  Bisgaard & Smith, LLP, correct?

9    A.  Yes.

10    Q.  Then you CC Brad Beers.  Do you see that?

11    A.  Yes.

12    Q.  Okay.  Why was Brad Beers copied?

13    A.  I don't remember.

14    Q.  Did he represent any of the parties in the

15  County Court At Law Number 3 lawsuit in Fort Bend

16  County?

17    A.  Yes, I believe he did.

18       MR. FISHER:  How do we shut this off?

19       THE VIDEOGRAPHER:  He can mute himself.

20       MR. FISHER:  Well, of course he can.  He's

21  not an idiot.  He's doing this on purpose.

22       THE WITNESS:  No, he's not.

23       MR. FISHER:  Really?  We've been putting up

24  this.  Now this is the second day of deposition.

25       THE WITNESS:  I can tell you he's not doing

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

86

1  anything on purpose.
2          MR. FISHER:  So is he an idiot or does he
3  not know what he's doing?
4          MR. DUNWOODY:  Really?
5          THE WITNESS:  I don't think he realizes --
6          MR. DUNWOODY:  You know better than to do
7  the name calling.  You're better than that.
8          THE VIDEOGRAPHER:  I can mute him on my
9  end.
10         MR. DUNWOODY:  There you go.
11         MR. FISHER:  Great.  Okay.  What was my
12  last question?
13         MR. DUNWOODY:  Is he an idiot, something
14  that effect.
15         MR. FISHER:  Before that.
16         (Requested portion was read.)
17     Q.  (BY MR. FISHER)  Okay.  Who did Mr. Beers
18  represent?
19     A.  I believe he represented Michael Easton in
20  this, Michael Bitgood.
21     Q.  Oh, okay.  Because I see Michael Bitgood filing
22  pleadings on his own behalf on August 16th and 17th and
23  times before and after that.
24     A.  You'll have to talk with Mr. Beers about the
25  scope of his representation.  It's not for me to say.

87

1     Q.  Okay.  I'm just asking what you know.  Do you
2  know?
3     A.  No.
4     Q.  Okay.
5          MR. FISHER:  Are we up to 72?
6          MS. NGUYEN:  Yes.
7          (Exhibit 72 marked.)
8     Q.  (BY MR. FISHER)  Ms. Norman, I'm going to hand
9  you what I've marked as Exhibit 72.
10         THE WITNESS:  Would you please unmute
11  Mr. Bitgood so that he --
12         MR. FISHER:  He can hear.
13         THE WITNESS:  No, he's going to have to be
14  able to make an objection if he's going to do that.
15         THE VIDEOGRAPHER:  I can ask him to unmute,
16  but he has to do it on his side.
17         MR. BITGOOD:  Mr. Fisher, can I take a
18  moment of your time, please?  Mr. Fisher?
19         MR. FISHER:  Yes.  You've taken up quite a
20  few moments, so what's one more, I guess.
21         MR. BITGOOD:  Mr. Fisher, please.  I am,
22  number one, disabled.  I'm in a wheelchair.  When I have
23  to call for my caregiver, it's for good reason.  I'm not
24  trying to disrupt your deposition.  My objections have
25  been minimal.  I have caregivers around the clock

88

1  looking after me.  I cannot move from this chair.
2          Maybe you don't understand the gravity of
3  the surgery I underwent, but I'm still not walking, so
4  to move from place to place, I have to be wheeled.
5  Occasionally, you'll hear me call for my caregiver.
6  That's all that's going on.
7          MR. FISHER:  Okay.  Well, you can mute
8  yourself on that end.
9          MR. BITGOOD:  I didn't know that.  Sir, let
10  me explain something to you.  This is an iPad I'm using.
11  I'm not as technologically advanced as some.  So if
12  there's a way to mute it, show me the screen how to --
13  there, I see it now.  Mute.  I see the microphone now.
14  If that happens again, sir, I promise you I will mute my
15  end of the conversation.
16         MR. FISHER:  Thank you.
17         MR. BITGOOD:  I apologize for disrupting
18  the deposition.
19     Q.  (BY MR. FISHER)  I've handed you what's been
20  marked as Exhibit 72.  And can you describe this
21  document for the Court?
22     A.  It's the plaintiff's third amended petition for
23  declaratory relief and application for temporary
24  injunction pending trial filed in the 22-CCV-070378 case
25  on June 15th, 2022.

89

1     Q.  And this is in County Court Number 3 of Fort
2  Bend County?
3     A.  Yes.
4     Q.  Okay.  Did you prepare this pleading?
5     A.  My signature block --
6          MR. BITGOOD:  Objection, form.
7     A.  My signature block is on it.
8     Q.  (BY MR. FISHER)  Yes, your signature block is
9  there, so I asked if you prepared this pleading or
10  whether somebody prepared it for you.
11     A.  I don't recall.  This looks like my format.
12     Q.  Okay.  So that would be a yes?
13     A.  Yes.
14     Q.  And here you signed as counsel for Richard P.
15  Jones and Lewis, Brisbois, Bisgaard & Smith, LLP a Texas
16  domestic partnership?
17     A.  Yes.
18     Q.  And attached as Exhibit A is an assumed name
19  certificate?
20         MR. BITGOOD:  What number is this again,
21  Mr. Fisher?
22         THE WITNESS:  72.
23         MR. FISHER:  Exhibit 72.
24         MR. BITGOOD:  And mine at 57.
25         MR. FISHER:  We'll send them to you.

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

90

1    MR. BITGOOD:  Can you send it now so I can
2  see it, please?
3    MR. FISHER:  We'll send it in a little
4  while.
5    MR. BITGOOD:  Thank you.
6    Q.  (BY MR. FISHER)  Ms. Norman?
7    A.  Yes, sir.
8    Q.  That's an assumed name certificate that's
9  attached, correct?
10    A.  That is.
11    Q.  Okay.  And this appears to have been filed by
12  Mr. Bitgood?
13    A.  Yes.
14    MR. BITGOOD:  Again, I'm going to object.
15  I cannot make objections to an exhibit that you will not
16  furnish us.  I would ask the witness to wait until that
17  exhibit has been furnished to everybody.
18    MR. FISHER:  I'm going to tell you what
19  we're going to do, then.  We're going to take a lunch
20  break and I'm going to send by e-mail or have somebody
21  send by e-mail the Exhibits 67 through 72.  And then
22  let's mark all these and send these as well.
23    MR. BITGOOD:  Thank you.
24    MR. DUNWOODY:  Yeah, unless there's
25  something super secretive there, my guess is it's not.

91

1  Just send us a copy of whatever you think you might use
2  and we can find it and then we'll get it.
3    MR. FISHER:  Well give you give you hard
4  copies now, so all we're going to do is send it to one
5  person, but I'll send everything to you later digitally
6  if we want.
7    THE COURT REPORTER:  Do we want to go off
8  the record?
9    MR. FISHER:  Yes.  I'm sorry.
10    THE VIDEOGRAPHER:  Going off the record.
11  The time is 1 o'clock.
12    (Break taken from 1:00 p.m. to 2:01 p.m.)
13    (Exhibit 73 marked.)
14    THE VIDEOGRAPHER:  Going on the record.
15  The time is 2:01.
16    Q.  (BY MR. FISHER)  Good afternoon, Ms. Norman.
17    A.  Hello.
18    Q.  I'm going to hand you what's been marked as
19  Exhibit 73.  And can you confirm for me that that is
20  plaintiff's reply to defendant's response to motion to
21  show authority, and that is -- was filed on June 21st,
22  2022, at 12:00 a.m.?
23    MR. BITGOOD:  Object as to form.  The
24  document speaks for itself.
25    A.  I also object as to form and --

92

1    Q.  (BY MR. FISHER)  What's the nature of your --
2  reason for your objection?
3    A.  Well, first of all, it's attorney/client
4  privilege and work product privilege.  I will confirm
5  that the document is filed on June 21st, 2022, at
6  12:00 a.m. -- it says 12:00 a.m. up at the top.  I
7  confirm that my signature block is on Page 8, but other
8  than that, I've got the attorney/client privilege with
9  Mr. Jones and work product privilege.  So the document
10  speaks for itself.
11    Q.  Well, the document itself can't be privileged.
12  It was filed of public record in Fort Bend County, was
13  it not?
14    A.  Absolutely.  I agree with that.
15    Q.  Okay.
16    MR. BITGOOD:  Then read it.
17    Q.  (BY MR. FISHER)  It was filed in County Court
18  At Law Number 3, Fort Bend County?
19    A.  It was.
20    Q.  Okay.  And on your signature block, you confirm
21  that you are counsel for Richard P. Jones and Lewis,
22  Brisbois, Bisgaard & Smith, LLP, which you then describe
23  as a Texas domestic partnership, correct?
24    A.  That's correct.
25    (Exhibit 74 marked.)

93

1    Q.  (BY MR. FISHER)  All right.  Now I'm going to
2  hand you what we've marked as Exhibit 74 and ask you if
3  you've seen that document before?
4    A.  My signature block appears on Page 3.
5    Q.  Wait.  Answer my question first.
6    A.  Well, I'm telling you --
7    Q.  Have you seen this before?
8    A.  Yes, I've seen it before.
9    Q.  Okay.
10    A.  And the reason I know I've seen it before is
11  because my signature block appears.
12    Q.  Okay.
13    A.  It was filed June 23rd, 2022, 10:52 a.m.
14    Q.  And once again, you're purporting to represent
15  Richard P. Jones and Lewis, Brisbois, Bisgaard & Smith,
16  LLP, a Texas domestic partnership?
17    A.  I represent Richard P. Jones.  Lewis, Brisbois,
18  Bisgaard & Smith, a Texas domestic partnership has been
19  shut down, so to speak, with the Secretary of State and
20  is no longer in existence.
21    Q.  All right.
22    MR. FISHER:  Objection, nonresponsive after
23  you said who you represent and excluding your commentary
24  that the partnership has been shut down.
25    (Exhibit 75 marked.)

Infinity Reporting Group, LLC
Phone: 832-930-4484  Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

94

1 Q. (BY MR. FISHER) I'm going to hand you what's
2 been marked as Exhibit 75 and ask you to identify this
3 document for the record.
4 A. It is entitled "Motion to Strike the JP Court
5 and Jury Demand and Request For Judicial Notice Under
6 Texas Rule of Evidence 201" filed June 24th, 2022, in
7 County Court At Law Number 3 of Fort Bend County, Texas.
8 It contains my signature block on page 7,
9 counsel for Richard P. Jones and Lewis, Brisbois,
10 Bisgaard & Smith, LLP, a Texas domestic partnership.
11 Q. All right. Did you draft this document, this
12 pleading?
13 MR. BITGOOD: Objection, work product,
14 joint defense privilege. That is a privilege Mr. --
15 Q. (BY MR. FISHER) You can answer.
16 A. No.
17 MR. BITGOOD: No, she doesn't have to
18 answer.
19 A. No, I'm not going to answer because --
20 Q. (BY MR. FISHER) You're not going to answer
21 whether you drafted this document?
22 A. I've got a work product privilege with
23 Mr. Jones.
24 Q. I didn't ask you -- well, Mr. Jones is not --
25 is Mr. Jones still a defendant in this case?

---

95

1 A. Yes, he is. And the document speaks for
2 itself.
3 Q. All right. But you're not going to answer the
4 simple question whether you drafted this pleading?
5 A. No, sir, I'm not.
6 Q. All right. And you did --
7 A. Under the work product privilege and the
8 attorney/client privilege.
9 Q. I don't agree that that privilege applies to my
10 question, but you did submit this document to the court
11 and filing of public record, correct?
12 A. Yes.
13 (Exhibit 76 marked.)
14 Q. (BY MR. FISHER) Okay. I'm going to hand you
15 what we've marked as Exhibit 76 and ask you if you have
16 seen this document before?
17 MR. BITGOOD: Same document.
18 Q. (BY MR. FISHER) It appears to be the same
19 document as 75?
20 A. Well, I'm going --
21 Q. So I'll withdraw that question.
22 A. I'm going to look at each page, if you don't
23 mind.
24 Q. I don't mind.
25 MR. DUNWOODY: He's withdrawing the

---

96

1 question. You don't need to look. We can just move on.
2 A. It appears to be the same document filed at
3 6:39 a.m. on June 24th. Same document, same -- assert
4 the same privileges.
5 (Exhibit 77 marked.)
6 Q. (BY MR. FISHER) All right. I'm going to hand
7 you what we've marked as Exhibit 77 and ask you to
8 identify this document for the record.
9 A. Plaintiff's fourth amended petition for
10 declaratory relief and application for temporary
11 injunction pending trial filed on June 24th, 2022, at
12 8:39 a.m.
13 Plaintiff Richard Jones -- P. Jones,
14 Michael Joseph Bitgood, Lewis, Brisbois, Bisgaard &
15 Smith, LLP, filed in the County Court At Law Number 3 of
16 Fort Bend County, Texas versus Karina Martinez, Marianna
17 Sullivan, Imperial Lofts, LLC, David Oubre, Chinasa
18 Ogbureke, Lewis, Brisbois, Bisgaard & Smith, a
19 California foreign entity by me with my signature block,
20 counsel for Richard P. Jones, Lewis, Brisbois, Bisgaard
21 & Smith, a Texas domestic partnership.
22 Q. Do you know if this was the pleading that added
23 Lewis, Brisbois, Bisgaard & Smith, LLP, the California
24 limited liability partnership whose office you're
25 sitting in today as a party?

---

97

1 A. Well, the document speaks for itself and I'm --
2 farther than the document speaking for itself, I'm going
3 to object under attorney/client privilege, a work
4 product privilege.
5 Q. How do those privileges apply to asking a
6 simple question about whether this is the first time
7 that -- or the first pleading that you sued Lewis,
8 Brisbois, Bisgaard & Smith, my law firm?
9 MR. BITGOOD: Objection. Ms. Norman, if
10 you're asserting a privilege, either stand on the
11 privilege or answer his question.
12 THE WITNESS: I was getting ready to make
13 my response to that.
14 A. The document speaks for itself. I would have
15 to look back at number -- third amended petition.
16 Q. (BY MR. FISHER) All right. So in the
17 signature block on Page 14, you state that you are
18 representing Richard P. Jones and Lewis, Brisbois,
19 Bisgaard & Smith, LLP, a Texas domestic partnership?
20 A. Yes, sir.
21 Q. Of the same name as the law firm whose office
22 you're sitting in now and so --
23 A. No, sir. That's incorrect.
24 Q. Okay. You're suing Lewis Brisbois in this
25 document, in this pleading?

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

98

1    A. And if you'll notice on page --

2    Q. And you're representing a client or you're

3  representing Lewis, Brisbois, Bisgaard & Smith, LLP and

4  you are suing Lewis, Brisbois, Bisgaard & Smith, LLP,

5  and the only distinction seems to be it's a

6  California --

7    A. A California entity.

8    Q. Right. But it's the same name, right?

9    A. Well, not -- the first -- first four names with

10  the entity designation are the same, but there's a

11  qualification of a California foreign entity and then a

12  Texas domestic partnership, so not exactly the same

13  name.

14    Q. Okay. So you think that's enough of a

15  distinction for the public?

16        MR. BITGOOD: Objection as to form what the

17  public thinks.

18    A. That would be speculation on my part as to --

19  we're going to object under speculation. I don't know

20  what the public thinks.

21    Q. (BY MR. FISHER) So you have no opinion as to

22  whether that would be confusing or not?

23    A. Oh, I think there's absolutely no -- no chance

24  of confusion.

25    Q. Well, how can you think that if you can't

---

99

1  speculate for the public?

2    A. That would be my belief. As far as the public

3  goes, one's a California foreign LLP and one is a

4  domestic LLP.

5    Q. Okay. Both providing legal services, correct?

6        MR. DUNWOODY: Object to form.

7        MR. BITGOOD: We do not -- objection as to

8  form.

9    A. Actually, no.

10    Q. (BY MR. FISHER) No? What was your partnership

11  with Mr. Easton about, then, if it wasn't legal

12  services? Was it selling hamburgers?

13    A. Well, as you know --

14        MR. DUNWOODY: Object to form.

15        MR. BITGOOD: Objection to the form,

16  sarcasm.

17    A. Mediation and arbitration are not necessarily

18  legal services because you do not have to be a lawyer to

19  mediate or arbitrate.

20    Q. (BY MR. FISHER) I didn't say you had to be.

21    A. Okay.

22    Q. There's plenty of examples where mediators and

23  arbitrators are not lawyers, right?

24    A. That's correct.

25    Q. Well, at least you know now and could have

---

100

1  known then that there are lawyers who are employees and

2  who are members of Lewis, Brisbois, Bisgaard & Smith,

3  this law office for which you're sitting in today or at

4  which you're sitting in today that do conduct mediations

5  and arbitrations, right?

6    A. I don't know that for a fact.

7    Q. You still don't know that?

8    A. I still don't know that, no.

9    Q. Okay. So after almost a year of litigation,

10  you don't know that there are attorneys here who mediate

11  or arbitrate cases?

12        MR. DUNWOODY: Object to form.

13    A. Objection, form. You're arguing -- let me tell

14  you, at the time that your website was checked on the

15  scope of what lawyers did, I found nothing talking about

16  mediation and arbitration. Whether or not individual

17  lawyers may conduct mediations or may do mediations or

18  arbitrations, I don't know.

19    Q. (BY MR. FISHER) Did you hear Bill Helfand tell

20  the judge that he has mediated and arbitrated cases?

21        MR. BITGOOD: Objection as to what Bill

22  Helfand said.

23    A. I don't recall hearing that.

24    Q. (BY MR. FISHER) Okay.

25    A. Whether -- he may have said it. I'm not

---

101

1  disputing it, but --

2    Q. Do you recall that Kent Altsuler did testify in

3  the preliminary injunction hearing that he does nothing

4  but mediations as his practice?

5    A. I don't recall that, but that may be true. I'm

6  not doubting that he may have said that.

7        (Exhibit 78 marked.)

8    Q. (BY MR. FISHER) I'm going to hand you what

9  we've marked as Exhibit 78 and ask you to identify -- is

10  this not this -- no, this is different. Yeah, can you

11  identify this document?

12    A. It is entitled "Plaintiff's Reply to

13  Defendant's Amended," in quotes, "Response to the Motion

14  to Show Authority and Motion to Strike the 'affidavits'

15  of Larson, Sullivan and Martinez filed on July 11, 2022,

16  at 9:16 a.m. in Cause Number 22-CCV-070378, County Court

17  At Law Number 3 of Fort Bend County, Texas.

18    Q. Okay. And once again in the caption of this

19  lawsuit, there's a Lewis, Brisbois, Bisgaard & Smith

20  suing a Lewis, Brisbois, Bisgaard & Smith, correct?

21    A. A California foreign LLP.

22    Q. Okay.

23    A. There is a distinction.

24    Q. And on Page 7, your signature block indicates

25  you respectfully submitted this pleading on behalf of

---

Videotaped Deposition of Vol 2 Susan C. Norman

---

102

1  Richard P. Jones and Lewis, Brisbois, Bisgaard & Smith,
2  a Texas domestic partnership?
3      A.  That's correct.
4          (Exhibit 79 marked.)
5      Q.  (BY MR. FISHER)  Okay.  I'm going to hand you
6  what's been marked as Exhibit 79 and ask you to identify
7  this document.
8      A.  It's entitled "Motion to Strike the
9  'affidavits' of Larson, Sullivan and Martinez," filed
10 July 12th, 2022, at 5:49 p.m. in Cause Number
11 22-CCV-070378, County Court At Law Number 3 of Fort Bend
12 County, Texas.
13     Q.  All right.  And once again, you are
14 representing Richard P. Jones and Lewis, Brisbois,
15 Bisgaard & Smith, LLP, a Texas domestic partnership,
16 correct?
17     A.  That's correct.
18     Q.  Did you draft this pleading?
19         MR. BITGOOD:  Objection, defense privilege.
20     Q.  (BY MR. FISHER)  You can answer that question.
21     A.  I'm asserting attorney/client or work product
22 privilege.  My signature block appears, so it was filed
23 by me.
24     Q.  And you're responsible for the contents,
25 correct?

---

103

1      A.  That's correct.
2          (Exhibit 80 marked.)
3      Q.  (BY MR. FISHER)  I'm going to hand you what
4  we've marked as Exhibit 80 and I'll ask you to identify
5  that document.
6      A.  It's entitled "Plaintiff's Reply to Defendant's
7  'Amended' Plus 'Amended' Response to the Motion to Show
8  Authority" filed July 12th, 2022, at 5:52 p.m.  It's
9  filed by Richard P. Jones, Michael Joseph Bitgood a/k/a
10 Michael Easton, and Lewis, Brisbois, Bisgaard & Smith,
11 LLP against multiple individual defendants and Lewis,
12 Brisbois, Bisgaard & Smith, a California foreign LLP.
13     Q.  Okay.
14     A.  Filed on behalf of Richard P. Jones -- by me on
15 behalf of Richard P. Jones and the Texas domestic
16 partnership of Lewis, Brisbois, Bisgaard & Smith.
17     Q.  And once again, it's filed in County Court At
18 Law Number 3 of Fort Bend County, correct?
19     A.  Yes.
20         (Exhibit 81 marked.)
21     Q.  (BY MR. FISHER)  I'm going to hand you what
22 we've marked as Exhibit 81 and ask you to identify this
23 document for the Court.
24     A.  It is Plaintiff's Reply to the Amended Amended
25 Response to the Defendant's Motion to Show Authority

---

104

1  With Incorporated Motion to Strike the 'affidavits' of
2  Larson, Sullivan, and Martinez filed in County Court At
3  Law Number 3 of Fort Bend County, Texas by plaintiffs
4  including Lewis, Brisbois, Bisgaard & Smith versus
5  defendants -- individual defendants distinguishing
6  Lewis, Brisbois, Bisgaard & Smith, a California foreign
7  LLP.
8          And it's filed with my signature block for
9  Richard P. Jones and Lewis, Brisbois, Bisgaard & Smith,
10 a California -- the Texas domestic partnership with
11 various exhibits attached.
12     Q.  All right.  And you filed this pleading?
13     A.  My signature block appears and I'm responsible
14 for this pleading.
15     Q.  Okay.  Well, as much as --
16     A.  And there are other attachments to this.
17     Q.  Sure.  But as much as -- or in as much as you
18 signed this certificate of service, is it fair to say
19 that you're the one who filed this?
20     A.  I'm prepared to say that it's filed with my
21 authority.
22     Q.  Okay.  And you see the declaration of custodian
23 on there?
24     A.  Yes.
25     Q.  Okay.  Can you tell me what that means to you,

---

105

1  why that's in there?
2          MR. BITGOOD:  Objection, form.
3      A.  The -- as to why anything is in this, I'm going
4  to assert attorney/client and work product privilege and
5  the document speaks for itself.
6      Q.  (BY MR. FISHER)  Okay.  This is a public
7  record.  You realize that?
8      A.  Yes, it is.
9          MR. FISHER:  Is that calling a caregiver?
10         MR. BITGOOD:  No, I'm going to mute.
11         MR. FISHER:  Thank you.
12     Q.  (BY MR. FISHER)  All right.  So it says on here
13 Michael Easton says or Michael Bitgood a/k/a Michael
14 Easton says he's competent and he's the president of
15 Lewis m Bisgaard & Smith, LLP.  Do you see that in the
16 declaration?
17     A.  I see that.
18     Q.  Okay.  There's no distinction there between
19 whether it's Lewis, Brisbois, Bisgaard & Smith, LLP, a
20 Texas entity or a California entity, correct?  No
21 distinction is my question.
22     A.  That's correct.
23     Q.  All right.  And it's attached certain documents
24 to this pleading, right?
25     A.  Yes.

---

Videotaped Deposition of Vol 2 Susan C. Norman

106

1    Q.  All right.  And the first one is an application
2  for registration of a foreign limited liability
3  partnership.  Do you see that?
4    A.  Yes.
5    Q.  And that's an application for registration of
6  my law firm, fair enough?
7    A.  Fair enough.
8    Q.  All right.  And that was back in 2015?
9    A.  Yep, it was.
10    Q.  Any idea why that's included in this pleading
11  here?
12    MR. BITGOOD:  Objection, work product
13  privilege.  It's ongoing litigation.  We don't have to
14  tell you what we're thinking.
15    MR. FISHER:  Actually, it's a deposition
16  and that's kind of the reason for a deposition.
17    MR. BITGOOD:  I understand, Mr. Fisher, but
18  I'm making my objection.  I'm a party to that lawsuit.
19  It's still ongoing and that's my objection.  She doesn't
20  have to tell you what we're thinking.
21    A.  And I'm also making my objection under
22  attorney/client privilege and work product privilege.
23    Q.  (BY MR. FISHER)  So you're not going to answer
24  this question?
25    A.  No, sir.

107

1    Q.  Let's go to the next document, which is from
2  the Secretary of State, and it's dated September 28th,
3  2020.  Do you see that?
4    A.  No.  The one I see is dated October 23rd,
5  2015.
6    Q.  That's one we were just talking about and
7  that's Exhibit 1.
8    A.  LBBS, foreign application, 10/23/2015.  That's
9  Document 1 filed October 23rd, 2015.
10    Q.  Right.  We already talked about that.  That's
11  why I asked you why this is here and you wouldn't answer
12  that.  So now let's go to the next one.  It's
13  September 28th, 2020, from the Secretary of State.
14    A.  Yes, sir.
15    Q.  Okay.  And this is some sort of a notification
16  that the term of -- the term of authorization
17  registration will expire, correct?
18    A.  The document speaks for itself, but I will
19  confirm that that's what it appears to be.
20    Q.  Okay.  And again, why is this included in this
21  pleading?
22    A.  Attorney/client privilege.
23    MR. BITGOOD:  Objection, work --
24    A.  Work product privilege.
25    MR. BITGOOD:  Join in the same objection.

108

1    Q.  (BY MR. FISHER)  Next is Form 307, application
2  for registration of a foreign limited liability
3  partnership dated March 9th, 2021.  Do you see that?
4    A.  I see that.
5    Q.  Okay.  And that's the application for my law
6  firm to do business in the state of Texas, correct?
7    A.  An original application, yes, sir.
8    Q.  Okay.  And once again, do you know why this was
9  included in the pleading?
10    A.  And I renew the same --
11    MR. BITGOOD:  I object under the work
12  product privilege doctrine.
13    A.  Same objection as I made before, work product
14  privilege.
15    Q.  (BY MR. FISHER)  Okay.  The next document is
16  January 21st, 2022.  And again, it's notification
17  registration will expire.  Do you see that?
18    A.  Yes, sir.
19    Q.  Okay.  Now let's go to the next exhibit, which
20  is Number 7.  It's an assumed name --
21    A.  Well, actually, the next exhibit is -- let's
22  see.
23    Q.  Yeah, I guess you're right.  These are just
24  kind of listings at the Secretary of State's office?
25    A.  Yes, sir.

109

1    Q.  Okay.
2    A.  And it shows, Exhibit 6, both of your filings
3  have expired.
4    Q.  Both filings.  What's --
5    A.  Well, there are two different filing numbers.
6  One, as I recall, from the Dallas office and one from
7  the Houston office.
8    Q.  Two different offices.  Okay.
9    A.  So the next exhibit -- the next is 7.
10    Q.  The next is 7.  And this is an assumed name
11  certificate that was filed by Michael Joseph Bitgood.
12  Do you see that?
13    A.  I see that.
14    Q.  Okay.  And that's under which business, and it
15  just says Lewis, Brisbois, Bisgaard & Smith.  Do you see
16  that?
17    A.  Yes, I see that.
18    Q.  No distinction there between what -- whether
19  it's a foreign partnership or a -- or a domestic
20  partnership, correct?
21    MR. DUNMOODY:  Object to form.
22    A.  The document speaks for itself.  There is no
23  designation for any entity such as an LLP.
24    Q.  (BY MR. FISHER)  Okay.  The second page, it
25  says "Returned at counter to Susan Norman."  Do you see

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

Videotaped Deposition of Vol 2 Susan C. Norman

110

1  that?

2      A.  I do.

3      Q.  Okay.  Did you file this or did Mr. Bitgood

4  file this or did somebody else file this?

5      A.  I physically -- it shows that it was returned

6  to me at the counter, so that means that I was at the

7  counter.

8      Q.  So you filed it?

9      A.  Yes, sir.

10         MR. DUNWOODY:  Object to form.

11     Q.  (BY MR. FISHER)  Then the next document, the

12  form is Form 701, which is registration of a limited

13  liability partnership, correct?

14     A.  Yes, and I believe that's already here as one

15  of the exhibits.

16     Q.  I think it is, but once again, number two, it

17  says the partnership is a general partnership, correct?

18     A.  That's what it says.

19     Q.  All right.  By the way, did -- did your

20  partnership known as Lewis, Brisbois, Bisgaard & Smith

21  file a tax return for the year 2022?

22     A.  No.

23     Q.  Did you file an extension to file a tax return?

24     A.  There was no business conducted, so no.

25     Q.  Okay.  Well, I didn't ask you why.  I'm just

111

1  asking --

2      A.  Well, I'm just telling you no.

3      Q.  Okay.  And you're going to tell me why you

4  included these documents in this pleading?

5      A.  Under the attorney/client, work product

6  privilege, no, sir.  The documents speak for themselves.

7         MR. BITGOOD:  Same objection here.

8      Q.  (BY MR. FISHER)  All right.  And then the -- I

9  don't know if this is a separate pleading or this was an

10  attachment to the pleading that we were just talking

11  about, so let me take a look.  I think it was a separate

12  pleading, this renewal of a request on file in the case

13  now renewed and applicable to the associated associate

14  judges.  Do you see that?

15     A.  I see that.

16     Q.  All right.  Do you know if that was a separate

17  pleading or whether it was an attachment to -- I think

18  there's a list of exhibits, actually, so let me look.  I

19  think it's a separate pleading.

20     A.  It has to be a separate pleading because of the

21  filing date.

22     Q.  Yeah.  All right.  While we're looking at that,

23  though, that pleading also reflects your signature block

24  on Page 4?

25     A.  Yes, sir.

112

1      Q.  And it reflects the year purporting to

2  represent Richard P. Jones and Lewis, Brisbois, Bisgaard

3  & Smith, LLP, also designated as a Texas domestic

4  partnership, correct?

5      A.  Yes, sir.

6      Q.  All right.  Were any of these times when you

7  either filed a pleading with the letterhead Lewis,

8  Brisbois, Bisgaard & Smith or when you signed a document

9  purporting to represent Lewis, Brisbois, Bisgaard &

10  Smith, LLP at all times, I think, representing the

11  partnership between you and Mr. Bitgood, were any of

12  those accidental or did you do those purposefully?

13     A.  Even if they were accidental, my signature

14  block appears and I stand by my signature block for

15  everything that was filed.

16     Q.  Okay.

17         MR. FISHER:  Pass the witness.

18              EXAMINATION

19  BY MR. DUNWOODY:

20     Q.  Ms. Norman, you said that you met Mr. Beers

21  about 12 or 13 years ago; is that right?

22     A.  Around there, 15 years ago.  I don't remember.

23  Something like that.

24     Q.  Okay.  And at some point before this lawsuit

25  with Imperial Lofts and the formation of the Texas

113

1  entity with the Lewis Brisbois name, did Mr. Beers ever

2  serve as your attorney?

3      A.  Yes.

4      Q.  And can you briefly describe what those

5  circumstances were?

6      A.  He represented me before the State Bar of

7  Texas.

8      Q.  And was that the only occasion where he was

9  your attorney or were there others?

10     A.  There were at least -- there were two cases

11  that I recall.

12     Q.  And the Texas entity, Lewis Brisbois, you

13  understand that one of the issues in the case is whether

14  or not the Lewis Brisbois name was ever used for

15  commercial purposes.  Do you understand that?

16     A.  Yes.

17     Q.  Was there ever, to your knowledge, any use of

18  the Lewis Brisbois name for commercial purposes?

19     A.  No, other than -- a lawsuit's not a commercial

20  purpose.

21     Q.  Well, let me ask you a different way.  Did you

22  ever make any money with this Lewis Brisbois Texas

23  entity?

24     A.  No.

25     Q.  Did you ever have any prospects for making

Videotaped Deposition of Vol 2 Susan C. Norman

---

114

1　money with the Lewis Brisbois Texas entity?
2　　　A.　No.
3　　　　　　MR. FISHER:  Objection, form.
4　　　Q.　(BY MR. DUNWOODY)  Did you ever make any
5　capital contributions to the Texas entity Lewis
6　Brisbois?
7　　　A.　No.  No.
8　　　Q.　To your knowledge, did the Texas entity Lewis
9　Brisbois ever own any physical assets?
10　　　A.　No.
11　　　Q.　Did it have any bank accounts?
12　　　A.　No.
13　　　Q.　Did it ever have any revenues of any kind?
14　　　A.　No.
15　　　Q.　Did it ever have any kind of advertising that
16　was done?
17　　　A.　No.
18　　　Q.　I saw at one point a business card with the
19　name of that Texas Lewis Brisbois on it.
20　　　A.　The parody business card?
21　　　Q.　Well, I think the answer to that is yes, but I
22　was going to ask you can you please describe the
23　circumstances surrounding the creation of that business
24　card?
25　　　A.　I absolutely cannot.  I have no knowledge of

---

115

1　the circumstances of the creation of that business card.
2　　　Q.　You referred to it as a parody.  Why did you
3　say that?
4　　　A.　No sane business person would put that business
5　card together and expect that it be used for a
6　commercial purpose.
7　　　Q.　What is it about the business card that made
8　you say that -- made you say that?
9　　　A.　Well, I don't recall everything about it, but
10　as far as I recall, there was a picture of the -- I
11　forget what the name of -- a cannon on the back and
12　lettering on the back, which was -- as best I could
13　describe, it was sarcasm and a parody.
14　　　Q.　Well, I believe I've seen something about the
15　statement "come and take it."  Is that what you're
16　talking about?
17　　　A.　That's part of it, but I don't recall
18　everything on the back, but I have actually took it as
19　an absolute joke, not commercially viable business card.
20　　　Q.　Did the Texas entity ever -- Texas Lewis
21　Brisbois entity ever have any employees?
22　　　A.　No.
23　　　Q.　And you said it has not filed any tax returns?
24　　　A.　Has not.
25　　　Q.　Did that Texas Lewis Brisbois entity ever

---

116

1　provide any mediation services?
2　　　A.　No.
3　　　Q.　Did it ever provide any arbitration services?
4　　　A.　No.
5　　　Q.　Did it ever provide any kind of legal services
6　of any kind?
7　　　A.　No.
8　　　Q.　Did it ever provide any kind of services to
9　anyone?
10　　　A.　No.
11　　　Q.　Did it ever have any clients?
12　　　A.　No.
13　　　Q.　And that Texas entity has now been dissolved;
14　is that right?
15　　　A.　Yes.
16　　　Q.　One of the questions that -- or several of the
17　questions, I guess, that you got earlier were asking
18　you, you know, whether or not you might be inclined to
19　use the name "Lewis Brisbois" at some point in the
20　future.  My question to you is:  Are there any
21　circumstances where you would ever use that Lewis
22　Brisbois name at any point in the future?
23　　　A.　No.
24　　　Q.　Have you enjoyed being a party in this lawsuit?
25　　　A.　No.

---

117

1　　　Q.　Why not?
2　　　A.　It's a frivolous lawsuit designed to undo a
3　state court case which the plaintiff in this federal
4　case lost in state court by not taking appropriate
5　action by just doing nothing.
6　　　　　　It has not -- it's been a great distraction
7　from my personal life.  I take care of a disabled
8　elderly person 24 hours a day.  It has impacted my
9　private law practice with an all-day deposition like
10　this, which is not related so far as I can see to this
11　federal case.
12　　　　　　There's no -- there's no point.  I see no
13　point.  It's a frivolous lawsuit.  It appears to be
14　designed to harass and undo a state court case, so no,
15　I've not enjoyed it.
16　　　Q.　Has it been a pleasant experience for you being
17　a party in this lawsuit?
18　　　A.　No, it has not.
19　　　Q.　And you'd say it's been a distraction from your
20　law practice?
21　　　A.　It's been a complete distraction.
22　　　Q.　It's taken time away from your law practice?
23　　　A.　It's taken time away from my personal life as
24　well as from my law practice.
25　　　Q.　Did you expect to get sued for forming this

---

Infinity Reporting Group, LLC
Phone: 832-930-4484 Fax: 832-930-4485

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

---

**118**

1  Texas Lewis Brisbois entity?

2    A.  No.

3    Q.  In retrospect, do you wish that you could have

4  avoided the headache by having not formed the entity in

5  the first place?

6    A.  I would like to have avoided this headache.

7  Okay?  I would have expected the resolution of this

8  complaint to have been resolved in state court where it

9  absolutely could have been, but was not.

10    Q.  Is there any chance that a situation like this

11  would arise again in the future with you?

12    A.  No.

13        MR. DUNWOODY:  Pass the witness.

14        MR. FISHER:  Mr. Bitgood, do you have any

15  questions?

16        MR. BITGOOD:  Ms. Norman, I have a few

17  questions for you.

18            EXAMINATION

19  BY MR. BITGOOD:

20    Q.  You've been shown a litany of pleadings of

21  exhibits that are all state court pleadings.  Can you

22  recall at any time when anyone from Lewis Brisbois made

23  any objections to the state court as to the use of our

24  name Lewis Brisbois?

25        MR. FISHER:  Objection, form.

---

**119**

1    A.  No.

2    Q.  (BY MR. BITGOOD)  Can you recall at any time

3  when Lewis Brisbois objected at any time to the use of

4  the name Lewis Brisbois, a domestic partnership?

5        MR. FISHER:  Objection, form.

6    A.  No.

7    Q.  (BY MR. BITGOOD)  Do you remember Judge White

8  admonishing Mr. Oubre on August the 31st as to the

9  severity of the a Rule 12 motion?

10        MR. FISHER:  Objection, form.

11    Q.  (BY MR. BITGOOD)  In fact, the judge told him,

12  I'm not being facetious.  Do you know what you're doing?

13        MR. FISHER:  Objection, form.

14    A.  I recall that.

15    Q.  (BY MR. BITGOOD)  And that would be in Bitgood

16  Exhibits 1 through 15 that have already been admitted

17  into evidence in this case; is that correct?

18    A.  Admitted into evidence in the federal case,

19  yes.

20    Q.  Yes.  Okay.  All of these pleadings, all of

21  these matters that Mr. Fisher gave have either been

22  litigated or are pending in a state court; is that

23  correct?

24    A.  Yes, sir.

25    Q.  As an attorney, ma'am, do you understand

---

**120**

1  concurrent jurisdiction?

2    A.  I believe I do.

3    Q.  Okay.  You've read the supreme court cases

4  dealing with concurrent jurisdiction?

5    A.  Yes.

6    Q.  You also understand the Palmer Doctrine?

7    A.  Yes.

8    Q.  The Rooker-Feldman doctrine?

9    A.  Yes.

10    Q.  And you were present when Judge Ellison made

11  the following statement, that this case has outlived its

12  usefulness?

13    A.  Yes, sir, I was.

14    Q.  Okay.  And one last thing because there seems

15  to be a harp on general partnership as opposed to

16  limited.  Have you ever in your life made a

17  typographical error on a document?

18        MR. FISHER:  Objection, form.

19    A.  Yes.

20    Q.  (BY MR. BITGOOD)  Okay.  Is it possible that

21  although the top of the document says limited

22  partnership, whoever prepared it might have put general

23  partnership?

24    A.  Yes.

25    Q.  Thank you.  And again, all of this was

---

**121**

1  litigated in a state court in Fort Bend County, Texas,

2  correct?

3    A.  County Court At Law Number 3, yes.

4    Q.  And they had a chance to object to anything

5  that was going on.  Did they object?

6    A.  They being the California LLP?

7    Q.  Correct.

8    A.  Yes.

9    Q.  And do you recall when they tried to mount an

10  appeal in front of Judge Juli Mathew to Judge White's

11  ruling?

12    A.  I recall.

13    Q.  Do you remember what Judge Mathew asked Mr.

14  Braun, where is your objection to the lower court after

15  taking up two days of my associate judge's time?

16        MR. FISHER:  Objection, form.

17    A.  I recall.

18        MR. BITGOOD:  That's all I have.  Pass the

19  witness.

20        MR. FISHER:  I have a few more followup

21  questions.

22            EXAMINATION

23  BY MR. FISHER:

24    Q.  First of all, with respect to general

25  partnership and limited partnership, I think you've

---

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

122
1  already testified that you really don't know the
2  distinction between the two?
3       A.  It has been 30 years since I did anything with
4  forming any entity, so no.
5       Q.  Okay.  So if I ask you the question who -- who
6  were the general partners and who were the limited
7  partners of your partnership with Mr. Bitgood, you
8  really can't answer that?
9       A.  No.
10      Q.  Was there a partnership agreement between the
11  two of you, written partnership agreement?
12      A.  No.
13      Q.  Okay.  You said Mr. Beers represented you
14  before a State Bar of Texas proceeding?
15      A.  Yes.
16      Q.  When was that?
17      A.  Oh, my gosh.  I don't recall.  2009 maybe,
18  2000 -- I don't recall.  It was a case the state bar
19  dismissed, two cases they dismissed.
20      Q.  And what were those cases about?
21           MR. BITGOOD:  Objection, form.  Objection,
22  form.
23      A.  A grievance was filed against me, one of them
24  relating to whether or not I had given my clients money
25  to an improperly appointed guardian.

123
1       Q.  (BY MR. FISHER)  And the other one?
2       A.  An attorney filed a grievance against me for
3  representing him when it was shown that he had lied to
4  the state bar in the grievance -- the lawsuit.  The
5  grievance was dismissed.
6       Q.  Okay.  I heard all the questions by
7  Mr. Dunwoody relating to whether your partnership with
8  Mr. Bitgood had a bank account, conducted business, had
9  any clients, conducted any mediations or arbitrations.
10          But your partnership did maintain a lawsuit
11  and is now a defendant, obviously, but it did maintain a
12  lawsuit against -- as a plaintiff against my law firm,
13  did it not?
14      A.  Yes.
15      Q.  Okay.  You said you wouldn't use the name in
16  the future.  That was your statement?
17      A.  I'm not in the business of committing a crime
18  in the future, so yes, that is my statement.
19      Q.  What would the crime be?
20      A.  The crime would be using that name without
21  filing as an entity of some sort with either the
22  Secretary of State or the county.
23      Q.  Okay.  I think you said earlier you think that
24  that's -- that those facts alone give rise to a
25  misdemeanor.  That was your testimony?

124
1       A.  Use of a name without an appropriate filing
2  give rise to criminal charges.
3       Q.  All right.  You don't need to use an entity to
4  use a name.  You could just simply use some names?
5       A.  Of course you do unless you want to go --
6  unless you want to commit a crime.
7       Q.  You can use an assumed name certificate, could
8  you not?
9       A.  That is -- that is forming an entity under --
10  for use in a county.
11      Q.  Respectfully, ma'am, it's not.
12      A.  Well, that's my opinion.
13           MR. BITGOOD:  Objection, argument --
14  objection, argumentative.
15      Q.  (BY MR. FISHER)  Now you're saying that the
16  actions by my law firm in bringing this lawsuit are
17  frivolous?
18      A.  Yes.
19      Q.  That's your opinion, but what was the purpose?
20  We never really heard a stated purpose for you and
21  Mr. Bitgood forming a partnership known as Lewis,
22  Brisbois, Bisgaard & Smith, so what would that purpose
23  be if not frivolous?
24      A.  The purpose, if you look at the letterhead,
25  mediations and arbitrations.  And it goes back to

125
1  something you said earlier talking about legal services.
2           An attorney can provide legal services
3  including mediation and arbitration, but an arbitrator
4  and a mediator does not have to be an attorney.  So for
5  the standpoint of legal services, this LLP was not
6  formed for providing legal services.
7           It was to provide mediation and arbitration
8  services to persons situated such as Mr. Jones and other
9  tenants in Fort Bend County who were being wrongfully
10  evicted by the Imperial Lofts Group, Imperial Lofts,
11  Imperial Lofts, LLC, services because generally people
12  who live in apartments and tend to get -- and who are
13  getting evicted can't afford legal services, can't
14  afford to have somebody represent them at the JP level.
15      Q.  So this entity was formed, then, to represent
16  those folks and to see that justice was carried out?
17      A.  And to see that justice was carried out.  Thank
18  you.  I appreciate that phrase.
19           MR. FISHER:  Pass the witness.
20           MR. DUNWOODY:  Nothing further.
21           MR. FISHER:  Mr. Bitgood?
22                EXAMINATION
23  BY MR. BITGOOD:
24      Q.  Ms. Norman, you were aware during the COVID
25  crisis that the Texas Supreme Court urged all lawyers

126

1  and anybody who could represent people in JP court to do
2  so and come forward; is that true?
3      A. That is true.
4      Q. And you formed this entity with me to represent
5  those people in JP court at no charge; is that correct?
6      A. That is correct.
7          MR. BITGOOD: Pass the witness.
8          MR. FISHER: Objection, form on that last
9  question.
10         MR. BITGOOD: You're supposed to make the
11 objection before she answers, but we're going to let you
12 make it there.
13         MR. FISHER: Thank you.
14         THE WITNESS: Am I free to go?
15         THE VIDEOGRAPHER: Anybody else?
16         MR. FISHER: You're free to leave.
17         THE VIDEOGRAPHER: We are going off the
18 record. The time is --
19         MR. BITGOOD: In the words of the honorable
20 O'Neill Williams, go and sin no more.
21         THE VIDEOGRAPHER: We are going off the
22 record. The time is 2:52.
23         (Deposition concluded at 2:52 p.m.)
24
25

127

1                CHANGES AND SIGNATURE
2  WITNESS NAME: SUSAN C. NORMAN   DATE: AUGUST 16, 2023
3  PAGE LINE    CHANGE         REASON
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

128

1      I, SUSAN C. NORMAN, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5          _____
6                  SUSAN C. NORMAN
7
8
9  THE STATE OF _____)
10 COUNTY OF _____)
11
12     Before me, _____, on
13 this day personally appeared SUSAN C. NORMAN, known to
14 me (or proved to me under oath or through
15 _____) (description of identity
16 card or other document)) to be the person whose name is
17 subscribed to the foregoing instrument and acknowledged
18 to me that they executed the same for the purposes and
19 consideration therein expressed.
20     Given under my hand and seal of office this
21 _____ day of _____, _____.
22
23
24     _____
25     NOTARY PUBLIC IN AND FOR
       THE STATE OF _____
       COMMISSION EXPIRES: _____

129

1      IN THE UNITED STATES DISTRICT COURT
2        FOR THE SOUTHERN DISTRICT OF TEXAS
              HOUSTON DIVISION
3  LEWIS, BRISBOIS, BISGAARD   )
   & SMITH, LLP,              )
4                              )
        PLAINTIFF,             ) CIVIL ACTION NO:
5                              ) 4:22-CV-3279
   VS.                         )
6                              )
   MICHAEL JOSEPH BITGOOD      )
7  a/k/a "MICHAEL EASTON," ET  )
   AL,                         )
8                              )
        DEFENDANTS.            )
9
10       REPORTER'S CERTIFICATION
         DEPOSITION OF SUSAN C. NORMAN
11            AUGUST 16, 2023
12
13     I, Allison Garrett, Certified Shorthand Reporter in
14 and for the State of Texas, hereby certify to the
15 following:
16     That the witness, SUSAN C. NORMAN, was duly sworn
17 by the officer and that the transcript of the oral
18 deposition is a true record of the testimony given by
19 the witness;
20     I further certify that pursuant to FRCP Rule
21 30(e)(1) that the signature of the deponent:
22     XXX was requested by the deponent or a party before
23 the completion of the deposition and is to be returned
24 within 30 days from the date of receipt of the
25 transcript. If returned, the attached Changes and

**MSJ EXHIBIT 10 - DEFENDANTS' RESPONSE**

Videotaped Deposition of Vol 2 Susan C. Norman

130

1  Signature Page contains any changes and the reasons
2  therefor;
3      ___ was not requested by the deponent or a party
4  before the completion of the deposition.
5      I further certify that I am neither counsel for,
6  related to, nor employed by any of the parties or
7  attorneys in the action in which this proceeding was
8  taken.  Further, I am not a relative or employee of any
9  attorney of record in this cause, nor am I financially
10 or otherwise interested in the outcome of the action.
11     Certified to me this 31st day of August, 2023.
12
13
14  _____
        Allison Garrett, Texas CSR 8329
15      Expiration Date:  4/30/2025
        Infinity Reporting Group
16      11200 Richmond Avenue
        Suite 410
17      Houston, Texas 77082
        (832) 930-4484
18
19
20
21
22
23
24
25