United States District Court
Southern District of Texas
**ENTERED**
August 14, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LEWIS BRISBOIS BISGAARD AND SMITH LLP,** § § § | |
| Plaintiff, § § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-03279 |
| § § | |
| **MICHAEL JOSEPH BITGOOD**, *et al.*, § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

This case arises from a peculiar turn of events in which Defendants registered an entity bearing the same name as Plaintiff's law firm. Before the Court are several motions, including Motions for Summary Judgment filed by Plaintiff Lewis, Brisbois, Bisgaard, and Smith LLP ("LBBS"), Defendant Bradley B. Beers, Defendant Michael Joseph Bitgood, and Defendant Susan C. Norman. ECF Nos. 183, 185, 289, 291. Along with its Motion for Summary Judgment, LBBS moves for a permanent injunction. ECF No. 183. On August 6, 2024, the Court held a hearing on the Motions, where it stated that it would allow parties to submit supplemental briefing on or before Tuesday, August 13, 2024. Minute Entry dated 08/06/2024. The parties have submitted supplemental briefs, and the Motions are now ripe for the Court's review. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the Motions.

1

## I.  BACKGROUND

### A. Factual Background

This dispute stems from a Texas state court action. On January 7, 2022, Defendant Bitgood, along with Richard P. Jones, sued various individuals and Imperial Lofts, LLC, alleging that the state court defendants improperly charged rental fees and filed eviction proceedings against Bitgood and Jones. ECF No. 183-5. In that case, Bitgood appeared *pro se* and Defendant Norman represented Jones. *Id.* at 8. Imperial Lofts, LLC retained LBBS to defend against Bitgood's claims. David A. Oubre of LBBS's Houston office appeared as attorney-of-record and lead counsel for Imperial Lofts. On March 11, 2022, LBBS filed an answer on behalf of the underlying defendants.

After noticing that the Secretary of State's website reflected that LBBS's foreign limited liability partnership registration had lapsed, Bitgood and Norman registered a domestic limited liability partnership in Texas under the name "Lewis Brisbois Bisgaard & Smith" ("Allegedly Infringing Entity"). ECF No. 183-23. Additionally, Bitgood, Norman, and Beers worked together to file an assumed name certificate with the Texas Office of the Secretary of State. ECF No. 183-38. Beers signed the assumed named certificate "subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument." ECF No. 183-9.

Then, Norman and Bitgood filed amended petitions in the state court action that added the Allegedly Infringing Entity as a plaintiff and LBBS and David Oubre as defendants. *See* ECF No. 183-11. Norman appeared as counsel for the Allegedly Infringing Entity. The amended petitions alleged that the Allegedly Infringing Entity was the true owner of the name "Lewis Brisbois Bisgaard & Smith" and that LBBS and David Oubre were "imposters" who were using the LBBS name "in an illegal and unauthorized manner." ECF No. 183-10. In their state court

pleadings, Defendants repeatedly represented that they were counsel for the Allegedly Infringing Entity and used the following letterhead:

**Lewis Brisbois Bisgaard & Smith, LLP**
503 F.M. 359-130, Suite 216,
Richmond, Texas, 77406-2195
*Mediations & Arbitrations*

Michael Joseph Bitgood
a/k/a/ "Michael Easton"
Mediator &
International and Domestic
Arbitrator
**President**
281-415-8655
EastProLaw@msn.com

Susan Cecilia Norman
Attorney & Counselor at Law
**Vice President**
713-882-2066
Certified Mediator
SueNorman@SueNormanLaw.com

*See* ECF Nos. 183-9, 183-10, 183-12, 183-40, 183-41, 183-42, 183-43, 183-44, 183-45, 183-46, 183-47, 183-48, 183-51. Based on these representations, the state court granted Norman and Bitgood's Rule 12 Motion to Show Authority and concluded that LBBS lacked authority to appear in a Texas state court. On September 16, 2022, LBBS sent Bitgood and Norman a cease-and-desist letter, explaining that LBBS owned the "Lewis Brisbois Bisgaard & Smith" trademark by virtue of its continuous usage since 2002. ECF No. 183-13. Bennett Fisher, an attorney at LBBS, also sent a letter to Norman asking for assurances that she would cease and desist from holding herself out as an attorney for Lewis Brisbois Bisgaard & Smith. ECF No. 183-24. Rather than dissolving the allegedly infringing entity, Defendants continued to file public court documents—including in filings to this Court—and send letters on the above letterhead containing LBBS's name. ECF Nos. 8, 183-11; 183-12; 183-25, 183-26. Further, in response to LBBS's cease and desist letter, Bitgood sent an email to attorneys at LBBS with the following images:

3




ECF No. 183-14.

### B. Procedural History

On September 23, 2022, LBBS filed suit in this Court against Michael Bitgood, Susan Norman, and Bradley Beers.[1] Plaintiff's Complaint raises the following claims: (1) trademark infringement; (2) federal and state unfair competition; (3) fraud; and (4) conspiracy to infringe upon trademarks and name and to commit fraud. ECF No. 1. LBBS also moved for a Temporary Restraining Order. *Id.* On October 6, 2022, the Court held a hearing on LBBS's Motion for a Temporary Restraining Order. At the TRO hearing, Bitgood and Norman told the Court that they thought that registering the Allegedly Infringing Entity "seemed like a good business investment at the time." ECF No. 24 at 6:19–20, 7:10–11, 14:21–22. The Court entered a Temporary Restraining Order on October 7, 2022, which ordered Defendants to refrain from using Plaintiff's trademarks or representing that they are in any way affiliated with LBBS. ECF No. 14.

---

[1] Richard Jones (Bitgood's co-Plaintiff in the Imperial Lofts case) was also a named Defendant. However, LBBS has not pursued its claims against Jones. Accordingly, the Court dismisses without prejudice LBBS's claims against Jones for failure to prosecute.

On February 16, 2023, the Court issued a Preliminary Injunction with substantially similar language to the TRO. On July 31, 2024, the Fifth Circuit affirmed this Court's grant of Plaintiff LBBS's Motion for a Preliminary Injunction. *Lewis Brisbois Bisgaard & Smith, L.L.P. v. Norman*, No. 23-20065, 2024 WL 3595388 (5th Cir. July 31, 2024).[2]

## II.   LEGAL STANDARD

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely

---

[2] In its July 31, 2024 opinion, the Fifth Circuit also noted that "Norman and Beers' conduct in this case is unbecoming of the profession and likely violates several Texas Disciplinary Rules of Professional Conduct, including Rule 5.04(b) and (d), and Rule 8.04(a)(3)." *Lewis Brisbois*, 2024 WL 3595388, at *1 n.1. The Court shall determine how to proceed in light of this statement at a later date.

point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

### III. ANALYSIS

#### A. Trademark infringement and unfair competition claims

Plaintiff's first two claims are brought under sections 32 and 43 of the Lanham Act, and analogous Texas common law. The same elements apply to both causes of action. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 426 (5th Cir. 2021). To prevail, Plaintiff must prove that: (1) it has a legally protectible mark, and (2) the Defendants' use of that mark is likely to cause confusion. *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008); *see also Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). The elements of a Texas common law trademark infringement and unfair competition action are identical to the federal requirements. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010).

LBBS contends that the Fifth Circuit's recent conclusions as to the trademark infringement and unfair competition claims are controlling under the law of the case doctrine. Law of the case doctrine generally "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine extends to decisions rendered on interlocutory appeal of a preliminary injunction, so long as the appellate court "actually decided" the issues. *Royal Ins. Co.*

6

*of Am. v. Quinn-L Cap. Corp.*, 3 F.3d 877, 880–81 (5th Cir. 1993); *see also Gochicoa v. Johnson*, 238 F.3d 278, 291 (5th Cir. 2000) (Dennis, J., concurring) (if an "issue has been decided either explicitly or by implication . . . the law of the case doctrine governs"); *Minard Run Oil Co. v. U.S. Forest Serv.*, 549 F. App'x 93, 96 (3d Cir. 2013) (law of the case doctrine applied to legal conclusions in interlocutory appeal of preliminary injunction where the appellate court "had not stopped its analysis after concluding that Plaintiff-Appellees were likely to succeed on the merits of the preliminary injunction, but instead had decisively resolved the legal claims presented on appeal"); *Naser Jewelers, Inc. v. City of Concord, N.H.*, 538 F.3d 17, 20 (1st Cir. 2008) (law of the case doctrine applies where a court "has previously ruled on a motion for a preliminary injunction and 'the record before the prior panel was sufficiently developed and the facts necessary to shape the proper legal matrix we[re] sufficiently clear.'" (quoting *Cohen v. Brown Univ.*, 101 F.3d 155, 169 (1st Cir. 1996))).

Here, the Fifth Circuit did not merely conclude that LBBS was likely to succeed on the merits on its trademark infringement and unfair competition claims. It concluded that, first, the *Rooker-Feldman* doctrine did not apply, as "there was not a final state court judgment at the time LBBS filed the instant lawsuit." *Lewis Brisbois Bisgaard & Smith*, 2024 WL 3595388, at *2. Next, it concluded that "[c]ommon sense, clear concessions by Federal Defendants, and case law establish that [Defendants'] infringing uses were 'uses in commerce.'" *Id.* at 3. It further concluded that any argument that LBBS's marks had not attained secondary meaning and that LBBS is not the senior user of its unregistered mark was "meritless." *Id.* at *2 n.4. In so holding, the court explained that "[o]f course, LBBS—a national law firm that currently employs more than 1,600 lawyers across the United States in over 50 offices and that has used these marks for at least twenty years and continues to use them—has satisfied these requirements for purposes of the preliminary

injunction." *Id.* Next, the appellate court held that "Federal Defendants['] alleged infringing uses were also 'in connection with' their services—litigation—because they used the marks as source identifiers." *Id.* at *3. Lastly, the court concluded that "neither Beers nor Norman is entitled to attorney immunity for purposes of a preliminary injunction" because "[a]ttorney immunity is a form of absolute immunity, and absolute immunity does not bar "claims for injunctive relief." *Id.* at *4.

The record before the Fifth Circuit included Defendants' statements made at the TRO hearing and public filings with the "Lewis Brisbois" letterhead. Since the Court's issuance of the preliminary injunction, the record has not significantly changed; if anything, additional evidence has strengthened LBBS's case. *See Naser Jewelers*, 538 F.3d at 20 (legal conclusions in preliminary injunction decision constituted law of the case for purposes of subsequent summary judgment ruling where arguments and evidence were "essentially the same ones [the court] previously considered"). Accordingly, the Fifth Circuit's legal conclusions constitute law of the case.

The Fifth Circuit already determined that LBBS has satisfied the first prong of its trademark infringement and unfair competition claims. *Lewis Brisbois*, 2024 WL 3595388, at *2 & n.4. This Court concludes that LBBS has also satisfied the second prong, likelihood of confusion. To assess likelihood of confusion, Fifth Circuit courts consider the following non-exhaustive "digits of confusion":

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, ... (7) any evidence of actual confusion, . . . [and] (8) the degree of care exercised by potential purchasers.

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017) (quoting *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008)). No single digit is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the digits. *Smack Apparel*, 550 F.3d at 478. Here, the first seven digits all point towards a likelihood of confusion.[3]

To assess the first digit of confusion—type of mark—courts consider (1) the strength of the mark along the spectrum of "generic, descriptive, suggestive, or arbitrary and fanciful" and (2) the mark's commercial strength. *Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of L., Inc.*, 214 F. Supp. 3d 573, 585 (S.D. Tex. 2016) (Ellison, J.). LBBS's marks are strong: they have been used across the country since 2002, have been featured in many news and social media articles, and have employed legal services across the country. As to the second and third digits—similarity between marks and similarity of services—the actual and infringing marks are identical, and the Allegedly Infringing Entity purports to offer services that LBBS also offers; these digits point towards likelihood of confusion. Regarding the fourth digit, given the similarity of the services offered, the customer bases are similar. *See Houston Coll. of L.*, 214 F.Supp.3d at 590 (fourth digit weighed in favor of high likelihood of confusion where plaintiff and defendant targeted same segments of the market and provided service in same geographic area). The fifth digit weighs in favor of likelihood of confusion as well, as Defendants offered legal services by using Plaintiff's marks in public court pleadings and business cards—means of advertisement that Plaintiff also employs. Next, as to the sixth digit, Defendant's intent clearly points towards a likelihood of confusion finding. As the Fifth Circuit found,

---

[3] Plaintiffs concede that the eighth digit—degree of care exercised by potential purchasers—is not applicable here.

> [i]t is clear that the only reason Federal Defendants created the [Allegedly Infringing] Entity was to ride on the back of LBBS's goodwill and reputation in the marketplace to obtain clients for themselves. Why else would Norman and Bitgood become members of the [Allegedly Infringing] Entity and even offer the same services as LBBS?

*Lewis Brisbois*, 2024 WL 3595388, at *3. Lastly, as to the seventh digit, LBBS has offered unrebutted evidence that Defendants' infringing activity caused actual confusion. Meredith Riede, the City Attorney for the City of Sugarland, Texas, received an email from Bitgood containing LBBS letterhead. ECF No. 183-26. She forwarded the email to LBBS's counsel, questioning whether they had employed Bitgood and Norman—evincing her actual confusion stemming from Defendants' infringing activites. *Id.* All in all, the digits of confusion strongly support a finding of likelihood of confusion in this case. The only real counterargument Defendants levy is that LBBS has not shown that Defendants used the marks "in commerce." The Fifth Circuit soundly rejected that argument, explaining that "[c]ommon sense, clear concessions by Federal Defendants, and case law establish that their alleged infringing uses were 'uses in commerce.'" *Lewis Brisbois*, 2024 WL 3595388, at *3.[4]

Ultimately, the Court concludes that there is no genuine dispute of material fact, and LBBS has met both requirements for its trademark infringement and unfair competition claims under the Lanham Act and Texas Law. LBBS is therefore entitled to judgment as a matter of law on these claims.

### B. Fraud claim

The elements of fraud in Texas are:

---

[4] In any event, it is unclear whether there is a "commercial use" requirement in a trademark infringement claim. *See VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1364, 1370 (Fed. Cir. 2019); *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 93 (2d Cir. 1997); *see also Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 132–34 (2d Cir. 2009) (declining to apply a commercial use requirement to §§ 1114 and 1125(a)).

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex.2009) (per curiam)).

Plaintiff points to the following representations: (1) Bitgood and Norman filed a sworn and notarized assumed name certificate that certified that their infringing "Lewis Brisbois" entity was an "individual" and "not a limited partnership, limited liability company, limited liability partnership, or foreign filing entity," ECF No. 183-6; (2) Bitgood signed the form registering "Lewis Brisbois" "subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument," ECF No. 183-7; (3) Beers, acting in the capacity of attorney-in-fact of the infringing entity, filed an assumed name certificate on behalf of "Lewis Brisbois Bisgaard & Smith," "subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument." ECF No. 183-3.

Defendants argue that this evidence does not support Plaintiff's fraud claim because there is no evidence that Defendants' fraudulent misrepresentations induced Plaintiff to act in reliance on Defendants' representations. Here, the Court agrees with Defendants. Plaintiff knew that Defendants' representations were fraudulent and has not shown that they acted in reliance on Defendants' representations. *See FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 676 (S.D. Tex. 2010) (finding no reliance where Plaintiff "vigorously and repeatedly denied" the veracity of Defendant's representations before and during litigation). Therefore, as to

11

Plaintiff's fraud claim, Plaintiff's Motion is denied and Defendants' Motions are granted. Plaintiff's fraud claim is dismissed with prejudice.

### C. Conspiracy claims

Plaintiffs submit that Defendants conspired to engage in fraud and trademark infringement. The elements of a civil conspiracy are:

> (1) that two or more persons, (2) with an object to be accomplished, (3) with the meeting of minds on the object or course of action, (4) commit one or more unlawful or overt acts, (5) that causes damage or injury.

*Sys. One Holdings LLC v. Campbell*, Civil Action No. B: 18-cv-54, 2018 U.S. Dist. LEXIS 153965, at *10 (S.D. Tex. 2018).

Plaintiff has presented ample evidence to demonstrate that Defendants conspired to infringe upon Plaintiff's marks so as to injure Plaintiff. There is undisputed evidence in the record showing that Bitgood, Norman, and Beers' communicated extensively about registering the infringing "Lewis Brisbois" entity. *See, e.g.*, ECF Nos. 183-27–34 (emails from Norman to Bitgood); ECF No. 183-36 (text messages between Beers and Bitgood); ECF No. 183-37–38 (email from Bitgood to Beers' son, Beers, and Norman; confirmation with preliminary formation documents from Beers); ECF No. 183-39 (Beers' billing statements detailing time spent helping with infringing entity's formation). Moreover, the parties have made statements before this Court and in depositions that they were aware that the "Lewis, Brisbois, Bisgaard, & Smith" law firm existed, and that they formed their infringing entity to harm Plaintiff. Plaintiff is therefore entitled to summary judgment as to its infringement conspiracy claim. But, because Plaintiff's fraud claim fails, its claim that Defendants conspired to commit fraud also fails. *See, e.g.*, *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010).

### D. Attorney immunity

Beers and Norman contend that attorney immunity protects them from suit. The Fifth Circuit has already concluded that (1) neither Beers nor Norman is entitled to attorney immunity with respect to LBBS's claims for injunctively relief, and (2) attorney immunity is not a defense to liability; rather, it is "properly characterized as a true immunity from suit." *Lewis Brisbois Bisgaard*, 2024 WL 3595388, at *4 (quoting *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019)). Moreover, Beers and Norman have not met their burden of conclusively establishing that their involvement in the registration of the Lewis Brisbois entity falls within the scope of client representation. *See Ironshore*, 912 F.3d at 763; *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015). As such, the Court concludes that Beers and Norman are not entitled to attorney immunity.

## IV.   REMEDIES

As a result of Defendants' Lanham Act violations, LBBS seeks (1) permanent injunctive relief; (2) statutory damages in the amount of $2,000,000 against Bitgood, $2,000,000 against Norman, and $10,000 against Beers for the infringement of LBBS' trademarks; and (3) reasonable attorneys' fees. Where appropriate, it is relatively commonplace for courts to issue injunctions, statutory damages, and attorneys' fees at the summary judgment stage. *See, e.g.*, *Cynthia Hunt Prods. v. Evolution of Fitness Hous., Inc.*, No. H-07-0170, 2007 U.S. Dist. LEXIS 77630, at *11 (S.D. Tex. 2007).

## A. Permanent injunction

The Lanham Act authorizes courts to "grant injunctions . . . to prevent a violation" of Section 43(a) of the Lanham Act. 15 U.S.C. § 1116(a). To obtain a permanent injunction, LBBS must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). For trademark infringement actions, the first two elements are presumed. *Id.* (citing 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:2 (4th ed. 2001)); *see also Lewis Brisbois*, 2024 WL 3595388, at *3 ("There is also no real dispute that LBBS has shown irreparable harm.").

The balance of hardships weighs in LBBS's favor: without an injunction, it would be unable to protect its brand name and reputation. By contrast, an injunction would merely require Defendants to comply with the law. And Bitgood has stated in multiple hearings and pleadings that he does not oppose entry of a permanent injunction and has no plans to use the Lewis Brisbois name moving forward.

Last, an injunction would serve the public interest. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999).

14

Given that LBBS has satisfied all permanent injunction factors, the Court finds and holds that a permanent injunction is warranted in this case. The Court directs LBBS to submit a proposed permanent injunction order within one week of the issuance of this Memorandum & Order.

### B. Statutory damages

The Lanham Act provides that plaintiffs may recover "an award of statutory damages for any such use in connection with . . . distribution [of] services in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark . . . ; or . . . if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark." 15 U.S.C. § 1117(c).

A Lanham Act defendant's infringement is willful "if he knows his actions constitute an infringement" even if the actions were not malicious. *Flowserve Corp. v. Hallmark Pump Co.*, No. 4:09-CV-0675, 2011 WL 1527951, at *6 (S.D. Tex. Apr. 20, 2011) (Ellison, J.) (quoting *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). Infringement can also be willful where a defendant acts with "reckless disregard" for or "willful blindness" to the rights of an owner. *Berg v. Symons*, 393 F.Supp.2d 525, 540 (S.D. Tex. 2005) (citing *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir.2005)). Ignoring a cease-and-desist letter may constitute "willful and deliberate" conduct. *See Chevron Intellectual Prop., LLC v. Allen*, No. 7:08–CV–98–O, 2009 WL 2596610, at *3–4 (N.D. Tex. Aug.24, 2009). The defendant's knowledge need not be proven directly, but may be inferred from the defendant's conduct. *See Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F.Supp.2d 435, 441 (D. Del. 2005).

As noted above, Defendants stated in depositions, court hearings, and Law 360 interviews that they purposely "took" LBBS's name. They continued to use the LBBS name in court filings and correspondence despite knowing that it was the exact name of the LBBS law

15

firm. Moreover, in response to LBBS's cease-and-desist letter, Bitgood sent a photograph of a business card bearing the information of the Allegedly Infringing Entity, as well as a message telling LBBS attorneys to "come and take it." ECF No. 183-14. The Court finds that Defendants' infringement was willful.

While the Court is hesitant to further delay resolution of this straightforward manner, it is also aware that Defendants have largely not addressed what an appropriate damage award is in this case. Accordingly, the Court orders parties to file supplemental briefs within two weeks of the entry of this Memorandum and Order, addressing appropriate damage awards for Bitgood, Norman, and Beers. Each party will then have one week to respond to the opposing side's brief. The briefs should bear in mind the Court's findings regarding liability and willfulness.[5]

### C. Attorneys' fees

Finally, LBBS seeks reimbursement for its attorneys' fees against all Defendants. The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Supreme Court explained in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. 545, 554 (2014). *Octane Fitness* instructs district courts to assess whether a case is exceptional by "considering the totality of the circumstances," and suggests

---

[5] Relevant considerations may include "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, No. H-07-0315, 2007 U.S. Dist. LEXIS 68182, at *8 (S.D. Tex. 2007). These considerations may—and, in all likelihood, will—lead to different damage awards as to each Defendant.

that the following factors, while not exclusive, may be relevant: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

If any Lanham Act case is exceptional, it is this one. Defendants have filed dozens of frivolous motions and delayed the proceedings for months.[6] The Court finds and holds that LBBS is entitled to reasonable attorneys' fees expended in prosecution of its claims.[7] LBBS may submit a claim for attorneys' fees and costs within thirty days of entry of final judgment in this case.

## V. CONCLUSION

In sum, the Court **GRANTS IN PART AND DENIES IN PART** the parties' Motions (ECF Nos. 183, 185, 289, 291). As to LBBS's claims for trademark infringement, unfair competition, and conspiracy to infringe, the Court **GRANTS** Plaintiff's Motion and **DENIES**

---

[6] While this is true of all Defendants, it is most egregious in Bitgood's case. Ordinarily, all non-attorney *pro se* litigants must deliver or mail filings to the Clerk's Office, as detailed in the Southern District of Texas' Guidelines for Litigants Without Lawyers. Despite this rule, in October 2022, Defendant Bitgood requested ECF access, representing to the Court that he is physically disabled and has severe mobility problems, that he "previously underwent PACER training," and that he would "respect, and not abuse, the privilege" of ECF access. ECF No. 5 at 6 & n.3. Based on these representations, in November 2022, the Court granted Bitgood's request. ECF No. 50. Since then, by this Court's count, Bitgood has filed 65 separate motions and documents in this case, all while representing that he required an additional six months beyond the deadline to respond to Plaintiff's Motion for Summary Judgment. *See* ECF Nos. 60, 61, 67, 69, 71, 73, 77, 81, 85, 86, 87, 92, 93, 101, 108, 115, 117, 118, 121, 127, 130, 147, 147, 150, 153, 154, 157, 160, 161, 187, 203, 205, 206, 213, 214, 219, 223, 224, 230, 233, 234, 239, 242, 245, 249, 252, 254, 258, 262, 265, 271, 272, 273, 278, 288, 289, 295, 297, 298, 301, 308, 310, 311, 315, 319. This Court has had complex, multi-year class actions require far fewer filings than this straightforward infringement case. Moreover, Bitgood's filings have, among other things, levied baseless personal attacks against LBBS attorneys and this Court. The Court has been extraordinarily patient with Bitgood and accommodating of his accessibility-related requests. However, in hindsight, the Court should not have provided Bitgood with ECF access, as his conduct has plainly abused such access. The Court now revokes Bitgood's ECF access. To the extent additional filings are necessary, Bitgood should deliver or mail filings to the Clerk's Office, as is typically required.

[7] Bitgood argues that attorneys fees are improper in this case given well-established law that a lawyer who represents themselves is not entitled to fees under 42 U.S.C.A. § 1988. *Kay v. Ehrler*, 499 U.S. 432, 438 (1991). The Court rejects this argument. The Fifth Circuit has held that *Kay* does not prevent a law firm represented by its attorneys from collecting attorney fees under a fee shifting statute. *Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.*, 236 F.3d 214, 218–19 (5th Cir. 2000).

Defendants' Motions. As to LBBS's claims for fraud and conspiracy to commit fraud, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motions. Those claims are **DISMISSED WITH PREJUDICE**. Further, all claims against Defendant Jones are **DISMISSED WITHOUT PREJUDICE**. Finally, the Court **GRANTS** LBBS's Motion for a Permanent Injunction (ECF No. 183).

LBBS is **ORDERED** to submit a proposed Preliminary Injunction Order within **one week** of the issuance of this Memorandum and Order. It is further **ORDERED** to submit a claim for attorneys' fees and costs within **thirty days** following entry of final judgment in this case.

All parties may file supplemental briefs within **two weeks** of the entry of this Memorandum and Order that address appropriate damage awards for Bitgood, Norman, and Beers. Each party will then have **one week** to respond to the opposing side's brief.

All other pending motions (ECF Nos. 203, 213, 219, 221, 230, 252, 271, 273, 287, 298, 301, 302, 320) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 14th day of August, 2024.

_____
Keith P. Ellison
United States District Judge