Peter J. Riga, *Ph. D. J.S.D. J.D. LL. M .St. D .Th. D . Ph. L. [Emeritus 2003]*
**(October 29ᵗʰ 1933-March 29ᵗʰ 2018)**
*"In Loving Memory"*
**Attorney & Counselor at Law**
**********************

**MICHAEL JOSEPH BITGOOD**
**D/B/A/ "Michael Easton"**
**Mediator/ International and Domestic Arbitrator** [1]
**503 FM 359-130, Suite 116, Richmond, Texas, 77406-2195**

United States Courts
Southern District of Texas
**F I L E D**

SEP 2 0 2024

Nathan Ochsner, Clerk of Court

(281) 415-8655 (Direct)          EastProLaw@msn.com

---

August 28, 2024

The Honorable Keith P. Ellison
United States District Judge
515 Rusk Street,
Houston, Texas 77002
c/o Arturo_Rivera@txs.uscourts.gov

**In re: 4:22-cv-03279, Lewis Brisbois, *et al* v Bitgood, *et al*,
In the United States District Court, Southern District of Texas**

---

## I.  REQUEST FOR A *VACATUR* & EVIDENTIARY HEARING

## [BRIEF ON STATUTORY DAMAGES]

Dear Judge Ellison:

1.     In response to your order of August 14, 2024, I adopt and incorporate
Mr. Beers' objections as to statutory damages, namely, that none should
be assessed against us given the following UNDISPUTED facts in this
record.

2.     On September 28, 2022, **a mere five (5) days after Plaintiff *pro
se* filed suit**, I sent the Plaintiff a letter, with copy to the Court  offering
to submit the entire case to you at that point on stipulated facts– that is---

---

[1]

A.A. White Dispute Resolution Institute- University of Houston School of
Law.

their complaint vs. the state court record. Both instruments are in the record, and I concluded by saying: *"If the Judge says the "name" (Lewis Brisbois) is yours, it's yours, and I'm out*. Thus, there was no fighting, and no bad faith.

3.      On October 6, 2022—as I heard the term for the first time in my life, you used a term—"secondary meaning." When I looked the term up as you were speaking, I told you right then and there that we quit, they win, and the controversy was over. **Keep in mind that we had just won on September 13, 2022, in state court and could have fought based on that alone**.

4.      And then, there is this statement I made to you:

> "If the Court agrees with LBBS' demands: "Thus, to "settle" this case, if His Honor wishes, simply sign an order commanding me to go down to the state court, and to go along with Plaintiff pro-se's proposed "settlement"–**AND WILL OBEY YOU, as I have always obeyed you without quarrel of any kind."** See, ECF 223.

5.      Again, Your Honor, and I stand to be corrected, when have you ever had a litigant who told you, *"tell me what to do, and I will do it"!*

6.      In your August 14, 2024, memorandum, you take all Defendants to task by asserting that we have filed numerous frivolous pleadings that delayed the case. **Yet, you do not identify one single, solitary pleading as being frivolous, that was filed by any or all of the Defendants. At the very minimum and under the due process clause, should we not be given a chance to defend ourselves before the punishment is imposed?**

7.      In 1988, the **entire** United States Fifth Circuit Court of Appeals handed down the landmark opinion of *Thomas v. Capital Sec. Services,*

*Inc.* 836 F.2d 866 (5th Cir. 1988). *Thomas,* which is still the law in this case, pointed out three very important things in light of your August 14th Memorandum:

> A. "While district courts may theoretically still dismiss baseless claims or defenses as sanctions,"such a dismissal is now better grounded, **not on misconduct**, but on the merits under Rules 12, 41, 55, and 56." . . . Also, Rules 16 and 26 provide a more solid basis for taking such action in response to abusive practices by litigants. **Finally, as to disciplinary action applied to an attorney under Rule 11, district courts should recognize a very real problem that might arise; due process considerations emerge if this type of penalty is applied.**"

> B. "In sum, a district court must impose sanctions once a violation of Rule 11 is found, but the district court retains broad discretion in determining the "appropriate" sanction under the rule. What is "appropriate" may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Thomas* at 878.

> C. "Our Circuit has previously recognized the importance of prompt action by litigants in Rule 11 cases. In *Trevino v. Holly Sugar Corp.,* 811 F.2d 896 (5th Cir. 1987), this Court affirmed the district court's denial of Rule 11 sanctions against the plaintiff when the defendant, in July 1985, had challenged all of the plaintiff's claims as frivolous from the inception of the suit in April 1983. The district court declined to impose

3

sanctions, holding that the Rule 11 request for sanctions based on the filing of the plaintiff's motions was not timely. In affirming the district court's ruling, this Court implicitly condemned using Rule 11 to challenge generally all papers filed in a lawsuit at the termination of a proceeding. (District court did not abuse its discretion in denying sanctions motion filed in untimely manner and when purpose of belated request was more retaliatory than substantive in nature.). Parties should not be allowed to "run up" exorbitant fees and expenses when responding to papers filed in violation of Rule 11; nor should litigants or courts remain idle in the face of possible violations. **To allow such behavior would effectively transform Rule 11 from a shield to a sword, whereby guileful practitioners could profit from the misfortunes and mistakes of fellow professionals."** *Thomas* at 880-881. **(Bold emphasis added).**

8.      Your August 14, 2024, memorandum **DESTROYS the lives** of two wonderful, ethical, and upright lawyers who have wronged NO ONE, and punishes all three of us without even giving us a chance to respond, or a chance to defend what the Court claims is offensive and frivolous pleadings. Again, how do we defend against that, and how can an appellate court review the order if we have not been made aware of what the offending pleading—that being the "frivolous" pleading—is? I took, and take, great pride in reviewing my submissions in light of *Thomas,* and I will stand by them subject to His Honor telling me which one is frivolous, and then imposing the mandatory sanction.

9.      The record in this case clearly, and without a doubt, reflects that none of this would be taking place had the utterance of *"we don't apologize to niggers"* not been made, when I offered to settle the case for $750.00 dollars at the Justice of the Peace level, **if they would apologize in writing to Richard Jones.**

10.  In your memorandum you mention a "cease and desist" letter that was ignored as the basis of finding wilfulness.  Judge, the "cease and desist" letter came three days **AFTER** <u>Plaintiff *pro se* lost on September 13, 2022, in state court on the same issue that you are now adjudicating</u>—and after Plaintiff *pro se's* general counsel had been served in June 2022, with notice of the name dispute.  Who sends out a "cease and desist" letter three (3) days after you lose in state court, when your own billing shows that six (6) days earlier—before the state court proceeding had taken place—you were contemplating filing suit in federal court, but, elected to proceed in state court—without having sent out a "cease and desist" letter?

11.  **If Plaintiff *pro se* had sent the "cease and desist" letter prior to the state court adjudication of the issues, not only would Ms. Norman and I have "ceased and desisted"—we would have marked the letter and offered it into evidence in the state court proceeding.**

12.  On August 14, 2024, **you dismissed all the FRAUD claims leveled against Ms. Norman and myself, and Mr. Beers,** and yet the memorandum comes "roaring" back with adjudications of deception, when you had just dismissed all the fraud claims.

13.  In Plaintiff *pro se's* so-called brief on statutory damages, ECF 330, it states that Brad Beers should be more severely punished because he was, as Plaintiff *pro se* puts it:

> "Additionally, out of all the defendants,  Beers, an attorney who's had **a prior, friendly, working relationship** with LBBS attorneys, **knew and had the opportunity to advise Bitgood and Norman not to go down this path. Beers was the last, best, and most responsible person to intervene and counsel Bitgood and Norman to stop the infringing actions and avoid this litigation.**" ECF 330,

last paragraph. (Bold emphasis added).

14.   That statement alone shows how "skewed" this case has been from the inception. Plaintiff *pro se* **now admits that it sued Brad Beers solely for giving me "bad" legal advice, and that despite being my lawyer, Beers should have thought of his relationship with LBBS first, not his duty to his client**—a client to whom, as of this day, he has never given "bad" legal advice—period! On appeal from a final judgement, unlike an interlocutory appeal, and unless attorney immunity is overturned, this abuse of Beers for not giving the legal advice that Plaintiff *pro se* thought he should have given, will be the gold standard of all appeals.

15.   What Beers knew at the time he acted, is what we all knew and it is undisputed:

a.   He checked with the Texas Secretary of State and saw that despite the repeated warnings to LBBS to renew its foreign registration and pay its statutory fees, LBBS ignored the warnings and let the name LBBS lapse, and made it available to the public. ECF 35-9, p 7-9.

b. He checked the USPTO, and discovered a number of applications attributed to Plaintiff *pro se*, including logos, initials, distinctive markings, etc. BUT he, as had Ms. Norman and I, saw that the name "Lewis Brisbois Bisgaard & Smith" **was not registered with the USPTO after having been cancelled on July 10, 2020**. ECF 35-2.  In fact, it was not until <u>September 29, 2022</u>, that Plaintiff *pro se* applied to the USPTO for the use of the name "Lewis Brisbois Bisgaard and Smith"—six (6) days after they filed this suit, not before. Further, it was only on **<u>October 31, 2023,</u>** during the pendency of this case, when the USPTO granted the Plaintiff *pro se's* September 29, 2022, application for the four-word mark, "Lewis

Brisbois Bisgaard and Smith." See Exhibit A, attached and incorporated for all purposes. **It took more than a year for Plaintiff *pro se* to be in compliance with both state and Federal Law as to ownership of the four-word name, and they were suing us for something that legally was not theirs.**

16. That William Helfand lied to the Court on October 6, 2022, when he claimed ownership of the name with the USPTO, is what Helfand is known for, and no one should expect anything less from him, especially if he has judicial officers encouraging him and protecting him by "looking the other way."

17. That October 31, 2023, date is crucial to every remaining inquiry in this case! Why? Because this record clearly reveals and without equivocation that more than a year earlier, on October 6, 2022, Defendants not only agreed to quit to end this litigation, they DID, and did so in front of His Honor.

18. So then, we ask, why are we **"the walking dead"?** Why are we being accused of delaying the case? Why are we being accused in a wholesale manner of violating Rule 11 FRCP, and more importantly, how did **we** delay the case? No one seems to know the answers to the above because the record paints a different picture altogether.

19. I have personally reviewed this record one last time before composing my letter brief to you today, and there is **NOT ONE**, not ONE single, solitary pleading that I filed that I would withdraw based on misapplication or mis-citing the law.

20. I find nowhere in this record where I have attacked you, or insulted you, and why would I? After all, it was you who always said you believed me when I spoke; it was you who took notice of my medical conditions; and, it was you who gave me grace when I needed it. Remember my first letter to you? ECF 5. I told you I would walk circumspect before you at

all times and behave before you in a Biblical manner.  So **WHERE DID I FAIL YOU Judge Keith P. Ellison? Where did I not keep my word? Please show me where I have misbehaved in this case.**

21.    All of your "findings" in this case and especially in the August 14th memorandum, are fact–intensive jury questions.   Yet, despite no scheduling order, nothing from Plaintiff *pro se* to controvert our positions in the case, and the *Tolan* prohibition on accepting Helfand's perjured testimony as evidence, you now take from us our constitutional guarantee of the jury.  Is it now that only a certain class of people get a jury in federal court?

22.   Your memorandum makes no mention of the state court's judicial declaration, that we were LEGALLY—not hypothetically—entitled to use the name "Lewis Brisbois."  In fact your memorandum ignores long–standing comity and policy considerations between the state and federal courts which you yourself acknowledged in 2009.

23.   **I do not know of a single case, and research has uncovered none, where a party as plaintiff won a Lanham Act use-of-name-in-litigation issue in state court against a defendant, and then gets "slammed" by the same losing defendant's filing as plaintiff in federal court on the same issue.**

24.   What we did in state court was legal, in the open, aboveboard, and it handed Plaintiff *pro se* a humiliating defeat—which it earned based on its own behavior and incompetence. That you granted ECF 183 with Helfand's extortion, bribery and perjury attached, thereby adopting Helfand's way of doing business, has left me shocked, stunned, and exasperated.  I may disagree with your rulings which I have on occasion, but I have never disrespected you, but rather, I just filed written objections.

25.   That you denied our UNCONTROVERTED and un-impeached

8

motion for summary judgment by declaring it moot, is legal error because it stood, and still stands, uncontroverted, with no false statements, no perjury, and unchallenged expert testimony.

26.    Because I got involved with helping the Black community fend off Plaintiff *pro se* and its clients, Plaintiff *pro se* set me up with a criminal indictment in state court in connection with this case—which appears in its billing statements. I attach the final Opinion of the 14th Court of Appeals—for which mandate has issued—clearing me via a pre-trial writ of *habeas corpus* of all wrongdoing of any kind. See: Exhibit "B", which I incorporate into this brief.

27.    My Black friend, Richard P. Jones, who Plaintiff *pro se* sued in this case for no other reason than he was a convenient Black man, asked me recently: *"If I had it to do all over again, would I still defend him, and the other Blacks that were being abused?"* As I told my friend Jones, I tell you: YES, I would represent any human being that is being abused, and I would hope that Judge Keith P. Ellison would also take a stand.

## II. CONCLUSION AND PRAYER

28.    DUE PROCESS of law, and fundamental fairness, dictates the outcome here. Accordingly, I am respectfully requesting the following:

a.    That you vacate the Memorandum of August 14, 2024, which is vile because it adopts Helfand's extortion and documented perjury as now being "court approved;"

b.    That upon notice, and an opportunity to be heard, that you point out to me what frivolous pleadings did I file, and if I am guilty of that practice, that you sanction me for having done so; ,

c.    That upon notice, and the opportunity to he heard, that before

I am ordered to pay damages, I be apprised of how I delayed the final resolution of this case past

(1) September 28, 2022, or (2) October 6, 2022; and,

d. That under the ADA, that my disability be acknowledged, and my ECF access be restored as a reasonable accommodation based on documented disability.

29.   As always, thank you for the privilege of your time.

Respectfully Submitted,
/s/ Michael Joseph Bitgood
A/K/A/ "Michael Easton"

## CERTIFICATE OF SERVICE

On this the 2nd  day of September 2024, I certify that I served all parties with this duplicate that was sent by regular mail.

Michael Easton

11/5/23, 12:16 PM

Trademark Electronic Search System (TESS)

**EXHIBIT A**



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sun Nov 5 04:07:22 EST 2023*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:          OR  Jump  to record:      **Record 1 out of 2**

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

## LEWIS BRISBOIS BISGAARD & SMITH LLP

| | |
|---|---|
| **Word Mark** | **LEWIS BRISBOIS BISGAARD & SMITH** LLP |
| **Goods and Services** | IC 045. US 100 101. G & S: Legal services; Providing legal services in the field of insurance law, litigation, business law, employment law, healthcare law, intellectual property law, finance and transactions, immigration law, privacy and security law, and international law. FIRST USE: 20020715. FIRST USE IN COMMERCE: 20020715 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 97613415 |
| **Filing Date** | September 29, 2022 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 15, 2023 |
| **Registration Number** | 7207427 |
| **Registration Date** | October 31, 2023 |
| **Owner** | (REGISTRANT) LEWIS BRISBOIS BISGAARD & SMITH LLP Steven R. Lewis , U.S. Citizen, Managing Partner LIMITED PARTNERSHIP CALIFORNIA Suite 4000 633 West Fifth Street Los Angeles CALIFORNIA 90071 |
| **Attorney of Record** | Daniel C. DeCarlo |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LLP" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

**Exhibit A - 8-28-2024**
**Page 1 of 2**

Trademark Electronic Search System (TESS)

**EXHIBIT A**

| | |
|---|---|
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST

FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**EXHIBIT B**

No *Shepard's* Signal™
As of: June 18, 2024 4:16 PM Z

## *State v. Bitgood*

Court of Appeals of Texas, Fourteenth District, Houston

May 21, 2024, Memorandum Opinion Filed

NO. 14-23-00047-CR

**Reporter**

2024 Tex. App. LEXIS 3470 *; 2024 WL 2284154

THE STATE OF TEXAS, Appellant v. MICHAEL J. BITGOOD, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:  [*1]** On Appeal from the 240th District Court, Fort Bend County, Texas. Trial Court Cause No. 22-DCR-101126.

## Core Terms

indictment, felony, trial court, allegations, cognizable

## LexisNexis® Headnotes

Criminal Law & Procedure > Appeals > Standards of Review > Abuse of Discretion

Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review

### *HN1*[⤓]  Standards of Review, Abuse of Discretion

In general, an appellate court reviews a trial court's ruling on an application for writ of habeas corpus using an abuse-of-discretion standard, and the court views any evidence in the light most favorable to that ruling and defers to implied factual findings supported by the record.

Criminal Law & Procedure > ... > Accusatory Instruments > Dismissal > Appellate Review

Criminal Law & Procedure > ... > Common Characteristics > Contents > Challenges

Criminal Law & Procedure > ... > Standards of Review > De Novo Review > Motions to Dismiss

Criminal Law & Procedure > ... > Complaints > Contents > Challenges

Criminal Law & Procedure > ... > Procedures > Return of Indictments > Motions to Quash

## *HN2*[⬇] Dismissal, Appellate Review

An appellate court reviews a trial judge's ruling on a motion to dismiss or quash a charging instrument de novo. The trial court's ruling should be upheld if it is correct under any theory of law applicable to the case.

Criminal Law & Procedure > Habeas Corpus > Procedure

## *HN3*[⬇] Habeas Corpus, Procedure

Application for writ of habeas corpus is an available vehicle to invoke statute of limitations if the pleading, on its face, shows that the offense charged is barred by limitations and is not reparable by resort to an exception.

Governments > Legislation > Statute of Limitations > Time Limitations

## *HN4*[⬇] Statute of Limitations, Time Limitations

Criminal charges must be presented three years from the date of the commission of the offense. *Tex. Code Crim. Proc. Ann. art. 12.01(9)*.

Criminal Law & Procedure > ... > Common Characteristics > Contents > Failure to Object

## *HN5*[⬇] Contents, Failure to Object

Just as an accused, who has a right to be charged by an instrument that is free of defects, errors, and omissions, must object to any error in the charging instrument in a timely and specific manner, it also incumbent on the State, if it wishes to preserve a challenge to any order sustaining the accused's objection, to take action necessary to avoid application of ordinary rules of procedural default.

**Counsel:** For The State of Texas, Appellant: Bennett Dodson, Jason Travis Bennyhoff, Brian Marcus Middleton, Baldwin D. Chin, John Harrity, III.

For Bitgood, Michael J, Appellee: Brad Beers.

**Judges:** Panel consists of Justices Jewell, Spain, and Wilson.

**Opinion by:** Randy Wilson

**Exhibit B - 8-28-2024
Page 2 of 7**

**EXHIBIT B**
2024 Tex. App. LEXIS 3470, *1

## Opinion

---

### MEMORANDUM OPINION

Appellant, the State of Texas, appeals the trial court's judgment granting appellee Michael J. Bitgood's requested habeas-corpus relief, dismissing without prejudice the State's indictment. *Tex. Code. Crim. Proc. art. 44.01(a)(1)*. The State did not file a response in the trial court and has not provided a copy of the reporter's record for the hearings on these matters. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2022, Bitgood was indicted on two counts of felony stalking on charges tracking the language of *sections 42.07(a)(7)* and 42.072(a)(3)(D) of the Texas Penal Code.

The first count is premised on events occurring "May 21, 2018 through January 30, 2019." The second count is premised on events occurring "November 1, 2021 through September 14, 2022," and alleges that Bitgood

> . . .pursuant to the same scheme and course of conduct directed specifically at Marianna Sullivan knowingly engage in conduct that constituted **[*2]** an offense under *Section 42.07 of the Texas Penal Code*, namely send messages to Marianna Sullivan despite her representation by counsel and request to direct communication to counsel, and refer to Marianna Sullivan as a madam, and accuse Marianna Sullivan of mental illness, and accuse Marianna Sullivan of being a sex worker, and the defendant's conduct would cause a reasonable person to, and did cause Marianna Sullivan to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

The following month Bitgood filed his original application for habeas corpus and motion to quash the indictment, which days later was followed by an amended version, which is the live pleading in this case.[1]

In his Amended Application and Motion, appellee begins by challenging the indictment as brought under a criminal statute which he contends is unconstitutional, void for vagueness, and that it fails to draw reasonably clear lines between lawful and unlawful conduct.

Bitgood argued that the allegations set out in Count One of his two-count indictment were facially fatal as alleging an offense outside a statute of limitations period.

---

[1] The live pleadings for purposes of this appeal consist of appellee's "Application for Writ of Habeas Corpus (First Amended) and Motion to Quash Indictment for Lack of Probable Cause and Challenge to the Statute as Applied to this Individual and the Litigation Privilege to the Texas Rules of Civil Procedure" (Amended Application and Motion), and Bitgood's "First Supplement to the Application for Writ of Habeas Corpus (First Amended) and Motion to Quash Indictment for Lack of Probable Cause and Challenge to the Statute as being Facially unconstitutional" ("Supplemental Pleading").

Bitgood argued that both counts asserted against him were unconstitutional as applied, that they **[*3]** lacked probable cause, and failed to inform appellant how his conduct constituted criminal conduct under the statute. He contends "[t]here is no distinction between the alleged repeated misdemeanor offense message and the alleged felony offense communication on more than one occasion, other than the whim of the complainant or the prosecutor."

Bitgood also argued the indictment failed to provide him adequate "due process notice" for lack of allegations concerning the element of "intent" and failing to describe the specific "manner" that the communications were sent such that they were "likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another".

In the section titled "WHAT THE GRAND JURY APPARENTLY DID NOT KNOW," Bitgood detailed his background with the complainant where he represented himself and others against complainant in a series of landlord-tenant disputes. He argued that the complained-of communications that form the basis of the indictment were made in the course of litigation.

In a subsequent section he contended that the indictment was supported by fabricated facts.

> the complainant knew she was breaking the law, defrauding the CARES act, and illegally invoking **[*4]** the jurisdiction of courts of Fort Bend County. To help cover up this misconduct and silence the Defendant, the complainant and her police officer employee fabricated this criminal charge, most likely if not certainly with the assistance of others as well.

In the last substantive section of his Amended Application, entitled "VI. THE RECUSAL OF THE DISTRICT ATTORNEY," Bitgood makes various allegations regarding the Fort Bend District Attorney and the complainant: he alleges that the Fort Bend District Attorney became critical of complainant in some fashion after discovering apparently undisclosed facts about the charges originally filed against appellee and that the complainant brought an "all out smear campaign against" the Fort Bend District Attorney, whose recusal he contends was procured by a contrived "call for service" and fraud by omission of certain facts. The Fort Bend District Attorney was recused and an attorney *pro tem* was appointed to prosecute the case. Bitgood then noted:

> It is a separate issue that the attorney *pro tem* had no authority to present an alleged felony offense to a grand jury or act as a *pro tem* in a felony matter in a district court after being appointed by **[*5]** a county court at law judge, because county courts at law, and their judges, lack jurisdiction over felony indictments, and matters that by Penal Code definition constitute felony offenses.

Bitgood also filed his Supplemental Pleading which asserted his facial challenge to the statutory provisions; he argued that "the statute in question for which he was indicted is unconstitutional on its face and suffers from over-breadth, making it unconstitutional as presented in the indictment."

The State filed no response to the Amended Application and Motion or Supplemental Pleading. The State only responded to the arguments concerning the *pro tem*'s authority and the county court at law's appointment-jurisdiction.

A hearing was held on the Amended Application and Motion, which the court's order recites was "sworn and uncontroverted." On appeal Bitgood contends that both "lay and expert testimony" were presented to the court; the State has not disputed this assertion. The trial court's order states:

> The application for writ of habeas corpus is granted on the grounds as stated in the sworn and uncontroverted application and the arguments made to the court. To that extent, the Defendant is discharged **[*6]** and ordered released forthwith from all manner of restraint. With regards to the motion to quash the indictment, that motion is GRANTED, and the indictment is quashed without prejudice as to the State's ability to represent if the State desires to proceed again. Should the State refile any charges against this Defendant, the State is ordered to issue a summons to him to appear, as the Court finds from personal observation that the Defendant is a disabled senior citizen and poses no risk of flight, and has made all of his court appearances.

The hearing was recorded, but the State has chosen not to request the reporter's record to be included as a part of our record.

## II. ISSUES AND ANALYSIS

In its three issues on appeal, the State challenges some, *but not all*, grounds raised by appellee in his Amended Application and Motion and upon which the trial court based its order dismissing the indictment.

### *Relevant Standards of Review*

***HN1***[↑] In general, we review a trial court's ruling on an application for writ of habeas corpus using an abuse-of-discretion standard, and we view any evidence in the light most favorable to that ruling and defer to implied factual findings supported by the record. *Phuong Anh Thi Le v. State, 300 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2009, no pet.)*; *Ex parte Fusselman, 621 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd)*.

***HN2***[↑] Appellate **[*7]** courts review a trial judge's rulings on a motion to dismiss or quash a charging instrument *de novo*. *State v. Barbernell, 257 S.W.3d 248, 251-52 (Tex. Crim. App. 2008)*. The trial court's ruling should be upheld if it is correct under any theory of law applicable to the case. *State v. Rhinehart, 333 S.W.3d 154, 161 (Tex. Crim. App. 2011)* (applying ordinary rules of procedural default to a State's appeal of a trial court's order quashing the indictment).

### *Analysis*

For the sake of efficiency, we first look to the grounds upon which the trial court judgment could be based which the State has not addressed.

Bitgood's statute of limitations argument presented to the trial court stands among those grounds not addressed by the State. ***HN3***[↑] Application for writ of habeas corpus is an available vehicle to

invoke statute of limitations "if the pleading, on its face, shows that the offense charged is barred by limitations" *and* is not reparable by resort to an exception. *See Ex parte Edwards, 663 S.W.3d 614, 618 (Tex. Crim. App. 2022)*. The first count of the indictment, based on Bitgood's alleged conduct (of sending messages) occurring "May 21, 2018 through January 30, 2019," describes an offense for felony stalking. *See Tex. Penal Code § 42.072(a)*. *HN4*[⬆] Charges must be presented three years from the date of the commission of the offense. *Tex. Code Crim. Proc. art. 12.01(9)*. Thus, in this case notwithstanding any applicable exception, the State was required **[*8]** to present the felony stalking charge no later than January 30, 2022. The face of the indictment which contains a file-stamp for "October 3, 2022" demonstrates the felony stalking charge was presented over eight months late.

Next, to the question whether the count was reparable by resort to an exception, the State made no argument that any exception applied to repair the infirmity of the indictment. Moreover, the record in this case does not fulfill the requisites presented in *Ex parte Edwards* for rejecting a statute-of-limitation claim in a pretrial habeas as not cognizable. *See Ex parte Edwards, 663 S.W.3d 614, 618 (Tex. Crim. App. 2022)* ("An indictment returned outside a general statute of limitation *may* be reparable by resort to an exception. *If so*, then a statute-of-limitation claim is not cognizable on pretrial habeas."). The State made no attempt to respond in the trial court; to establish any statute-of-limitations exception that could actually or even potentially, i.e., with evidence at trial, repair the indictment. Upon the record before us and under the applicable standard of review, the trial court properly disposed of count one of the indictment on the basis that it was barred by the statute of limitations.

If we were to presume **[*9]** that the second count of the indictment lacked any defect that would independently support a cognizable habeas claim, Bitgood's habeas claim under the two-count indictment was independently cognizable. *Ex parte Couch, 678 S.W.3d 1, 7-8 (Tex. Crim. App. 2023)* (holding that a habeas claim can stand for merits review even if it is cognizable to less than all counts of the multi-count indictment).

The second count, alleging conduct between November 1, 2021 through September 14, 2022, was timely filed. However, the State's defense of the second count was woefully deficient. *HN5*[⬆] Just as an accused, who has a right to be charged by an instrument that is free of defects, errors, and omissions, must object to any error in the charging instrument in a timely and specific manner, it also incumbent on the State, if it wishes to preserve a challenge to any order sustaining the accused's objection, to take action necessary to avoid application of "ordinary rules of procedural default." *See State v. Rhinehart, 333 S.W.3d 154, 162 (Tex. Crim. App. 2011)* (applying ordinary rules of procedural default to decide that the State, as the losing party in the trial court, could not raise for the first time on appeal a claim that there was no valid basis for the trial court to have quashed the indictment.)

Bitgood has argued that **[*10]** the State, by failing to respond, waived its objections to the (entire contents) of the trial court's judgment based upon his Amended Application and Motion. Indeed, other than presenting written arguments about its authority to prosecute the case, the State offered no response or objection announcing its opposition to Bitgood's Amended Application and Motion. A record was made of the hearing, after which the court recited that the application was "uncontroverted." Bitgood's argument raises references to two distinct but related waiver/preservation concepts: first, that in order to present a complaint for appellate review, a party

must present a record showing the complaint was made to the trial court and was ruled on expressly or implicitly, *Tex. R. App. P. 33.1*; and then, when presenting the complaint to the court of appeals in its brief, the appellant's argument must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. *Tex. R. App. P. 38.1(i).* We conclude the State has waived its opportunity to challenge the trial court's judgment. On appeal the State has not shown that it presented any complaint in the record to Bitgood's Amended Application and Motion **[*11]** that it now seeks as a basis for reversing the judgment, and in the absence of a reporter's record, we presume any evidence provided to the court at the hearing supports the court's order quashing both counts. *Tex. R. App. P. 33.1, 38.1(i); see also State v. Rhinehart, 333 S.W.3d at 162.*

## III. CONCLUSION

We affirm the trial court's habeas-corpus judgment.

/s/ Randy Wilson

Justice

Panel consists of Justices Jewell, Spain, and Wilson.

Do not publish — *Tex. R. App. P. 47.2(b).*

---

End of Document

**EXHIBIT 1 - 9-20-24**

## Susan Norman

| | |
|---|---|
| **From:** | EastProLaw . <eastprolaw@msn.com> |
| **Sent:** | Thursday, September 19, 2024 4:46 PM |
| **To:** | Art Rivera; George Kelner |
| **Cc:** | Fisher, Bennett; Susan Norman; WDunwoody@munckwilson.com |
| **Subject:** | Re: MISSING FILING |

Thank you

Get Outlook for iOS

---

**From:** Art Rivera <Arturo_Rivera@txs.uscourts.gov>
**Sent:** Thursday, September 19, 2024 3:17:37 PM
**To:** EastProLaw . <eastprolaw@msn.com>; George Kelner <George_Kelner@txs.uscourts.gov>
**Cc:** Fisher, Bennett <Bennett.Fisher@lewisbrisbois.com>; susan norman <suenorman@suenormanlaw.com>;
WDunwoody@munckwilson.com <wdunwoody@munckwilson.com>
**Subject:** RE: MISSING FILING

Please file directly with the Clerk's Office.

Thank you,

Arturo A. Rivera
Case Manager to the Honorable Keith P. Ellison
United States District Court
515 Rusk St.
Suite 3716
Houston, TX 77002
Office: 713-250-5181

**From:** EastProLaw . <eastprolaw@msn.com>
**Sent:** Thursday, September 19, 2024 12:15 PM
**To:** Art Rivera <Arturo_Rivera@txs.uscourts.gov>; George Kelner <George_Kelner@txs.uscourts.gov>
**Cc:** Fisher, Bennett <Bennett.Fisher@lewisbrisbois.com>; susan norman <suenorman@suenormanlaw.com>;
WDunwoody@munckwilson.com
**Subject:** MISSING FILING

**CAUTION - EXTERNAL:**

Good afternoon judge Ellison's staff: On 8/28/2024, I deposited this instrument in the US
Mails for filing and disposition. In addition, I sent a courtesy copy to Chambers as a back up
filing since your official titles are deputy clerks. My server shows all parties on this email
string received it. Rather than tracking down the mailed copy, could either of you, as
deputy clerks please take the filing I sent, and I now reattach and put it on the docket
please?

1

Exhibit 1 - 9-20-24
Page 1 of 2

**EXHIBIT 1 - 9-20-24**

Thank you in advance

Confidentiality Notice: This email and any attachments may contain information that is private, confidential, or protected by the attorney-client, the litigation privilege, or other investigative and disclosure privilege. It is intended solely for the use of the addressees listed above. If you are not the intended recipient of this message, please do not print, copy, or disclose this information. If you received this email in error, please notify me at (281) 341.1058, and then delete this email and any attachments from your system.This E-mail, including attachments, is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, 2701-2710. The contents of this communication are intended for the sole use of the intended recipient, and any disclosure, dissemination, distribution, or duplication thereof without the express, written consent of the sender is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by return email, delete this communication (including any attachments transmitted herewith) from your email box, and refrain from disclosing the contents thereof to anyone, using it for any purpose, or storing or copying it into any medium. Any and all matters discussed or referenced, or statements made in this communication are covered by Texas Rule of Evidence 410 and 503 and are not admissible against the Defendant/Plaintiff/Petitioner/Respondent/Relator/True-Party-in-Interest/Client/ Defendant/ and/or witness as the case may be.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.