## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Lewis Brisbois Bisgaard and Smith LLP | § | |
| | § | |
| v. | § | **4:22-cv-03279** |
| | § | |
| Michael Joseph Bitgood, et al | § | |

## JOINT RESPONSE IN OPPOSITION
## TO THE AWARD OF ATTORNEY'S FEES

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendants Norman and Bitgood submit this joint response to the claim of attorney's fees made by Plaintiff *pro se* Lewis Brisbois, and in support they would show as follows:

## I.  NO SHOWING IN MSJ
## OF ATTORNEY/CLIENT RELATIONSHIP

1.    On August 14, 2024, the Court granted Plaintiff *pro se's* motion for summary judgment ("MSJ").  ECF 325.

2.    Over the Defendants' objections—unrebutted by <u>Plaintiff *pro se*</u>—is the fact that the MSJ record contained no showing that there was ever an attorney/client relationship between Plaintiff *pro se* and an actual

client—something to which it stipulated, and of which the Court took judicial notice, as well.

3.    When this fact was brought to the Court's attention along with standing U.S. Supreme Court precedent, Plaintiff *pro se* **did not dispute** this law, or these facts that, on **September 23, 2022, the four-name word mark—Lewis Brisbois Bisgaard & Smith—was not registered in the Patent and Trademark Office as a wordmark owned by Lewis Brisbois Bisgaard & Smith, LLP**.   The four-name wordmark filed at ECF 1-1, No. 3,722,172, **had been cancelled on July 10, 2020,** over two years prior to this suit, **and Plaintiff *pro se* knew the mark was not registered with the USPTO** when it filed this suit.   Thus, Plaintiff *pro se* lacked Art. III standing to even bring suit on something that it did not own.

4.    Instead, and as was continually done in this case, the Court's clerks raised their own arguments, annexed them (for Plaintiff *pro se)*, "catapulted" Plaintiff *pro se* into an attorney-client relationship—which is nowhere in this record—and then swiftly and decisively researched Fifth Circuit case law (for Plaintiff *pro se*) and adopted it (for Plaintiff *pro*

*se*) to fit the results–driven outcome that the Court desired. [1]

5.    Defendants once again object and cry "Foul" to having to litigate against the Court– rather than their opponents. See ECF 326,  (motion to recuse).

6.    When the judge is your true opponent, then in the words of the Honorable  E.  Grady  Jolly  of  the  5th  Circuit:  ***"You  become  like  the Salmon–and you are swimming upstream"*** [2] , [3]

7.    The foregoing having been said, and the U.S. Supreme Court having spoken on this issue, this record being wholly void of any evidence of an attorney—client relationship should end any further inquiry.

---

[1]

As was done in *Ramirez v. Ahn,* 843 F.2d 864, 867-868 (5th Cir. 1988), ". . . [T]he district court **fashioned its own revocation order, sua sponte,** prohibiting liposuction surgery by Dr. Ramirez, apparently **with no process, due or otherwise**. The district court **did not explain its self-devised remedy** that seems ironically to have ignored the **very constitutional principles**  that prompted it to overturn the Board's decision." (Bold emphasis added). (Ditto in this case from beginning to end.).

[2]

And we all know what happens to the salmon when they reach their destination.

[3]

Plaintiff *pro se* failed to controvert sworn, expert testimony of Bitgood, a judicial arbitrator, and of Norman, an attorney who provided sworn, expert testimony as to attorney's fees and the absence of a registered mark. As to the lack of a registered mark that would trigger any attorney's fees inquiry, Helfand flat–out lied to the Court's face on October 6, 2022.  The Court found such lying to be acceptable, and brushed the lying aside.

## II.  *APPLIANCE V. AXIS* CONTROLS

8.     Even if Defendants were to assume that William Helfand is not lying in his so-called affidavit—which he is—and which is something that, in this case, the Defendants have repeatedly exposed, see ECF's 86 and 87, and which the Court instructed Helfand by e-mail to remain silent and not join issue, the Court would have to overcome the high bar set by the Fifth Circuit in the *Appliance Liquidation Outlet v. Axis* case, 105 F.4th 362 (5th Cir. 2024). [4]

9.     Defendants Norman and Bitgood offered to settle this matter on September 28, 2022, and again on October 6, 2022, when there were only relatively few documents filed.  As of September 28, 2022, only ECF 1, with 12 Exhibits, and ECFs 2, and 3 were filed.  On October 6, 2022, Defendants Norman and Bitgood terminated the offending entity 2022, before any TRO was issued, and when only ECF 4 through10 (with 38 Exhibits) and ECF 16 totaling 60 documents on file—most of which were filed by Plaintiff *pro se*.  At the time of the filing of this Objection, **there**

---

[4]

Federal courts are forbidden from weighing the evidence, and assigning credibility when deciding a motion for summary judgment. *See: Tolan v. Cotton*, 572 U.S. 650 (2014).

are now 355 ECF filings, totaling many more individual
documents, all after Defendants:

(1) offered to settle on Sept. 28, with only 15 documents filed; and

(2) terminated the offending entity on October 6, with only 60
documents on file.

10. **Although Ms. Norman and Mr. Bitgood were the prevailing
parties in the state court matter and could have defended this
case on that basis, citing *Rooker-Feldman* Doctrine and the
*Palmer* preclusion, they were willing to settle and walk away.
Plaintiff *pro se* was not**.

11. On October 12, 2022, after Plaintiff *pro se* attempted to bribe Mr.
Bitgood's lawyer, Brad Beers, to get Mr. Bitgood to settle, Plaintiff *pro se*
made a settlement demand to Defendants which expired at 1:00 p.m. on
October 14, 2022:

"The firm's management committee approved this as an
all-or-nothing, all-Defendants-or-none proposal."  ECF 183-53,
pages 5-6.

12. Defendants Norman and Bitgood can agree that this is an
"exceptional case," but not in the manner, and not for the reasons in which
the Court has described it.  For all the reasons set out above and below,

it is the **Plaintiff *pro se's* abuse of the system** that makes this case an

"exceptional case" insofar as:

a.  On September 23, 2022, the Plaintiff *pro se* **had no registered four-name wordmark** for Lewis Brisbois Bisgaard & Smith.

b.  On October 6, 2022, Defendants terminated the "offending entity" after only a four-month and one-week existence.

c.  On **October 31, 2023**, <u>over a year after</u> the "offending entity" was terminated the four-name wordmark Lewis Brisbois Bisgaard & Smith was finally re-registered by Plaintiff *pro se*.

d.  The Plaintiff *pro se* was not entitled to a presumption of validity for its unregistered mark.

e.  <u>On September 28, 2022,</u> **before the first hearing** in this matter, Defendants offered to end this case by stipulated order of the Court.  Plaintiff *pro se* refused.

f.  At the first hearing on October 6, 2022, in this case Defendants offered to end the case.  Plaintiff *pro se* refused.

g.  On October 6, 2022, <u>before the first order was issued in this case</u>, Defendants terminated the "offending entity."

h.  On October 12, 2022, Plaintiff made settlement demands which would have required Defendants to commit fraud on the state court.  Defendants refused.

i.  Defendants **never used the mark in commerce**—sale, offering for sale, distribution, or advertising of goods and

services—only in litigation.  "To be guilty of infringement …
the defendant must use the infringing mark 'in commerce.'"
*Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 795 (5th Cir.
1954).

13.   Regarding Plaintiff *pro se's* attempts to (1) bribe, (2) extort, and (3)

threaten Defendants with additional sanctions such as the fraudulent

attorney's fees bills, and Helfand's perjured "affidavit," the Fifth Circuit

writes in the *Appliance Liquidation Outlet v. Axis* case, *supra*:

> "Second, Axis's refusal to settle cannot support the fee award.
> "[I]f a party is forced to make a settlement offer because of the
> threat of sanctions, and the offer is accepted, a settlement has
> been achieved through coercion.  **Such a result cannot be
> tolerated.**  *Dawson v. United States*, 68 F.3d 886, 897 (5th
> Cir. 1995)(citations omitted).  If a court cannot use the threat
> of sanction to force a settlement offer, it follows that it may not
> impose sanctions on a party for failing to engage in settlement
> negotiations when that party has legitimate defenses to
> litigate.  The district court abused its discretion in finding that
> Axis litigated this case in an unreasonable manner by refusing
> to settle."  ALO at 385.  (Bold emphasis added).

14.   The Lanham Act allows a "court in exceptional cases [to] award

reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

The Supreme Court has never explained when a case is "exceptional"

under § 1117(a). However, in *Octane Fit ness, L.L.C. v. ICON Health &*

*Fitness, Inc.*, 572 U.S. 545 (2014), the Court construed identical language in Section 285 of the Patent Act. 35 U.S.C. § 285. The Fifth Circuit has ". . . merge[d] Octane Fitness's definition of 'exceptional' into their interpretation of § 1117(a)." *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). [5] Thus, "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Id.* (citing *Octane Fitness*, 572 U.S. at 554).

15.    A party seeking attorney's fees must prove either of those prongs by "a preponderance of the evidence." *Octane Fitness*, 572 U.S. at 557 (citations omitted).

16.    In this case, the Court dismissed with prejudice ALL of the so-called "fraud" claims that Plaintiff *pro se* elected to plead and laced into

---

[5]

Courts have typically construed "unreasonable manner" in *Octane Fitness* as justifying a fee award where an adversary engages in some form of litigation misconduct such as **"abusing the discovery process, filing frivolous pleadings or defenses, dishonesty, and the like."** If that is the criteria, which it is, then Plaintiff *pro se* has shattered that mark, and well surpassed it by its outrageous, malicious, and criminal behavior in this case—which again, the Court has found acceptable.

Helfand's manufactured "fee statements"—which are not even properly segregated. Thus, Helfand's perjury, and LBBS' well–documented history of manufacturing bills and fee statements cannot withstand the scrutiny of a challenge. [6]  See Exhibit "1" annexed hereto and duly incorporated herein by reference as if set forth verbatim.[7]

### III.   THE JURY TRIAL DEMAND

17.    Before this Court can assess statutory damages and attorney's fees, the United States Supreme Court has held that Defendants have a Seventh Amendment right to have a jury hear and determine the facts of this case.

> For the foregoing reasons, we hold that the Seventh
> Amendment provides a right to a jury trial on all issues

---

[6]

 The Fifth Circuit held that "The district court abused its discretion in finding that Axis litigated [the ALO]  case in an unreasonable manner by refusing to settle." ALO at 386  In this instant case, the opposite holds true, for it is well–documented that Bitgood told the Court that  "If  the Court agrees with LBBS' demands: "Thus, to "settle" this case, if His Honor wishes, simply sign an order commanding me to go down to the state court, and to go along with Plaintiff *pro se's* proposed "settlement"–AND WILL OBEY YOU, as I have always obeyed you without quarrel of any kind." See ECF 223. Again, Your Honor, and I stand to be corrected, when have you ever had a litigant who told you, "tell me what to do, and I will do it!"

[7]

Whether attorney's fees are reasonable and necessary is a question of fact. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself. *Feltner v. Columbia Pictures TV*, 513 U.S. 340, 355 (1998).

Defendants renew their demand on all remaining issues of fact regarding fees and damages.

## IV.   CONTROVERTING DECLARATIONS

18.    Annexed hereto as Exhibits "2" and "3" and duly incorporated herein by reference are the sworn declarations of Defendants Bitgood and Norman.  Both Declarations are competent in fact and in form, which would defeat the summary award of attorney's fees, not to mention that Helfand's "affidavit" is conclusory both in its form and substance and will not support an award of fees.

19.    For all the foregoing reasons, the application should be DENIED.

Respectfully submitted,

*/s/ Michael Joseph Bitgood*          */s/ Susan C. Norman*
a/k/a/ Michael Easton                    Susan C. Norman
d/b/a/ "Michael Easton"               State Bar No. 15083020
503 FM 359, Suite 130-216           Law Office of Susan C. Norman
Richmond, Texas 77406                P. O. Box 55585
281-415-8655                               Houston, Texas 77255
EASTPROLAW                              713-882-2066
EastProLaw@msn.com                 281-402-3682 Fax
                                                 SueNorman@SueNormanLaw.com

## CERTIFICATE OF SERVICE

Served via ECF to all parties on November 22, 2024.

*/s/ Susan Norman*
Susan C. Norman



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Ex-Lewis Brisbois Atty Faked 2,000 Hours, Ill. Watchdog Says

By **Celeste Bott**

Law360 (June 23, 2021, 9:27 PM EDT) -- Lewis Brisbois Bisgaard & Smith LLP has fired an associate who admitted he faked more than 2,000 hours of work on a pro bono assignment over the course of a year after the case was dismissed, the Illinois Attorney Registration and Disciplinary Commission said in a complaint.

The IARDC administrator is recommending that a commission hearing board take up the matter and discipline attorney John Paul Paleczny. According to the complaint made public Monday, Paleczny worked as an associate for Lewis Brisbois for more than two years before the firm terminated him for falsely recording time and lying to members of the firm.

The IARDC administrator claims Paleczny falsely billed enough hours on one of the firm's pro bono cases to hit a benchmark needed to qualify for a quarterly bonus, despite the case's dismissal more than a year earlier. Lewis Brisbois paid him $12,000 in bonuses based on what turned out to be false representations, according to the complaint.

The complaint said Paleczny agreed to assist in a pro bono civil rights lawsuit under a partner at the firm's Chicago office. They represented an inmate who claimed he was fired from his prison job as an orderly in the law library after he complained to the warden and other prison staff about a new library policy.

Paleczny began working on the case in September 2018 and the case was dismissed on Dec. 23, 2019. In 2019, he logged more than 2,000 hours working on the case before it was dismissed, according to the complaint.

The firm stopped representing the inmate on Jan. 3, 2020, and did not pursue an appeal of the ruling, according to the complaint. But Paleczny allegedly continued to document hours he spent purportedly drafting, editing and amending a motion for summary judgment, recording 2,061.4 hours on the inmate's case between January and December 2020, the IARDC alleges. He logged an additional 245 hours of purported work on the case in 2021, according to the complaint.

According to the complaint, he knew by at least Jan. 21, 2020, the lapse of the 28-day period to appeal, that the firm would not be challenging the dismissal of the inmate's case.

"Any time that respondent spent on the summary judgment motion prior to Jan. 21, 2020, served no purpose because the case had been dismissed and no appeal had been filed," the IARDC said. "All of the entries for Jan. 21, 2020 and later were false."

After being confronted about the status of the inmate's case during a February meeting with two Lewis Brisbois partners and an office administrator, the agency says Paleczny lied about the work he'd been doing. When one  partner then pushed him to address the dismissal of the case, he admitted that he knew the case had been thrown out in 2019 and that he hadn't actually been working on a summary judgment motion, according to the report.

Paleczny was terminated that day for falsely recording time and lying to members of the firm, according to the report.

Exhibit 1 - 11-18-24

The IARDC also asserts that when Paleczny began looking for other work, he lied to four Chicago law

firms he interviewed with about why he left Lewis Brisbois. It says he told the firms that Lewis Brisbois laid him off because the firm didn't have enough work to support his continued employment.

The managing partner for Lewis Brisbois' Chicago office and counsel for the IARDC administrator did not immediately respond to requests for comment Wednesday. Law360 was unable to immediately reach Paleczny on Wednesday.

The IARDC administrator is represented by IARDC attorney Jonathan M. Wier.

Counsel information for Paleczny could not immediately be determined.

The case is In Re John Paul Paleczny, commission number 2021PR00051, before the Illinois Attorney Registration and Disciplinary Commission.

--Editing by Kelly Duncan.

---

All Content © 2003-2022, Portfolio Media, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Lewis Brisbois Bisgaard and Smith LLP | § | |
| | § | |
| v. | § | **4:22-cv-03279** |
| | § | |
| Michael Joseph Bitgood, et al. | § | |

## DECLARATION UNDER PENALTY OF PERJURY
## IN OPPOSITION TO PLAINTIFF *PRO SE'S* REQUEST FOR
## ATTORNEY'S FEES

1.  My name is Michael Joseph Bitgood; I am also known as Michael Easton. I have filed assumed names to legally do business in Texas as Michael Easton for mediation services, and as *EastProLaw* for arbitration services.[1] I am over the age of 18, and I am fully competent to execute this declaration. All the statements made herein are true and correct and are made from my personal knowledge.

2.  I am competent to testify in this declaration. I make this declaration pursuant to Fed. R. Evid. 701 and 702. I am also a judicial arbitrator vested with judicial immunity for all my decisions made in that capacity. In addition, I am also a certified judicial mediator under Tex. Civ. Prac. & Rem. Code Chapter 65.

3.  I have over thirty-nine (39) years' experience in contested trial work,

---

[1]

I am required by Texas Law to register, pay the statutory fees, and timely renew those two names, or, I forfeit the legal right to the names, as well as the right to appear in a Texas court using those names.

Page -1-

Exhibit 2 - 11-18-24
Page 1 of 18

EXHIBIT 2

appellate briefing, original proceedings, *habeas corpus*, mandamus, and Mediation and Arbitrations. I have been qualified and admitted to testify as an expert witness on the issue of judicial recusal and disqualifications; lawyer disqualifications; the reasonableness of attorney's fees; and, procedural rules.

4.      I took the depositions of William Scott Helfand, Bennett G. Fisher, and David Oubre in this case regarding the subject matter of this lawsuit, as well as their billing in connection with this case, and, in connection with CAUSE NO. 22-CCV-070378, RICHARD P. JONES & MICHAEL JOSEPH BITGOOD A/K/A "Michael Easton" AND **LEWIS, BRISBOIS, BISGAARD & SMITH LLP Plaintiffs**, vs. KARINA MARTINEZ, MARIANNA SULLIVAN, IMPERIAL LOFTS, LLC, DAVID OUBRE, CHINASA OGBUREKE, IMPERIAL LOFTS OWNER, LLC AND **LEWIS, BRISBOIS, BISGAARD & SMITH LLP Defendants.** IN THE COUNTY COURT AT LAW NO. THREE (3) OF FORT BEND COUNTY, TEXAS, from which this case arises, and from where plaintiff *pro se's* claims were first heard in a court of record.

5.      I adopt and incorporate by reference as if set forth verbatim into this Declaration, Bitgood Exhibits 1 through 15, which have been **ADMITTED** into evidence in this case and of which there is no dispute. **I also adopt and incorporate by reference as if set forth verbatim, the Court's taking judicial notice of this entire case, the entire proceeding, the Court's docket entries, and the law of the United States Supreme Court, as well of the law of the United States Court of Appeals for the Fifth Circuit**.

6.      The style of the state court case is the most telling feature of this instant case, *i.e Lewis Brisbois, et al. vs. Lewis Brisbois et al.*

Exhibit 2 - 11-18-24
Page 2 of 18

EXHIBIT 2

along with the billing fee statements which were, at one point, sealed by a protective order.  **Both Helfand and Fisher waived the protective order** when both were examined under oath in open court with witnesses present who were not connected to this case, and, with a Law360 reporter in attendance while the fee statements were marked, identified, discussed, and both Helfand, and Fisher were impeached using the billing statements.  The attorney fee statements submitted by plaintiff *pro se*, are replete with false entries, fee–churning, irrelevant, and collateral matters, and both Helfand and Fisher testified under oath that the fee statements need to be corrected.   In addition Bennett Fisher STIPULATED that the plaintiff in this case appears in a *PRO SE* capacity.  That stipulation was acknowledged and ratified by the Court.  That being said, the so-called "affidavit" of Helfand stands impeached as a matter of fact, and by his deposition testimony, and it will not support the plaintiff *pro se's* motion for attorney's fees as the United States Supreme Court has already decided that *pro se* litigants, even if licensed attorneys, are not entitled to attorney's fee awards.

7.    Another glaring defect to Helfand's affidavit is also the fact that HE, HIMSELF, called himself as a material witness in this case on December 15, 2022.  In having done so, not only did Helfand commit perjury, but as a material witness, he cannot act as counsel in this case under the Texas State Bar Rules of Discipline. **I FILED A MOTION TO DISQUALIFY Helfand** under that same Rule which is applicable in the Southern District of Texas. I have made numerous applications to file motions that are necessary to protect the record, but the Court has said "NO" to any attempt to file pleadings and motions. I disagree with the Court on this issue, however, **I am not free to disobey the Court, but rather, proper behavior commands me to obey this Court, which I have, right down to every minute detail.**

Page -3-

Exhibit 2 - 11-18-24
Page 3 of 18

8. **WHAT WE DID THAT GOT US HERE--(WE OUT-LAWYERED THEM IN STATE COURT)**[2]   In connection with the formation of the now-terminated, Texas domestic partnership, Lewis, Brisbois, Bisgaard & Smith, LLP,[3] and plaintiff *pro se's* "settlement" demands the following are the facts of this case:

9. On September 23, 2022, plaintiff *pro se*, **after losing the same case in state court,** filed this instant case in this district court claiming that we violated the "Lanham Act" by misappropriating the name "Lewis Brisbois Bisgaard & Smith LLP, in filing the Texas Domestic Partnership."

10. While at first blush such a claim might seem viable,  it is <u>not viable</u> because we took an unorthodox, but very legal approach in state court, and then  **we quit** at the very first hearing in this case. **See**: **Docket 19, fn**.1. IN OTHER WORDS, THE CASE ENDED ON OCTOBER 6TH 2022.

11. *Lewis Brisbois Bisgaard & Smith LLP* [plaintiff *pro se*], is a California foreign entity under Texas Law.  Under Texas Law, a foreign entity MUST—by law—pay its franchise taxes, and renew its registration yearly on a timely basis, or it forfeits the right to

---

[2]

**WE,** is myself, attorney Susan C. Norman, representing her clients in state court, and, attorney Brad Beers, representing me in state court as well.  **Mr. Beers has been my personal lawyer for over 20 years, and would be my lawyer in this case, until plaintiff *pro se* attempted to bribe him, which forced him to withdraw, and hire his own counsel.**

[3]

 Lewis Brisbois Bisgaard & Smith LLP, a Texas Domestic Partnership, was voluntarily terminated with the Texas Secretary of State on October 6, 2022, prior to this Court's signing the TRO on Oct. 7, 2022.

Page -4-

**Exhibit 2 - 11-18-24
Page 4 of 18**

EXHIBIT 2

transact business in Texas, and is **<u>BARRED</u>** by law from appearing in a Texas court.  It is that simple.  The Texas Secretary of State sent out ample and repeated notices to plaintiff *pro se* to pay the fees, and renew its foreign entity registration to transact business in Texas, **OR,** the name would be available to anyone who paid the fees, and registered the name.

12. We checked with the **USPTO** to ascertain if the four-name entity, *Lewis, Brisbois, Bisgaard and Smith,* was a protected name. We discovered that the four-name wordmark **<u>was not a protected name</u>**, however the stylized, fanciful "LOGOs" with those four initials and the two-name word mark, Lewis Brisbois, were protected. **<u>We did not use any protected word marks or logos. In addition, we DID NOT conduct any business of any kind using the name Lewis, Brisbois, Bisgaard and Smith before we dissolved it.</u>** We also found that on July 10, 2020, Plaintiff *pro se* had allowed the four-name wordmark to lapse, and it was cancelled by the USPTO, thereby leaving it in the public domain. **On September 23, 2022, Plaintiff *pro se,* did not own the four-name wordmark when it filed this lawsuit.  See docket 35-2. It is nothing new that William Helfand lied to the Court about owning the four-name word mark on September 23, 2022,  See: Docket 1-1, and again on the record on October 6, 2022, in order to acquire a TRO in this case.  Helfand is well-known to be an habitual liar, and nothing that turns on his word would support a judgment.**  I have known William Helfand for thirty-eight (38) years, and his behavior in the district court, **<u>and now in the Fifth Circuit Court of Appeals</u>**, is consistent with the published opinion of Houston's First Court of Appeals in *Helfand v. Coane*, 12 S.W.3d 152 (Tex. App. 2000), wherein Helfand is aptly described as:

Page -5-

**Exhibit 2 - 11-18-24
Page 5 of 18**

> a. being a "habitual liar";
> b. being a "sociopath" and,
> c. repeatedly lying to federal judges.[4]

13.    Before forming the Texas LLP, so as not to transgress and perhaps break the law, we registered the entity, *Lewis Brisbois Bisgaard & Smith, LLP [Texas Domestic],* and brought a lawsuit against plaintiff *pro se* to have a state court of record declare under Chapter

---

[4]

At page 5 of plaintiff *pro se's* brief to the Fifth Circuit, which is in this record, and of which the Court has taken judicial notice, Helfand tells the Fifth Circuit that the following event took place, and, that this event is in the record:

"**3. Defendants' conduct sows confusion.**

Defendants' misuse of **LBBS's mark** has created confusion. <u>**For example, Bitgood sent an email to the city attorney for Sugar Land, Texas offering mediation services through his infringing entity. ROA.2550.**</u> The city attorney forwarded the e-mail to an LBBS partner. *Id.* Mr. Helfand spoke with the City attorney and explained how Defendants "were improperly using the name of the law firm Lewis Brisbois Bisgaard & Smith." ROA.2326. **The City attorney "understood that there was some effort on [Bitgood's] part, Ms. Norman's part with Mr. Beers' assistance, to create confusion regarding who was the firm of Lewis Brisbois Bisgaard & Smith." ROA.2346, ROA.19-ROC.145923.**

Of course, Helfand was lying yet again, a fact borne out by the deposition of Meredith Riede where she denies such [an outrageous lie] ever took place.

Page -6-

Exhibit 2 - 11-18-24
Page 6 of 18

37 of the Texas Civil Practice and Remedies Code, who had the **legal right** to use the name Lewis Brisbois Bisgaard& Smith in the State of Texas. **See: Docket 19. My strategy was very straightforward; if we win on that issue, we knock out the law firm, the clients, and the case is over.**

14. On September 13, 2022, with plaintiff *pro se's* Houston managing partner, David Oubre, appearing for the defendant firm and the clients, and with the issues fully joined as pled by defendant in the state court [plaintiff *pro se* here] we proceeded to try that issue in state court. **Defendant [Plaintiff *pro se*] Lewis Brisbois (California), LOST, and lost in a big way. The state court ruled that defendant, Lewis Brisbois (California LLP) plaintiff *pro se* here, had no right to appear in a Texas court; ejected the entire law firm from the case; struck its pleadings, and then struck plaintiff *pro se's* "client's" pleadings.[5]**

15. The transcript of that trial; the state court's orders; the state court's entry of judgment; the state court's **findings of fact and conclusions of law,** were all marked, offered, and ADMITTED into evidence in this instant case on December 2, 2022, and re-urged again on December 15, 2022, with Helfand stating, "no objection,"

---

[5]

Obviously **my trial strategy** worked; the state court signed off on it; it ended the underlying lawsuit which settled within two weeks; and, made plaintiff *pro se* the laughing stock of the courthouse which left them in peril of losing every case in a Texas state court because they were legally unable to appear in any Texas court.  See: *Texas Business and Commerce Code* Sec. 71.202. A person commits an offense if the person:  (1) conducts business or renders a professional service in this state under an assumed name; and (2) intentionally violates this chapter.

Page -7-

Exhibit 2 - 11-18-24
Page 7 of 18

ADMITTED into evidence. **See: Dockets 272, 273, and 274.**

16. Ten days later, **(after plaintiff *pro se* [as defendant] lost in state court)**, plaintiff *pro se* sued us in federal court—this instant case—in flagrant violation of the binding Fifth Circuit precedents of *Riley v. Louisiana* 214 F. App'x 456 (5th Cir. 2007), and *U.S. v. Shepherd,* 23 F.3d 923 (5th Cir. 1994). THE STATE COURT JUDGEMENT THAT PLAINTIFF PRO SE CLAIMS THEY WERE "APPEALING" BECAME FINAL ON OCTOBER 14TH 2022. PLAINTIFF PRO SE DID NOT APPEAL ANY OF THE STATE COURT ORDERS OR JUDGMENTS DEALING WITH ANY SO CALLED LANHAM ACT VIOLATIONS.

17. The record is littered with our objections to engaging in fraud against the state courts as demanded by plaintiff *pro se* in its settlement demands, and, this case continues to stay alive despite the Court's own words that the case has no usefulness, something with which I totally agree. **Further, there is one more thing that should have ended this case on the spot; on October 6, 2022, plaintiff *pro se* filed a counterclaim in the state court, asking for the identical declaration from the state court (after having filed this case in federal court on September 23, 2022). See: Docket 9.** [6]

---

[6]

Plaintiff *pro se* pled as follows: CAUSE OF ACTION – REQUEST FOR A DECLARATORY RELIEF Pursuant to Section 37.003 et seq. of the Texas Civil Practice and Remedies Code, the Nominal Defendants request the court declare: 1. David Oubre is authorized to practice law in Texas; and **2. Lewis Brisbois Bisgaard & Smith, LLP is authorized to do business in Texas**. See: Docket 9. **(There it is in plain black and white.)**

Page -8-

Exhibit 2 - 11-18-24
Page 8 of 18

18.   That filing, Docket 9, is what judges call a "game changer" and required this Court to abstain on the spot. **See: Docket 23.**

19.   This is the extent of our **"bad acts"** that caused me, and two lawyers who were absolutely immune from suit, to be sued by plaintiff *pro se*. In other words, we broke no laws, committed no torts, violated no statutes, and plaintiff *pro se*—by its own admission—knew what we did, but elected to challenge in state court, lost, and then came into federal court to complain about what we did open court and in their presence. The court finally agreed and dismissed with prejudice all of plaintiff pro se's fraud claims in this lawsuit, which should have cleared Brad Beers from any liability whatsoever.

20.   I am well aware that state courts possess concurrent jurisdiction with federal courts <u>over all civil causes of action</u>, **Lanham included**, <u>except one</u>: Title 11 Bankruptcy. [7] See: *Howlett v. Rose,* 110 S. Ct. 2430, 496 U.S. 356 (1990). Indeed, the United States Supreme Court, as recently as 2009, in *Haywood v. Drown*, 129 S. Ct. 2108, (2009), explained it as follows:

> **"Federal and state law "together form one system of Jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are courts of the same country, having jurisdiction partly**

---

[7]
There is no legal requirement in either State court that one plead "magic" language such as i.e. "Rico" "Copy right" "Lanham" "Title 15" etc.,in that the language in the live pleading is what controls. **In the absence of "special exceptions" in State court, which Oubre admitted that he did not file, the live pleading in State Court pled a cause of action under "Lanham" and that is how the state court adjudicated it.**

Page -9-

Exhibit 2 - 11-18-24
Page 9 of 18

> different and partly concurrent. and, "so strong is the presumption of concurrency that it is defeated only when Congress expressly ousts state courts of jurisdiction."

21. On October 6, 2022, once Judge Ellison expressed his disdain over what he viewed as a judicial "high-jacking" and viewing the expense of fighting this case, as well as displeasing a federal judge—WE FOLDED, and told Judge Ellison, "OK Judge, we quit, they "win", and we dissolved Lewis Brisbois Texas, before Judge Ellison would enter a TRO. **See: Docket 16.**

22. Not to be lost on the Court is another series of facts ranging from plaintiff *pro se's* failure [actually refusal] to request summons and have us served —which is also jurisdictional—to my offer to submit the entire case on stipulated facts within five (5) days after plaintiff *pro se* filed the instant district court lawsuit. Thus, five (5) days after it was filed, the case should have been over. The "affidavit" submitted by Helfand is conclusory and does not detail what services were performed in this case as he cannot testify to another lawyer's fees, neither can anyone discern whether the fees were necessary, unless of course the setting me up to be indicted on a bogus felony charges as indicated in the fee statement was part of the "work performed." See: Docket 205 & 206.

23. **Plaintiff *pro se* concealed its filing of the instant district court lawsuit. But for the media (Law 360) calling me and requesting a comment, I would never have known about this lawsuit, as plaintiff *pro se* waited until after the state court ruled against it, and then filed the instant district court case on us with no notification to us.**

Exhibit 2 - 11-18-24
Page 10 of 18

24.  Lying to the Court is not only a serious breach of everything we hold near and dear, but it is also tampering with the very system put in place to protect the public. **See:** *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas*, 322 U.S., at 245, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner involves far more than an injury to a single litigant. **It is a wrong against the institutions set up to protect and safeguard the public.**" When you lie under oath in a matter material to the inquiry at hand, that's called perjury, ***and it cannot be tolerated in a federal court***— period, the end! **See:** *18 U.S.C. 1623.* So it is here with William Helfand.

25.  As in *Mylett v. Jeane*, 910 F.2d 296 (5th Cir.1990), when a lawyer by the name of Lopez refused to do **the exact same thing** that plaintiff *pro se* asked Brad Beers to do in this case; Helfand attempted to bribe my lawyer **and we submitted proof** to the Court of this attempt.

26.  In connection with the legal services rendered to me by Bradley B. Beers, and Susan C. Norman, Beers has been my personal attorney for well over 20 years. I hired him to help me form the Texas LLP, along with Susan Norman. I know nothing about forming a company that would be an LLP, and thus, Beers was rendering legal services to me, and Norman was rendering legal services to the LLP. Those facts are in evidence as seen in Bitgood exhibits 1-15,when both Beers and Norman made their appearances for me in state court in the case where Lewis Brisbois was the defendant and the issue of who possessed the right to use the name "Lewis Brisbois" was heard and determined. **Neither lawyer—Beers nor Norman—did**

Page -11-

Exhibit 2 - 11-18-24
Page 11 of 18

**anything that lawyers do not normally do in representing a client, and indeed the state court warned David Oubre repeatedly that what was at stake was something he should take seriously—a warning he ignored**.

27.  What plaintiff *pro se* was doing in state court [using the name Lewis Brisbois et al] was a criminal offense, and Oubre admitted to the state court that plaintiff *pro se* did not re-apply for its registration with the Secretary of State nor or pay the statutory fees, until March 28, 2022—which was after plaintiff *pro se* made an appearance in state court.  **Plaintiff *pro se* DID NOT submit an application to the USPTO for the wordmark: "Lewis, Brisbois Bisgaard & Smith LLP" until September 29, 2022, only after it filed this suit on September 23, 2022.**

28.  The issue of attorney's fees—if the U.S. Supreme Court's mandate is not followed here—is an issue of fact to be determined by a jury. Nor should this Court be angry at the state court judges in this case. To the contrary, the Court's ire should be directed toward the plaintiff *pro se's* arrogance, incompetence, malfeasance, and failing to protect its "rights" in the state court when the issue was tried.

29.  The undisputed facts of this case fit squarely within the *Rooker/Feldman, Palmer, Riley, Shepherd,* and *Haywood* exceptions to a federal district court  hearing, much less overturning, the work of the state courts.  Further, as Bennett Fisher told this Court at his  deposition, those "ridiculous" state court orders would be "eviscerated" on appeal.  Fisher's guarantee should be heeded, because as it is well-documented in this record and as this Court has already judicially noticed as an undisputed fact, this state-court case is the case where  Helfand's close friend, and former law partner, Kevin Jewell, on Houston's Fourteenth

Page -12-

Exhibit 2 - 11-18-24
Page 12 of 18

Court of Appeals, is shepherding  the appellate process by corruption, to  twist the outcomes for plaintiff *pro se* and visit serious legal problems on me.

30.    As the Court also heard at the depositions taken in this case—despite plaintiff *pro se's* false narrative that the underlying state court case was a rent/lease dispute—it has been established that I was not a renter at Imperial Lofts when the state-court case was brought.  On November 30, 2023, the Fourteenth Court of Appeals sitting in Houston, Texas, "nailed" it when they wrote these words:

> "**BACKGROUND: "**Appellant [Bitgood] filed a petition seeking declaratory judgment and injunction and asserting claims for, inter alia, **fraudulent billing under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.** (Bitgood v. Martinez, **NO. 14-22-00694-CV,** November 30th 2023). [8]

31.    **This case** began in Fort Bend County, Texas, with plaintiff *pro se's* clients stealing monies earmarked by Congress for the poor during the pandemic.  It continued with a cover-up of epic proportions  by plaintiff *pro se* and its associates, with terms like: ***"we don't apologize to niggers."***  It was later exposed that plaintiff *pro se's* client's leases were all bogus and invalid which triggered yet more problems for them based on my work in the state courts.  And

---

[8]

A copy of the opinion was supplied to the Court in **ECF 203  / 213**, and the Court has taken  judicial notice of it.  It is a serious  federal crime to steal from the taxpayers, and it was made worse when I discovered that the targets of these thefts were citizens of color, that is Black people, the same Blacks that plaintiff *pro se* refers to in its e-mails as "Niggers."

Exhibit 2 - 11-18-24
Page 13 of 18

finally, I exposed that plaintiff *pro se*, and its clients, were targeting the African-American community in these thefts, including a Richard Peter "Dickey" Jones, the one black man they should have left alone. **See Docket 205,** and the Opinion of Houston's Fourteenth Court of Appeals in *Bitgood v Martinez*.

32.    At no time did "LB" (Plaintiff pro-se) ask the state court to order me not to use the name Lewis Brisbois, Bisgaard & Smith LLP, on my pleadings and in my correspondence to the court and to others. At no time did **"LB"** ask the state court to enjoin me from using the name, and at no time did **"LB"** ask the state court to stop me from prosecuting my case under that name. In fact—despite the stern warning to "LB" from the state court to take the matter seriously because that would be the first thing the state court would have to determine in the case—"LB" ignored the state court and proceeded to join, and then try the issue to judgement. Only after losing, and only after their clients discharged "LB," did "LB" bring the instant suit to force this Court to review the orders and rulings of the state court. It was then, and only then, that "LB" filed a federal lawsuit seeking to overturn the state court, when "LB" could have" easily raised all the complaints they raise in the federal court, right then and there in the state court. In fact, "LB" was obligated to raise them in the state court, or risk waiver by collateral and judicial estoppel.

33.    The instant federal case was brought because of—and to curtail—my constitutional right to petition for redress, associate with counsel of my choice, speak out on matters of public concern, and to complain to the government that Nolan was stealing from the CARES Act and practicing ugly, systemic racism. The instant federal case was also brought to silence me from speaking to the media, or from exposing **"LB"** nationwide to all of its clients, all the

Page -14-

**Exhibit 2 - 11-18-24
Page 14 of 18**

judges in Texas, and especially "LB's" opponents.  "LB's"clients, judges in Texas and "LB's" opponents were unaware that "LB" continued to appear in Texas courts when they had no legal right—much  less authority—to appear in a Texas Court, as so determined by the final  orders of the state court dated September 13, 2022.

34.   The following declaration under the penalty of perjury dated October 13, 2022, remains part of this record, judicially noticed, and more importantly UNCONTROVERTED to this date  by plaintiff *pro se*:

> *"Finally, I can assure the Court under the penalty of perjury that I will not use the name that caused all of this contention again; that I will not form another LLP given my "success" in doing the first, last, and the only one I ever formed. Further, for well–grounded reasons, not the least of which has been shown to be gross incompetence, fraud, and outright thievery from their own clients, I can assure this Court and all courts that I WILL NEVER CLAIM to be associated with, related to, affiliated with, or hold myself out as being connected with Lewis Brisbois Bisgaard & Smith LLP, of California, for fear that I will lose all respect in the legal community and be labeled as an incompetent thief that defrauds their own clients, pranks  the  judges  at  every  opportunity,  and misrepresents evidence to the federal courts. No, that is all Lewis Brisbois Bisgaard & Smith, LLP's claim to fame, of which I want no part.*

Page -15-

Exhibit 2 - 11-18-24
Page 15 of 18

***Executed in Fort Bend County, State of Texas, under the penalty of perjury this 13th day of October, 2022."***

35.   The claims of malicious intent to violate the Lanham Act are false, as this declaration makes clear, along with the state court record. And, Helfand affidavit's request for fees is conclusory, does not segregate the fees, and wholly fails to show how the so-called incurred fees were (a) reasonable, and (b) necessary.  It is my opinion that all the so-called fees incurred by plaintiff *pro se* were not reasonable, and more importantly, were unnecessary given that this case could have been disposed of in 5 days, and in fact, it was wholly and completely rendered disposed and moot on October 6th 2022 as seen in ECF 16. At that point, and given the uncontroverted and sworn declaration at paragraph 34 of this declaration dated October 13th 2022, the case was resolved.

36.   **Once again, and as judicially noticed by this court, (docket 69) the formation of the Texas Domestic LLP was done after corresponding with the Honorable Nathan Lincoln Hecht, Chief Justice of the Texas Supreme Court, and as an obligation to HELP those who were being displaced during the COVID-19 pandemic, despite the Texas Supreme Court ordering a full stop to all evictions. Despite that order, plaintiff pro se's  clients,  and their lawyers continued until I stepped in and challenged every landlord and justice of the peace until it stopped. As a parting "gift" I also had a court of record toss all of the leases that plaintiff pro se was hired to defend**.

37.   I/we did no  business under the name Lewis Brisbois Bisgaard & Smith, we had no bank accounts under that name, and more importantly, plaintiff pro se has not, and never can credibly

Page -16-

Exhibit 2 - 11-18-24
Page 16 of 18

challenge that we did. PLAINTIFF PRO SE HAS HAD AMPLE TIME TO BRING FORTH EVIDENCE OF A LANHAM VIOLATION AND HAS BROUGHT FORTH **ZERO EVIDENCE**, JUST HELFAND'S PERJURY WHICH IS NOT EVIDENCE.

38.   Helfand's November 1st 2024, newly convected "affidavit" suffers from the same infirmities as the first one in addition to these additional defects, **which I object to**:

     a.   *"To the extent the Court may find it helpful to determine any award of attorneys' fees, I am prepared to submit billing records, properly  redacted to protect privileged information."*[9]

     b.   *"Lewis Brisbois' reasonable attorneys' fees for this litigation through November 1st 2024 are $543,146.81, The services provided were necessary to prosecute Lewis Brisbois' claims against Defendants."*[10]

---

[9]

 I give Helfand "credit" for trying to sneak that conclusory statement in—which admits, that after he was deposed, **and exposed**, he manufactured another fee statement that he has not disclosed.

[10]

The statement is wholly conclusory and double hearsay in that Helfand is attempting to testify as to the so-called work performed by others, and in my opinion, the fees were not only unreasonable, but were wholly unnecessary, given that on September 28th 2022, I agreed to submit this case, as plaintiff pro se pled it, to the court on stipulated facts, which would have ended the case 5 days after it was filed.  Because of Helfand's bribery attempts of Brad Beers, and his extortion attempts to use this case to unravel the state court cases, **as he made clear in his first "affidavit" by attaching his list of demands which had nothing to do with this case**, plaintiff pro se has wasted 25 months of this Court's time by churning internal and fraudulent fee statements, as admitted to by Helfand at his deposition.

Exhibit 2 - 11-18-24
Page 17 of 18

     c.    *"In addition, I am familiar with the billing practices and the fees customarily charged in the Southern District of Texas for counsel and representation of the nature that I, my partners, and our associates and legal assistant have performed in these proceedings."* [11]

39.    I once again object, and renew my request for my right to a trial by jury on the issues of damages and fees as enshrined in the seventh amendment of the United States Constitution.

40.    I declare under the penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

    EXECUTED on November 18th 2024, at Richmond, in and for Fort Bend County, Texas.

                /s/ Michael Joseph Bitgood
                a/k/a/ & d/b/a/ "Michael Easton"

---

[11]

Obviously Helfand' statements are false, in that there is no customary fee charged in the Southern District for bribery, perjury, and extortion, and lawyers who engage in what Helfand has done in this case normally are disbarred, and then indicted, tried, convicted, and remanded into the custody of the Attorney General.

Exhibit 2 - 11-18-24
Page 18 of 18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Lewis Brisbois Bisgaard and Smith LLP | § | |
| | § | |
| v. | § | **4:22-cv-03279** |
| Michael Joseph Bitgood, et al. | § | |

---

**Declaration under Penalty of Perjury of Susan C. Norman
in Opposition to ECF 353 and 353-1,
Plaintiff *Pro Se's* Unsupported Request for Attorney's Fees
and
Objection to Denial of My Seventh Amendment Right of
Trial by Jury to Determine These Purported Fees.**

---

1.      My name is Susan C. Norman. I am over the age of eighteen (18) and  I am fully competent to execute this Declaration.  All the statements made herein are true and correct and are made from personal knowledge.  I object to denial of my Seventh Amendment right of trial by jury to determine these purported fees.

2.      I am competent to testify in this declaration.  I am an Attorney at Law, licensed to practice law in Texas in 1990 and I have managed and operated my own law firm as a sole practitioner for over thirty years.

3.      In my over-thirty years of practice as a lawyer I have litigated contested, as well as highly-contested, matters in both state and federal trial and appellate courts, for many types of cases, and I am a certified mediator pursuant to Tex. Civ. Prac. & Rem. Code Chapter 65.

Exhibit 3 - 11-18-24
Page 1 of 15

4.    Along with Mr. Bitgood, I took the depositions of William Scott Helfand,  Bennett G. Fisher, and David Oubre, Norman Giles, and Meredith Riede regarding this  lawsuit, and their purported "billing" in related to this case.  These depositions in this case arose out of Cause No. 22-CCV-070378, in which Plaintiffs Richard P. Jones & Michael Joseph Bitgood a/k/a "Michael Easton" and Lewis, Brisbois, Bisgaard & Smith LLP [a Texas Domestic entity] sued Defendants, Karina Martinez, Marianna Sullivan, Imperial Lofts, LLC, David Oubre, Chinasa Ogbureke, Imperial Lofts Owner, LLC and Lewis, Brisbois, Bisgaard & Smith LLP [a California foreign entity]  in the County Court at Law No. Three (3) of Fort Bend County. It was in this state court of record  that the claims of defendant, LBBS, were first heard.  It was in this state court of record that Plaintiffs obtained a state court judgment against LBBS, including findings of fact and conclusions of law by the state court judge, which are shown in ECFs 60-61, *et seq.*, the Bitgood Exhibits 1 - 15 admitted into evidence in this case **without objection by Plaintiff *pro se.***

5.    I was present and I have relied upon this Court 's taking judicial notice of this entire case, 4:22-cv-03279; the entire proceedings before the Court; the docket entries and the law of the United States Supreme Court and of the United States Court of Appeals for the Fifth Circuit.  I participated in providing to this Court the relevant case law from the United States Supreme Court; from the United States Court of Appeals for the Fifth Circuit; as well as from other circuits.

6.    I have examined ECF 353 and ECF 353-1, the sixty-three (63) page purported billing records representing the Plaintiff *pro se"s* attempt to collect an outrageous amount of unreasonable, unnecessary, and falsely generated attorney's fees without my being able to actually review such purported "fees" and examine the proponents of such fees under oath.

Exhibit 3 - 11-18-24
Page 2 of 15

EXHIBIT 3

a.   I further state that as an attorney, I am qualified to, and I do, state that the purported "fees" of $543,146.81 Plaintiff *pro se* requested as set out in ECF 353-1 are neither necessary, nor reasonable.  Defendants have already testified that their original demand of $275,396.50 in attorney's fees was erroneous, mistaken, etc..  I have no doubt that the newly-confected fees of $543,146.81, in ECF 353-1, will suffer the same defects—once Defendants can be deposed regarding them, and once my right under the Seventh Amendment allows a jury is permitted to review the entire record and make its assessment.

b.   Te only purported "evidence" of such original "fees" referenced in ECF 353 is ECF 353-1, a purported billing to LBBS from its California office to its own Houston office, and supported only by an "affidavit" by the known perjurer, William Scott Helfand, whose "affidavit" is conclusory, attempts to ratify services purportedly performed by others, and is no evidence of anything. When both Mr. Fisher and Mr. Helfand were deposed, each admitted that there were various mistakes, items "misbilled," or "entries which shouldn't be there," in the original "pre-bill," which presages the same defects in ECF 353-1

c.   In ECF 353-1, the contents of the newly-confected "bill"are unable to be tested by deposition of the "billers" identified therein, thus preventing my review for necessity, and for reasonableness on the new "bill."  Further, based on the multiple "errors" in the Prebill previously testified to by Fisher and Helfand, such document cannot be tested for accuracy before even an analysis of necessity and reasonableness.

Page -3-

Exhibit 3 - 11-18-24
Page 3 of 15

d.    Based on the testimony of Fisher and Helfand in each of their depositions regarding their admitted inaccuracies, mistakes, and other errors in the original "pre-bill" terming them "incorrect," although I term them intentionally false, I it is my opinion that the $543,146.81 in "fees" shown in ECF 353-1, not necessary, nor reasonable, nor true, nor correct.

e.    Further, Helfand has attempted to verify in his affidavit the billing records of multiple other persons, records which he did not create.

f.    In addition, Helfand failed to segregate fees.

g.    It is my opinion as an attorney that all the "fees" previously testified to by Fisher and Helfand and new "fees," will abjectly fail the test set out by the Texas Supreme Court in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497-98 (Tex. 2019): "**An amount incurred or contracted for by a claimant is not conclusive evidence of reasonableness or necessity; '[t]he fee claimant still has the burden to establish reasonableness and necessity.'**" *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497-98 (Tex. 2019).

"To obtain attorney's fees, a party generally must present evidence of the reasonable hours spent by its counsel and its counsel's reasonable hourly billing rate. *Rohrmoos Venture v. UTSW DVA Healthcare*, 578 S.W.3d 469, 498 (Tex. 2019). To be sufficient, this evidence must at a minimum include proof of:

Page -4-

Exhibit 3 - 11-18-24
Page 4 of 15

EXHIBIT 3

- the particular services performed;

- the identity of the person who performed these services;

- an approximation as to when these services were performed;

- the reasonable amount of time required to perform these services; and,

- the reasonable hourly rate of the person performing them.

"Once a party has introduced this evidence, the resulting fee calculation—often referred to as the base loadstar figure—is presumptively reasonable and necessary.  The categories of evidence identified above take into account most of the *Arthur Andersen* factors, such as the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal services properly, the fee customarily charged in the locality for similar legal services, the amount involved, the experience and ability of the person performing the services, whether the fee is fixed or contingent, the uncertainty of collection before the performance of the services, and the result obtained. The fee proponent may seek an enhancement of the base loadstar figure. However, the issue of whether the fees were (1) reasonable, and (2), necessary, **is for the jury to decide**. (Defendants have invoked the Erie Doctrine which applies in this case).

7.    As stated in paragraph 7 of Mr. Bitgood's November 18, 2024, Declaration, Mr. Helfand called himself as a material witness on

Exhibit 3 - 11-18-24
Page 5 of 15

December 2, and, perjured himself.  I agree with Mr. Bitgood that Mr. Helfand cannot be both counsel and material witness pursuant to the State Bar Rules of Discipline.  In addition, but for the multiple denials of this Court to allow me to file motions and pleadings to protect my record, I would have already filed my answer and counterclaim, and joined in Mr. Bitgood's Motion to Disqualify Mr. Helfand, among other motions and pleadings.

8.     I fully adopt paragraph 8 and fn 2 and 3 of Mr. Bitgood's Declaration regarding out-lawyering the LBBS counsel in state court, leading to the state court's issuance of ECF 60-1

9.     Plaintiff *pro se* filed this specious case on September 23, 2022, **after it lost in state court**, and filing ECF 1-1, a false document regarding a "name" to which Plaintiff *pro se* had **no protected wordmark** on file with the USPTO because it had been cancelled . ECF 35-2.

10.    In state court, we took a legal approach that was unusual and won.  However, as stated in Mr. Bitgood's fn 3 of November 18, 2024, we voluntarily terminated the Texas Domestic entity with the Texas Secretary of State on October 6, 2022, ECF 16,  **before** the Court signed the TRO on October 7, 2022, when there were only 60 documents on file as represented by ECFs 1 - 16.

11.    I agree with Mr. Bitgood's statements in his ¶ 11 as to the requirement of a foreign entity being required to renew its registration every year, or it forfeits its right to do business in Texas—which is what Plaintiff *pro se* did–or failed to do—in 2022, (and multiple times prior).

12.    ECF 35-2, is a USPTO certified copy I obtained from the USPTO of the cancellation on July 10, 2020, of the four-name wordmark Lewis,

Exhibit 3 - 11-18-24
Page 6 of 15

Brisbois, Bisgaard and Smith.  ECF 35-2 demonstrates that on September 23, 2022, William Helfand knew that Lewis, Brisbois, Bisgaard and Smith was not a protected four-name wordmark at the USPTO and Plaintiff, LBBS, did not own it.  ECF 1-1 and the statements to the Court on October 6, 2022, support Mr. Bitgood's statement in his ¶ 12 that [Mr.] "Helfand is well-known to be an habitual liar."  Although I did not know Mr. Helfand prior to the inception of this federal case I became aware of the case of *Helfand v. Coane* as cited by Mr. Bitgood.  After seeing Dkt. 1-1 filed by Mr. Helfand in this case asserting that Plaintiff *pro se* "owned" USPTO registration of the four-name word mark, 3,722.172, in this case and experiencing Mr. Helfand's outrageous falsehoods to the Court on October 6, 2022, and thereafter, I do completely agree with Mr. Bitgood's assertion that . . . "nothing that turns on his [Mr. Helfand's] word would support a judgment."  After those words in paragraph 12, because of Mr. Helfand's false statements and filings throughout this case and in the Fifth Circuit related to this case, although I have not known Mr. Helfand for 38 years as has Mr. Bitgood, I thoroughly agree with his ¶ 12 and fn 4 regarding Mr. Helfand.

13.    I joined in executing the strategy of registering the Texas Domestic entity of Lewis, Brisbois, Bisgaard and Smith, LLP and filing the Tex. Civ. Prac. & Rem. Code Chapter 37 filings, set out in the last sentence of paragraph 13, which, as Mr. Bitgood stated, was successful: we obtained the judgment and findings of fact and conclusions of law in ECF 60-1.

14.    The strategy expressed by Mr. Bitgood in his ¶14 and fn 5 was the successful strategy we employed in the state court case, 22-CCV-070378 resulting in Plaintiff Texas Domestic entity winning against the California foreign entity, See ECF 60-1.

Exhibit 3 - 11-18-24
Page 7 of 15

15.    On December 2, 2022, and on December 15, 2022–with Helfand stating, **"no objection**," the Court admitted into evidence the transcript of the September 13. 2022, state court trial; the state court's orders; the state court's entry of judgment; the state court's findings of fact and conclusions of law.  ECFs 272, 273, and 274.

16.    On October 14, 2022, the purported "appeal" by Plaintiff *pro se* became final.  Plaintiff *pro se* did not appeal  any of the state court orders or judgments dealing with any so called Lanham Act violations — yet more misstatements by Plaintiff *pro se*.  The Plaintiff *pro se's* willful violations in its September 23, 2022, petition, of the Fifth Circuit binding precedents of *Riley v. Louisiana*, 214 F. App'x 456 (5th Cir. 2007), and *U.S. v. Shepherd*, 23 F.3d 923 (5th Cir. 1994), have now come "home to roost."   As an attorney, I am amazed at such flagrant violation of binding precedent by lead counsel, Helfand; however such actions by Helfand and Plaintiff *pro se* became commonplace and, unfortunately, accepted by the Court in this case.

17.    As an attorney practicing for over 34 years, such blatant misrepresentation by lawyers and a presumably competent law firm is without parallel in my experience.  No matter what objections we filed in this case, particularly against engaging in the fraud demanded by Plaintiff *pro se*, ECF 183-53, pp 5-6, this case continued.  Even when this Court—multiple times—stated that not only that "this case has no usefulness," and other words to the same effect, Plaintiff *pro se* continued.  Plaintiff *pro se* has caused now **355 ECF filings** in this case, despite our offer to settle the case on September 28, 2022, when there were only three filings, and on October 6, 2022, when there were only 60 documents filed.  The Court allowed this case to continue even when the Court was informed that after Plaintiff *pro se* filed this case on September 23, 2022—it had filed a counterclaim in the state court seeking an identical declaration from the state court as we won on

Exhibit 3 - 11-18-24
Page 8 of 15

September 13, 2022: 1. David Oubre is authorized to practice law in Texas; and 2. Lewis Brisbois Bisgaard & Smith, LLP is authorized to do business in Texas. ECF 9.

18.    Despite being requested to abstain, ECF 23, citing the sequence of events that led up to Plaintiff *pro se's* filing this case ten days after losing in state court, this Court ignored the requirement to abstain and continued the case.

19.    As a lawyer who is immune from suit for my representation of my clients, (as is Brad Beers, in his representation of Mr. Bitgood) the only purported "bad acts" I am alleged to have committed are that I used a name **in litigation**, not commerce—Lewis Brisbois Bisgaard & Smith, **a name which was not owned by Plaintiff *pro se* because it had been cancelled two years prior by the USPTO**—and not re-registered until over eighteen months after we terminated the entity. As stated by Mr. Bitgood, we broke no laws, violated no statutes, committed no torts, and **did not use the name in commerce**. Plaintiff *pro se* was fully aware of our use of the  **un-registered name**, yet allowed our challenge in state court and lost.  Only after Plaintiff *pro se* lost in state court, did it file suit in federal court.  There was no fraud, as those specious claims were dismissed by this Court.

20.    I agree with Mr. Bitgood's correct statements in his ¶ 20:  Only Title 11, bankruptcy, is excepted from the "one system of jurisprudence"  of federal and state law, as stated by the United States Supreme Court in Haywood v. Drown, 129 S. Ct. 2108.  Concurrent jurisdiction of state and federal courts includes "Lanham Act" claims–which require no special words to be pled.  Simply because Mr. Oubre ignored the Lanham Act issues which he **fully litigated— without filing special exceptions**—in the state court case, losing on September 13, does not create the right of Plaintiff *pro se* to create an appeal in this Court by filing suit.

Exhibit 3 - 11-18-24
Page 9 of 15

21.    We folded, and dissolved the Texas Domestic Lewis Brisbois Bisgaard & Smith on October 6, 2022, before Judge Ellison's TRO Order entered on October 7, 2022.  ECF 16.

22.    I agree with that this case should have been over on September 28, 2022; this case could—and should have—  been submitted to the Court on stipulated facts.  The acceptance of the offered stipulation would have eliminated all of the unnecessary and unreasonable "attorney's fees" sought by Plaintiff *pro se*, particularly after it "doubled down" on its new "fees" of $543,146.81.  In my opinion, the fees set out in ECF 353-1 are as unnecessary and unreasonable as its first attempt at "fees."  Or, it was over—but for Plaintiff *pro se's* refusal—on October 6, 2022, with the termination of the "offending entity" after only four months and one week of existence.   The fact that the fee statement demonstrates the plan to set up Mr. Bitgood on a false felony indictment should tell the Court all it needs to know about Helfand and Plaintiff *pro se*.

23.    Not only did Plaintiff *pro se* conceal the filing of this case ten days after it lost in state court, during the course of the case, the Court permitted Plaintiff *pro se* not to request summons and have us served—a jurisdictional element.  Plaintiff *pro se's* own billing records demonstrate that it knew a week before it fully participated in the state court case that it planned t file this suit.

24.    At every turn in this case we have had to deal with misrepresentations, flat-out lying, extortionate demands to settle which would have required us to defraud the state court, and Mr. Helfand's perjury.  I fully agree with Mr. Bitgood's ¶ 24 which details how injurious lying to the Court is to the very fabric of our system of justice put in place to protect the public.

Exhibit 3 - 11-18-24
Page 10 of 15

25.    When Plaintiff *pro se* attempted to bribe Mr. Bitgood's lawyer as was done in Mylett v. Jeane, 910 F.2d 296 (5th Cir.1990), the Court took no action.

26.    I adopt paragraph 26 of Mr. Bitgood's Declaration, as to his statements regarding Mr. Beers' forming he Texas LLP, and the rendering of legal services to Mr. Bitgood and myself.  In this case I rendered legal services to both of my clients: Richard P. Jones and the Texas Domestic LLP.  Everything I did as a lawyer in the state-court case was what a lawyer normally does for a client, entitling me to immunity in this federal case—which did not include conducting business.  No Defendant—Mr. Bitgood, Mr. Beers, myself—ever used the mark in commerce—sale, offering for sale, distribution, or advertising of goods and services—only using the four-name wordmark in litigation.  "To be guilty of infringement … the defendant must use the infringing mark 'in commerce.'" *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 795 (5th Cir. 1954).

27.    I participated in filing the state court case and I was a lawyer in that case when the Plaintiff *pro se*, via Mr. Oubre, made its first appearance in state court—at a time when Plaintiff *pro se* was not authorized to conduct business in Texas.  As I found—also on multiple occasions prior to March 11, 2022, when Plaintiff *pro se* entered the state court case—Plaintiff *pro se* had lost its right to conduct business in Texas. Conducting business in Texas without authorization from the Texas Secretary of State is a crime.  **On July 10, 2020, prior to making its appearance in state court, Plaintiff *pro se* had lost its right at the USPTO to the four-name wordmark, Lewis Brisbois Bisgaard and Smith.  Only on October 31, 2023, the USPTO accept Plaintiff *pro se's* new application for the name, filed on September 29, 2022, prior to the October 6, 2022, TRO hearing.**

Exhibit 3 - 11-18-24
Page 11 of 15

28.    Despite the Plaintiff *pro se's* demonstrated incompetence in the state court, causing its loss in the state court, as well as its arrogance before this Court, the Court's anger is more properly directed at the Plaintiff *pro se*, not the Defendants.  The United States Supreme Court has held that the issue of attorney's fees an issue of fact to be determined by a jury, as well as the issue of statutory damages is also to be determined by the jury:

> "For the foregoing reasons, we hold that the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself.  *Feltner v. Columbia Pictures TV*, 513 U.S. 340, 355 (1998).

29.    Now that the facts of this case are placed before the Court, it is undisputed that this case falls within multiple exceptions conducting or filing this case in a federal court. The cases of *Rooker-Feldman; Palmer, Riley, Shepherd, and Haywood* provide a clear direction to the fact that this case should never have been filed in this Court.

30.    The truth about the underlying state court case—as opposed to yet another of the Plaintiff *pro se's* false narratives—was set out clearly by the Fourteenth Court of Appeals in its November 30, 2023, Opinion (filed herein as ECF 203 / 2013, of which the Court has taken judicial notice) in Case No. 14-22-00694, *Bitgood v. Martinez*:

> BACKGROUND: "Appellant [Bitgood] filed a petition seeking declaratory judgment and injunction and asserting claims for, inter alia, fraudulent billing under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

31.    I began my representation of my client, Richard P. Jones, who is

Exhibit 3 - 11-18-24
Page 12 of 15

EXHIBIT 3

Black, in the underlying state court case in Fort Bend County, Texas, when he was the subject of the statement that "We don't apologize to niggers" as set out in Mr. Bitgood's ¶ 31. During the conduct of this case we did expose that Plaintiff *pro se* and its clients targeted my client, Richard P. Jones, as well as others of the African-American community in thefts from the CARES Act.

32.    During the state court litigation prior to September 13, 2022, Plaintiff *pro se* never asked me not to use the name of the Texas Domestic entity, Lewis Brisbois, Bisgaard & Smith LLP, on any pleadings or correspondence in Cause No. 22-CCV-070378, nor did it make any request to the state court for an order that I not use the name. Even at the trial on September 13, 2022, when I identified myself to the Court as representing my clients, Richard P. Jones and Lewis Brisbois, Bisgaard & Smith, LLP, the Texas entity, Plaintiff *pro se* did not object. It was only after Plaintiff *pro se* lost in state court, that it filed this suit in federal court to overturn the state court action. That plan is also clear from the "settlement demand." ECF 183-53, p 5-6.

33.    As set out in ¶ 30, *supra*, this federal case was brought because Mr. Bitgood and I filed suit regarding Plaintiff *pro se's* clients stealing from the CARES Act and, their treatment of my client, Richard P. Jones and other Black tenants  involving overt racism.

34.    As Mr. Bitgood stated in his ¶ 34, and as I stated in my prior Declaration, I long ago determined that I would never again use the name, Lewis Brisbois, Bisgaard & Smith, for a number of reasons: I would never wish to be associated with such incompetence as has been shown by Plaintiff *pro se* and its employees, not to mention a firm that thinks nothing of lying to courts and filing false documents, while making false assertions of law to a court.

Exhibit 3 - 11-18-24
Page 13 of 15

35.    There was never an intent by me—or by Mr. Bitgood, for that matter—to maliciously violate the Lanham Act.  How could we, when the only name we used, *Lewis Brisbois, Bisgaard & Smith*, had not been registered at the USPTO since July 10, 2020, eighteen months before the state court case began?  We did not use any of the other registered wordmarks or the fanciful trademark.  The state court record along with my prior Declaration—which has never been rebutted nor controverted— demonstrates that we only used the four-name wordmark in litigation–not commerce.  There was no sale, offering for sale, distribution, or advertising of goods and services—only using only the four-name wordmark in litigation.  "To be guilty of infringement … the defendant must use the infringing mark 'in commerce.'" *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 795 (5th Cir. 1954).

36.    This Court has judicially noticed at ECF 69 that the Texas Domestic LLP was formed to assist people being evicted—as was my client, Richard P. Jones—during the COVID 19 pandemic, by Plaintiff *pro se's* clients and their lawyers.  That focus was acknowledged by the Fourteenth Court of Appeals Fourteenth Court of Appeals in its November 30, 2023, Opinion more fully set out in ¶30, *supra*.

37.    I state herein under penalty of perjury that we did not use the name, Lewis Brisbois, Bisgaard & Smith, in commerce: we had no bank account under that name; we made no sales, advertised no products or goods and services.  We only used the name in litigation.  Further, the Texas Domestic entity was only in existence for four months and one week, **and during that entire four months and one week, Plaintiff *pro se* <u>did not own USPTO trademark.  Just as Plaintiff *pro se* allowed its right to conduct business in Texas to be terminated multiple times, it allowed its wordmark to be cancelled by the USPTO</u>**.  Plaintiff *pro se* has had almost two years to produce evidence of use of the name, Lewis Brisbois, Bisgaard & Smith in commerce.  It never did, and it could not because such use in

Page -14-

Exhibit 3 - 11-18-24
Page 14 of 15

commerce never happened.

38.    Further, **I object again to Mr. Helfand's November 1, affidavit, ECF 353-1.**  This second attempt via affidavit to request now a total of $543,146.81 in attorney's fees is still conclusory, is hearsay; still does not segregate the fees; still violates the Texas Supreme Court's standard set in *Rohrmoos*, *supra*, and, the fees are wholly unnecessary and unreasonable.  As set out in ¶ 17 and 22, *supra*, we offered to submit this case **on September 28, 2022—five days after it was filed**—to the court on stipulated facts.  We terminated the "offending October 6, 2022.  Helfand's affidavit, ECF 183-53, pages 5-6, demonstrates the extortion and true reason for this case having been filed—to have this Court overturn the state court judgment.

**39.    I object again to Helfand's affidavit, as the issue of attorney's fees is an issue of fact to be determined by a jury, as is the credibility of the affiant.**

**40.    I renew my request for my Seventh Amendment right to trial by jury on the issue of damages and fees.**

41.    I have either generated or acquired documents used as exhibits in the course of litigating this case and the exhibits are free of alterations or additions other than a notation of exhibit number and notation of emphasis on unaltered information within the document.

42.    I declare under the penalty of perjury and under the laws of the United States of America that the foregoing is true and correct and made from my personal knowledge.

Executed on November 18, 2024, in Houston, Harris County, Texas.

/s/ *Susan C. Norman*
Susan C. Norman

Exhibit 3 - 11-18-24
Page 15 of 15