# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **Lewis Brisbois Bisgaard & Smith, LLP,**<br>     Plaintiff,<br>v.<br>**Michael Joseph Bitgood a/k/a "Michael Easton,"** *et al.*<br>     Defendants. | Civil Action No. 4:22-cv-3279<br><br>Jury Demanded |

## PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANTS' RESPONSE BRIEFS [DOCS. 358 AND 359]

Because Defendant Bradley Beers' response [Doc. 358] and Defendants Susan Norman and Michael Joseph Bitgood's response [Doc. 359] to Plaintiff LBBS' submission of attorney's fees [Doc. 353] contain inaccurate and slanderous statements, LBBS files this reply to assist the Court in determining attorneys' fees

## INTRODUCTION

1.     On September 23, 2022, LBBS filed this lawsuit and also moved for temporary restraining order. [Doc. 1].

2.     On October 7, 2022, the Court entered a temporary restraining order. [Doc. 14].

3.     On February 16, 2023, the Court granted Plaintiff's request for a preliminary injunction. [Doc 126].

4.     In September 2023, Plaintiff moved for summary judgment on Plaintiff's claims, which included two claims under the Lanham Act. [Docs 183, 227].

5.     On August 15, 2024, the Court concluded there was no genuine dispute of material fact; LBBS has met both requirements for its trademark infringement and unfair

149624915.3

competition claims under the Lanham Act and Texas law; and, the Court ordered LBBS to submit a permanent injunction order. [Doc. 325 at p. 10, 15]. The Court also held LBBS is entitled to attorneys' fees under the Lanham Act because this is an exceptional case under 15 U.S.C. § 1117(a); and further, because of the frivolous filings by Plaintiff. *Id*. at p. 17.

6. On September 6, 2024, the Court signed Plaintiff's permanent injunction [Doc. 340].

7. As evinced *supra*, this litigation has spanned for over two years and resulted in 340 filings to obtain Plaintiff's permanent injunction. As this Court has previously referenced, the time and labor spent on this case is a result of Defendants' conduct in this case and Plaintiff is lawfully entitled to the $543,146.81 in attorneys' fees for Plaintiff's claims under the Lanham Act as the amount was reasonable and necessary to obtain a permanent injunction and litigate this matter with Defendants.

8. It is not lost on the undersigned that although the Court revoked Mr. Bitgood's ECF filing privileges, he nonetheless continues to file vile pleadings through Ms. Norman's ECF credentials. While this joint response may not necessarily violate the technical order of this Court (for Mr. Bitgood not to litter the court's record from a remote location), it certainly violates the spirit of the Order. We suggest that if Ms. Norman provides a platform for Mr. Bitgood and joins in his slanderous and disturbing diatribes, then she be held accountable.

9. First, I am offended at the reference to my partner as a liar and a perjurer. To my knowledge, Mr. William S. Helfand has never made a knowingly false statement to this or

any other court. In this case, in Doc 358-2, Mr. Bitgood uses the words "bribery, perjury, and extortion" to describe Mr. Helfand. Words matter and everyone, especially lawyers and/or those who try to act like attorneys (by filing pleadings either on their own behalf or on behalf of others) should be held accountable. LBBS should have complained about Mr. Bitgood and Ms. Norman's bald, false and defamatory allegations designed to inflame, insult, and insinuate but we turned the other cheek trying to focus on the case and the issues at hand.[1] However, LBBS has had enough and asks the Court to take notice and/or sanction Mr. Bitgood and Ms. Norman. The other offensive language that has been repeated *ad nauseum* in the papers filed by Mr. Bitgood and Ms. Norman is found in paragraph 31 of Doc 358-2, Mr. Bitgood's Declaration.

10. Further, the undersigned has asked every lawyer who worked on the Fort Bend County case involving Mr. Bitgood and Mr. Richard Jones and no-one from LBBS heard or uttered the racist language contained in that paragraph. For instance, the second sentence of paragraph 31 states the following: "It continued with a cover-up of epic proportions by Plaintiff *pro se* and its associates, with terms like: "we don't apologize to _____." [Doc 358-2 at ¶ 31]. Again, to reiterate, no partner, associate or any other employee at LBBS, whether related to this case, or the case in the Ft. Bend County Court, ever made such a statement or spoke such words.

---

[1] To be sure, under the preamble to the Texas Disciplinary Rules of Professional Conduct, "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges, **other lawyers** and public officials."

3

11. This is not new rhetoric from Mr. Bitgood or Ms. Norman, but the undersigned asks that Mr. Bitgood and Ms. Norman stop making slanderous statements they know to be baseless and wholly untrue, and cease using this case and its pleadings to cast LBBS in a false light.

## ARGUMENTS AND AUTHORITIES

### I. Plaintiff's fees are reasonable.

12. In the Fifth Circuit, the court determines a reasonable attorney's fee in two steps. *Jimenez v. Wood Cnty, Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010). First, the court must determine the lodestar, which is the number of hours *reasonably* worked multiplied by the prevailing hourly rate in the community for similar work. *Id.* Second, once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). The factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) the awards in similar cases. *Id*.

13. Plaintiff's submission addresses this two-step requirement with the filing of Mr. Helfand's affidavit. [Doc. 353-1]. The record is clear that Plaintiff's fees are reasonable in this circumstance, and neither of Defendants' responses do anything to disabuse the claimed fees.

### A. The "core relief" was not achieved in October 2022

14. Both responses attempt to make the ridiculous argument Plaintiff achieved Plaintiff's necessary relief on October 6, 2022 and the case should have settled at this point. Plaintiff's "core relief" was not achieved until after almost two years and 340 filings in which Plaintiff's permanent injunction was finally granted. To be sure, Defendants were unwilling to settle and agree to relief Plaintiff achieved in Plaintiff's permanent injunction. And Plaintiff's billing records clearly indicate the length and amount of time it took to obtain a permanent injunction with regards to its claims under the Lanham Act, which is the "core relief" Plaintiff needed to achieve.

### B. Plaintiff required multiple timekeepers

15. Plaintiff required multiple timekeepers in this case given the length and nature of this proceeding. This case spans over two years and has 364 filings (and counting) and required multiple time keepers as 1) many of Plaintiff's attorneys or timekeepers left the firm during the litigation, or 2) this litigation required multiple attorneys performing different roles and were not duplicative or excessive work. Compare, *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). To be sure, no defendant points to any **specific** time entries that are duplicative or excessive. This Court, Magistrate Judge Edison presiding, has held

5

that while multiple attorneys being on a case calls for scrutiny of time records, the ultimate question is whether time is duplicative or excessive. *D.C. v. Klein Indep. Sch. Dist.*, No. 4:19-CV-00021, 2021 WL 3889495, at *3 (S.D. Tex. Aug. 12, 2021) (Edison, MJ), adopted by, 2021 WL 3885271 (S.D. Tex. Aug. 31, 2021) (Hanks. J); see also *God's Chariot, L.P. v. City of Euless*, No. CIVA 4:03CV624 Y, 2006 WL 3705510, at *4 (N.D. Tex. Dec. 14, 2006) (Means, J).

### C. Defendants Norman and Bitgood's arguments

16. Defendants Norman and Bitgood's arguments in their response briefs, as is the case in almost all of their other filings in this case, are not focused on the issues presented. Defendants Norman and Bitgood's arguments regarding the attorney/client relationship are not relevant to Plaintiff's submission for attorney's fees and Plaintiff's arguments as to Plaintiff's "abuse of the system" were disposed of by this Court's order. [Doc. 325].

17. Furthermore, Plaintiff's argument that Mr. Helfand cannot testify as to attorney's fees is preposterous as Mr. Helfand, as lead counsel, is best declarant of Plaintiff's reasonable and necessary attorney's fees in this matter.

18. Lastly, Defendants Norman and Bitgood try to distinguish *Octane Fitness v. Icon Health & Fitness Inc.* from this matter. As this Court has already held its order "[i]f any Lanham Act case is exceptional, it is this one." [Doc. 325 at p. 17]. In holding that this case is exceptional, the Court properly looked to *Octane Fitness* to assess whether this case is exceptional by looking at the following factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in

6

particular circumstances to advance considerations of compensation and deterrence." 572 U.S. 545, 554 n.6 (2014) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

19. This Court has already noted that "Norman and Beers' conduct in this case is unbecoming of the profession and likely violates several Texas Disciplinary Rules of Professional Conduct, including Rule 5.04(b) and (d), and Rule 8.04(a)(3). [Doc. 325 at n.2]. Thus, the response briefs only highlight the continued objective unreasonableness of Defendants in this case and why Plaintiff is entitled to attorney's fees in the amount of $543,146.81

## CONCLUSION

For the reasons stated in Plaintiff's submission and the above arguments, Plaintiff requests the Court enter an order awarding Plaintiff the amount of $543,146.81 as reasonable and necessary attorney's fees for Plaintiff's prosecution of claims under the Lanham Act.

**Lewis Brisbois Bisgaard & Smith LLP**

*/s/ Bennett G. Fisher*
William S. Helfand
Attorney-in-Charge
Texas Bar No. 09388250
Bennett G. Fisher
Texas Bar No. 07049125
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
bill.helfand@lewisbrisbois.com
bennett.fisher@lewisbrisbois.com
**Attorneys for Plaintiff,**
**Lewis Brisbois Bisgaard & Smith, LLP**

149624915.3

**CERTIFICATE OF SERVICE**

On December 6, 2024, I served all parties through and in accordance with the Court's ECF system and procedures and Michael Bitgood, pro se by email to eastprolaw@msn.com.

>    */s/ Bennett G. Fisher*
>    Bennett G. Fisher